Kevin T. Barnes, Esq. (#138477)
LAW OFFICES OF KEVIN T. BARNES
1041 Parkside Commons, Suite 101
Greensboro, GA 30642-4519
Tel.: (213) 793-9100
Email: Barnes@kbarnes.com

Raphael A. Katri, Esq. (#221941)
LAW OFFICES OF RAPHAEL A. KATRI
8549 Wilshire Boulevard, Suite 200
Beverly Hills, CA 90211-3104
Tel.: (310) 940-2034 / Fax: (310) 733-5644
Email: RKatri@socallaborlawyers.com

Attorneys for Plaintiff TAI HANG, on
behalf of himself and all others similarly situated

**Additional Counsel on Next Page**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAI HANG and ROBERT CANALES, on behalf of themselves and all others similarly situated, | **CLASS ACTION** |
| | Case No.: 5:21-cv-00287-JWH-KK |
| Plaintiffs, | **DECLARATION OF KEVIN T. BARNES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT** |
| v. | |
| OLD DOMINION FREIGHT LINE, INC., a Virginia corporation; and DOES 1 to 100, inclusive, | Preliminary Approval Hearing: Date: August 4, 2023 Time: 9:00 a.m. Courtroom: 9D |
| Defendants. | Honorable John W. Holcomb Courtroom 9D |
| | Action filed: November 6, 2020 Trial Date: None Set |

///

///

///

- 1 -

**DECLARATION OF KEVIN T. BARNES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT**

**Additional Counsel for Plaintiffs:**

Joseph Tojarieh, Esq. (#265492)
STONEBROOK LAW
10250 Constellation Boulevard, Suite 100
Los Angeles, CA 90067
Tel: (310) 553-5533 / Fax: (310) 553-5536
Email: JFT@stonebrooklaw.com

Attorneys for Plaintiff ROBERT CANALES, on
behalf of himself and all others similarly situated

///

///

///

- 2 -

**DECLARATION OF KEVIN T. BARNES IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY APPROVAL OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT**

<u>**DECLARATION OF KEVIN T. BARNES IN SUPPORT OF PLAINTIFFS'**</u>

<u>**MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT**</u>

I, Kevin T. Barnes, declare:

1.     I am an attorney licensed to practice before all courts of the State of California.  I am Counsel for the Plaintiff Class Representative Tai Hang and have personal knowledge of the facts thereto.  If called as a witness, I could and would competently testify herein.

**SETTLEMENT DOCUMENTS**

2.     Plaintiffs' Counsel and Defendant's Counsel have finalized the terms of the following documents:

     a.  Stipulation for Leave to File Fifth Amended Complaint and for Settlement and Release of Class Action and PAGA Claims attached hereto as **Exhibit 1**;

     b.  Notice of Class and Representative Action Settlement attached hereto as **Exhibit 2**;

     c.  [Proposed] Order Granting Plaintiffs' Motion For Preliminary Approval Of Class and Representative Action Settlement attached hereto as **Exhibit 3** and filed concurrently with this motion.

The parties are also filing a Fifth Amended Complaint with this motion. The parties request that once the Court grants this motion, the Fifth Amended Complaint be deemed filed (**Exhibit 8** to this Declaration).

**NUMEROSITY**

3.     The proposed settlement and Class involve approximately 3,500 putative Class Members.  This number satisfies the Numerosity requirements in California pursuant to California <u>Code of Civil Procedure</u> § 382 and under Federal Rule of Civil Procedure ("FRCP") section 23(a).

///

///

**DECLARATION OF KEVIN T. BARNES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT**

**COMMON QUESTIONS OF LAW AND FACT PREDOMINATE**

4.      Plaintiffs believe that there are common questions of law and fact as to the Class which predominate over questions affecting only individual members. The evidence to support these claims consists of Defendant's policies, payroll records, time records and pay stubs given to all non-exempt employees. The predominate questions are without limitation, to:

a.   Whether Defendant failed to pay minimum and overtime wages for off the clock work in violation of California Labor Code sections 510 and 1194;

b.   Whether Defendant failed to provide legally-requisite off premise rest periods or paid a rest period premium to the members of the Class in violation of California Labor Code section 512 and Section 12 of the IWC Wage Order(s);

c.   Whether Defendant failed to authorize and permit all paid rest periods or paid a rest period premium to the members of the Class in violation of California Labor Code section 512 and Section 12 of the IWC Wage Order(s);

d.   Whether Defendant failed to provide legally-requisite meal periods to the members of the Class in violation of California Labor Code section 512 and Section 11 of the IWC Wage Order(s);

e.   Whether Defendant failed to fully reimburse for all work-related expenses incurred by the reimbursement class in violation of California Labor Code section 2802;

f.   Whether Defendant failed to timely furnish accurate, itemized and legal wage statements in violation of California Labor Code section 226;

///
///

**DECLARATION OF KEVIN T. BARNES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT**

g.  Whether Defendant is liable pursuant to California <u>Labor Code</u> § 203 to the Class Members;

h.  Whether the Class Members are entitled to penalties pursuant to California <u>Labor Code</u> §§ 2698, et seq.;

i.  Whether Defendant's conduct constitutes unfair competition and/or unfair business practices within the meaning of California <u>Business and Professions</u> Code § 17200, et seq.;

Defendant, while not admitting that there are common questions of law and fact sufficient to justify a litigation class, acknowledges the risk that such common questions might be found, and agrees that there are sufficient common questions to support creation of a Settlement class.

## THE CLASS REPRESENTATIVES ARE TYPICAL AND ADEQUATE

5.  The claims of the Class Representatives are typical of the Class Members. The proposed Class Representatives are adequate Class Representatives because they will adequately and fairly represent the Class and will not place their interests above any Member of the Class.  The Class Representatives were non-exempt Dock Workers employed by the Defendant in the state of California during the relevant time period and who therefore, worked under the same policies and procedures and were paid according to the same pay plan for the entire period, as all other putative Class Members. (*See* Declaration of Plaintiff Tai Hang attached as **Exhibit 4** and Declaration of Plaintiff Robert Canales attached as **Exhibit 5**).

## FAIR & REASONABLE SETTLEMENT

6.  This case was settled through arms-length negotiation. Counsel submits that the settlement amount recoverable for each Class Member as set forth in the Memorandum of Points and Authorities is fair and reasonable based on a review of all objective evidence.  The settlement that has been reached, subject to this Court's approval, is the product of tremendous effort, and a great deal of expense by the Parties and their Counsel.

- 5 -

**DECLARATION OF KEVIN T. BARNES IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY APPROVAL OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT**

The settlement was reached after extensive factual and legal research, formal discovery including propounding and responding to written interrogatories, the production of documents and a full-day Mediation with the mediator David A. Rotman.   To prepare for the mediation, Defendant provided extensive documentation and data related to the claims asserted in this case as well as a number of work weeks, class size and other necessary information for Plaintiffs to create a damages exposure analysis. Plaintiffs hired an expert economist to prepare damage calculations and an exposure analysis for the mediation.  While the Parties did not reach a settlement during that mediation on that date, Mr. Rotman made a mediators' proposal which both parties accepted on April 10, 2023.

Counsel are knowledgeable about and have done extensive research with respect to the applicable law and potential defenses to the claims of the Settlement Class.  Based on the documents and information provided by Defendant, and their own independent investigation and evaluation, Counsel and Plaintiffs are of the opinion that the settlement with Defendant for the consideration and on the terms set forth in this Settlement is fair, reasonable, and adequate and is in the best interest of the Class Members in light of all known facts and circumstances, including the risk of significant delay and uncertainty associated with litigation, various defenses asserted by Defendant, and numerous potential appellate issues.

7.      The settlement amount is, of course, a compromise figure. Plaintiffs took into account the risks that the class would be certified, risks related to proof of Plaintiffs' claims, and the strengths and weaknesses of Defendant's other defenses. Plaintiffs also took into account the possibility that if a settlement were reached after additional years of litigation, the great expenses and attorneys' fees of litigation would reduce the amount of funds available to Class Members for settlement. Furthermore, Plaintiffs also took into consideration the time delay and financial repercussions of liability trials, numerous damages trials, and the possibility of an appeal by Defendant.

**DECLARATION OF KEVIN T. BARNES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT**

8.     This declaration is presented to comply with FRCP 23(e)(2) and the instruction of the California appellate courts in <u>Kullar v Foot Locker Retail, Inc.</u> (2008) 168 Cal.App.4th 116, 120, 129, 132, <u>Clark v. American Residential Services LLC</u> (2009) 175 Cal.App.4th 785, <u>Munoz v. BCI Coca-Cola Bottling Company of Los Angeles</u> (2010) 186 Cal.App.4th 399, <u>Nordstrom Commission Cases</u> (2010) 186 Cal.App.4th 576. I am providing evidence to enable the Court to "ensure that the recovery represents a reasonable compromise" by providing "an understanding of the amount that is in controversy and the realistic range of outcomes of the litigation" through submission of "data... that will enable the court to make an independent assessment of the adequacy of the settlement terms." <u>Kullar</u>, *supra*, 168 Cal.App.4th at 120,129; <u>Chun-Hoon v. McKee Foods Corp.</u>, 716 F. Supp. 2d 848, 850-51 (N.D. Cal. 2010)

**9.     Exposure Analysis**

Plaintiffs made the following claims in this case and their exposure is discussed below.

**A.     Off The Clock Work**

**1.     Facts**

Plaintiffs allege that Defendant required Plaintiffs and Class Members to work off the clock and therefore did not pay all minimum and overtime wages owed. Defendant required employees to clock in and out at the designated dock area and as a result of the security checks prior to entering and leaving Defendant's premise, the large size of Defendant's facilities, and the time to walk to the dock area where the time clocks were, Plaintiffs allege employees worked off the clock.

**2.     Law**

<u>Labor Code</u> §§1194 and 510(a) require employers to pay minimum wages for all hours worked. Wage Order 4-2001, §2(K), requires payment to employees for all "hours worked" meaning the time during which an employee is subject to the control of an employer, including all the time the employee is suffered or

- 7 -

permitted to work, whether or not required to do so.

The standard is whether employees were subject to the "control" of Defendant. The appropriate legal definition of "work" relating to Plaintiffs and putative class members is set forth in Wage Order 9-2001: "Hours worked" means the time during which an employee is subject to the control of an employer, and includes all the time during which the employee is suffered or permitted to work, whether or not required to do so." 8 C.C.R. §11040 (2)(K). (emphasis added). The California Supreme Court has similarly held "hours worked" to include time employees are either "subject to the control of an employer" or "suffered or permitted to work, whether or not required to do so." Morillion v. Royal Packing Co. (2000) 22 Cal. 4th 575, 582.

Furthermore, the Supreme Court of California issued a landmark decision on February 13, 2020 and held that the time employees spend waiting for their bags and personal belongings to be screened at the end of their work shift is compensable. Frlekin v. Apple, Inc. (2020) 8 Cal.5th 1038.

Here, Plaintiffs allege that Defendant's policy required employees to undergo security checks and walk to their work station area to clock in and at the end of the day clock out then walk to the exit and undergo security checks. Since Plaintiffs and Class Members were still under Defendant's control, Plaintiffs and Class Members performed hours worked off the clock and are therefore owed wages for time spent enduring these security checks.

### 3.     Exposure

Based on the time punch versus payroll data provided by Defendant, Plaintiffs estimate the employees worked 10 minutes off the clock per shift and thus the total exposure for this claim is approximately **$3,666,000**. Counsel thought they had a 20% probability of prevailing on this claim through class certification and trial as this can be proven by Defendant own security check policies and the size of each location; however, there are significant risks with this claim as

**DECLARATION OF KEVIN T. BARNES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT**

Defendant argues there is no control over employees until they clock in and employees are free to do as they wish until that time. Likewise, no employee works during this time and employees had different walk time to their workstation and time clocks so damages varied for each department. There are also the general trial risks. **As such, Plaintiffs felt that the real exposure for this claim was approximately $733,333 based on these risks.**

### B.   Failure to Provide Off Premise Rest Periods

#### 1.   <u>Facts</u>

Plaintiffs contend that Defendant failed to provide off premises rest periods to Plaintiffs and putative class members. Here, Defendant's Employee Handbook contains a rest period policy that states, "The company authorizes and approvers two paid rest break periods of 15 minutes each." It further states as follows: "Hourly employees may not leave OD premise while on a paid rest break and are expected to be at their work station at the conclusion of the paid rest break, unless prohibited by applicable law, include state and local laws."

The Employee Handbook has an Addendum A for California employees. This rest period policy also confirms a 15-minute rest break, but the California policy states, "Meal and Rest periods should be taken completely off duty. Employees are free to leave the premises, and use the time as their own." However, both Plaintiffs allege that employees are not allowed to leave the premises for rest periods and they must, in fact, go to a break room and cannot stay at their work station.

#### 2.   <u>Law</u>

<u>Labor Code</u> §226.7(b) provides that "[a]n employer shall not require an employee to work during a meal or rest or recovery period mandated under an applicable statute, or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health."

**DECLARATION OF KEVIN T. BARNES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT**

Labor Code §516 provides that the Industrial Welfare Commission "may adopt or amend working condition orders with respect to break periods, meal periods, and days of rest for any workers in California consistent with the health and welfare of those workers."

Section 12(B) of the IWC Wage Order(s) states: "If an employer fails to provide an employee a rest period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the rest period is not provided."

Plaintiffs allege they were not always provided legally complaint rest breaks in direct violation of Augustus v. ABM Sec. Servs., Inc., 2 Cal. 5th 257, 269-70 (2016). In *Augustus*, the California Supreme Court held that, "During required rest periods, employers ***must . . . relinquish <u>any</u> control over how employees spend their break time***," just as an employer must relinquish control over how employees spend their time during meal periods. Augustus, *supra*, 2 Cal.5th 257 at 260 and 273 (emphasis added) (citing Brinker v. Superior Court, 53 Cal.4th 1004, 1038-39 (2012) (discussing requirement to relinquish control over employees during breaks)).

Restricting employees to the employer's premises—i.e., controlling where an employee must physically spend his or her rest period—is a form of employer control, just as the Supreme Court in *Brinker* found that an employer impermissibly exerts control over an employee during a meal period when it restricts the employee to the employer's premises. Brinker, *supra*, 53 Cal.4th at 1036 (agreeing with the DLSE that employees must be "free to leave the premises" during meal periods).

Indeed, the Court in *Augustus* found that the Labor Code and the applicable Wage Order provisions treat meal periods and rest periods identically with respect to the employer's obligation to relinquish control over employees. The Court

**DECLARATION OF KEVIN T. BARNES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT**

noted that:

> [S]ection 226.7's prohibition applies in identical fashion to meal and rest periods, with its premium-pay remedy (§226.7(b)) triggered by the failure to provide either.  We have explained that during meal periods, employers must "relieve the employee of all duty and relinquish any employer control over the employee and how he or she spends the time." (*Brinker*, at pp. 1038–1039).  It would be difficult to cast aside section 226.7's parallel treatment of meal periods and rest periods and conclude that employers had completely distinct obligations when providing meal and rest periods.  What makes sense instead is to infer that ***employers' responsibilities are the same for meal and rest periods***—an inference that also reflects the protective purpose of both.

Augustus, *supra*, 2 Cal.5th at 265 (emphasis added).

As the *Augustus* Court held, requiring employees to be tethered to a physical location (especially where it would be possible to take off-premises rest periods), does not comport with the law:

> [O]ne cannot square the practice of compelling employees to remain at the ready, ***tethered by time and policy to particular locations*** or communications devices, with the requirement to relieve employees of all work duties and employer control during 10-minute rest periods.

Augustus, *supra*, 2 Cal.5th at 269 (emphasis added).

By adding an employer-imposed affirmative requirement to remain "tethered by time and policy *to particular locations*," an employer violates its statutory obligation "to relieve employees of all work duties and employer control during 10-minute rest period." *Id.* (emphasis added).  Indeed, according to the California Supreme Court, under California law an employee must be free to tend to personal activities such as "tak[ing] a brief walk—five minutes out and five minutes back…" during a rest period. *Id.* at 270 (citation omitted).

The California State of California Department of Industrial Relations, regarding an employer's obligation to provide off premise rest periods, even states on its website (https://www.dir.ca.gov/dlse/faq_restperiods.htm):

**Can my employer require that I stay on the work premises during my rest period?**

**DECLARATION OF KEVIN T. BARNES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT**

No, your employer cannot impose any restraints not inherent in the rest period requirement itself. In <u>Augustus v. ABM Security Services, Inc.</u>, (2016) 5 Cal.5th 257, 269, the California Supreme Court held that the rest period requirement "obligates employers to permit-and authorizes employees to take-off-duty rest periods. That is, during rest periods employers must relieve employees of all duties and relinquish control over how employees spend their time." (citation omitted) As a practical matter, however, if an employee is provided a ten minute rest period, the employee can only travel five minutes from a work post before heading back to return in time.

Additionally, this long distance for employees to be able to leave the building impeded or discouraged Plaintiffs and putative class members from taking breaks outside the building. (<u>Hamilton v. Wal-Mart Stores, Inc.</u> (C.D. Cal., Mar. 4, 2019, No. 517CV01415ABKKX) 2019 WL 1949456, at *6.) That court found there was enough evidence to permit the jury to decide whether the alleged impedance discouraged employees from taking breaks.

Here, like <u>Hamilton v. Wal-Mart Stores, Inc.</u>, the long distance imposed by Defendant impedes or discourages associates from taking legally-compliant rest breaks. This policy tethers employees to the facility and prevents them from, for example, taking a brief walk, in violation of <u>Augustus</u>, *supra*, 2 Cal.5th 257.

In this case it is important to note that Defendant provides a 15 minute rest break (not a 10 minute rest break), as that extra five minutes negates Defendant's argument related to <u>Augustus</u> that an employee could not go anywhere in ten minutes.

Finally, the failure to pay such rest period premiums is the proper basis for a certifiable class. <u>Bluford v. Safeway Stores, Inc.</u> (2013) 216 Cal.App.4th 864 and

**- 12 -**

**DECLARATION OF KEVIN T. BARNES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT**

Safeway, Inc. v. Superior Court (2015) 238 Cal.App.4th 1138.

In short, by requiring employees to remain on Defendant's premises during the 15 minute rest periods, Defendant fails to relinquish all control and restricts their movements during rest periods.

### 3.    Exposure

Based on the data provided by Defendant, Plaintiffs estimate the total exposure for this rest period claim is approximately **$22,663,000**. Counsel thought they had a 10% probability of prevailing on this claim at class certification and trial as both Plaintiffs allege that employees are not allowed to leave the premises for rest periods and they must, in fact, go to a break room and cannot stay at their work station. However, even though Defendant's nationwide written policy required that employees must remain on premises, their Handbook has an Addendum A for California employees that allows for rest periods to be taken completely off duty and employees are free to leave the premises. It would also be difficult to prevail on this claim at trial as Plaintiffs would have to show that employees did stay on premises and there are no time punch records of whether someone took a rest break or not. Likewise, there are always general trial risks which reduce the value of any case. **As such, Plaintiffs felt that the real exposure for this claim was approximately $2,266,300 based on these risks.**

### C.    Failure to Authorize and Permit all Paid Rest Periods

### 1.    Facts

In addition to the aforementioned allegations regarding off premise rest break violations, Defendant also failed to always authorize and permit paid rest periods to Plaintiffs and putative class members. Plaintiffs and putative class members allege they did not always get full ten-minute uninterrupted rest breaks within the first four hours of their shift or major fraction thereof, and each subsequent four hours worked thereafter or major fraction thereof. Here, Defendant has a 15-minute rest period policy. However, Plaintiffs estimate that Defendant's

**- 13 -**

**DECLARATION OF KEVIN T. BARNES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT**

warehouse is much larger than a football field and has approximately 260 truck doors, so trucks are able to load and unload merchandise. Due to this vast area, Plaintiffs and putative class members allege they are never able to get the full 15 minute rest period because by the time they walk to the break room (which is required by Defendant and is a 3-5 minute walk) and back to his work station (another 3-5 minute walk) at the conclusion of the 15 minutes, they are lucky to get 5 minutes of their actual rest break.

### 2.   Law

Labor Code §226.7(b) provides that "[a]n employer shall not require an employee to work during a meal or rest or recovery period mandated under an applicable statute, or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health."

Section 12(A) of the IWC Wage Order(s) states: "Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours **or major fraction thereof**. However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3½) hours. Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages." (emphasis added).

Section 12(B) of the IWC Wage Order(s) states: "If an employer fails to provide an employee a rest period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the rest period is not provided."

As stated above, this long distance for employees to be able to leave the building impeded or discouraged Plaintiffs and putative class members from taking

**DECLARATION OF KEVIN T. BARNES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT**

breaks outside the building. (Hamilton v. Wal-Mart Stores, Inc. (C.D. Cal., Mar. 4, 2019, No. 517CV01415ABKKX) 2019 WL 1949456, at *6.) That court found there was enough evidence to permit the jury to decide whether the alleged impedance discouraged employees from taking breaks. Also like in Hamilton v. Wal-Mart Stores, Inc., the long distance imposed by Defendant impedes or discourages associates from taking legally-compliant rest breaks.

### 3.   Exposure

There are no time punch records to prove whether a rest break was taken or not as the Class Members do not clock in and out for rest periods. Plaintiffs assumed that 100% of the rest breaks were not lawful based on interviews of the Plaintiffs and Class Members. Based on the data provided by Defendant, Plaintiffs estimated the total exposure for the rest period claim is approximately **$22,633,000**. Class Counsel thought they had a 10% probability of prevailing at Class certification on this claim as the claim is not based upon actual time card records, there is no objective proof of this claim and Defendant has a legally compliant rest break policy. Plaintiffs also have to show "why" rest breaks were missed which is not an easy task to prove. Plaintiffs will have to conduct a random representative survey to prove that the rest periods were missed because of staffing and work demands and not their own choice. There are also real risks at trial. **A class cannot get double rest period damages (i.e. one for each theory of recovery) so this damage number is also factored into the total exposure in the off premise rest period analysis above.**

### D.   Failure to Provide Meal Periods or Payment for violations

### 1.   Facts

Plaintiffs claim that Defendant failed to timely provide all legally compliant meal breaks (including second meal breaks) to the Plaintiffs and all other similarly situated Class Members, as Plaintiffs and all other similarly situated Class Members did not always get full thirty-minute uninterrupted meal breaks within

- 15 -

**DECLARATION OF KEVIN T. BARNES IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY APPROVAL OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT**

the first five hours of their shift. Plaintiffs allege that they, and other Class Members, often were provided short meals of less than 30 minutes, late meals, and frequently missed meals breaks and were not provided a second meal for shifts over twelve hours.

### 2.   Law

The law states that an employee is entitled to an uninterrupted meal period of not less than 30 minutes prior to exceeding five hours of employment and a second meal for all shifts over 10 hours. *See* California Labor Code §512 and §11 of the IWC Wage Order(s). California Labor Code §226.7 requires an employer to pay an additional hour of compensation for each meal period the employer fails to provide. Employers must relieve the employees of all duty for the meal period. Brinker Restaurant Corp. v. Superior Court (2012) 53 Cal.4th 1004, 1034.

Labor Code § 512 provides in pertinent part:

(a) An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee. An employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

Labor Code § 226.7(b) provides in pertinent part:

An employer shall not require an employee to work during a meal or rest or recovery period mandated under an applicable statute, or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health.

Section 11(A) of the IWC Wage Orders provides:

No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and employee.

Labor Code § 226.7(c) states:

**- 16 -**

**DECLARATION OF KEVIN T. BARNES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT**

> If an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law, including, but not limited to, an applicable statute or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided.

Additionally, the recent California Supreme Court decision in <u>Donohue v. AMN Services, LLC</u> (2021) 11 Cal.5th 58 directly supports this meal period claim. <u>Donohue</u> held that time punch records showing a missed, late or short meal period create a rebuttable presumption that workers missed their meals and Defendants have the burden of proof to show that no violation has occurred. <u>Id</u>. at 76-78. To rebut this presumption, an employer must show that on a given day an employee missed, shortened or delayed a meal break voluntarily. <u>Id</u>. at 79.

Here, pursuant to <u>Labor Code</u> § 226.7(c), the Class Members are entitled to premium wages equal to one (1) additional hour of pay at each employee's regular rate of compensation for each work day that the meal period was not provided, in a sum to be proven at trial.

Pursuant to California <u>Labor Code</u> § 218.6 and California <u>Civil Code</u> § 3287, the Class Members seek recovery of pre-judgment interest on all amounts recovered herein.

### 3.   <u>Exposure</u>

Based on the data provided by Defendant, Plaintiffs estimate the total exposure for this claim is approximately **$3,603,000**. Defendant produced the time punch records for the entire putative class and based upon these records, Plaintiffs' experts performed an analysis of these records. The time punch records demonstrate a unique potential meal period violation rate of 20.1% and Defendant paid meal period premiums on 3.4% of these potential violations.

Counsel thought they had a 40% probability of prevailing on this meal

**DECLARATION OF KEVIN T. BARNES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT**

period claim as several risk factors exist as follows: the recent California Supreme Court decision in <u>Donohue v. AMN Services, LLC</u> (2021) 11 Cal.5th 58 held that time punch records showing a missed, late or short meal period create a rebuttable presumption that workers missed their meals and Defendant has the burden of proof to show that no violation has occurred. <u>Id</u>. at 76-78. However, Defendant has a valid meal period policy in place which is favorable to Defendant. Defendant can also overcome this rebuttable presumption by demonstrating that employees simply chose not to take timely meal periods based on their personal habits and reasons and if they do, Plaintiffs and the employees will have to establish "why" they did not take a meal break was because of work demands not personal choice, which can be difficult to prove on a class wide basis at trial. There are also general risks at trial. **As such, Plaintiffs felt that the real exposure for this claim was approximately $1,441,200 based on these risks.**

### E.    Failure to Reimburse for Work Expenses

#### 1.    <u>Facts</u>

Plaintiffs claim that Defendant failed to provide pens, clipboards, and safety boots, all of which were necessary to perform his job. However, Defendant failed to indemnify him for such necessary business expenses.

#### 2.    <u>Law</u>

California <u>Labor Code</u> § 2802 requires an employer to reimburse employees for amounts expended in carrying out the duties of their employment and provides in pertinent part:

> An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful. (Emphasis added.)

Under California <u>Labor Code</u> § 2804, the rights and protections granted by <u>Labor Code</u> § 2802 cannot be waived by agreement, and any such agreement is

**- 18 -**

null, void, and unenforceable. Further, California <u>Labor Code</u> § 450(a) states "no
employer…may compel or coerce any employee… to patronize his or her
employer, or any other person, in the purchase of anything of value."

The right to full reimbursement of expenses is non-waivable under <u>Labor
Code</u> § 2804. <u>Gattuso v. Harte-Hanks Shoppers, Inc.</u>, supra, 42 Cal.4th at pp. 569-
570. Further, any agreed-upon mileage reimbursement rate that is less than full
reimbursement "would not relieve the employer of the statutory obligation to
provide complete reimbursement" <u>*Ibid*</u>. Here, Defendant never reimbursed any
Store Manager or Assistant Manager for use of their cell phone which was required
to perform all of their job duties.

### 3.   <u>Exposure</u>

**After further investigation into this claim, Plaintiffs placed no value on
this claim.** Not all class Plaintiffs or class members were required to but these,
Plaintiff Canales does not have any records to prove these expenses and Defendant
claims that there was no requirement that any employee purchase any of these
items for business reasons.

### F.   **Failure to Timely Furnish Accurate, Itemized Wage Statements**

#### 1.   <u>Fact of Independent Claim</u>

Pursuant to <u>Labor Code</u> § 226(a) and the applicable Industrial Wage Order,
Defendant is required to include certain information on an employee's wage
statement. Here, Plaintiffs claim that Defendant issued improper wage statements
to Plaintiffs and putative class members because Defendant's wage statements did
not always contain all requisite information, including the applicable hourly
regular and overtime rates in effect during the pay period. Here, Defendant's wage
statement has five columns as follows: Gross Earnings, Rate, Units, Current, and
YTD. However, there is never a wage rate entered under the "Rate" column for
any Straight Time, Overtime 1.5, or Overtime 2.0.

///

**DECLARATION OF KEVIN T. BARNES IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY APPROVAL OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT**

## 2.    Fact of Derivative Claim

If Plaintiffs prevail on any of the underlying rest period claims, they will prevail on the derivative <u>Labor Code</u> §226 claim because Defendant's wage statements do not show the actual hours worked due to Defendant's underlying claims.

## 3.    <u>Law</u>

<u>Labor Code</u> § 226(a) states in pertinent part: "Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing …. (9) all applicable hourly rates in effect during the pay period…"

Further, the applicable Wage Order(s) § 6(A) states in pertinent part: "(A) Every employer shall keep accurate information with respect to each employee including the following: … (5) Total hours worked in the payroll period and applicable rates of pay..."

In response to conflicting interpretations by the federal district courts, the California Legislature amended § 226(e), effective January 1, 2013, to clarify what an employee must prove to meet the "suffering injury" requirement.  As amended, § 226(e)(2)(B), subdivisions (i) and (iv) explain:

> An employee is deemed to suffer injury for purposes of this subdivision if the employer fails to provide accurate and complete information as required by any one or more of items (1) to (9), inclusive, of subdivision (a) and the employee cannot promptly and easily determine from the wage statement alone one or more of the following:

Plaintiffs allege because "one or more of the items" included in items "(1) to (9)" of § 226(a) is missing, and because without listing this information employees could not "promptly and easily determine from the wage statement"

**- 20 -**

**DECLARATION OF KEVIN T. BARNES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT**

this information, the employees are "deemed to suffer injury" as a result of Defendant's failure to comply with § 226(a)(9).

Finally, pursuant to <u>Naranjo v. Spectrum Sec. Servs., Inc.</u>, No. S258966, -- P.3d --, 2022 WL 1613499, at *1 (Cal. May 23, 2022), a claim for failure to provide meal and rest periods supports claims under Labor Code § 203 (waiting time penalties) and Labor Code § 226 (inaccurate wage statements).

### 4.   Exposure

Based on the data provided by Defendant, Plaintiffs estimate the total exposure for this independent and derivative claim is approximately **$1,749,577**. Counsel thought they had a 75% probability of prevailing at the time of class certification on this claim as it is based upon the actual paystub as to which there can be no dispute as to what's contained on them. Counsel thought they had a 10% probability of prevailing at the time of trial based on the same records as Plaintiffs must prove this is a "willful" violation in order to prevail which is a difficult task, especially on a technical violation which Defendant alleges their pays stubs have enough pay information for class members to be able to do the required math to determine their pay. Furthermore, this is a penalty not a wage and the Court has discretion to reduce the amount awarded, as well as the general trial risks. **As such, Plaintiffs felt that the real exposure for this claim was approximately $131,218 based on these risks.**

### G.   Failure to Pay All Wages Due Upon Separation of Employment

#### 1.   Facts and Law

If Plaintiffs prevail on any of the underlying claims, they may prevail on the derivative <u>Labor Code</u> §203 claim. <u>Labor Code</u> §203 provides that if an employer **willfully** fails to timely pay the wages of separated employees, the wages of the employees shall continue at the same rate, for up to 30 days from the due date thereof, until paid or until an action therefore is commenced.

Here, Plaintiffs allege that Defendant has not paid any hourly employee all

**DECLARATION OF KEVIN T. BARNES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT**

hours due to their underlying policies. As such, a derivative <u>Labor Code</u> §203 class should be certified because there is no dispute (if Plaintiffs prove the policies are unlawful) that the hourly employees' final paychecks were insufficient. The legal and factual issue to resolve will be whether the failure to pay was "willful"—a question which can be determined on a class-wide basis, given that it turns on whether Defendant can establish any good faith defense to justify its uniform failure to pay all wages due.

Likewise, pursuant to <u>Naranjo v. Spectrum Sec. Servs., Inc.</u>, No. S258966, -- P.3d --, 2022 WL 1613499, at *1 (Cal. May 23, 2022), a claim for failure to provide meal and rest periods supports claims under Labor Code § 203 (waiting time penalties) and Labor Code § 226 (inaccurate wage statements).

### 2. **Exposure**

Based on the data provided by Defendant, Plaintiffs estimate the total exposure for this derivative claim is approximately **$8,096,807**. Counsel thought they had a 5% probability of prevailing at the time of class certification and trial on this claim as it is simply derivative of the underlying claims, and Plaintiffs must prove this is a "willful" violation in order to prevail which is a very difficult task on these underlying claims.  Furthermore, this is a penalty and trial judges rarely if ever grant the full amount of the penalty on top of wages owed, as well as the general trial risks. **As such, Plaintiffs felt that the real exposure for this claim was approximately $404,840 based on these risks.**

### H. **PAGA Penalty**

A PAGA action "is a representative action on behalf of the state," who is the real party in interest. (<u>Iskanian v. CLS Transp. Los Angeles, LLC</u> (2014) 59 Cal.4th 348, 387.) PAGA allows the plaintiff, as an "aggrieved employee," to serve as a "proxy or agent" of the State of California to recover "civil penalties that otherwise would have been assessed and collected by the Labor Workforce Development Agency (LWDA)." (<u>Arias v. Superior Court</u> (2009) 46 Cal.4th 969,

<div align="center">- 22 -</div>

986.) A PAGA claim need not meet class certification requirements. (*Id.* at p. 975.) Unlike class actions, PAGA actions require only a showing that an underlying violation occurred, without resorting to specific damages issues. (See Alcantar v. Hobart Service (C.D. Cal. 2013) 2013 WL 146323, at *4.)

Pursuant to Labor Code §2699, et seq., an employee is entitled to a $100 penalty for the initial pay period and a $200 penalty for each subsequent violation of the Labor code. **Plaintiffs felt that it would be difficult to obtain Labor Code §§203 and 226 penalties and on top of that recover PAGA penalties for the alleged wage violations.** PAGA penalties awarded are also within the courts discretion as specifically set forth in Labor Code §2699 (e)(2) which states the court may award a lesser amount than the maximum civil penalty specified when the court determines that to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory. Amaral v. Cintas Corporation NO. 2, 163 Cal. App 4th 1157 at 1213-14.

Furthermore, the case of Amaral v. Cintas Corporation NO. 2, 163 Cal. App 4th 1157 at 1208 states that an employee is not entitled to a subsequent $200 PAGA penalty until Defendant has "notice" of the previous violation and therefore the maximum PAGA penalty would likely only be $100 per violation.

Likewise, many court decisions provide settlement approval ranges that represent a percentage of the actual *realistic* damages, which do not include penalties and pre-judgment interest. *See* Glass v. UBS Fin. Servs., Inc., No. C-06-4068 MMC, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007), *aff'd,* 331 F. App'x 452 (9th Cir. 2009). In Glass v. UBS Financial Services, the court approved a settlement of unpaid overtime wages where the settlement amount only constituted approximately 25% to 35% of the estimated actual damages to the class. *Id*. at *4; See also Singer v. Becton Dickinson & Co., No. 08-CV-821-IEG(BLM), 2009 WL 4809646, at *7 (S.D. Cal. Dec. 9, 2009) (referring to *Glass* in preliminary approving settlement fund which constitutes 28.84% of the claimed actual losses);

- 23 -

**DECLARATION OF KEVIN T. BARNES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT**

outside the wage and hour context, *see also* <u>In re Cendant Corp. Litig</u>., 264 F.3d 201, 241 (9th Cir. 2001) (affirming settlement representing 36% of potential actual damage recovery); <u>Nichols v. Smithkline Beecham Corp.</u>, No. 006222, 2005 WL 950616, at *16 (E.D. Pa. April 22, 2005) (approving settlement that represented between 9.3% and 13.9% of the claimed actual damages); <u>In re Warfarin Sodium Antitrust Litig.</u>, 212 F.R.D. 231, 258 (D. Del. 2002) (finding settlement amount representing 33% of maximum possible damage recovery was well within a reasonable range when compared with recovery percentages in other class action settlements).  Simply put, "the fact that a proposed settlement may only amount to a fraction of the potential recovery does not mean that [it] should be disapproved." <u>7-Eleven Owner for Fair Franchising v. Southland Corp</u>., 85 Cal. App. 4th 1135, 1150 (2000), citing <u>Linney v. Cellular Alaska P'ship</u>, 151 F.3d 1234, 1242 (9th Cir. 1998)).

Additionally, Plaintiffs did not believe the court would award the full value of such PAGA penalties, let alone stack them on top of the 226 and 203 penalties, based on the settlement approval of PAGA awards in other cases. *See, e.g.,* <u>Franco v. Ruiz Food Prod., Inc</u>., No. 1:10-CV-02354-SKO, 2012 WL 5941801, at *14 (E.D. Cal. Nov. 27, 2012) ($10,000 in PAGA payment from $2,500,000 settlement fund); <u>Garcia v. Gordon Tracking</u>, 2012 WL 5364575, at *3 (E.D. Cal. Oct. 31, 2012) (approving PAGA settlement payment of $10,000 out of the $3.7 million common-fund settlement); <u>Chu v. Wells Fargo Investments, LLC</u>, 2011 WL 672645, at *1 (N.D. Cal. Feb.16, 2011) (approving PAGA settlement payment of $7,500 to the LWDA out of $6.9 million common-fund settlement).

Based on the data provided by Defendant and pursuant to <u>Labor Code</u> §2699, et seq., the maximum PAGA penalty is approximately **$9,693,200**. Based on the case law cited above, Counsel thought that a trial judge would likely grant none or only a small portion of this potential PAGA claim, which is a penalty and in the full discretion of the court. Plaintiffs already requested a penalty for wage

- 24 -

**DECLARATION OF KEVIN T. BARNES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT**

statements and waiting time penalties and therefore Plaintiffs felt it was highly unlikely she would recover any penalties for an additional PAGA penalty. **As such, Plaintiffs felt that the real exposure for this claim was approximately $50,000 based on nuisance value only.**

10.     **Based on the above analysis, the total realistic exposure of this case was $5,026,891. Plaintiffs obtained a settlement of $2,850,000. This is approximately 57% of the realistic Class exposure. Each Class Member will receive approximately $10.39 for each week worked in the Class Period and the average Class Member will receive a settlement payment of approximately $519 and the highest settlement payment will be approximately $3,567. This is fair and reasonable in this case based on the facts and associated risks of this putative Class and Representative action lawsuit.**

Furthermore, there is also no claim form requirement and no reversion to the Defendant.

11.     Plaintiffs' Counsel consider this to be a fair settlement for the Class Members, taking into account all issues and risks related to liability, damages, trial and appeal and also considering the case law regarding fair, reasonable, and adequate settlements. Rebney v. Wells Fargo Bank (1990) 220 Cal.App.3d 1117, 1139 ("Compromise is inherent and necessary in the settlement process...even if the relief afforded by the proposed settlement is substantially narrower than it would be if the suits were to be successfully litigated, this is no bar to a Class settlement because the public interest may indeed be served by a voluntary settlement in which each side gives ground in the interest of avoiding litigation"); Officers for Justice v. Civil Serv. Comm'n (9th Cir. 1982) 688 F.2d 615, 628 ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not . . . render the settlement inadequate or unfair"); In re Omnivision Technologies, Inc. (N.D. Cal. 2007) 2007 U.S. Dist. LEXIS 95616, at 21 (noting that certainty of recovery in settlement of 6% of maximum potential

**DECLARATION OF KEVIN T. BARNES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT**

recovery after reduction for attorney's fees was higher than median percentage for recoveries in shareholder Class action settlements, averaging 2.2%-3% from 2002 through 2006).

**ATTORNEY COMPETENCE IN CLASS ACTIONS**

12.　　I graduated from the University of Colorado at Boulder in 1985 with a degree in Business Administration and Real Estate. I graduated from Loyola Law School of Los Angeles in 1988. I am currently the managing partner in The Law Offices of Kevin T. Barnes in Los Angeles. I am admitted to practice before the following Courts: United States Court of Appeal, Ninth Circuit; United States District Court- Northern, Central, and Eastern Districts of California; United States District Court- District of Colorado, United States District Court- Fourth Circuit; all of California State Courts; and the United States Supreme Court. I have an AV rating with Martindale Hubbell.

13.　　In 1997, I was one of the first attorneys in the State of California to represent a plaintiff in a Class action wage and hour case, specifically the case of <u>Amezcua, et. al. v. Trak Auto Corporation</u>, Los Angeles County Superior Court Case No. BC183900 coordinated with <u>Tett v. Trak Auto Corporation</u>, Los Angeles County Superior Court Case No. BC186931. Since that time, my firm has been hired by many Plaintiffs and law firms to serve as Class Counsel in such cases. Few, if any, attorneys in California are more experienced in wage and hour Class action cases than my firm.

14.　　I have been invited on numerous occasions to speak on Class action and wage-and-hour employment issues. I have spoken at seminars by the Labor and Employment Section of the Los Angeles County Bar Association, various labor lawyer associations, mediator seminars and Nuts & Bolts seminars for new lawyers. I was selected as one of the Top 10 Plaintiff Labor and Employment Attorneys in 2008 by the Daily Journal and the Top 75 Labor and Employment Attorneys in 2017 and 2018 by the Daily Journal. I have been selected as a

- 26 -

**DECLARATION OF KEVIN T. BARNES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT**

1   Southern California Super Lawyer from 2007-2023 in Employment and Labor.

2   This recognition is a selection by my peers based upon ethics, experience and

3   reputation and represents the top 5% of our profession. I am also AV rated by

4   Martindale-Hubbell, the highest possible rating for a lawyer.

5          15.    In 2008 I tried with Joseph Antonelli the case of <u>Mutuc v.</u>

6   <u>Huntington Memorial Hospital</u>, Case number BC288727. This is one of the few

7   wage and hour Class action cases tried in the state of California. Judge William A.

8   MacLaughlin Issued a Statement of Decision awarding Plaintiff' $32.8 million

9   which led to a $60 million lump sum settlement. Also, in 2008, I tried another

10  wage and hour Class action entitled <u>Solis v. Worldwide Network, Inc</u>., et al.,

11  Orange County Superior Court Case no. 03CC00069, before Hon. Ronald L.

12  Bauer, which resulted in judgment in favor of Defendant Worldwide Network, Inc.

13  I recently tried a third wage and hour case in San Diego that is currently on appeal.

14         16.    My firm has also been involved in numerous favorable appellate

15  court decisions which have been very important in wage and hour Class action law.

16  These appellate decisions include the following cases:

17         a.    <u>Huntington Memorial Hospital v. Superior Court</u> (2005) 131

18               Cal.App.4[th] 893 (a landmark decision regarding the manner in

19               which the regular rate must be calculated and what is

20               considered a "subterfuge" to avoid the correct payment of the

21               regular rate and overtime rate);

22         b.    <u>Tien v. Sup. Ct. (Tenet Healthcare)</u> (2006) 139 Cal.App.4[th] 528

23               (protecting the interest of putative Class Members in a wage

24               and hour case who want their identity protected);

25         c.    <u>Jaimez v. Daiohs USA, Inc.</u> (2010) 181 Cal.App.4[th] 1286 (the

26               criteria required to certify pay stub claims, waiting time penalty

27               claims, and meal and break claims among other matters);

28         d.    <u>Williams v Superior Court (Allstate)</u> (2013) 221 Cal.App.4[th]

**DECLARATION OF KEVIN T. BARNES IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY APPROVAL OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT**

1353 (confirms several important legal theories which support certification regarding common questions);

e. <u>Cochran v. Schwan's Home Service, Inc.</u> (2014) 228 Cal.App.4th 1137 (one of the first California cases to consider the California Supreme Court decision in *Duran v. U.S. National Bank Association* (2014) 59 Cal.4th 1, holding that Plaintiff can use statistical sampling evidence to establish either liability or damages in a wage and hour Class action case. The <u>Schwan's</u> opinion is also a seminal case regarding an employers' obligation to reimburse employees' business expenses under California <u>Labor Code</u> § 2802);

f. <u>Laffitte v. Robert Half International Inc.</u> (2016) 1 Cal.5th 480(use of a common fund recovery for attorneys' fees in Class action cases). On May 27, 2016, I argued this case to the California Supreme Court;

g. <u>Vaquero v. Ashley Furniture Industries Inc.</u> 824 F.3d 1150, 2016 WL 3190862 (9th Cir. June 8, 2016) (limits the impact of *Wal-Mart v. Dukes* (2011) 564 U S. 338 with respect to the issue of commonality, limits the impact of *Comcast v. Behrend* (2013) 133 S.Ct. 1426 with respect to predominance and underscores the 9th Circuit rule that the need for individualized finding with respect to damages does not defeat Class certification); and

h. <u>Vaquero v. Ashley Furniture Industries Inc.</u> (2017) 9 Cal.App.5th 98 (expands the impact of *Bluford v. Safeway Stores, Inc.* (2013) 216 Cal.App.4th 864 to commissioned employees for the first time; they must be separately compensated for rest breaks).

- 28 -

**DECLARATION OF KEVIN T. BARNES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT**

17.     Declarant is a very experienced Class action Counsel, including specializing in the area of wage and hour issues. Some of the Class action and wage and hour litigation on which The Law Offices of Kevin T. Barnes has served as Lead and/or Class Counsel as follows: Cruz v. Suntory Water Group, Inc., Case No. BC243596; Joel v. Athlete's Foot Group, Inc., Case No. BC 234231; Cardilino v. Perrier, Case No. BC 210181 and Holt v. Great Springs Water, OC Superior Court Case No. 810642 ("Arrowhead"); Hines v. CSK Auto; Tett v. CSK Auto and Noel v. CSK Auto, Case No. San Diego Superior Court, Case No. 720346; Soto et. al. v. Park Uniform Rental Service, et. al., Case No. BC215318; Amezcua, et. al. v. Trak Auto Corporation, Case No. BC 183900 coordinated with Tett v. Trak Auto Corporation, Case No. BC 186931 matter ("Trak Auto"); Maldonado v. Footstar Center, Inc., Case No. 00CC06359; Calvo, et. al. v. McKesson HBOC, Inc., et. al., Case No. BC 228366 coordinated with Ware, et. al. v. McKesson Water Products Company, Case No. BC 231420; Franco v. Vans Inc., Case No. 01CC03995; Cruz v. Suntory Water Group, Inc., Case No. BC243596; Toney v. McDonald's Restaurant, et al., Case No. BC234243; Tong v. 21st Century Insurance Company, Case No. 01CC10913 coordinated with Echegaray v. 21st Century Insurance Co., Case No. BC255189 and Requirme v. 21st Century Insurance Co., Case No. BC253952 ("21st Century"); Wood v. Hollywood Entertainment, Case No. CV779511 coordinated with Dannelley v. Hollywood Entertainment, Inc., Case No. OC 816155 and Peterson v. Hollywood Entertainment Corp., Case No. CV788126; and Lynn Lazdowski, et al. v. Bowne of Los Angeles, Inc., Case No. 02CC16722.

**CLASS REPRESENTATIVE SERVICE AWARDS**

18.     I believe that Class Representatives Service Awards of $10,000 each for both Class Representatives Tai Hang and Robert Canales for their time and services is fair and reasonable.  Class Representatives initially informed our office of the policies and procedures of Defendant at issue.  The Class Representatives

- 29 -

**DECLARATION OF KEVIN T. BARNES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT**

spent several hours in consultation with Plaintiffs' Counsel regarding the issues raised in the action.  The Class Representatives have remained in contact with Plaintiffs' Counsel throughout the litigation and the settlement process.  The Class Representatives provided all of the documents in their possession. The Class Representatives also reviewed hundreds of pages of documents for the mediation which lasted a full day.  Finally, Class Representative Tai Hang helped to prepare for and attended the Zoom Mediation.  All in all, the Class Representatives have been diligent and acted above and beyond that of which is expected of a Class Representative throughout all stages of the litigation, up to and including preliminary approval of Class and representative action settlement.  There are few individuals that are willing to act as a Class Representative and provide the work, diligence and willingness to assume a substantial risk should the Defendant have prevailed in this case.  The Class Representative's willingness to assume the financial risk is significant.  California law states that the losing party must pay the prevailing party's costs.  As such, if Plaintiffs had not prevailed in this case, Plaintiffs would have been subjected to a cost award in the amount of tens of thousands of dollars.  Finally, the Class representatives are also releasing all claims, not just wage and hour claims. As such, Plaintiffs' Counsel believes that a Representative Service Awards of $10,000 for each Class Representative is fair and reasonable.  (*See* Declaration of Plaintiff Tai Hang attached as **Exhibit 4** and Declaration of Plaintiff Robert Canales attached as **Exhibit 5**).

### ATTORNEYS' FEES & COSTS

19.     In the present case, Counsel is requesting attorney fees of $837,000 (30% of the Gross Settlement Fund) after the reduction of the employers share of payroll taxes. The Settlement Breakdown is set forth below:

| | |
|---|---|
| **Gross Settlement Fund:** | **$2,850,000;** |
| Employers Share of Payroll Taxes on wage component: | $90,000 (the maximum potential amount of the taxes); |

**DECLARATION OF KEVIN T. BARNES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT**

| | |
|---|---|
| Attorneys' Fees (30% after taking out employers share of payroll taxes) and attorney Costs: | Attorneys' Fees: $828,000;<br><br>Costs: up to $30,000 as verified by Class Counsel and approved by the Court |
| Administration Costs: | $26,000; |
| Class Representative Service Awards: | $10,000 to Tai Hang; and<br>$10,000 to Robert Canales; |
| PAGA payment: | $50,000 ($37,500 to the LWDA). |
| **Net Settlement Fund ("NSF"):** | **$1,818,500** |

20.     Counsel believes that the attorney fee award is appropriate based upon a common fund and/or lodestar analysis.  Pursuant to <u>Laffitte v. Robert Half International Inc.</u> (2016) 1 Cal.5th 480 and <u>Lealao v. Beneficial California, Inc.</u>, (2000) 82 Cal.App.4th 19, this request is fair and reasonable in view of the typical common fund attorneys' fees awards and similar California Class action wage and hour settlements and the hours worked on this case.  Likewise, Counsel has approximately $30,000 in litigation costs.  Counsel will file a detailed statement of their hours and costs at the time of Final Approval.

21.     This settlement includes the payment of the employer's share of payroll taxes. These taxes will only be paid on the wage component from the NSF and the settlement agreement provides that each class member's share will be allocated 25% for wages. (See Stipulation for Leave to File Fifth Amended Complaint and for Settlement and Release of Class Action and PAGA Claims, ¶35, attached hereto as **Exhibit 1**). 25% of the NSF is $454,625. Eric Bishop of Rust Consulting estimates that the employer paid portion of taxes will be approximately 14-20% of the wage component of the payments. (*See* Declaration of Eric Bishop from Rust Consulting Inc., ¶15, attached as **Exhibit 6**). 14% of that amount is

**DECLARATION OF KEVIN T. BARNES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT**

$63,647,50 and 20% of that amount is $90,925. Therefore, to be conservative, Plaintiffs' counsel has assumed the employers share of taxes will be $90,000 before calculating attorney fees and class member payment calculations.

22.     The parties have agreed on Rust Consulting Inc. and respectfully request this Court appoint them to handle the notice and claims administration procedures. The parties have received an estimate from the Claims Administrator Rust Consulting Inc. for $25,877 to handle all claims administration, **including posting the Judgment on their website**. As such, the parties have set aside up to $26,000 for this Administration Cost. (*See* Declaration of Eric Bishop from Rust Consulting Inc. attached as **Exhibit 6**).

23.     The Plaintiffs have agreed to an attorney fee split with 75% of the fees to be paid to the Law Offices of Kevin T. Barnes and 25% to Stonebrook Law. The attorney split of 75% for the Law Offices of Kevin T. Barnes will be further split with 75% of the fees to be paid to the Law Offices of Kevin T. Barnes and 25% to Law Offices of Raphael A. Katri. Plaintiffs have agreed to this fee split in writing. Plaintiffs and Counsel agree that this fee split is fair and reasonable.

24.     The only governmental involvement in this case is the existence of a PAGA claim and the Plaintiffs have notified the Labor and Workforce Development Agency ("LWDA") of this settlement in writing (*See* **Exhibit 7**).

25.     After discussions with the Class Representative and Defendant's Counsel, the parties believe that the Class Notice only needs to be sent in English as all Class Members are English-speaking and all policy documents are provided in English only.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on July 7, 2023 at Los Angeles, California.

*/s/ Kevin T. Barnes*
KEVIN T. BARNES, Declarant

- 32 -

**DECLARATION OF KEVIN T. BARNES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT**

EXHIBIT 1

DocuSign Envelope ID: 14048674-C683-4556-9491-590A98187C1A

1 | **LAW OFFICES OF KEVIN T. BARNES**
2 | Kevin T. Barnes, SBN 138477
Gregg Lander, SBN 194018
3 | 1041 Parkside Commons, Suite 101
Greensboro, GA 30642-4519
4 | Tel: (213) 793-9100
Email:   *Barnes@kbarnes.com*
5 |           *Lander@kbarnes.com*

6 | **LAW OFFICES OF RAPHAEL A. KATRI**
Raphael A. Katri, SBN 221941
7 | 8549 Wilshire Boulevard, Suite 200
Beverly Hills, CA 90211-3104
8 | Tel: (310) 940-2034
Fax: (310) 733-5644
Email:   *RKatri@socallaborlawyers.com*
9 |
Attorneys for Plaintiff TAI HANG
10 |
[*Additional counsel listed on following page*]
11 |

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAI HANG and ROBERT CANALES, on behalf of themselves and all others similarly situated, | CASE NO. 5:21-cv-00287-JWH-KK |
| Plaintiffs, | **STIPULATION FOR LEAVE TO FILE FIFTH AMENDED COMPLAINT AND FOR SETTLEMENT AND RELEASE OF CLASS ACTION AND PAGA CLAIMS** |
| vs. | |
| OLD DOMINION FREIGHT LINE, INC., a Virginia corporation; and DOES 1 to 100, inclusive, | |
| Defendants. | |

**STONEBROOK LAW**
Joseph Tojarieh, SBN 265492
10250 Constellation Boulevard, Suite 100
Los Angeles, CA 90067
Tel:   (310) 553-5533
Fax:   (310) 553-5536
Email:     *JFT@stonebrooklaw.com*

Attorney for Plaintiff ROBERT CANALES

**BAKER & HOSTETLER LLP**
Matthew C. Kane, SBN 171829
Amy E. Beverlin, SBN 284745
Kerri H. Sakaue, SBN 301043
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90025-0509
Telephone:  310.820.8800
Facsimile:  310.820.8859
Email:     *mkane@bakerlaw.com*
           *abeverlin@bakerlaw.com*
           *ksakaue@bakerlaw.com*

**BAKER & HOSTETLER LLP**
Sylvia J. Kim, SBN 258363
Transamerica Pyramid
600 Montgomery Street, Suite 3100
San Francisco, CA 94111-2806
Telephone:  415.659.2600
Facsimile:  415.659.2601
Email:     *sjkim@bakerlaw.com*

Attorneys for Defendant
OLD DOMINION FREIGHT LINE, INC.

DocuSign Envelope ID: 14048674-C683-4556-9491-599A981B7C1A

## STIPULATION FOR LEAVE TO FILE FIFTH AMENDED COMPLAINT AND FOR SETTLEMENT AND RELEASE OF CLASS ACTION AND PAGA CLAIMS

This Stipulation for Leave to File Fifth Amended Complaint and for Settlement and Release of Class Action and PAGA Claims (the "**Settlement Agreement**" or "**Agreement**") is made and entered into by and between Plaintiffs TAI HANG ("**Hang**") and ROBERT CANALES ("**Canales**") (collectively referred to herein as "**Plaintiffs**" or "**Class Representatives**"), on their own behalf and as proposed representatives on behalf of the Class to be certified pursuant to this Settlement Agreement (as described in Paragraph 9, below) and, if the Court grants final approval of this Agreement, on behalf of each of the members of the Class (each, individually, a "**Class Member**" and, collectively, "**Class Members**") upon their becoming Participating Class Members (as defined below) pursuant to the terms of this Agreement, as well as on behalf of the California Labor and Workforce Development Agency ("**LWDA**") pursuant to PAGA (as defined below), on the one hand, and Defendant OLD DOMINION FREIGHT LINE, INC. ("**Defendant**"), on the other hand, in *Hang, et al. v. Old Dominion Freight Line, Inc., et al.*, United States District Court for the Central District of California (the "Court"), Case No. 5:21-cv-00287-JWH-KK (the "**Action**").

This Settlement Agreement is subject to the terms and conditions herein and the approval of the Court.  For purposes of this Settlement Agreement, Plaintiffs and Defendant are each referred to individually as a "**Party**" and collectively as the "**Parties**."

## SETTLEMENT AMOUNT

As described in detail hereafter, and pursuant to all of the terms and conditions set forth in this Settlement Agreement, Defendant shall pay the total amount of Two Million Eight Hundred Fifty Thousand Dollars ($2,850,000.00) (the "**Gross Settlement Fund**," "**GSF**," or "**Settlement Fund**"), to resolve all of the

claims being released herein, as set forth in detail hereafter. This Settlement Agreement is not subject to any reversion of funds to Defendant, such that the entire settlement amount will be payable if the settlement becomes Final as defined herein, and any amounts not received via mail by any Class Members will be transmitted by the Settlement Administrator pursuant to governing law to the California Unclaimed Property fund to be held there for the benefit of such Class Members under California's escheatment laws.

## BACKGROUND AND RECITALS

1. On October 5, 2020, Hang filed with the LWDA and served on Defendant a notice under California Labor Code § 2699.3 stating he intended to serve as a proxy of the LWDA to recover civil penalties on behalf of "Aggrieved Employees" (as described in Paragraph 20 below) for various alleged violations of the California Labor Code and applicable California Industrial Welfare Commission ("**IWC**") Wage Orders (the "**Hang PAGA Notice**").

2. On October 14, 2020, Canales filed with the LWDA and served on Defendant a notice under California Labor Code § 2699.3 stating he intended to serve as a proxy of the LWDA to recover civil penalties on behalf of "Aggrieved Employees" (as described in Paragraph 20 below) for various alleged violations of the California Labor Code and applicable California IWC Wage Orders (the "**Canales PAGA Notice**") (the Hang PAGA Notice and Canales PAGA Notice are collectively referred to herein as the "**PAGA Notices**").

3. On November 6, 2020, Plaintiffs filed a putative class action Complaint against Defendant in San Bernardino County Superior Court (the "State Court"), Case No. CIVSB2025678 (the "**Proposed Class Complaint**"). The Proposed Class Complaint alleges six (6) causes of action for alleged violations of the California Labor Code and applicable IWC Wage Orders on behalf of Plaintiffs and other current and former non-exempt "dock worker" employees of Defendant.

4.      On December 17, 2020, Plaintiffs filed a First Amended Complaint in the State Court, which added a seventh claim pursuant to which Plaintiffs seek civil penalties under the California Labor Code Private Attorneys General Act of 2004, Cal. Lab. Code § 2698, *et seq.* ("**PAGA**").

5.      On February 19, 2021, Defendant removed this Action to this Court. After preliminary motion practice, Plaintiffs filed their currently operative Fourth Amended Class Action (FRCP Rule 23) Complaint (the "**4AC**").

6.      The claims alleged in the PAGA Notices and the 4AC include claims for (1) failure to provide legally-compliant rest periods; (2) failure to authorize and permit all paid rest periods; (3) independent failure to timely furnish accurate itemized wage statements; (4) derivative failure to timely furnish accurate itemized wage statements; (5) failure to pay wages upon discharge; (6) civil penalties under PAGA pursuant to California Labor Code §§ 2699 and 2699.3 for alleged violations of California Labor Code §§ 201-203, 204, 206, 210, 221, 226, 226.3, 226.7, 510, 512, 516, 558, 1174, 1194, 1194.2, 1197, 1197.1, 1198, 1199, 2802; and the applicable IWC Wage Orders, including sections pertaining to "Rest Periods," "Meal Periods," "Hours and Days of Work," and "Minimum Wages"; and (8) unfair business practices in violation of California Business and Professions Code, Cal. Bus. & Prof. Code §§ 17200, *et seq.*

7.      Prior to negotiating the Settlement, Plaintiffs obtained, through informal discovery, documents and information, including, *inter alia*, timekeeping and payroll data regarding Aggrieved Employees and Class Members.

8.      On April 3, 2023, the Parties participated in a private mediation with mediator David A. Rotman, Esq.  While the Parties did not reach a settlement during that mediation on that date, with the assistance of Mr. Rotman, the Parties continued to engage in substantial, arms-length settlement negotiations thereafter and ultimately agreed on a resolution in principal later in April 2023, subject to their preparation and execution of this Agreement and the Court's final approval thereof.

1   The terms of that resolution are now set out in this Agreement.

2      9.      For purposes of this Settlement Agreement only, "**Class**" or
3   "**Settlement Class**" consists of: All of Defendant's non-exempt current and former
4   employees working or who worked in the State of California in a Dockworker or
5   Dockworker Lead position from May 12, 2016 through and including the date the
6   Court grants preliminary approval of this Settlement Agreement or August 31, 2023,
7   whichever occurs earlier.  The time period applicable to Class Members' release of
8   claims under this Agreement is May 12, 2016 through August 31, 2023 (the
9   "**Settlement Period**").  To the extent any applicable statute(s) of limitations would
10  otherwise limit the Settlement Period in whole or in part, Defendant waives its
11  application solely for purposes of effectuating this settlement.  Expressly excluded
12  from the Class are any individuals who, as of the date the Court grants preliminary
13  approval of this settlement, have filed a pending, separate lawsuit as a named
14  plaintiff, individually and/or as a putative class or representative action, asserting
15  claims based on violations of any of the same statutes and/or regulations as those
16  alleged to have been violated in the Action and/or who have released such claims.

17     10.     <u>No Admission of Liability by Defendant</u>.   Defendant denies any
18  liability or wrongdoing of any kind associated with the Action and the claims being
19  released herein, and Defendant contends that it has complied at all times with all
20  applicable California laws.  A statement to this effect will be included in the notice
21  sent to Class Members.  Neither this Settlement Agreement nor any exhibit hereto,
22  nor any other document pertaining to the settlement contemplated herein, may be
23  offered in any other case or proceeding as evidence of any admission by Defendant
24  of any liability on any claims for damages or other relief.  Any stipulation or
25  admission by Defendant contained herein is made for settlement purposes only.

26     11.     Nevertheless, in the interest of avoiding the costs and disruption of
27  ongoing litigation and resolving the claims asserted in the Action, the Parties believe
28  that the settlement negotiated between them and set forth in this Settlement

Agreement is fair, reasonable, and adequate.

12.   It is the desire of Plaintiffs, on their own behalf and on behalf of the Class Members, as well as on behalf of the LWDA with respect to those claims asserted under PAGA, to fully, finally, and forever settle, compromise, release and discharge the claims set forth in Paragraphs 40 and 41 of this Settlement Agreement, as applicable.

## **TERMS OF THE SETTLEMENT**

13.   Conditional Leave to File Fifth Amended Class Action Complaint and Limited Tolling of Statute of Limitations.  Solely for purposes of this settlement only, and the Court granting preliminary and final approval thereof, the Parties hereby stipulate and agree, subject to the Court's entry of such approval orders, that leave to file the proposed Fifth Amended Class Action (FRCP Rule 23) Complaint ("**5AC**" or "**Operative Complaint**") attached hereto as **Exhibit A** be granted, which pleads the claims already alleged in the 4AC and asserts additional direct and derivative statutory, UCL and PAGA claims for alleged unpaid minimum and overtime wages for off-the-clock work, alleged failure to provide compliant first and second meal periods, and alleged failure to indemnify/reimburse for business expenses pursuant to the California Labor Code, the IWC Wage Orders and/or the PAGA Notices (the "**Additional Claims**"), all of which were investigated, litigated, mediated, and resolved in the Action.  Plaintiffs' motion for preliminary approval of the settlement will request conditional leave to file the 5AC solely for purposes of this settlement, and all allegations therein shall be deemed to relate back to the date of the filing of Plaintiffs' Proposed Class Complaint solely for purposes of this settlement, with Defendant being relieved from having to file any response to the 5AC and being deemed to have generally and specifically denied all allegations contained in the 5AC.  Should, for whatever reason, the Court require Defendant to file an answer to the 5AC, then Defendant will cooperate in doing so.  Further, should, for whatever reason, the settlement set forth in this Settlement Agreement

not become final, the 5AC shall be deemed stricken, null, and void *ab initio*, with the previously filed 4AC remaining the operative pleading, and the Parties will confer regarding leave for Plaintiffs to file the 5AC should Plaintiffs wish to do so for purposes of further litigating the Action.  However, if the Parties do not reach an agreement on such leave, then Plaintiffs and Defendant agree that the applicable statute of limitations for the Additional Claims is tolled commencing on the date this Agreement has been fully executed by the Parties and their counsel until 21 calendar days after the date the Court enters an order denying approval of this Agreement (the "**MFL Filing Deadline**").  If Plaintiffs do not file a motion for leave to file the 5AC on or by the MFL Filing Deadline, then Plaintiffs and Defendant agree that the tolling stops on the MFL Filing Deadline.  Additionally, if Plaintiffs do file a motion for leave to file the 5AC by the MFL Filing Deadline, then Plaintiffs and Defendant agree that the applicable statute of limitations for the Additional Claims will additionally be tolled from the date the motion for leave to file the 5AC is filed until the date the Court enters an order granting or denying the motion. Nothing herein constitutes any type of express or implied waiver or limitation of Defendant's rights, claims, remedies or defenses in connection with (a) the Additional Claims, (b) Plaintiffs' motion for leave to file the 5AC and/or any other further amended complaint (if filed) and/or (c) the 5AC and/or any further amended complaint if allowed to be filed by Plaintiffs.

14.     <u>Stipulation for Conditional Class Certification</u>:  The Parties stipulate and agree to the conditional certification of the Settlement Class for purposes of this Settlement Agreement only.  Should, for whatever reason, the settlement set forth in this Settlement Agreement not become final, the Parties' stipulation to such class certification as part of this settlement shall become null and void *ab initio* and shall have no bearing on, and shall not be admissible in connection with, the issue of whether or not certification would be appropriate in a non-settlement context. Defendant expressly reserves its rights and declares that, to the extent Plaintiffs may

STIPULATION FOR LEAVE TO FILE FIFTH AMENDED COMPLAINT AND FOR SETTLEMENT AND
RELEASE OF CLASS ACTION AND PAGA CLAIMS

4858-8328-2026.3

1  otherwise be permitted to seek class certification, Defendant intends to oppose class

2  certification vigorously should this settlement not become final and putative class

3  action claims are allowed to be pursued in the Action or any other action or

4  proceeding.

5       15.   Establishment of the Settlement Fund:  This settlement is being made

6  on a non-reversionary basis, such that Defendant will pay the entirety of the agreed

7  upon total Gross Settlement Fund.

8       16.   The payment by Defendant of the total Gross Settlement Fund pursuant

9  to this Settlement Agreement shall settle and forever resolve all of the Released

10 Claims (as defined below), and will include all payments to Participating Class

11 Members (as defined below), Aggrieved Employees (as defined below), and

12 government taxing authorities (to the extent applicable), as well as (a) the costs of

13 administration of the settlement, (b) all claimed and/or awarded attorneys' fees and

14 costs, (c) the claimed and/or awarded enhancement awards to the Class

15 Representatives, and (d) all payments to be made to the LWDA pursuant to PAGA.

16 Specifically included in the Gross Settlement Fund are both employee-side and

17 employer-side payroll taxes and withholdings associated with the payments to

18 Participating Class Members and Aggrieved Employees (as applicable), and no

19 additional funding or payment by Defendant will be required for any such

20 obligations.  The settlement payments are not being made for any other purpose and

21 will not be construed as "compensation" for purposes of determining eligibility for

22 any health and welfare benefits, unemployment compensation, or other

23 compensation or benefits provided by Defendant.  In addition, no individual

24 receiving a payment based on this Settlement shall be entitled to any additional or

25 increased health, welfare, retirement, or other benefits as a result of their

26 participation in the Settlement and/or receipt of payment under this Settlement.

27      17.   Calculation of Net Settlement Fund:  The total sum from which

28 Participating Class Members will be paid (the "**Net Settlement Fund**" or "**NSF**")

DocuSign Envelope ID: 14D48674-C683-4556-9491-590A981B7C1A

shall be the Gross Settlement Fund less the following: Settlement Administration Costs, the PAGA Amount (as defined below), Attorneys' Fees and Costs, the Enhancement Awards and employer-side payroll taxes and withholdings associated with the payments to Participating Class Members.  The remaining sum after all these deductions shall be the NSF, which will be used to calculate the settlement share that each Participating Class Member will receive if this settlement becomes Final (as defined below).

18.   Effective Date:   This Settlement Agreement shall become effective when the settlement is considered to be Final.  For purposes of this Settlement Agreement, "**Final Approval**" means the Court's determination that the Settlement is fair, reasonable, and adequate, granting of final approval of the Settlement, and entry of judgment based thereon, and "**Final Approval Order**" means the Court's order determining the Settlement to be fair, reasonable, and adequate and granting final approval of the Settlement and judgment based thereon.  For purposes of this Settlement Agreement, "**Effective Date**" and "**Final**" mean the following after the Court grants Final Approval of the settlement: (i) 35 days after notice of entry of the Court's Final Approval Order without a timely appeal being filed, and a judgment of dismissal with prejudice of the Action being effectuated, regardless of whether any timely objections to the granting of Final Approval have been filed or withdrawn; or, (ii) if a timely appeal of the Court's Final Approval Order has been filed, 35 days after the final disposition of all appellate proceedings and the exhaustion of any applicable time period to seek further appellate review without doing so, and a judgment of dismissal with prejudice of the Action has been effectuated.  In the event that the Court fails to approve the settlement, or if the appropriate appellate court fails to approve the settlement, and/or Plaintiffs fail to effectuate the dismissal of the Action as specified: (1) this Settlement Agreement shall have no force and effect and the Parties shall be restored to their respective positions prior to entering into it, and no Party shall be bound by any of the terms of the Settlement Agreement;

STIPULATION FOR LEAVE TO FILE FIFTH AMENDED COMPLAINT AND FOR SETTLEMENT AND RELEASE OF CLASS ACTION AND PAGA CLAIMS

4858-8328-2026.3

(2) Defendant shall have no obligation to make any payments to the LWDA, Aggrieved Employees, Class Members, Plaintiffs, or Plaintiffs' Counsel; and (3) any preliminary approval order and/or Final Approval Order shall be vacated.

19. <u>Mediation and Settlement Communications</u>: This Settlement Agreement and all negotiations, statements, proceedings, and data relating thereto shall be deemed confidential mediation settlement communications and not subject to disclosure for any purpose in any proceeding, except only as required to obtain approval of and implement this Settlement and/or to enforce this Settlement after Final Approval thereof is granted by the Court.

20. <u>PAGA Settlement</u>: Fifty Thousand Dollars ($50,000.00) of the GSF shall be allocated to civil penalties under PAGA (the "**PAGA Amount**"), subject to the Court's final approval, 75% of that PAGA Amount will be paid to the LWDA out of the GSF (the "**LWDA Payment**"), and the remaining 25% will be distributed to the "Aggrieved Employees" (the **"Aggrieved Employee Payment(s)"**), subject to the further terms of this Agreement, below. For purposes of this Settlement, "**Aggrieved Employee(s)**" shall mean and include all of Defendant's non-exempt current and former employees working or who worked in the State of California in a Dockworker or Dockworker Lead position from April 10, 2019 through the date of preliminary approval of the settlement by the Court or August 31, 2023, whichever occurs earlier. The time period applicable to Aggrieved Employees' and the LWDA's release under PAGA is April 10, 2019 through August 31, 2023 (the "**PAGA Period**").

21. <u>Attorneys' Fees and Costs</u>: "**Class Counsel**" or "**Plaintiffs' Counsel**" means Kevin T. Barnes, Esq. and Gregg Lander, Esq. of the Law Offices of Kevin T. Barnes; Raphael A. Katri, Esq. of the Law Offices of Raphael A. Katri; and Joseph Tojarieh, Esq. of Stonebrook Law. Subject to approval of the Court, Plaintiffs' Counsel shall be appointed as counsel for the Class for purposes of this settlement, and may apply for an award of attorneys' fees and costs and expenses

9

incurred in connection with the prosecution of this matter, and all of the work remaining to be performed by Class Counsel in documenting the Settlement, securing Court approval of the Settlement (including all related appellate work), carrying out their duties to see that the Settlement is fairly administered and implemented, and obtaining entry of the final judgment approving this Settlement, judgment of dismissal of the Action with prejudice, in an amount of up to one-third (1/3) of the GSF for attorneys' fees and in an amount of up to $30,000.00 for reimbursement of reasonable costs and expenses (together, "**Attorneys' Fees and Costs**").  Amounts awarded by the Court for Attorneys' Fees and Costs shall be paid from the GSF.

22.   <u>Enhancement Awards</u>:  Subject to approval by the Court, Plaintiffs shall be appointed as representatives of the Class, and they may seek an award in the amount of up to Ten Thousand Dollars ($10,000.00) each, in consideration for serving as representatives of the Class (the "**Enhancement Awards**").   The Enhancement Awards are in addition to the Individual Settlement Shares to which Plaintiffs are otherwise entitled as Settlement Class Members and the Aggrieved Employee Payments to which Plaintiffs are otherwise entitled as Aggrieved Employee.

23.   Plaintiffs acknowledge and understand that the Court might only approve Enhancement Awards to them in amounts that are only a fraction of that set forth above, which will not be known until the Court decides whether to grant Final Approval of the settlement and even if the Court otherwise grants preliminary approval of the settlement.  In the event lesser sums are awarded for Attorneys' Fees and Costs than those referenced in Paragraph 21 or for the Enhancement Awards referenced in Paragraph 22, the approval by the Court of any such lesser sum(s) shall not be grounds for Plaintiffs and/or Class Counsel to terminate the Settlement, but such an order shall be appealable by them.  In the event that such an appeal is filed, administration of the Settlement shall be stayed pending resolution of the appeal.

STIPULATION FOR LEAVE TO FILE FIFTH AMENDED COMPLAINT AND FOR SETTLEMENT AND RELEASE OF CLASS ACTION AND PAGA CLAIMS

4858-8328-2026.3

1   Thereafter, if after the exhaustion of such appellate review, any additional amounts
2   remain that are distributable to the Participating Class Members, the cost of
3   administration of such additional payments will be paid out of such additional
4   amounts and will not be chargeable to or payable by Defendant. Any amount not
5   awarded for Attorneys' Fees and Costs or the Enhancement Awards, but which is
6   not challenged via appeal by Plaintiffs and/or Class Counsel, shall be added to the
7   NSF and distributed to the Participating Class Members in accordance with the
8   terms of this Settlement Agreement.

9        24.   Costs of Administration:   Subject to Court approval, the Parties
10  designate Rust Consulting to administer the Settlement (the "**Settlement**
11  **Administrator**"), with a preliminary budget to administer the settlement for fees
12  and costs of up to $30,000 (the "**Settlement Administration Costs**"). The
13  Settlement Administrator's duties of administration shall include, without limitation,
14  receiving the Class List to be produced by Defendant and updating it prior to the
15  Notice being mailed, printing and mailing the Notice, performing necessary
16  additional skip traces on Notices and/or checks returned as undeliverable, calculating
17  Class Members' estimated and final shares of the NSF, preparing and mailing of
18  settlement checks, establishing a settlement website as described hereafter,
19  responding to Class Member inquiries as appropriate, preparing any appropriate tax
20  forms in connection with the settlement payments and remitting those forms and any
21  required payments to the appropriate governmental agencies, and generally
22  performing all normal and customary duties associated with the administration of
23  such settlements. All fees and costs for the Settlement Administrator's services will
24  be paid out of the GSF. The Settlement Administrator will coordinate the
25  calculations of any necessary payroll taxes and deductions with Defendant to ensure
26  that, to the extent such taxes and deductions are or could be deemed to have been
27  made by the Settlement Administrator on behalf of Defendant by government taxing
28  authorities, they are made in compliance with Defendant's tax withholding and

DocuSign Envelope ID: 14D48674-C683-4556-9491-590A9818FC1A

1   remittance obligations for such payments.

2        25.   <u>No Claim Form Required</u>:   Only Participating Class Members shall

3   share in the NSF referred to in Paragraph 17, as set forth in more detail in Paragraph

4   27 hereafter.  Participating Class Members shall not be required to complete a claim

5   form.   Class Members will be mailed a Notice of Class Action Settlement (the

6   "**Notice**"), in substantially the form attached hereto as **<u>Exhibit B</u>**, subject to approval

7   by the Court, informing them of the terms of the Settlement and providing them with

8   an estimate of their share of the NSF.   Class Members who do not timely and

9   properly elect to opt out of the Settlement ("**Participating Class Member(s)**") will

10  be mailed a check representing their payment under the Settlement, in accordance

11  with the terms of this Settlement Agreement.

12       26.   <u>Class Composition</u>:   Plaintiffs and Class Counsel have engaged the

13  services of a data analytics consulting firm to apprise themselves of the estimated

14  size and membership of the Class. The final Class composition will be determined as

15  of the time of preliminary approval, and no additional funding or payment by

16  Defendant will be required based thereon.  If the qualifying workweeks (as described

17  in Paragraph 27, below) during the Settlement Period exceed 200,000 workweeks,

18  Plaintiffs will have the option to rescind and terminate the Settlement either in whole

19  or as to the class action claims only, resulting in the Parties otherwise returning to

20  their pre-settlement positions in the Action.   Should the qualifying workweeks

21  during the Settlement Period exceed 200,000 workweeks, the Settlement

22  Administrator shall notify lead counsel for all Parties via email within ten (10)

23  business days after receipt of the Class List (as defined below), and Plaintiffs shall

24  have five (5) business days from the date of the Settlement Administrator's email to

25  exercise their option to rescind and terminate the Settlement as referenced in this

26  Paragraph. If Plaintiffs exercise this option, they will pay any Settlement

27  Administrator costs incurred to date.

28

STIPULATION FOR LEAVE TO FILE FIFTH AMENDED COMPLAINT AND FOR SETTLEMENT AND
RELEASE OF CLASS ACTION AND PAGA CLAIMS
4858-8328-2026.3

27.   <u>Calculation of Participating Class Members' Shares of the Net Settlement Fund</u>:   Defendant shall calculate and provide to the Settlement Administrator, from Defendant's records as reflected on the Class List (as defined below), the number of workweeks that a Class Member actually worked for Defendant as a non-exempt Dockworker or Dockworker Lead in California during the Settlement Period, based on payroll and time records, hire dates, re-hire dates (as applicable), leave of absence dates, and termination dates (as applicable) ("**Workweeks**").   Each Class Member's share of the NSF (the "**Individual Settlement Share(s)**") will be calculated initially for purposes of mailing the Notice by a pro rata share of the NSF based on the number of Workweeks that he or she performed work for Defendant during the Settlement Period.   Each Participating Class Member's final Individual Settlement Share for purposes of payment will be calculated by a pro rata share of the NSF based on the number of Workweeks that he or she performed work for Defendant during the Settlement Period.   The dollar amount of any Individual Settlement Shares of Class Members who timely and properly opt-out of participating in the settlement will be added to the NSF and distributed to the Participating Class Members in accordance with the terms of this Settlement Agreement.

28.   <u>Calculation of Aggrieved Employees' Shares of the Aggrieved Employee Payment</u>: Defendant shall calculate and provide to the Settlement Administrator, from Defendant's records as reflected on the Class List (as defined below), the number of pay periods that an Aggrieved Employee actually worked for Defendant as a non-exempt Dockworker or Dockworker Lead in California during the PAGA Period, based on payroll and time records, hire dates, re-hire dates (as applicable), leave of absence dates, and termination dates (as applicable) ("**PAGA Pay Periods**").   Aggrieved Employees will receive their pro rata share of the Aggrieved Employee Payment of the PAGA Amount based on the number of PAGA Pay Periods he or she worked during the PAGA Period, regardless of whether he or

1  she submits a timely and valid Request for Exclusion from the Settlement
2  Agreement.

3       29.   <u>Right to Opt Out, Object, and/or Dispute Workweeks</u>:  The Notice will
4  be mailed to all Class Members and will advise each Class Member of their right to
5  opt out of the Settlement Agreement, object to all or any part of the Settlement
6  Agreement, and/or dispute the number of Workweeks credited to them.  Any Class
7  Member who wishes to opt out of the Settlement Agreement as to the proposed class
8  action settlement, object to the Settlement Agreement as to the proposed class action
9  settlement, and/or dispute the number of Workweeks credited to them for purposes
10 of the proposed class action settlement, must do so in writing to the Settlement
11 Administrator postmarked no later than forty-five (45) calendar days from the date
12 of mailing of the Notice to the Class Members (the "**Response Deadline**").
13 However, there is no right to opt out of or object to the PAGA settlement under this
14 Settlement Agreement, and any Class Member who opts out of the Settlement
15 Agreement for purposes of the proposed class action settlement will still be bound
16 by the release of PAGA claims set forth in Paragraph 41, below.

17      30.   <u>Opting Out of the Proposed Class Action Settlement</u>:  A request to opt
18 out of and be excluded from the proposed class action settlement under this
19 Settlement Agreement (a "**Request for Exclusion**") must include: (i) the full name,
20 current mailing address, signature, and last four digits of the Social Security number
21 of the Class Member seeking exclusion; (ii) the case name and number of the
22 Action; and (iii) a statement that the Class Member seeks to be excluded from the
23 Settlement Agreement which is the same or substantially similar to the following
24 language:  "I elect to opt-out of the *Hang, et al. v. Old Dominion Freight Line, Inc.*
25 class action settlement.  I understand that by doing so, I will not participate in the
26 settlement, and will not receive any money from it." (the Notice will advise Class
27 Members of this language).  In the event that five percent (5%) or more of the Class
28 Members submit a timely and valid Request for Exclusion, Defendant will have the

STIPULATION FOR LEAVE TO FILE FIFTH AMENDED COMPLAINT AND FOR SETTLEMENT AND
RELEASE OF CLASS ACTION AND PAGA CLAIMS
4858-8328-2026.3

DocuSign Envelope ID: 14048674-6683-4556-9491-590A0981B7C1A

option to rescind and terminate the Settlement either in whole or as to the class action claims only, resulting in the Parties otherwise returning to their pre-settlement positions in the Action.  Should the 5% threshold for opt outs be exceeded, the Settlement Administrator shall notify lead counsel for all Parties via email immediately, and Defendant shall have fifteen (15) calendar days from the date of the Settlement Administrator's email to exercise its option to rescind and terminate the Settlement as referenced in this Paragraph. Defendant, however, shall pay all Settlement Administration Costs incurred by the Settlement Administrator up to the date of Defendant's notice to rescind.

31.     <u>Objecting to the Proposed Class Action Settlement</u>: An objection to the proposed class action settlement under this Settlement Agreement (an "**Objection**") must include: (i) the full name, current mailing address, signature, and last four digits of the Social Security number of the objecting Class Member; (ii) the case name and number of the Action; (iii) a statement indicating the legal and factual grounds for the objection; (iv) a statement indicating whether the objecting Class Member is represented by counsel and identifying any such counsel; and (v) a statement indicating whether the objecting Class Member intends to appear for and wishes to be heard at the Final Approval Hearing (the Notice will advise Class Members of the need for these statements).

32.     <u>Disputing Workweeks</u>:  A Class Member's dispute of the number of Workweeks credited to them and used to calculate the Class Member's Individual Settlement Share for purposes of the proposed class action settlement under this Settlement Agreement (a "**Workweeks Dispute**") must include: (i) the full name, current mailing address, telephone number, signature, and last four digits of the Social Security number of the disputing Class Member; (ii) the case name and number of the Action; (iii) a statement indicating that the Class Member seeks to dispute the number of Workweeks credited to them, the time period(s) the Class Member performed work for Defendant in a non-exempt Dockworker or

1  Dockworker Lead position in California during the Settlement Period, and the
2  number of Workweeks that the Class Member contends should be credited to them;
3  and (iv) documentation and/or other facts supporting the Class Member's position.
4  In response to any timely Workweeks Dispute, Defendant will first verify the
5  information contained in the disputing Class Member's personnel file and
6  Defendant's payroll records.  Unless the Class Member can establish that the
7  number of Workweeks credited to them is incorrect, by providing documentation in
8  support thereof or other details to substantiate their position, the total number of
9  Workweeks established by Defendant's records will control.  Class Counsel and
10 Defendant's Counsel will then make a good faith effort to resolve the dispute
11 informally before the Final Approval Hearing.  If counsel for the Parties cannot
12 agree, the dispute shall be resolved by the Settlement Administrator before the Final
13 Approval Hearing, who shall examine the records provided by the Defendant and the
14 Class Member and shall be the final arbiter of disputes relating to a Class Member's
15 Workweeks for purposes of administering notice of the Settlement, subject to final
16 review, determination, and approval by the Court.

17     33.  <u>Funding of Settlement</u>:  Within fifteen (15) calendar days following the
18 occurrence of the Effective Date of the Settlement as defined above, Defendant shall
19 transfer the amount of the GSF to a Qualified Settlement Fund account (the
20 "**Settlement Account**") established by the Settlement Administrator.  No funds will
21 be payable by Defendant prior to that time.

22     34.  <u>Payment Procedures</u>:  Within fifteen (15) calendar days after Defendant
23 deposits the GSF into the Settlement Account created by the Settlement
24 Administrator, the Settlement Administrator shall distribute payment of the
25 approved Individual Settlement Shares to Participating Class Members (as provided
26 in Paragraph 27), the Aggrieved Employee PAGA Payments to Aggrieved
27 Employees (as provided in Paragraphs 20 and 28), Attorneys' Fees and Costs to
28 Class Counsel, the Enhancement Awards to the Class Representatives, the LWDA

Payment to the LWDA, and the Settlement Administration Costs to the Settlement Administrator, in accordance with this Settlement Agreement and as ordered by the Court.

35.  <u>Tax Treatment of Settlement Payments</u>:  Each Individual Settlement Share will be allocated 25% for wages inclusive of all types of applicable employer-paid and employee-paid payroll withholdings and taxes (the "**Wages Portion**"), 50% for non-wage statutory or other non-wage damages or penalties, and 25% for interest.  The penalties, statutory and other non-wage damages, and interest portions are collectively referred to as "**Non-Wage Portions**."  Each Aggrieved Employee Payment will be allocated 100% as civil penalties, which will be reported on IRS Form 1099 (if applicable).

a.  Prior to distribution, Individual Settlement Shares will be subject to adjustment and/or reduction for required payroll taxes, contributions, and withholdings with respect to the Wages Portion, resulting in a net payment which is referred to as the "**Individual Settlement Payment**."  The Settlement Administrator will be responsible for appropriate payroll tax deductions.

b.  Each recipient of any monies paid in accordance with this Settlement Agreement is responsible for any taxes associated with the monies received by each recipient.

c.  The Settlement Administrator (and not Defendant) will prepare and issue an IRS Form W-2 to Participating Class Members with respect to the Wages Portion of each Individual Settlement Payment.  Where otherwise required by state or federal tax requirements, the Settlement Administrator (and not Defendant) will prepare a Form 1099 for Participating Class Members for the Non-Wage Portions of their Individual Settlement Shares and/or Aggrieved Employees for their Aggrieved Employee Payments.  The Settlement Administrator will be responsible for preparing and issuing these forms timely and correctly.  Participating Class Members and Aggrieved Employees will be responsible for correctly

1  characterizing the compensation that they receive pursuant to this Settlement
2  Agreement, including as set forth on any IRS Form W-2 or IRS Form 1099 they
3  receive from the Settlement Administrator, and for payment of any taxes owing on
4  said amounts.

5          d.      The Parties acknowledge and agree that neither they nor their
6  attorneys have made any representations regarding the tax consequences of any and
7  all payments made under this Settlement Agreement.  Participating Class Members
8  and Aggrieved Employees will be required to pay all federal, state, or local taxes, if
9  any, which are required by law to be paid with respect to any and all payments made
10 to them under the Settlement.  The Parties further agree that Defendant shall have no
11 legal obligation to pay, on behalf of Participating Class Members or Aggrieved
12 Employees, any taxes, deficiencies, levies, assessments, fines, penalties, interest or
13 costs, which may be required to be paid with respect to the settlement payments.

14     36.    Tax Treatment of Enhancement Awards and Class Counsel's Award of
15 Attorneys' Fees and Costs:   The Class Representatives and Class Counsel will
16 receive an IRS Form 1099 for the Class Representatives' respective Enhancement
17 Awards and Class Counsel's award of Attorneys' Fees and Costs, which will be
18 prepared by the Settlement Administrator.   The Class Representatives and Class
19 Counsel will be solely responsible for correctly characterizing this compensation for
20 tax purposes and for payment of any taxes owing on said amounts.   Prior to
21 receiving the payments specified herein, the Class Representatives and Class
22 Counsel each shall deliver to the Settlement Administrator any necessary tax forms
23 requested by the Settlement Administrator.

24     37.    Undistributed Funds:   Individual Settlement Payment checks will
25 remain valid and negotiable for one hundred and eighty (180) days after the date of
26 issuance.   If an Individual Settlement Payment check is returned before the
27 expiration of the 180-day period ("**Returned Check**"), then within five (5) days of
28 receipt of the Returned Check, the Settlement Administrator shall undertake a skip-

18

STIPULATION FOR LEAVE TO FILE FIFTH AMENDED COMPLAINT AND FOR SETTLEMENT AND
RELEASE OF CLASS ACTION AND PAGA CLAIMS
4858-8328-2026.3

trace search for an alternate mailing address and re-mail the Returned Check to an alternate mailing address (if one is located), under a cover letter indicating that the Returned Check will continue to be valid and negotiable for thirty (30) days after the date of re-mailing.  In the event that any checks mailed to Settlement Class Members are not cashed, deposited, or otherwise negotiated within the 180-day period, no forwarding address can be located for a Returned Check, or a Returned Check is re-mailed but not cashed, deposited, or otherwise negotiated within the 30-day period from the re-mailing of the Returned Check, then the checks shall be cancelled by the Settlement Administrator, and the funds associated with such cancelled checks shall be transmitted by the Settlement Administrator pursuant to governing law to the California State Controller Unclaimed Property fund to be held there for the benefit of such Class Members under California's escheatment laws, and such Class Members shall nevertheless be bound to the Settlement Agreement and the Final Approval Order.  The Parties agree this disposition results in no "unpaid residue" under California Civil Procedure Code § 384(b), as the entire NSF shall be paid to Participating Class Members, whether or not their Individual Settlement Payment checks are cashed.

## **NOTICE TO THE CLASS**

38.  <u>Compilation of Class List</u>:  The Parties agree that within thirty (30) calendar days after preliminary approval of this Settlement Agreement by the Court, Defendant will provide a final "**Class List**" to the Settlement Administrator, which list shall include the following most up to date information about each Class Member in an electronic format:  (a) full name; (b) most current mailing address and phone number as reflected in Defendant's personnel records; (c) Social Security Number; (d) hire date(s) of record with Defendant and termination date(s) of record if applicable; (e) number of Workweeks for each Class Member during the Settlement Period; and (f) number of PAGA Pay Periods for each Aggrieved Employee during the PAGA Period.  The Class List provided to, updated and

19

maintained by the Settlement Administrator shall be used only by the Settlement Administrator and only for purposes of administering the settlement as provided for in this Agreement, and the Settlement Administrator shall not disclose the contents thereof except as expressly permitted under this Agreement.  The restrictions on the use and disclosure of the Class List and the Class Data List (as defined below) shall be deemed, upon entry of the Court's Order granting preliminary approval of this Settlement, to be a protective order entered by the Court subject to full enforcement by the Parties to this Agreement and the Court, and by taking on the administration of the Settlement, the Settlement Administrator agrees that it and its employees, agents and representatives are bound by such protective order.   The Settlement Administrator will update addresses contained in the Class List prior to the mailing of the Notice to the Class, by using the U.S. Postal Service's National Change of Address Database.  Once the final Class List has been received from Defendant, and updated as stated herein, the list shall then be referred to as the "**Class Data List**." In response to any contention by an individual that they are a Class Member who was omitted from the Class Data List, made on or before the Response Deadline, Defendant will first verify the information contained in the personnel file of the individual at issue and Defendant's payroll records. Unless the individual at issue can establish that he or she should have been included in the Class Data List, by way of supporting documentation, Defendant's records will control. Class Counsel and Defendant's Counsel will then make a good faith effort to determine whether or not the individual at issue is a Class Member.  If counsel for the Parties cannot agree, then the Settlement Administrator shall determine whether the individual at issue is a Class Member, who shall examine the records provided by the Defendant and the individual at issue, and shall be the final arbiter of whether or not the individual at issue is a Class Member, subject to final review, determination, and approval by the Court.  Nothing herein limits the provisions or applicability of Paragraph 26, above.

DocuSign Envelope ID: 14048674-C683-4556-9491-590A981B7C1A

39. <u>Dissemination of Notice of Class Action Settlement</u>: Within fifteen (15) calendar days of its receipt of the Class List, the Settlement Administrator will send the Notice to the Class Members, by first-class mail, at their most current address of record or such other address as located by the Settlement Administrator in conformity with Paragraph 38, in the form attached hereto as **Exhibit B** or as otherwise approved by the Court.

<div align="center">

**RELEASE BY PARTICIPATING CLASS MEMBERS,**

**THE LWDA AND AGGRIEVED EMPLOYEES**

</div>

40.   <u>Release by Participating Class Members</u>:

a.   The "**Released Parties**" shall collectively include Old Dominion Freight Line, Inc. and its employees, officers, directors, shareholders, members, administrators, parent and subsidiary entities, trustees, sponsors, fiduciaries, agents, contractors, representatives, attorneys, accountants, insurers, predecessors, successors and assigns, past, present, and future (collectively, the "**Affiliated Releasees**"), and each and all of their respective Affiliated Releasees, past, present, and future, and all persons acting under, by, through, or in concert with any of them.

b.   The "**Released Claims**" shall include any and all allegations, claims, debts, rights, demands, charges, complaints, actions, causes of action, guarantees, costs, expenses, attorneys' fees, economic damages, non-economic damages, restitution, civil penalties, statutory penalties, liquidated damages, punitive damages, interest, obligations, liabilities, or other monies and remedies, of any and every kind, contingent or accrued, that have been or reasonably could have been alleged or asserted in the 5AC and/or any of the pleadings filed in the Action and/or in any notice sent by Plaintiffs to the LWDA pursuant to PAGA based on the factual and/or legal violations allegations contained therein, including, claims for any type of rest and meal break violations, any type of wage claims arising out of or related to any purported off-the-clock work as alleged in the 5AC and/or related to any purported meal or rest break violations, any type of wage statement violation claims,

<div align="center">21</div>

any type of expense reimbursement claims, any waiting time penalties claims, any type of derivative UCL and PAGA claims based on the foregoing, and parallel claims that may be brought under the FLSA based on the foregoing, , including, any alleged violations of California Labor Code §§ 201-203, 204, 206, 210, 221, 226, 226.3, 226.7, 510, 512, 516, 558, 1174, 1194, 1194.2, 1197, 1197.1, 1198, 1199, and/or 2802, and/or civil penalties pursuant to PAGA based on the foregoing.

c.   Upon the Settlement Administrator's receipt of the GSF from Defendant, Plaintiffs and the Participating Class Members shall be deemed to have released the Released Parties of and from all Released Claims that arose, accrued, and/or have been asserted during the Settlement Period.

41.   <u>Release by the LWDA and the Aggrieved Employees</u>:

a.   Upon the Settlement Administrator's receipt of the GSF from Defendant, Plaintiffs, the LWDA, and the Aggrieved Employees shall be deemed to have released the Released Parties of and from all claims for any civil penalties recoverable under the California Labor Code, including PAGA, arising out of or related to the Released Claims, as well as costs and attorneys' fees related thereto, that arose, accrued, and/or have been asserted during the PAGA Period.

## **ADDITIONAL RELEASE BY CLASS REPRESENTATIVES**

42.   In addition to the releases set forth in Paragraphs 40 and 41, Plaintiffs, for themselves alone as individuals, release the Released Parties of and from any and all claims, debts, liabilities, demands, obligations, guarantees, costs, expenses, attorneys' fees, damages, actions or causes of action of every kind or nature, contingent or accrued, known or unknown, which do or may exist as of the date on which this Settlement Agreement is executed and through and including the date of Final Approval of this Settlement Agreement, including without limitation any claimed violations of California Labor Code §§ 201-203, 204, 206, 210, 221, 226, 226.3, 226.7, 510, 512, 516, 558, 1174, 1194, 1194.2, 1197, 1197.1, 1198, 1199, and/or 2802, 2699, and 2699.3.   In connection therewith, Plaintiffs waive the

provisions of Cal. Civ. Code § 1542, which states:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

<u>**INJUNCTION BARRING PURSUIT OF RELEASED CLAIMS**</u>

43.     Upon the Final Approval of the Settlement, Plaintiffs, Participating Class Members, the LWDA, and Aggrieved Employees shall be enjoined from filing, initiating, or continuing to prosecute any actions, claims, complaints, or proceedings in court, arbitration, with the California Division of Labor Standards Enforcement ("**DLSE**"), with the LWDA, or with any other entity, with respect to the claims released as described in Paragraphs 40 and 41, above.  This settlement is conditioned upon the release by Participating Class Members, Plaintiffs, Aggrieved Employees, and the LWDA as described in Paragraphs 40 and 41, above, and upon covenants by each of them that they will not and cannot bring or participate in any actions, lawsuits, proceedings, complaints, or charges brought individually, by the DLSE, the LWDA, or by any other agency, persons or entity in any court, arbitration or before any administrative body with respect to the claims released as described in Paragraphs 40 and 41, above, nor will any of them contest or interfere with efforts by Defendant or by any other Released Parties to oppose any attempt to bring such released claims against any of them.  Additionally, it is agreed herein that neither injunctive nor declaratory relief, nor any equitable relief, will be ordered by the Court against Defendant in Final Approval of the Settlement, which will otherwise be grounds for Defendant rescinding and terminating this Settlement Agreement.

## DUTIES OF THE PARTIES PRIOR TO COURT APPROVAL

44. The Parties shall promptly seek the Court's approval of this Settlement. Plaintiffs' counsel will prepare Plaintiffs' motion for preliminary approval. Not later than five (5) calendar days prior to the submission of the motion for preliminary approval of this Settlement Agreement to the Court, Class Counsel will submit a near-final draft thereof (including all supporting papers and proposed order) to counsel for Defendant for their review and comment. As soon as practicable after execution of this Settlement Agreement, the Class Representatives and Class Counsel shall apply to the Court for the entry of a preliminary approval order which would accomplish the following:

a. Schedule a hearing (the "**Final Approval Hearing**") on the question of whether the Settlement, including, *inter alia*, the payment of Attorneys' Fees and Costs, Enhancement Awards, and PAGA Amount should be finally approved as fair, reasonable, and adequate, and finally resolving any outstanding issues or disputes remaining from the administration of the notice of the settlement;

b. Provide that Plaintiffs have conditional leave to file the 5AC on the terms set forth in this Agreement, subject to the limited statute of limitations tolling for the Additional Claims as provided in this Agreement;

c. Conditionally certify the Class for purposes of the Settlement only;

d. Approve, as to form and content, the proposed Notice;

e. Direct the mailing of the Notice by first class mail to the Class Members;

f. Preliminarily approve the Settlement and monetary allocations for awards/payments of Attorneys' Fees and Costs, Settlement Administration Costs, Enhancement Awards, and PAGA Amount, subject to the final review and approval by the Court;

g. Preliminarily approve Rust Consulting as the Settlement

1    Administrator;

2            h.      Preliminarily approve and appoint Plaintiffs as representatives of

3    the Class; and

4            i.      Preliminarily approve and appoint Plaintiffs' Counsel as counsel

5    for the Class.

6        45.    Plaintiffs' Counsel shall be responsible for ensuring that all required

7    submittals and notifications to the LWDA under PAGA regarding this Settlement

8    are made by Plaintiffs.

9    **DUTIES OF THE PARTIES FOLLOWING PRELIMINARY APPROVAL**

10       46.    Plaintiffs' counsel will prepare Plaintiffs' motion for final approval.

11   Not later than five (5) calendar days prior to the submission of the motion seeking

12   Final Approval, Class Counsel will submit a near-final draft thereof (including all

13   supporting papers and proposed order) to counsel for Defendant for their review and

14   comment.   In conjunction with the request for Final Approval of the Settlement

15   provided for in this Settlement Agreement, Class Counsel will submit a proposed

16   Final Approval Order and Judgment that provides for the following:

17           a.      Granting final approval of the Settlement, adjudging the terms

18   thereof to be fair, reasonable, and adequate, and directing consummation of its terms

19   and provisions;

20           b.      Approving and awarding Attorneys' Fees and Costs to Class

21   Counsel;

22           c.      Approving and awarding the Enhancement Awards to the Class

23   Representatives;

24           d.      Approving and awarding all payments specified in this

25   Settlement Agreement to the LWDA, Aggrieved Employees, and Participating Class

26   Members;

27           e.      Permanently enjoining and restraining Plaintiffs, Participating

28   Class Members, Aggrieved Employees, and the LWDA from and against initiating

DocuSign Envelope ID: 14048674-C683-4566-9491-590A981B7C1A

1  or pursuing any claims settled herein and released by this Settlement Agreement;

2  and

3          f.      Entering judgment in accordance with the terms of this

4  Settlement Agreement, including without limitation the permanent injunction

5  provisions.

6                          **PARTIES' AUTHORITY**

7          47.     The signatories hereto hereby represent that they are fully authorized to

8  enter into this Settlement Agreement and bind the Parties hereto to the terms and

9  conditions hereof.

10                       **MUTUAL FULL COOPERATION**

11         48.     The Parties agree to fully cooperate with each other to accomplish the

12  terms of this Settlement Agreement, including but not limited to execution of such

13  documents and other actions as may reasonably be necessary to implement the terms

14  of this Settlement Agreement.  The Parties shall use their best efforts, including all

15  efforts contemplated by this Settlement Agreement and any other efforts that may

16  become necessary by order of the Court, or otherwise, to effectuate this Settlement

17  Agreement and the terms set forth herein.  As soon as practicable after execution of

18  this Settlement Agreement, Class Counsel shall, with the assistance and cooperation

19  of Defendant and its counsel, take all necessary steps to secure the Court's

20  preliminary approval and final approval of this Settlement Agreement.

21                       **NO PRIOR ASSIGNMENTS**

22         49.     The Parties hereto represent, covenant, and warrant that they have not,

23  directly or indirectly, assigned, transferred, encumbered, or purported to assign,

24  transfer, or encumber to any person or entity any portion of any liability, claim,

25  demand, action, cause of action, or rights herein released and discharged except as

26  set forth herein.

27                             **CONSTRUCTION**

28         50.     The Parties hereto agree that the terms and conditions of this Settlement

Agreement are the result of lengthy, intensive, arms-length negotiations between the Parties, conducted under the auspices of mediator David A. Rotman, a respected and experienced class action mediator.  The Parties further agree that they have each had a full opportunity to negotiate the terms and conditions of this Agreement. Accordingly, the Parties expressly waive the common law and statutory rules of construction that ambiguities should be construed against the drafter of an agreement, and agree, covenant, and represent that the language in all parts of this Agreement shall be in all cases construed as a whole, according to its fair meaning.

## CAPTIONS AND INTERPRETATIONS

51.     Paragraph titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Settlement Agreement or any provision hereof.  Each term of this Settlement Agreement is contractual and not merely a recital.

## MODIFICATION

52.     This Settlement Agreement may not be changed, altered, or modified, except in writing and signed by the Parties hereto, and approved by the Court.  This Settlement Agreement may not be discharged except by performance in accordance with its terms or by a writing signed by the Parties hereto.

## INTEGRATION CLAUSE

53.     This Settlement Agreement contains the entire agreement between the Parties relating to the settlement and the transaction contemplated hereby, and all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a Party or such Party's legal counsel, are merged herein.  No rights hereunder may be waived except in writing.

## BINDING ON ASSIGNS

54.     This Settlement Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, trustees, executors, administrators, successors, and assigns.

STIPULATION FOR LEAVE TO FILE FIFTH AMENDED COMPLAINT AND FOR SETTLEMENT AND
RELEASE OF CLASS ACTION AND PAGA CLAIMS
4858-8328-2026.3

1              **SIGNATORIES**

2       55.   It is agreed that because of the large number of Participating Class

3 Members, it is impossible or impractical to have each Participating Class Member

4 execute this Settlement Agreement.  As such, Plaintiffs are signing on behalf of the

5 Participating Class Members.  In addition, the Notice will advise all Participating

6 Class Members of the binding nature of the release of claims under the Settlement

7 and that such shall have the same force and effect as if this Settlement Agreement

8 were executed by each Participating Class Member.

9              **CONFIDENTIALITY**

10      56.   Plaintiffs and Class Counsel will maintain the proposed settlement and

11 this Settlement Agreement as confidential and not publicly disclose the same except

12 as set forth herein and in Paragraph 57, below.  Except as set forth in Paragraph 57,

13 below, or as otherwise agreed in writing between the Parties, both before and

14 following the execution of this Settlement Agreement by the Parties and their

15 counsel, there will be no direct or indirect comment or publication by Plaintiffs and

16 Class Counsel (lead or otherwise) of the settlement in terms of affirmative or

17 responsive media statements/comments, press releases or conferences, website

18 postings or content, social media postings or content, other Internet postings or

19 content, subscribed email messages, newsletters, disseminated updates, mass

20 mailings, or any other comment or publication to the press, media or public at large.

21 This shall not apply to or limit the public filing of motions or other case materials by

22 Class Counsel in other class actions or this Action related to seeking and obtaining

23 Court approval of the proposed settlement and the related awards of attorneys' fees

24 and costs, enhancement, and the other relief set forth in this Settlement Agreement,

25 or to communications between Class Counsel, Plaintiffs, and/or Class Members in

26 the Action, except that prior to the filing of the motion for preliminary approval of

27 the Settlement in the Action, Class Counsel shall not discuss the Settlement with

28 Class Members other than the named Plaintiffs.  Class Counsel may otherwise state

1   only that the Action has been settled on terms mutually agreeable to the Parties.  The

2   Parties understand and agree that there may be media coverage of the settlement of

3   the Action not initiated by Plaintiffs, directly or indirectly.  It is also agreed and

4   understood that the Parties may disclose the settlement to their families, plus their

5   legal, tax, or accounting advisors, insurance companies, or as required by law,

6   regulatory rules or regulatory requirements.

7                                   **WEBSITE**

8        57.   The Parties agree that the Settlement Administrator may use U.S. Mail

9   and an information-only website (the "**Settlement Website**") to provide notice and

10  information about the Settlement to Class Members.  The Settlement Website is to

11  be established by the Settlement Administrator solely for purposes of the

12  administration of the Settlement, and the domain name used for the website will be

13  subject to Defendant's reasonable approval.   Not later than the date that the

14  Settlement Administrator must remit any funds associated with cancelled Individual

15  Settlement Share checks, as set forth in Paragraph 37, the Settlement Website will be

16  taken down. No information about the Action or the settlement may be posted on

17  any of Class Counsel's websites except as expressly set forth herein without

18  Defendant's prior written consent.

19                                **COUNTERPARTS**

20       58.   This Settlement Agreement may be executed in counterparts, and when

21  each Party has signed and delivered at least one such counterpart, each counterpart

22  shall be deemed an original, and, when taken together with other signed

23  counterparts, shall constitute one Settlement Agreement, which shall be binding

24  upon and effective as to all Parties.

25                                **GOVERNING LAW**

26       59.   The Parties agree that California law governs the interpretation and

27  application of this Settlement Agreement, except to the extent governed by federal

28  law in which case federal law will apply.

## **MISCELLANEOUS PROVISIONS**

60.    Each Party to Bear Own Costs.  Except as specifically provided herein, the Parties hereto will bear responsibility for their own attorneys' fees and costs, taxable or otherwise, incurred by them or arising out of or related to this Action, and will not seek reimbursement thereof from any Party to this Agreement.

61.    Severability.  If any of the above provisions are found null, void, or inoperative, in part or in full, for any reason, the remaining provisions will remain in full force and effect.  Notwithstanding, the invalidation in whole or in part of any material term of this Agreement, including but not limited to all the terms and provisions specified in the releases of claims, will invalidate this Agreement in its entirety unless the Parties subsequently agree in writing that the remaining provisions will remain in force and effect.

62.    Non-Evidentiary Use.  Neither the fact of this Agreement, the existence of this Agreement, the terms of this Agreement, nor any order or action pursuant thereto may be referred to, relied upon, cited, or used in the Action or in any other action or proceeding as evidence by any of the Parties, Class Members, Aggrieved Employees, the LWDA, or their respective counsel, but nothing contained in this section shall prevent this Agreement from being used, offered, or received in evidence in any proceeding to enforce, construe, or approve/finalize this Agreement.

63.    Advice of Counsel.  The Parties to this Agreement are represented by competent counsel, and they have had an opportunity to consult with counsel.  The Parties to this Agreement agree that it reflects their good faith compromise of the claims raised in this action, based upon their assessment of the mutual risks and costs of further litigation and the assessments of their respective counsel.

**EACH OF THE UNDERSIGNED ACKNOWLEDGE THAT EACH HAS READ THE FOREGOING AGREEMENT AND ACCEPTS AND AGREES TO THE PROVISIONS CONTAINED THEREIN, AND HEREBY**

STIPULATION FOR LEAVE TO FILE FIFTH AMENDED COMPLAINT AND FOR SETTLEMENT AND
RELEASE OF CLASS ACTION AND PAGA CLAIMS
4858-8328-2026.3

DocuSign Envelope ID: 14D48674-C683-4556-9491-590A9811B7C1A

1   **EXECUTES IT VOLUNTARILY WITH FULL KNOWLEDGE OF ITS**

2   **CONSEQUENCES.**

3

4   **IT IS SO STIPULATED AND AGREED:**

5

6   DATED: _June 27, 2023_

7   **TAI HANG**

8   DATED: _June 27, 2023_

9   **ROBERT CANALES**

10  DATED: _____      **OLD DOMINION FREIGHT LINE, INC.**

11

12                    By:

13                        Print Name: _____

14                        Title: _____

15

16  **APPROVED AND AGREED AS TO FORM AND CONTENT:**

17  DATED: _June 27, 2023_      **LAW OFFICES OF KEVIN T. BARNES**

18                              **LAW OFFICES OF RAPHAEL A. KATRI**

19                    By: _____

20                        Kevin T. Barnes
                          Gregg Lander

21                        Raphael A. Katri

22                        Attorneys for Plaintiff

23                        TAI HANG

24  DATED: _June 27, 2023_      **STONEBROOK LAW**

25

26                    By: _____

27                        Joseph Tojarieh

28                        Attorney for Plaintiff
                          ROBERT CANALES

31

1    EXECUTES IT VOLUNTARILY WITH FULL KNOWLEDGE OF ITS

2    CONSEQUENCES.

3

4    IT IS SO STIPULATED AND AGREED:

5

6    DATED: _____

7                                          **TAI HANG**

8    DATED: _____

9                                          **ROBERT CANALES**

10   DATED: 7-5-23                         **OLD DOMINION FREIGHT LINE, INC.**

11

12                                         By: Kevin M. Freeman

13                                         Print Name: Kevin M. Freeman

14                                         Title: President & CEO

15

16                **APPROVED AND AGREED AS TO FORM AND CONTENT:**

17   DATED: _____                  **LAW OFFICES OF KEVIN T. BARNES**
                                           **LAW OFFICES OF RAPHAEL A. KATRI**
18

19

20                                         By: _____
                                                 Kevin T. Barnes
21                                               Gregg Lander
                                                 Raphael A. Katri
22
                                           Attorneys for Plaintiff
23                                         TAI HANG

24   DATED: _____                  **STONEBROOK LAW**

25

26                                         By: _____
                                                 Joseph Tojarieh
27

28                                         Attorney for Plaintiff
                                           ROBERT CANALES

                                               31

1  DATED: 07-05-2023                    **BAKER & HOSTETLER LLP**

2

3                                       By:

4                                           Matthew C. Kane
                                            Sylvia J. Kim
5                                           Amy E. Beverlin
                                            Kerri H. Sakaue

6                                       Attorneys for Defendant
                                        OLD DOMINION FREIGHT LINE, INC.
7

8                                       **ATTESTATION**

9        Pursuant to L.R. 5-4.3.4, the undersigned hereby attests that all signatories

10  listed above, and on whose behalf this Stipulation is submitted, concur in and have

11  authorized the filing of this Stipulation.

12                                  _/s/ Matthew C. Kane_

13                                  MATTHEW C. KANE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STIPULATION FOR LEAVE TO FILE FIFTH AMENDED COMPLAINT AND FOR SETTLEMENT AND
RELEASE OF CLASS ACTION AND PAGA CLAIMS
4858-8328-2026.3

Kevin T. Barnes, Esq. (#138477)
Gregg Lander, Esq. (#194018)
LAW OFFICES OF KEVIN T. BARNES
1635 Pontius Avenue, Second Floor
Los Angeles, CA 90025-3361
Tel.: (323) 549-9100 / Fax: (323) 549-0101
Email: Barnes@kbarnes.com

Raphael A. Katri, Esq. (#221941)
LAW OFFICES OF RAPHAEL A. KATRI
8549 Wilshire Boulevard, Suite 200
Beverly Hills, CA 90211-3104
Tel.: (310) 940-2034 / Fax: (310) 733-5644
Email: RKatri@socallaborlawyers.com

Attorneys for Plaintiff TAI HANG, on
behalf of himself and all others similarly situated

Joseph Tojarieh, Esq. (#265492)
STONEBROOK LAW
10250 Constellation Boulevard, Suite 100
Los Angeles, CA 90067
Tel: (310) 553-5533 / Fax: (310) 553-5536
Email: jft@stonebrooklaw.com

Attorneys for Plaintiff ROBERT CANALES, on
behalf of himself and all others similarly situated

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TAI HANG and ROBERT CANALES, on behalf of themselves and all others similarly situated, | **CLASS ACTION** |
| Plaintiffs, | Case No.: 5:21-cv-00287-JWH-KK |
| v. | **FIFTH AMENDED CLASS ACTION (FRCP RULE 23) COMPLAINT FOR:** |
| OLD DOMINION FREIGHT LINE, INC., a Virginia corporation; and DOES 1 to 100, inclusive, | **1. FAILURE TO PAY MINIMUM WAGES;** |
| Defendants. | **2. FAILURE TO PAY OVERTIME WAGES;** |
| | **3. FAILURE TO PROVIDE LEGALLY-COMPLIANT REST PERIODS;** |
| | **4. FAILURE TO AUTHORIZE AND PERMIT ALL PAID REST PERIODS;** |
| | **5. FAILURE TO PROVIDE LEGALLY-COMPLIANT MEAL PERIODS;** |
| | **6. FAILURE TO REIMBURSE FOR NECESSARY BUSINESS EXPENSES:** |

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
BARNES@KBARNES.COM

**FIFTH AMENDED COMPLAINT**
**EXHIBIT A**

EXHIBIT A

|   |   |   |
|---|---|---|
| 1 | ) | **7. INDEPENDENT FAILURE TO TIMELY FURNISH ACCURATE ITEMIZED WAGE STATEMENTS;** |
| 2 | ) | |
| 3 | ) | **8. DERIVATIVE FAILURE TO TIMELY FURNISH ACCURATE ITEMIZED WAGE STATEMENTS;** |
| 4 | ) | |
| 5 | ) | **9. VIOLATIONS OF <u>LABOR CODE</u> §203;** |
| 6 | ) | **10. PENALTIES PURSUANT TO LABOR CODE §2699; AND** |
| 7 | ) | **11. UNFAIR BUSINESS PRACTICES** |
| 8 | ) | **DEMAND FOR JURY TRIAL** |
| 9 | ) | Honorable John W. Holcomb<br>Courtroom 2 |
| 10 | ) | |
| 11 | ) | Action filed: November 6, 2020<br>Trial Date: None Set |

Plaintiffs TAI HANG and ROBERT CANALES, individuals on behalf of themselves and all others similarly situated (hereinafter collectively referred to as "Plaintiffs"), hereby file this Fifth Amended Complaint against Defendant OLD DOMINION FREIGHT LINE, INC. and DOES 1 to 100 (hereinafter collectively referred to as "Defendants"). Plaintiffs are informed and believe, and on the basis of that information and belief, allege as follows:

1.      Pursuant to <u>Federal Rule of Civil Procedure</u> ("<u>FRCP</u>") Rule 23, Plaintiffs institute this Class action and Private Attorney General action for actual damages, liquidated damages, statutory penalties, restitution, attorneys' fees and the costs of this action against Defendants for multiple violations of the California <u>Labor Code</u> ("<u>Labor Code</u>"), California <u>Business and Professions Code</u> ("<u>B&PC</u>") §17000 et seq. and §17200, et seq., the applicable Wage Order(s) issued by the California Industrial Welfare Commission (hereinafter, the "<u>IWC Wage Order(s)</u>") and related common law principles.

2.      The acts complained of herein occurred, occur and will occur, at least in part, within the time period from four (4) years preceding the filing of the original Complaint herein, up to and through the time of trial for this matter

**FIFTH AMENDED COMPLAINT**

EXHIBIT A

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
Barnes@kbarnes.com

1   although this should not automatically be considered the statute of limitations for

2   any cause of action herein.

3   <u>RELEVANT JOB TITLES</u>

4        3.     For introductory and general information only (and not to be

5   considered a proposed class definition), the relevant individuals in this action are

6   Defendants' hourly-paid, non-exempt "dock worker" employees who were

7   subjected to Defendants' policies and practices as described herein. Any differences

8   in job activities between the different individuals in these positions were and are

9   legally insignificant to the issues presented by this action.

10  <u>SUMMARY OF CLAIMS</u>

11       4.     With regard to Defendants' hourly-paid, non-exempt "dock worker"

12  employees, Defendants have:

13          a.   Failed to pay minimum wages;

14          b.   Failed to pay overtime wages;

15          c.   Failed to provide legally-compliant rest periods;

16          d.   Failed to authorize and permit all paid legally-requisite rest

17              periods;

18          e.   Failed to provide legally-compliant meal periods;

19          f.   Failed to reimburse for necessary business expenses;

20          g.   Independently failed to timely furnish accurate itemized wage

21              statements;

22          h.   Derivatively failed to timely furnish accurate itemized wage

23              statements;

24          i.   Violated <u>Labor Code</u> §203;

25          j.   Incurred penalties pursuant to <u>Labor Code</u> §§2698, et seq.; and

26          k.   Conducted unfair business practices.

27  ///

28  ///

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
Barnes@KBarnes.com

- 3 -

**FIFTH AMENDED COMPLAINT**

EXHIBIT A

DocuSign Envelope ID: 14048674-C683-4556-9491-590A9818 7C1A

## II.

## PARTIES

PLAINTIFF TAI HANG

5.      Plaintiff TAI HANG is an individual over the age of eighteen (18) and is now and/or at all times mentioned in this Complaint was a citizen of the State of California.

6.      Plaintiff TAI HANG worked for Defendants as an hourly-paid, non-exempt "dock worker" employee from approximately August 2007 to August 11, 2020 in Rialto, California, which is in San Bernardino County, California.

7.      Plaintiff TAI HANG seeks recovery herein from Defendants because with regard to Plaintiff TAI HANG, while acting for Defendants in his capacity as an hourly-paid, non-exempt "dock worker" employee, Defendants have:

    a.  Failed to pay minimum wages;

    b.  Failed to pay overtime wages;

    c.  Failed to provide legally-compliant rest periods;

    d.  Failed to authorize and permit all paid legally-requisite rest periods;

    e.  Failed to provide legally-compliant meal periods;

    f.  Failed to reimburse for necessary business expenses;

    g.  Independently failed to timely furnish accurate itemized wage statements;

    h.  Derivatively failed to timely furnish accurate itemized wage statements;

    i.  Violated Labor Code §203;

    j.  Incurred penalties pursuant to Labor Code §§2698, et seq.; and

    k.  Conducted unfair business practices.

///

///

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
BARNES@KBARNES.COM

- 4 -

**FIFTH AMENDED COMPLAINT**

PLAINTIFF ROBERT CANALES

8.      Plaintiff ROBERT CANALES is an individual over the age of eighteen (18) and is now and/or at all times mentioned in this Complaint was a citizen of the State of California.

9.      Plaintiff ROBERT CANALES worked for Defendants as an hourly-paid, non-exempt "dock worker" employee from approximately January 28, 2018 to October 2, 2020 in Rialto, California, which is in San Bernardino County, California.

10.     Plaintiff ROBERT CANALES seeks recovery herein from Defendants because with regard to Plaintiff ROBERT CANALES, while acting for Defendants in his capacity as an hourly-paid, non-exempt "dock worker" employee, Defendants have:

     a.   Failed to pay minimum wages;

     b.   Failed to pay overtime wages;

     c.   Failed to provide legally-compliant rest periods;

     d.   Failed to authorize and permit all paid legally-requisite rest periods;

     e.   Failed to provide legally-compliant meal periods;

     f.   Failed to reimburse for necessary business expenses;

     g.   Independently failed to timely furnish accurate itemized wage statements;

     h.   Derivatively failed to timely furnish accurate itemized wage statements;

     i.   Violated Labor Code §203;

     j.   Incurred penalties pursuant to Labor Code §§2698, et seq.; and

     k.   Conducted unfair business practices.

///

///

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
BARNES@KBARNES.COM

- 5 -
FIFTH AMENDED COMPLAINT
EXHIBIT A

DEFENDANT, OLD DOMINION FREIGHT LINE, INC.

     11.    Defendant OLD DOMINION FREIGHT LINE, INC. is now and/or at all times mentioned in this Complaint was a Virginia corporation and the owner and operator of an industry, business and/or facility(/ies) licensed to do business and actually doing business in the State of California.

DOES 1 TO 100, INCLUSIVE

     12.    DOES 1 to 100, inclusive are now, and/or at all times mentioned in this Complaint were licensed to do business and/or actually doing business in California.

     13.    Plaintiffs do not know the true names or capacities, whether individual, partner or corporate, of DOES 1 to 100, inclusive and for that reason, DOES 1 to 100 are sued under such fictitious names pursuant to California Code of Civil Procedure ("CCP") §474.

     14.    Plaintiffs will seek leave of court to amend this Complaint to allege such names and capacities as soon as they are ascertained.

ALL DEFENDANTS

     15.    Defendants, and each of them, are now and/or at all times mentioned in this Complaint were in some manner legally responsible for the events, happenings and circumstances alleged in this Complaint.

     16.    Defendants, and each of them, proximately subjected Plaintiffs to the unlawful practices, wrongs, complaints, injuries and/or damages alleged in this Complaint.

     17.    Defendants, and each of them, are now and/or at all times mentioned in this Complaint were the agents, servants and/or employees of some or all other Defendants, and vice-versa, and in doing the things alleged in this Complaint, Defendants are now and/or at all times mentioned in this Complaint were acting within the course and scope of that agency, servitude and/or employment.

///

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
Barnes@kbarnes.com

- 6 -

FIFTH AMENDED COMPLAINT

EXHIBIT A

EXHIBIT A

18. Defendants, and each of them, are now and/or at all times mentioned in this Complaint were members of and/or engaged in a joint venture, partnership and common enterprise, and were acting within the course and scope of, and in pursuance of said joint venture, partnership and common enterprise.

19. Defendants, and each of them, at all times mentioned in this Complaint concurred and contributed to the various acts and omissions of each and every one of the other Defendants in proximately causing the complaints, injuries and/or damages alleged in this Complaint.

20. Defendants, and each of them, at all times mentioned in this Complaint approved of, condoned and/or otherwise ratified each and every one of the acts and/or omissions alleged in this Complaint.

21. Defendants, and each of them, at all times mentioned in this Complaint aided and abetted the acts and omissions of each and every one of the other Defendants thereby proximately causing the damages alleged in this Complaint.

## III.

## <u>JURISDICTION AND VENUE</u>

22. The District Court has original subject matter jurisdiction under 28 U.S.C. §1332, and because Defendants removed this matter to federal court on February 19, 2021 pursuant to 28 U.S.C. §§1441 and 1446, in that this is a civil action that purportedly satisfies the requirements stated in the Class Action Fairness Act of 2005, codified in part at 28 U.S.C. §1332(d).

23. This District Court is in the judicial district and division embracing the place where the state court case was brought. Thus, this Court is the proper District Court to which this case should have been removed 28 U.S.C. §§1441(a) and 1446(a).

///

///

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
BARNES@KJBARNES.COM

- 7 -

**FIFTH AMENDED COMPLAINT**

EXHIBIT A

# IV.

## CLASS ACTION ALLEGATIONS

24.     Plaintiffs bring this suit as a class action pursuant to FRCP 23 and CCP §382, on behalf of individuals who are entitled to the monies unlawfully withheld by Defendants.

25.     The putative classes Plaintiffs will seek to certify are currently composed of and defined as follows:

a.  All California citizens employed by Defendants as hourly-paid, non-exempt "dock worker" employees during the appropriate time period who were subjected to Defendants' policies and practices regarding providing at least minimum wages for all hours worked as specifically described herein (hereinafter, the "Minimum Wage Class");

b.  All California citizens employed by Defendants as hourly-paid, non-exempt "dock worker" employees during the appropriate time period who were subjected to Defendants' overtime policies and practices as specifically described herein (hereinafter, the "Overtime Wage Class");

c.  All California citizens employed by Defendants as hourly-paid, non-exempt "dock worker" employees during the appropriate time period who were subjected to Defendants' policies and practices regarding providing legally-compliant rest periods as specifically described herein (hereinafter, the "Legal Rest Period Class");

d.  All California citizens employed by Defendants as hourly-paid, non-exempt "dock worker" employees during the appropriate time period who were subjected to Defendants' policies and practices regarding paid rest periods as specifically described herein (hereinafter, the "Rest Period Class");

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
BARNES@KBARNES.COM

- 8 -

FIFTH AMENDED COMPLAINT
EXHIBIT A

e. All California citizens employed by Defendants as hourly-paid, non-exempt "dock worker" employees during the appropriate time period who were subjected to Defendants' policies and practices regarding providing legally-compliant meal periods as specifically described herein (hereinafter, the "Meal Period Class");

f. All California citizens employed by Defendants as hourly-paid, non-exempt "dock worker" employees during the appropriate time period who were subjected to Defendants' policies and practices regarding reimbursements for necessary business expenses as specifically described herein (hereinafter, the "Reimbursement Class");

g. All California citizens employed by Defendants as hourly-paid, non-exempt "dock worker" employees during the appropriate time period who were independently subjected to Defendants' policies and practices regarding itemized wage statements as specifically described herein (hereinafter, the "Independent Wage Statement Class");

h. All California citizens employed by Defendants as hourly-paid, non-exempt "dock worker" employees during the appropriate time period who were derivatively subjected to Defendants' policies and practices regarding itemized wage statements as specifically described herein (hereinafter, the "Derivative Wage Statement Class");

i. All formerly-employed California citizens employed by Defendants as hourly-paid, non-exempt "dock worker" employees during the appropriate time period who were subjected to Defendants' policies and practices regarding Labor Code §203 and the payment of final wages as specifically described herein

**FIFTH AMENDED COMPLAINT**
EXHIBIT A

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
BARNES@KBARNES.COM

(hereinafter, the "LC 203 Class"); and

    j.   All California citizens employed by Defendants as hourly-paid, non-exempt "dock worker" employees during the appropriate time period regarding whom Defendants have engaged in unlawful, unfair and/or fraudulent business acts or practices prohibited by <u>B&PC</u> §17200, et seq. as specifically described herein (hereinafter, the "17200 Class").

26.    The Minimum Wage Class, Overtime Wage Class, Legal Rest Period Class, Rest Period Class, Meal Period Class, Reimbursement Class, Independent Wage Statement Class, Derivative Wage Statement Class, LC 203 Class and 17200 Class are herein collectively referred to as the "Classes."

27.    Throughout discovery in this litigation, Plaintiffs may find it appropriate and/or necessary to amend the definition of the Classes. Plaintiffs will formally define and designate a class definition at such time when Plaintiffs seek to certify the Classes alleged herein.

28.    <u>Numerosity</u> (<u>FRCP</u> 23(a)(1)); (<u>CCP</u> §382):

    a.   The potential quantity of members of the Classes as defined is so numerous that joinder of all members would be unfeasible and impractical.

    b.   The disposition of the claims of the members of the Classes through this class action will benefit both the parties and this Court.

    c.   The quantity of members of the Classes is unknown to Plaintiffs at this time; however, it is estimated that each of the Classes numbers greater than 100 individuals.

    d.   The quantity and identity of such membership is readily ascertainable via inspection of Defendants' records.

///

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
Barnes@kbarnes.com

- 10 -

**FIFTH AMENDED COMPLAINT**

**EXHIBIT A**

DocuSign Envelope ID: 14D48674-C683-4566-9491-590A0981B7C1A

EXHIBIT A

29.   <u>Questions of Law or Fact Common To The Class</u> (<u>FRCP</u> 23(a)(2)): There are common questions of law and/or fact as to the members of the Classes which predominate over questions affecting only individual members of the Classes, including, without limitation:

    a.   Whether Defendants failed and continue to fail to pay at least minimum wages for all hours worked to the members of the Minimum Wage Class in violation of the <u>Labor Code</u> and Section 4 of the <u>IWC Wage Orders</u>;

    b.   Whether Defendants failed and continue to fail to pay legally-requisite overtime wages to the members of the Overtime Wage Class in violation of the <u>Labor Code</u> and Section 3 of the <u>IWC Wage Orders</u>;

    c.   Whether Defendants failed and continue to fail to provide legally-compliant rest periods to the members of the Legal Rest Period Class in violation of the <u>Labor Code</u> and Section 12 of the <u>IWC Wage Orders</u>;

    d.   Whether Defendants failed and continue to fail to authorize and permit paid legally-requisite rest periods to the members of the Rest Period Class in violation of the <u>Labor Code</u> and Section 12 of the <u>IWC Wage Orders</u>;

    e.   Whether Defendants failed and continue to fail to provide legally-compliant meal periods to the members of the Meal Period Class in violation of the <u>Labor Code</u> and Section 11 of the <u>IWC Wage Orders</u>;

    f.   Whether Defendants failed and continue to fail to reimburse for necessary business expenses to the members of the Reimbursement Class in violation of the <u>Labor Code</u>;

///

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
BARNES@KBARNES.COM

**FIFTH AMENDED COMPLAINT**

EXHIBIT A

g. Whether Defendants independently failed to timely furnish accurate, itemized and legal wage statements to the members of the Independent Wage Statement Class;

h. Whether Defendants independently failed to timely furnish accurate, itemized and legal wage statements to the members of the Independent Wage Statement Class;

i. Whether Defendants are liable pursuant to <u>Labor Code</u> §203 to the members of the LC 203 Class;

j. Whether Defendants' conduct constitutes unfair competition within the meaning of <u>B&PC</u> §17200, et seq.;

k. Whether Defendants' conduct constitutes unfair business practices within the meaning of <u>B&PC</u> §17200, et seq.;

l. Whether the members of the Classes are entitled to compensatory damages, and if so, the means of measuring such damages;

m. Whether the members of the Classes are entitled to injunctive relief;

n. Whether the members of the Classes are entitled to restitution; and

o. Whether Defendants are liable for attorneys' fees and costs.

30. <u>Typicality</u> (<u>FRCP</u> 23(a)(3)): The claims of the named Plaintiff(s) are typical of the claims of all members of the represented Classes because all members of the Classes sustained injuries and damages arising out of Defendants' common course of conduct in violation of law and the injuries and damages of all members of the Classes were caused by Defendants' wrongful conduct in violation of law, as alleged herein.

31. <u>Adequacy</u> (<u>FRCP</u> 23(a)(4)): The named Plaintiff(s):

a. will adequately represent the members of the Classes;

b. will fairly protect the interests of the members of the Classes;

c. possess no interests antagonistic to the members of the Classes;

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
BARNES@KBARNES.COM

- 12 -

FIFTH AMENDED COMPLAINT
EXHIBIT A

1      and

2      d. will vigorously pursue this suit via attorneys who are competent,

3         skilled and experienced in litigating matters of this type.

4     32.   <u>Superiority</u> (<u>FRCP</u> 23(b)); (<u>CCP</u> §382): The nature of this action and

5 the nature of the laws available to Plaintiffs make the use of the class action format

6 particularly efficient and the appropriate procedure to afford relief to Plaintiffs for

7 the wrongs alleged herein. Further, this action is maintainable as a class action

8 because the prerequisites of <u>FRCP</u> 23(a) are satisfied as outlined above, and in

9 addition:

10      a. California has a public policy which encourages the use of the

11         class action device;

12      b. By establishing a technique whereby the claims of many

13         individuals can be resolved at the same time, the class suit both

14         eliminates the possibility of repetitious litigation and provides

15         small claimants with a method of obtaining redress for claims

16         which would otherwise be too small to warrant individual

17         litigation;

18      c. This case involves large corporate Defendants and a large number

19         of individual Class members with many relatively small claims

20         and common issues of law and fact;

21      d. If each individual member of the Classes was required to file an

22         individual lawsuit, the large corporate Defendants would

23         necessarily gain an unconscionable advantage because Defendants

24         would be able to exploit and overwhelm the limited resources of

25         each individual member of the Classes with Defendants' vastly

26         superior financial and legal resources;

27      e. Requiring each individual member of the Classes to pursue an

28         individual remedy would also discourage the assertion of lawful

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL: (323) 549-9100
FAX: (323) 549-0101
BARNES@KBARNES.COM

- 13 -

FIFTH AMENDED COMPLAINT

EXHIBIT A

EXHIBIT A

claims by the members of the Classes who would be disinclined to pursue an action against Defendants because of an appreciable and justifiable fear of retaliation and permanent damage to their lives, careers and well-being;

f.  Proof of a common business practice or factual pattern, of which the members of the Classes experienced, is representative of the Classes herein and will establish the right of each of the members of the Classes to recover on the causes of action alleged herein;

g.  Absent class treatment, the prosecution of separate actions by the individual members of the Classes, even if possible, would likely create:

   i)   a substantial risk of each individual plaintiff presenting in separate, duplicative proceedings the same or essentially similar arguments and evidence, including expert testimony;

   ii)  a multiplicity of trials conducted at enormous expense to both the judicial system and the litigants;

   iii) inconsistent or varying verdicts or adjudications with respect to the individual members of the Classes against Defendants;

   iv)  potentially incompatible standards of conduct for Defendants; and

   v)   potentially incompatible legal determinations with respect to individual members of the Classes which would, as a practical matter, be dispositive of the interest of the other members of the Classes who are not parties to the adjudications or which would substantially impair or impede the ability of the members of the Classes to protect their interests.

FIFTH AMENDED COMPLAINT

EXHIBIT A

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
Barnes@KJBARNES.COM

h.   The claims of the individual members of the Classes are not sufficiently large to warrant vigorous individual prosecution considering all of the concomitant costs and expenses attendant thereto;

i.   Courts seeking to preserve efficiency and other benefits of class actions routinely fashion methods to manage any individual questions; and

j.   The Supreme Court of California urges trial courts, which have an obligation to consider the use of innovative procedural tools to certify a manageable class, to be procedurally innovative in managing class actions.

33.   Whether each member of the Classes might be required to ultimately justify an individual claim does not preclude maintenance of a class action (see, e.g. Collins v. Rocha (1972) 7 Cal.3d 232, 238); Pulaski & Middleman, LLC v. Google, Inc. (9th Cir. 2015 802 F.2d 979, 986-87).

**V.**

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**

**FAILURE TO PAY MINIMUM WAGES**

**(On Behalf of the Minimum Wage Class)**

**(Against All Defendants)**

34.   Plaintiffs incorporate by reference and reallege each and every one of the allegations contained in the preceding and foregoing paragraphs of this Complaint as if fully set forth herein.

35.   Defendants required the members of the Minimum Wage Class to clock in and out at the designated dock area.

36.   The members of the Minimum Wage Class were entitled to all earned wages, including minimum wages, for all hours worked.

**FIFTH AMENDED COMPLAINT**
**EXHIBIT A**

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
Barnes@kbarnes.com

37.     As a matter of Defendants' established company policy, Defendants failed to pay for all hours worked at the state minimum wage established by <u>Labor Code</u> §510, <u>Labor Code</u> §1194, <u>Labor Code</u> §1194.2, <u>Labor Code</u> §1197, and <u>Labor Code</u> §1198 and the <u>IWC Minimum Wage Order(s)</u>, as a result of, among other things, the security checks prior to entering and leaving Defendants' premises, the large size of Defendants' facilities, and the large amount of time it took for the members of the Minimum Wage Class to walk to the dock, search for an available forklift, and ride it to the dock area where Defendants required the members of the Minimum Wage Class to clock in and out.

38.     For example, Plaintiff ROBERT CANALES underwent a security check prior to entering Defendants' premises and performed other work-related tasks before clocking in. He spent approximately 5-15 minutes undergoing a security check, walking to the dock, searching for an available forklift, and riding it to the dock area. Similarly, Plaintiff TAI HANG and other members of the Minimum Wage Class were required to undergo a security check and perform other work-related tasks before heading to the designated dock area to clock in.

39.     Moreover, Plaintiff ROBERT CANALES, for example, clocked out and spent approximately five minutes walking towards the checkpoint. Similarly, Plaintiff TAI HANG and other members of the Minimum Wage Class were required to undergo a security check before leaving Defendants' premises.

40.     The members of the Minimum Wage Class performed these security checks and work-related tasks outside of their clocked hours. As a result, Defendants failed to pay the members of the Minimum Wage Class all earned wages, including minimum wages, for the time these employees spent performing off-the-clock work.

41.     Pursuant to <u>Labor Code</u> §218.6 and <u>CC</u> §3287, the members of the Minimum Wage Class seek recovery of pre-judgment interest on all amounts recovered herein.

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
BARNES@KBARNES.COM

- 16 -

**FIFTH AMENDED COMPLAINT**
**EXHIBIT A**

## SECOND CAUSE OF ACTION

## FAILURE TO PAY OVERTIME WAGES

### (On Behalf of the Overtime Wage Class)

### (Against All Defendants)

42.     Plaintiffs incorporate by reference and reallege each and every one of the allegations contained in the preceding and foregoing paragraphs of this Complaint as if fully set forth herein.

43.     The members of the Overtime Wage Class sometimes worked over eight (8) hours per shift. The members of the Overtime Wage Class sometimes worked over forty (40) hours in a week.

44.     Defendants required the members of the Overtime Wage Class to clock in and out at the designated dock area.

45.     The members of the Minimum Wage Class were entitled to overtime wages for all hours worked over eight (8) in a day or over forty (40) in a week.

46.     As a matter of Defendants' established company policy, Defendants failed to pay overtime wages established by Labor Code §510, Labor Code §1194, and Labor Code §1198 and Section 3 of the IWC Wage Order(s), as a result of, among other things, the security checks prior to entering and leaving Defendants' premises, the large size of Defendants' facilities, and the large amount of time it took for the members of the Overtime Wage Class to walk to the dock, search for an available forklift, and ride it to the dock area where Defendants required the members of the Overtime Wage Class to clock in and out.

47.     For example, Plaintiff ROBERT CANALES underwent a security check prior to entering Defendants' premises and performed other work-related tasks before clocking in. He spent approximately 5-15 minutes walking to the dock, searching for an available forklift, and riding it to the dock area. Similarly, Plaintiff TAI HANG and other members of the Overtime Wage Class were required to undergo a security check and perform other work-related tasks before

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
BARNES@KBARNES.COM

- 17 -

**FIFTH AMENDED COMPLAINT**

**EXHIBIT A**

heading to the designated dock area to clock in.

48.     Moreover, Plaintiff ROBERT CANALES, for example, clocked out and spent approximately five minutes walking towards the checkpoint. Similarly, Plaintiff TAI HANG and other members of the Overtime Wage Class were required to undergo a security check before leaving Defendants' premises.

49.     The members of the Overtime Wage Class performed these security checks and work-related tasks outside of their clocked hours. As a result, on days when the members of the Overtime Wage Class worked over eight (8) hours in a day or over forty (40) hours in a week, Defendants failed to pay these overtime wages, for the time they spent performing off-the-clock work.

50.     Pursuant to Labor Code §218.6 and CC §3287, the members of the Overtime Wage Class seek recovery of pre-judgment interest on all amounts recovered herein.

## THIRD CAUSE OF ACTION
## FAILURE TO PROVIDE LEGALLY-COMPLIANT REST PERIODS
### (On Behalf of the Legal Rest Period Class)
### (Against All Defendants)

51.     Plaintiffs incorporate by reference and reallege each and every one of the allegations contained in the preceding and foregoing paragraphs of this Complaint as if fully set forth herein.

52.     The members of the Legal Rest Period Class sometimes worked over four (4) hours per shift. Further, the members of the Legal Rest Period Class sometimes worked over six (6) hours per shift, and in some cases over ten (10) hours per shift.

     a.  Plaintiff TAI HANG consistently worked shifts of eight hours or more, under the following schedules, which changed approximately every six months, over his employment with Defendant:

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
BARNES@KBARNES.COM

- 18 -
**FIFTH AMENDED COMPLAINT**
EXHIBIT A

Monday – Friday, 4 am – 12 pm;

Monday – Friday, 5 pm – 1 am;

Monday – Friday, 6 pm – 2 am;

Sunday – Thursday, 8 pm – 4 am;

Monday – Friday; 8 pm – 4 am;

Sunday – Thursday, 6 am – 2 pm;

Sunday – Thursday, 8 am – 4 pm;

Sunday – Thursday, 6 am – 2 pm;

Tuesday – Saturday, 5 am – 1 pm;

Sunday – Thursday, 6 am – 2 pm;

Tuesday – Saturday, 4 am- 12 pm;

Sunday – Thursday, 6 am – 2 pm;

Tuesday – Saturday, 4 am – 12 pm; and

Tuesday – Saturday, 3 am – 11 am.

b.  Plaintiff ROBERT CANALES worked four different schedules throughout his employment with Defendant, with shifts always eight or more hours:

From approximately January 2018 to May 2018:

Tuesday – Saturday; 7:30 pm to 4:00 am;

From approximately June 2018 to December 2018:

Tuesday – Saturday; 12:00 pm to 8 pm;

From approximately December 2018 to March 2019:

Monday – Friday; 11:00 pm to 7:30 am; and

From approximately April 2019 to September 2020:

Monday – Friday; 7:30 pm to 4:00 am.

53.  The members of the Legal Rest Period Class were entitled to a rest period of not less than ten (10) minutes prior to exceeding four (4) hours of employment.

FIFTH AMENDED COMPLAINT

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
Barnes@KBarnes.com

54.     Defendants' rest period policy states:

"Hourly employees may not leave OD premise while on a paid rest break and are expected to be at their work station at the conclusion of the paid rest break, unless prohibited by applicable law, including state and local laws."

55.     As such, the members of the Legal Rest Period Class were prohibited from taking legally-compliant breaks in violation of <u>Brinker Restaurant Corp. v. Superior Court</u> (2012) 53 Cal.4th 1004, 1040 ["The wage orders and governing statute do not countenance an employer's exerting coercion against the taking of, creating incentives to forgo, or otherwise encouraging the skipping of legally protected breaks."].

56.     As a matter of Defendants' established company policy, Defendants failed to provide legally-compliant rest periods because Defendants prohibited the taking of legally protected rest periods by using Defendants' rest period policy to prevent the members of the Legal Rest Period Class from taking rest periods outside of Defendants' premises, and forbade the members of the Legal Rest Period Class from leaving Defendants' facilities for legally-compliant rest periods.

57.     Both Plaintiff TAI HANG and Plaintiff ROBERT CANALES, along with other members of the Legal Rest Period class, were instructed that rest periods must be taken in a designated break room. They were further instructed that leaving the premises was strictly prohibited, including going to the parking lot.

58.     For example, Plaintiff TAI HANG and other members of the Legal Rest Period class were told at least two to three times a week at a daily morning meeting that rest breaks were to be taken only in the break room. Any violators were subject to discipline or even termination. One dock worker was terminated for going to his vehicle during his rest period without permission. Accordingly, this policy caused Plaintiff TAI HANG to suffer noncompliant rest periods every day of work in which a rest period was required, i.e., two noncompliant rest periods on every eight hour shift per his regular schedule as alleged above.

**FIFTH AMENDED COMPLAINT**
**EXHIBIT A**

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
Barnes@kbarnes.com

59.     Similarly, Plaintiff ROBERT CANALES and other members of the Legal Rest Period class were not allowed to take breaks anywhere but the designated break room. This rule was repeated during pre-shift meetings. Plaintiff ROBERT CANALES left to go to his car only one time with special permission from his supervisor, and he was required to report back to the supervisor when he returned. Accordingly, this policy caused Plaintiff ROBERT CANALES to suffer noncompliant rest periods every day of work, except one, in which a rest period was required, i.e., two noncompliant rest periods on every eight-hour shift per his regular schedule as alleged above.

60.     Defendants' written policies and actual practices clearly and unmistakably have language definitively requiring employees to remain on premises - "Hourly employees **may not leave OD premise while on a paid rest break**…" (emphasis added). This policy language violates California rest period laws.

61.     The members of the Legal Rest Period Class are entitled to damages in an amount equal to one (1) additional hour of pay at each employee's regular rate of compensation for each work day that the rest period was not so provided.

62.     Pursuant to <u>Labor Code</u> §218.6 and <u>CC</u> §3287, the members of the Legal Rest Period Class seek recovery of pre-judgment interest on all amounts recovered herein.

## FOURTH CAUSE OF ACTION
## FAILURE TO AUTHORIZE AND PERMIT ALL PAID REST PERIODS
### (On Behalf of the Rest Period Class)
### (Against All Defendants)

63.     Plaintiffs incorporate by reference and reallege each and every one of the allegations contained in the preceding and foregoing paragraphs of this Complaint as if fully set forth herein.

///

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
Barnes@kbarnes.com

64.     The members of the Rest Period Class sometimes worked over four (4) hours per shift. Further, the members of the Rest Period Class sometimes worked over six (6) hours per shift, and in some cases over ten (10) hours per shift.

a.  Plaintiff TAI HANG worked shifts of eight hours or more, under the following schedules, which changed approximately every six months, over his employment with Defendant:

Monday – Friday, 4 am – 12 pm;

Monday – Friday, 5 pm – 1 am;

Monday – Friday, 6 pm – 2 am;

Sunday – Thursday, 8 pm – 4 am;

Monday – Friday; 8 pm – 4 am;

Sunday – Thursday, 6 am – 2 pm;

Sunday – Thursday, 8 am – 4 pm;

Sunday – Thursday, 6 am – 2 pm;

Tuesday – Saturday, 5 am – 1 pm;

Sunday – Thursday, 6 am – 2 pm;

Tuesday – Saturday, 4 am – 12 pm;

Sunday – Thursday, 6 am – 2 pm;

Tuesday – Saturday, 4 am – 12 pm; and

Tuesday – Saturday, 3 am – 11 am.

b.  Plaintiff ROBERT CANALES worked four different schedules throughout his employment with Defendant, with shifts always eight or more hours:

From approximately January 2018 to May 2018:

Tuesday – Saturday; 7:30 pm to 4:00 am;

From approximately June 2018 to December 2018:

Tuesday – Saturday; 12:00 pm to 8 pm;

From approximately December 2018 to March 2019:

FIFTH AMENDED COMPLAINT

EXHIBIT A

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
Barnes@kbarnes.com

Monday – Friday; 11:00 pm to 7:30 am; and

From approximately April 2019 to September 2020:

Monday – Friday; 7:30 pm to 4:00 am.

65.     The members of the Rest Period Class were entitled to a rest period of not less than ten (10) minutes for every four (4) hours of work, or major fraction thereof.

66.     As a matter of Defendants' established company policy, Defendants failed to always authorize and permit all required rest periods established by Labor Code §226.7 and Labor Code §516 and Section 12 of the IWC Wage Order(s), including but not limited to because of the huge size of Defendants' facilities and the large amount of time it took for the members of the Rest Period Class to travel from their work stations to the break room (where they were required to go) and back to their work stations.

67.     For example, Plaintiff TAI HANG and other members of the Rest Period Class had to walk three to five minutes, each way, to and from their workstations to the designated break room at each rest period. Consequently, because rest periods were 15 minutes long, Plaintiff TAI HANG and others had only five to nine minutes of break time after accounting for the walk. Plaintiff TAI HANG was once given a verbal warning by his supervisor for returning late from his rest break because of the long walk. Other members of the Rest Period Class were disciplined for failing to return on time from a rest period.

68.     The designated break rooms were at least a three to five minute walk from all work stations for all employees. The long walk caused the members of the Rest Period Class to suffer noncompliant rest periods on every shift in which a rest period was required. Plaintiffs suffered two noncompliant rest periods on every eight-hour shift per their regular schedules as alleged above.

69.     The members of the Rest Period Class are entitled to damages in an amount equal to one (1) additional hour of pay at each employee's regular rate of

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
BARNES@KBARNES.COM

**FIFTH AMENDED COMPLAINT**
**EXHIBIT A**

1   compensation for each work day that one or more rest periods were not so

2   provided.

3        70.    Pursuant to <u>Labor Code</u> §218.6 and <u>CC</u> §3287, the members of the

4   Rest Period Class seek recovery of pre-judgment interest on all amounts recovered

5   herein.

6   <center>**FIFTH CAUSE OF ACTION**</center>

7   <center>**FAILURE TO PROVIDE LEGALLY-COMPLIANT MEAL PERIODS**</center>

8   <center>**(On Behalf of the Meal Period Class)**</center>

9   <center>**(Against All Defendants)**</center>

10        71.    Plaintiffs incorporate by reference and reallege each and every one of

11   the allegations contained in the preceding and foregoing paragraphs of this

12   Complaint as if fully set forth herein.

13        72.    The members of the Meal Period Class sometimes worked over five

14   (5) hours per shift. The members of the Meal Period Class sometimes worked over

15   ten (10) hours per shift.

16          a.   Plaintiff TAI HANG consistently worked shifts of eight hours or

17              more, under the following schedules, which changed

18              approximately every six months, over his employment with

19              Defendant:

20           Monday – Friday, 4 am – 12 pm;

21           Monday – Friday, 5 pm – 1 am;

22           Monday – Friday, 6 pm – 2 am;

23           Sunday – Thursday, 8 pm – 4 am;

24           Monday – Friday; 8 pm – 4 am;

25           Sunday – Thursday, 6 am – 2 pm;

26           Sunday – Thursday, 8 am – 4 pm;

27           Sunday – Thursday, 6 am – 2 pm;

28           Tuesday – Saturday, 5 am – 1 pm;

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
BARNES@KJBARNES.COM

- 24 -

**FIFTH AMENDED COMPLAINT**
**EXHIBIT A**

Sunday – Thursday, 6 am – 2 pm;

Tuesday – Saturday, 4 am- 12 pm;

Sunday – Thursday, 6 am – 2 pm;

Tuesday – Saturday, 4 am – 12 pm; and

Tuesday – Saturday, 3 am – 11 am.

b. Plaintiff ROBERT CANALES worked four different schedules throughout his employment with Defendant, with shifts always eight or more hours:

From approximately January 2018 to May 2018:

Tuesday – Saturday; 7:30 pm to 4:00 am;

From approximately June 2018 to December 2018:

Tuesday – Saturday; 12:00 pm to 8 pm;

From approximately December 2018 to March 2019:

Monday – Friday; 11:00 pm to 7:30 am; and

From approximately April 2019 to September 2020:

Monday – Friday; 7:30 pm to 4:00 am.

73. The members of the Meal Period Class were entitled to a timely, duty-free, and uninterrupted meal period of not less than thirty (30) minutes prior to exceeding four (4) hours of employment. The members of the Meal Period Class who worked more than ten (10) hours were also entitled to a timely, duty-free, and uninterrupted second meal period of not less than thirty (30) minutes prior to exceeding eight (8) hours of employment.

74. As a matter of Defendants' established company policy, Defendants failed to provide legally-compliant meal periods established by Labor Code §226.7, Labor Code §512, and Labor Code §1198 and Section 11 of the IWC Wage Order(s), as a result of, among other things, the security checks prior to entering and leaving Defendants' premises, the large size of Defendants' facilities, and the large amount of time it took for the members of the Meal Period Class to

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
Barnes@kbarnes.com

- 25 -

FIFTH AMENDED COMPLAINT
EXHIBIT A

EXHIBIT A

walk to the dock, search for an available forklift, and ride it to the dock area where Defendants required the members of the Meal Period Class to clock in and out.

75.     For example, Plaintiff ROBERT CANALES underwent a security check prior to entering Defendants' premises and performed other work-related tasks before clocking in. He spent approximately 5-15 minutes walking to the dock, searching for an available forklift, and riding it to the dock area. Similarly, Plaintiff TAI HANG and other members of the Meal Period Class were required to undergo a security check and perform other work-related tasks before heading to the designated dock area to clock in.

76.     Moreover, Plaintiff ROBERT CANALES, for example, clocked out and spent approximately five minutes walking towards the checkpoint. Similarly, Plaintiff TAI HANG and other members of the Meal Period Class were required to undergo a security check before leaving Defendants' premises.

77.     The members of the Meal Period Class performed these security checks and work-related tasks outside of their clocked hours. As a result, on days when they worked over five (5) hours in a shift, members of the Meal Period Class took their meal periods after the fifth hour of employment.

78.     Further, Plaintiff ROBERT CANALES, for example, worked over ten (10) hours in a shift and was not provided with a second meal period. Similarly, Plaintiff other members of the Meal Period Class were not provided with a second meal period despite working more than ten (10) hours in a shift.

79.     In addition, as a matter of Defendants' established company policy, Defendants failed to provide legally-compliant meal periods established by Labor Code §226.7, Labor Code §512, and Labor Code §1198 and Section 11 of the IWC Wage Order(s), as a result of, among other things, the large size of Defendants' facilities and the large amount of time it took for the members of the Meal Period Class to travel from their work stations to the break room (where they were required to go) and back to their work stations.

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
BARNES@KBARNES.COM

- 26 -

**FIFTH AMENDED COMPLAINT**
EXHIBIT A

80.     For example, Plaintiff TAI HANG and other members of the Meal Period Class had to walk three to five minutes, each way, to and from their workstations to the designated break room at each meal period. Consequently, because rest periods were 30 minutes long, Plaintiff TAI HANG and others had only five to nine minutes of break time after accounting for the walk. Other members of the Meal Period Class were disciplined for failing to return on time from a meal period.

81.     The designated break rooms were at least a three to five minute walk from all work stations for all employees. The long walk caused the members of the Meal Period Class to suffer noncompliant meal periods on every shift in which a meal period was required. Plaintiffs suffered a noncompliant meal period on every eight-hour shift per their regular schedules as alleged above.

82.     The members of the Meal Period Class are entitled to damages in an amount equal to one (1) additional hour of pay at each employee's regular rate of compensation for each work day that one or more meal periods were not so provided.

83.     Pursuant to <u>Labor Code</u> §218.6 and <u>CC</u> §3287, the members of the Meal Period Class seek recovery of pre-judgment interest on all amounts recovered herein.

**FIFTH CAUSE OF ACTION**

**FAILURE TO REIMBURSE FOR NECESSARY BUSINESS EXPENSES**

**(On Behalf of the Reimbursement Class)**

**(Against All Defendants)**

84.     Plaintiffs incorporate by reference and reallege each and every one of the allegations contained in the preceding and foregoing paragraphs of this Complaint as if fully set forth herein.

85.     The members of the Reimbursement Class purchased items in direct consequence of the discharge of their duties.

**FIFTH AMENDED COMPLAINT**

**EXHIBIT A**

86.     The members of the Reimbursement Class were entitled to be reimbursed for necessary business expenditures and losses.

87.     As a matter of Defendants' established company policy, Defendants failed to indemnify the members of the Reimbursement Class for necessary business expenses as established by <u>Labor Code</u> § 2802, including but not limited to because of Defendants' failure to provide pens, clipboards, and safety boots, Defendants' job requirements for the Reimbursement Class, and Defendants' safety requirements.

88.     For example, Plaintiff ROBERT CANALES purchased pens, clipboards, and safety boots, all of which were necessary to perform his job. However, Defendants failed to indemnify him for such necessary business expenses. Similarly, Plaintiff TAI HANG and other members of the Reimbursement class were not reimbursed for similar, necessary and work-related items.

89.     Pursuant to <u>Labor Code</u> §218.6 and <u>CC</u> §3287, the members of the Reimbursement Class seek recovery of pre-judgment interest on all amounts recovered herein.

<div align="center">

**SEVENTH CAUSE OF ACTION**

**INDEPENDENT FAILURE TO TIMELY**

**FURNISH ACCURATE ITEMIZED WAGE STATEMENTS**

**(On Behalf of the Independent Wage Statement Class)**

**(Against All Defendants)**

</div>

90.     Plaintiffs incorporate by reference and reallege each and every one of the allegations contained in the preceding and foregoing paragraphs of this Complaint as if fully set forth herein.

91.     As a pattern and practice, in violation of <u>Labor Code</u> §226(a), Defendants did not and still do not furnish each of the members of the Independent Wage Statement Class with accurate itemized wage statements in writing,

including but not limited not always including all applicable hourly rates for straight time, overtime 1.5 and overtime 2.0 and/or the accurate hourly pay rates in effect during the pay period. For example, both Plaintiff TAI HANG and Plaintiff ROBERT CANALES received wage statements that did not list their applicable hourly rates.

92.     The deficient wage statements were issued according to Defendants' policy and practice. Defendants were aware of the factual predicate underlying the violations, i.e., Defendants knew that the wage statements of Plaintiffs and the members of the Independent Wage Statement Class failed to include all applicable hourly rates for straight time, overtime 1.5 and overtime 2.0 and/or the accurate hourly pay rates in effect during the pay period. These failures were thus knowing and intentional and not due to an accident, clerical error, or inadvertent mistake.

93.     An employee suffers injury if the employer fails to provide accurate and complete information as required by any one or more items listed in <u>Labor Code</u> §226(a)(1)-(9) and the employee cannot promptly and easily ascertain requisite information without reference to other documents or information.

94.     Here, the members of Independent Wage Statement Class suffered injury because Defendants failed to provide accurate and complete information as required by one or more items listed in <u>Labor Code</u> §226(a)(1)-(9) and the Independent Wage Statement Class members could not and cannot promptly and easily ascertain requisite information without reference to other documents or information. For example, neither Plaintiff TAI HANG nor Plaintiff ROBERT CANALES could ascertain whether they were being paid the proper rates because their wage statements did not list their applicable hourly rates. Instead, their wage statements listed only the hours at straight time, overtime, and double overtime, and the total paid, but either failed to list the rate paid, or listed an incorrect rate, in each category, making accurate mathematical deductions impossible.

///

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
Barnes@kbarnes.com

- 29 -

**FIFTH AMENDED COMPLAINT**
**EXHIBIT A**

95.     In addition, the members of the Independent Wage Statement Class have suffered injury as a result of Defendants' failure to maintain accurate records for the members of the Independent Wage Statement Class in that the members of the Independent Wage Statement Class were not timely provided written accurate itemized statements showing all requisite information, including but not limited to all applicable and/or accurate hourly pay rates in effect during the pay period, in violation of Labor Code §226, such that the members of the Independent Wage Statement Class were misled by Defendants as to the correct information regarding various items, including but not limited to all applicable and/or accurate hourly pay rates in effect during the pay period.

96.     The actual injuries suffered by the members of the Independent Wage Statement Class as a result of Defendants' knowing and intentional failure to maintain accurate records for the members of the Independent Wage Statement Class include but are not limited to:

        a.   That such practice prevents the members of the Independent Wage Statement Class from being able to effectively challenge information on their wage statements; and/or

        b.   The difficulty and expense of filing and maintaining this lawsuit, and the discovery required to collect and analyze the very information that California law requires.

97.     The members of the Independent Wage Statement Class are entitled to fifty dollars ($50.00) per employee for the initial pay period in which a violation hereunder occurs and one hundred dollars ($100.00) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000.00).

98.     The currently-employed members of the Independent Wage Statement Class are entitled to injunctive relief to ensure Defendants' compliance with Labor Code §226.

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
Barnes@kbarnes.com

FIFTH AMENDED COMPLAINT

EXHIBIT A

99.     The members of the Independent Wage Statement Class are also entitled to an award of costs and reasonable attorneys' fees.

### EIGHTH CAUSE OF ACTION
### DERIVATIVE FAILURE TO TIMELY
### FURNISH ACCURATE ITEMIZED WAGE STATEMENTS
### (On Behalf of the Derivative Wage Statement Class)

100.     Plaintiffs incorporate by reference and reallege each and every one of the allegations contained in the preceding and foregoing paragraphs of this Complaint as if fully set forth herein.

101.     California employers are required to maintain accurate records pertaining to the total hours worked for Defendants by the members of the Derivative Wage Statement Class, including but not limited to, beginning and ending of each work period, meal period and split shift interval, the total daily hours worked, and the total hours worked per pay period and applicable rates of pay.

102.     As a pattern and practice, Defendants did not and still do not furnish each of the members of the Derivative Wage Statement Class with an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, (3) all deductions, (4) net wages earned and/or (5) all applicable hourly rates in effect during each respective pay period and the corresponding number of hours worked at each hourly rate by each respective individual.

103.     As set forth herein in prior causes of action, Defendants allegedly failed to pay the members of the Derivative Wage Statement Class all wages due and owing.

104.     As a derivative result of this failure to pay wages and as a pattern and practice, Defendants did not and do not maintain accurate records pertaining to the total hours worked for Defendants by the members of the Derivative Wage

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
Barnes@kbarnes.com

**FIFTH AMENDED COMPLAINT**
EXHIBIT A

Statement Class, including but not limited to, beginning and ending of each work period, meal period interval, total daily hours worked, total hours worked per pay period, and the applicable rates of pay.

105.    The deficient wage statements were issued according to Defendants' policy and practice. Defendants were aware of the factual predicate underlying the violations, i.e., Defendants knew that it was not paying rest period premiums that were owed and that, derivatively, the wage statements of Plaintiffs and the members of the Derivative Wage Statement Class failed to include (1) gross wages earned, (2) total hours worked by the employee, (3) all deductions, (4) net wages earned and/or (5) all applicable hourly rates in effect during each respective pay period and the corresponding number of hours worked at each hourly rate. These failures were thus knowing and intentional and not due to an accident, clerical error, or inadvertent mistake.

106.    An employee suffers injury if the employer fails to provide accurate and complete information as required by any one or more items listed in Labor Code §226(a)(1)-(9) and the employee cannot promptly and easily ascertain requisite information without reference to other documents or information. Here, the members of Derivative Wage Statement Class suffered injury because, due to Defendants' failure to pay all wages due and owing, Defendants derivatively failed to provide accurate and complete information as required by one or more items listed in Labor Code §226(a)(1)-(9). The Derivative Wage Statement Class members could not and cannot promptly and easily ascertain requisite information because Defendants failed to keep accurate records of the rest period premiums earned and/or deducted from their paychecks and the rates of the rest period premiums and numbers of hours for these premiums.

107.    In addition, the members of the Derivative Wage Statement Class have suffered injury as a result of Defendants' failure to maintain accurate records for the members of the Derivative Wage Statement Class in that the members of

- 32 -
**FIFTH AMENDED COMPLAINT**
EXHIBIT A

1   the Derivative Wage Statement Class were not timely provided written accurate

2   itemized statements showing all requisite information, including but not limited to

3   total hours worked by the employee, net wages earned and all applicable hourly

4   rates in effect during the pay period and the corresponding number of hours

5   worked at each hourly rate, such that the members of the Derivative Wage

6   Statement Class were misled by Defendants as to the correct information regarding

7   various items, including but not limited to total hours worked by the employee, net

8   wages earned and all applicable hourly rates in effect during the pay period and the

9   corresponding number of hours worked at each hourly rate.

10      108.   The actual injuries suffered by the members of the Derivative Wage

11   Statement Class as a result of Defendants' knowing and intentional failure to

12   maintain accurate records for the members of the Derivative Wage Statement Class

13   include but are not limited to:

14          a.   Confusion over whether they received all wages owed them by

15               Defendants;

16          b.   The difficulty and expense of attempting to reconstruct time and

17               pay records;

18          c.   Being forced to engage in mathematical computations to analyze

19               whether Defendants' wages in fact compensated for all hours

20               worked;

21          d.   The inability to accurately calculate wage rates complicated by the

22               fact that wage statement information required by Labor Code §226

23               is missing;

24          e.   That such practice prevents the members of the Derivative Wage

25               Statement Class from being able to effectively challenge

26               information on their wage statements; and/or

27          f.   The difficulty and expense of filing and maintaining this lawsuit,

28               and the discovery required to collect and analyze the very

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
Barnes@kbarnes.com

- 33 -

FIFTH AMENDED COMPLAINT
EXHIBIT A

EXHIBIT A

information that California law requires.

109.   The members of the Derivative Wage Statement Class are entitled to fifty dollars ($50.00) per employee for the initial pay period in which a violation hereunder occurs and one hundred dollars ($100.00) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000.00).

110.   The currently-employed members of the Derivative Wage Statement Class are entitled to injunctive relief to ensure Defendants' compliance with <u>Labor Code</u> §226.

111.   Pursuant to <u>Labor Code</u> §226(e) and/or §226(g), the members of the Derivative Wage Statement Class are also entitled to an award of costs and reasonable attorneys' fees.

<center>

**NINTH CAUSE OF ACTION**

**VIOLATIONS OF <u>LABOR CODE</u> §203**

**(On Behalf of the LC 203 Class)**

**(Against All Defendants)**

</center>

112.   Plaintiffs incorporate by reference and reallege each and every one of the allegations contained in the preceding and foregoing paragraphs of this Complaint as if fully set forth herein.

113.   The members of the LC 203 Class are no longer employed by Defendants as they were either discharged from or quit Defendants' employ. For example, Plaintiff TAI HANG was terminated on or about August 11, 2020, and Plaintiff ROBERT CANALES was terminated on or about October 2, 2020.

114.   Defendants had a consistent and uniform policy, practice and procedure of willfully failing to pay the earned wages of Defendants' former employees, according to amendment or proof.

115.   Defendants willfully failed to pay the members of the LC 203 Class their entire wages due and owing at the time of their termination or within seventy-

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
Barnes@kbarnes.com

<center>

**FIFTH AMENDED COMPLAINT**

</center>

EXHIBIT A

1  two (72) hours of their resignation, and failed to pay those sums for up to thirty
2  (30) days thereafter.

3      116.    Defendants' willful failure to pay wages to the members of the LC
4  203 Class violates <u>Labor Code</u> §203 because Defendants knew or should have
5  known wages were due to the members of the LC 203 Class, but Defendants failed
6  to pay them.

7      117.    Thus, the members of the LC 203 Class are entitled to recovery
8  pursuant to <u>Labor Code</u> §203.

<div align="center">

**TENTH CAUSE OF ACTION**

**PENALTIES PURSUANT TO <u>LABOR CODE</u> §2699**

**(On Behalf of the Aggrieved Employees)**

**(Against All Defendants)**

</div>

13      118.    Plaintiffs incorporate by reference and reallege each and every one of
14  the allegations contained in the preceding and foregoing paragraphs of this
15  Complaint as if fully set forth herein.

16      119.    Pursuant to <u>Labor Code</u> §2699(a) (which provides that any provision
17  of the <u>Labor Code</u> that provides for a civil penalty to be assessed and collected by
18  the LWDA, or any of its departments, divisions, commissions, board agencies or
19  employees, such civil penalties may, as an alternative, be recovered through a civil
20  action brought by an aggrieved employee on behalf of himself or herself and other
21  current or former employees) and <u>Labor Code</u> §2699(f) (which establishes a civil
22  penalty for violations of all <u>Labor Code</u> provisions except those for which a civil
23  penalty is specifically provided), the aggrieved employees seek recovery of all
24  applicable civil penalties, as follows:

25          a.    As applicable, for civil penalties under <u>Labor Code</u> §2699(f), for
26              all violations of the <u>Labor Code</u> except for those for which a civil
27              penalty is specifically provided, in the amount of one hundred
28              dollars ($100.00) for each aggrieved employee per pay period for

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
Barnes@kbarnes.com

- 35 -

**FIFTH AMENDED COMPLAINT**

**EXHIBIT A**

the initial violation; and two hundred dollars ($200.00) for each aggrieved employee per pay period for each subsequent violation;

b.  As applicable, civil penalties under Labor Code §558 (in addition to and entirely independent and apart from any other penalty provided in the Labor Code), for violations of Labor Code §§500-556, in the amount of $50 for each underpaid aggrieved employee for each pay period the aggrieved employee was underpaid, and $100 for each subsequent violation for each underpaid employee for each pay period for which the employee was underpaid;

c.  As applicable, for civil penalties under Labor Code §1197.1 (in addition to and entirely independent and apart from any other penalty provided in the Labor Code), for violations of Labor Code §§1194 and 1197, in the amount of $100 for each underpaid aggrieved employee for each pay period the aggrieved employee was intentionally underpaid, and $250 for each subsequent violation for each underpaid aggrieved employees regardless of whether the initial violation was intentionally committed;

d.  As applicable, for civil penalties under Labor Code §226.3 (in addition to and entirely independent and apart from any other penalty provided in the Labor Code), for each violation of Labor Code §226(a), in the amount of $250 for each aggrieved employee per pay period for each violation and $1,000 for each aggrieved employee per pay period for each subsequent violation; and

e.  As applicable, for any and all additional civil penalties and sums as provided by the Labor Code and/or other relevant statutes.

120.  In addition, Plaintiff seeks and is entitled to seventy-five percent (75%) of all penalties obtained under Labor Code §2699 to be allocated to the LWDA, for education of employers and employees about their rights and

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
Barnes@KBarnes.com

- 36 -

FIFTH AMENDED COMPLAINT
EXHIBIT A

responsibilities under the <u>Labor Code</u>, and twenty-five percent (25%) to Plaintiff and all other similarly situated aggrieved employees.

121.   Further, Plaintiff is entitled to recover reasonable attorneys' fees and costs pursuant to <u>Labor Code</u> §§2699(g)(1) and any other applicable statute.

122.   On October 5, 2020, Plaintiff TAI HANG complied with <u>Labor Code</u> §2699.3(a) and <u>Labor Code</u> §2699.3(c) in that Plaintiff TAI HANG gave written notice by online filing with the LWDA and by certified mail to Defendants of the specific provisions of the <u>Labor Code</u> alleged to have been violated, including the facts and theories to support the alleged violations. Attached hereto as Exhibit "1" is Plaintiff TAI HANG'S LWDA letter.

123.   Further, on October 14, 2020, Plaintiff ROBERT CANALES complied with <u>Labor Code</u> §2699.3(a) and <u>Labor Code</u> §2699.3(c) in that Plaintiff ROBERT CANALES gave written notice by online filing with the LWDA and by certified mail to Defendants of the specific provisions of the <u>Labor Code</u> alleged in this lawsuit to have been violated, including the facts and theories to support the alleged violations. Attached hereto as Exhibit "2" is Plaintiff ROBERT CANALES' October 14, 2020 LWDA letter.

124.   As of December 16, 2020 (65 calendar days after Plaintiff ROBERT CANALES' October 14, 2020 LWDA letter was filed online), Plaintiffs had not received any notification that the LWDA intended to investigate the alleged violations. As such, Plaintiffs have complied with <u>Labor Code</u> §2699.3(a) and have been given authorization therefrom to commence a civil action which includes a cause of action pursuant to <u>Labor Code</u> §2699.

125.   Further, as of November 16, 2020 (33 calendar days after Plaintiff ROBERT CANALES' October 14, 2020 LWDA letter was mailed to Defendants via certified mail), Plaintiffs have not received from Defendants written notice by certified mail that the alleged violations have been cured, including a description of actions taken. As such, Plaintiffs have complied with <u>Labor Code</u> §2699.3(c) and

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
Barnes@KBarnes.com

- 37 -

FIFTH AMENDED COMPLAINT

EXHIBIT A

have been given authorization therefrom to commence a civil action which includes a cause of action pursuant to Labor Code §2699.

## ELEVENTH CAUSE OF ACTION
## UNFAIR BUSINESS PRACTICES
### (On Behalf of the 17200 Class)
### (Against All Defendants)

126.    Plaintiffs incorporate by reference and reallege each and every one of the allegations contained in the preceding and foregoing paragraphs of this Complaint as if fully set forth herein.

127.    Defendants have engaged in unlawful, unfair and fraudulent business acts or practices prohibited by B&PC §17200, including those set forth in the preceding and foregoing paragraphs of the complaint, thereby depriving the members of the 17200 Class of the minimum working standards and conditions due to them under the Labor Code and/or the IWC Wage Orders, as specifically described herein.

128.    Defendants have engaged in unfair business practices in California by practicing, employing and utilizing the employment practices outlined in the preceding paragraphs, specifically, by requiring employees to perform the labor services complained of herein without the requisite compensation.

129.    Defendants' use of such practices constitutes an unfair business practice, unfair competition and provides an unfair advantage over Defendants' competitors.

130.    Plaintiffs have suffered injury in fact and have lost money or property as a result of such unfair competition.

131.    Plaintiffs seek full restitution from Defendants, as permitted by law, as necessary and according to proof, to restore any and all monies withheld, acquired and/or converted by Defendants by means of the unfair practices complained of herein.

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
Barnes@kbarnes.com

132.   Further, if Defendants are not enjoined from the conduct set forth above, Defendants will continue to practice, employ and utilize the employment practices outlined in the preceding paragraphs. Therefore, class members, including current employees and those who intend to seek re-employment, could benefit from an injunction and/or declaratory relief.

133.   Therefore, Plaintiffs request that the Court issue a preliminary and permanent injunction prohibiting Defendants from engaging in the foregoing conduct.

134.   Plaintiffs seek the appointment of a receiver, as necessary, to establish the total monetary relief sought from Defendants.

## VI.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray:

a.      That the Court issue an Order certifying the Classes herein, appointing all named Plaintiffs as representative of all others similarly situated, and appointing all law firms representing all named Plaintiffs as counsel for the members of the Classes;

As to the First Cause of Action for Failure to Pay Minimum Wages

b.      For all earned wages, including minimum wages, for all hours worked by the Minimum Wage Class;

c.      For pre-judgment interest as authorized by Labor Code §218.6 and CC §3287;

d.      For an award of costs and reasonable attorneys' fees;

As to the Second Cause of Action for Failure to Pay Overtime Wages

e.      For overtime compensation for all overtime hours worked by the Overtime Wage Class;

f.      For pre-judgment interest as authorized by Labor Code §218.6 and CC §3287;

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
Barnes@KBarnes.com

**FIFTH AMENDED COMPLAINT**
EXHIBIT A

EXHIBIT A

1      g.      For an award of costs and reasonable attorneys' fees;

2   <u>As to the Third Cause of Action for Failure to Provide Legally-Compliant Rest</u>

3   <u>Periods</u>:

4      h.      For one (1) hour of pay at the regular rate of compensation for each

5   member of the Legal Rest Period Class for each workday that a legally-compliant

6   rest period was not provided;

7      i.      For pre-judgment interest as authorized by <u>Labor Code</u> §218.6 and

8   <u>CC</u> §3287;

9   <u>As to the Fourth Cause of Action for Failure to Authorize and Permit Paid Rest</u>

10  <u>Periods</u>:

11     j.      For one (1) hour of pay at the regular rate of compensation for each

12  member of the Rest Period Class for each workday that a rest period was not

13  provided;

14     k.      For pre-judgment interest as authorized by <u>Labor Code</u> §218.6 and

15  <u>CC</u> §3287;

16  <u>As to the Fifth Cause of Action for Failure to Provide Legally-Compliant Meal</u>

17  <u>Periods</u>

18     l.      For one (1) hour of pay at the regular rate of compensation for each

19  member of the Meal Period Class for each workday that a legally-compliant meal

20  period was not provided;

21     m.      For pre-judgment interest as authorized by <u>Labor Code</u> §218.6 and

22  <u>CC</u> §3287;

23  <u>As to the Sixth Cause of Action for Failure to Reimburse for Necessary Business</u>

24  <u>Expenses</u>

25     n.      For the amounts paid by the Reimbursement Class for necessary

26  business expenses, including but not limited to, pens, clipboards, and safety boots.

27     o.      For pre-judgment interest as authorized by <u>Labor Code</u> §218.6 and

28  <u>CC</u> §3287;

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL: (323) 549-9100
FAX: (323) 549-0101
Barnes@kbarnes.com

- 40 -

**FIFTH AMENDED COMPLAINT**
EXHIBIT A

As to the Seventh Cause of Action for Independent Failure to Timely Furnish Accurate Itemized Wage Statements:

        p.     For recovery as authorized by Labor Code §226(e);

        q.     For an award of costs and reasonable attorneys' fees pursuant to Labor Code §226(e) and/or §226(g);

As to the Eighth Cause of Action for Derivative Failure to Timely Furnish Accurate Itemized Wage Statements:

        r.     For recovery as authorized by Labor Code §226(e);

        s.     For an award of costs and reasonable attorneys' fees pursuant to Labor Code §226(e) and/or §226(g);

As to the Ninth Cause of Action for Violations of Labor Code §203:

        t.     For recovery as authorized by Labor Code §203;

As to the Tenth Cause of Action for Penalties Pursuant to Labor Code §2699:

        u.     As applicable, for civil penalties pursuant to Labor Code §2699(f), in addition to and entirely independent and apart from other penalties in the Labor Code and for Labor Code violations without a specific civil penalty, in the amount of $100 for each aggrieved employee per pay period for each violation, and $200 for each aggrieved employee per pay period for each subsequent violation;

        v.     As applicable, for civil penalties pursuant to Labor Code §558, in addition to and entirely independent and apart from other penalties in the Labor Code, as follows:

              i   For any initial violation, fifty dollars ($50) for each aggrieved underpaid employee for each pay period for which the employee was underpaid; and

              ii.  For each subsequent violation, one hundred dollars ($100) for each aggrieved underpaid employee for each pay period for which the employee was underpaid;

///

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
Barnes@kbarnes.com

- 41 -

**FIFTH AMENDED COMPLAINT**
EXHIBIT A

1    w.    As applicable, for civil penalties pursuant to <u>Labor Code</u> §1197.1, in

2  addition to and entirely independent and apart from other penalties in the <u>Labor</u>

3  <u>Code</u>, as follows:

4              i.   For any initial violation that is intentionally committed, $100 for

5                   each aggrieved underpaid employee for each pay period for which

6                   the employee was underpaid; and

7              ii.  For each subsequent violation, regardless of whether the initial

8                   violation is intentionally committed, $250 for each aggrieved

9                   underpaid employee for each pay period for which the employee

10                  was underpaid;

11   x.    As applicable, for civil penalties pursuant to <u>Labor Code</u> §226.3, in

12  addition to and entirely independent and apart from other penalties in the <u>Labor</u>

13  <u>Code</u>, in the amount of $250 for each aggrieved employee per pay period for each

14  violation, and $1,000 for each aggrieved employee per pay period for each

15  subsequent violation;

16   y.    As applicable, for reasonable attorneys' fees and costs incurred

17  pursuant to <u>Labor Code</u> §§2699(g)(1) and any other applicable statute; and

18   z.    For such relief as this Court may deem just and proper.

19  <u>As to the Eleventh Cause of Action for Unfair Business Practices</u>:

20   aa.   For an accounting, under administration of Plaintiffs and/or the

21  receiver and subject to Court review, to determine the amount to be returned by

22  Defendants, and the amounts to be refunded to members of the Classes who are

23  owed monies by Defendants;

24   bb.   For an Order requiring Defendants to identify each of the members of

25  the Classes by name, home address, home telephone number and email address;

26   cc.   For an Order requiring Defendants to make full restitution and

27  payment pursuant to California law;

28  ///

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
Barnes@KBarnes.com

- 42 -

**FIFTH AMENDED COMPLAINT**
EXHIBIT A

1    dd.    For an Order for a preliminary and/or permanent injunction

2    prohibiting Defendants from engaging in the acts complained of herein;

3    ee.    For the creation of an administrative process wherein each injured

4    member of the Classes may submit a claim in order to receive his/her money;

5    ff.    For all other appropriate injunctive, declaratory and equitable relief;

6    gg.    For interest to the extent permitted by law;

7    hh.    For an award of attorneys' fees and costs incurred in the investigation,

8    filing and prosecution of this action pursuant to CCP §1021.5, B&PC §17200, et

9    seq., Labor Code §1194 and/or any other applicable provision of law;

10   As to All Causes of Action:

11   ii.    For such relief as this Court may deem just and proper, including

12   reasonable attorneys' fees and costs incurred.

13                                   **VII.**

14                        **DEMAND FOR JURY TRIAL**

15        Plaintiffs hereby demand trial of their claims by jury to the extent authorized

16   by law.

17   Dated: August 3, 2023            LAW OFFICES OF KEVIN T. BARNES

18
                                      By: _____
19                                         Kevin T. Barnes, Esq.
                                           Gregg Lander, Esq.
20                                         Attorneys for Plaintiff
                                           TAI HANG
21
     Dated: August 3, 2023            STONEBROOK LAW
22

23                                    By: _____
                                           Joseph Tojarieh, Esq.
24                                         Attorney for Plaintiff
                                           ROBERT CANALES
25

26

27

28

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
BARNES@KBARNES.COM

## NOTICE OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT

### *TAI HANG, et al. v. OLD DOMINION FREIGHT LINE, INC.*
**United States District Court, Central District of California, Case No. 5:21-cv-00287-JWH-KK**

---

**PLEASE READ THIS NOTICE CAREFULLY**.

**You have received this Notice because Defendant's records indicate that you may be eligible to take part in the class action settlement reached in the above-referenced case.**

**You do not need to take any action to receive a settlement payment.**

**This Notice is designed to advise you of your rights and options with respect to the settlement, and how you can request to be excluded from the Class Settlement, object to the Class Settlement, and/or dispute the number of Workweeks that you are credited with, if you so choose.**

---

**YOU ARE NOTIFIED THAT:** A class and representative action settlement has been reached between Plaintiffs Tai Hang and Robert Canales ("Plaintiffs") and Defendant Old Dominion Freight Line, Inc. ("Defendant") (Plaintiffs and Defendant are collectively referred to as the "Parties") in the case entitled *Tai Hang, et al. v. Old Dominion Freight Line, Inc.*, United States District Court for the Central District of California, Case No. 5:21-cv-00287-JWH-KK (the "Action"), which may affect your legal rights. On [date of Preliminary Approval], the Court granted preliminary approval of the settlement and scheduled a hearing on [hearing date] at [hearing time] ("Final Approval Hearing") to determine whether or not the Court should grant final approval of the settlement.

## I.    IMPORTANT DEFINITIONS

"**Class**" means all of Defendant's non-exempt current and former employees working or who worked in the State of California in a Dockworker or Dockworker Lead position from May 12, 2016 through and including [date of Preliminary Approval or August 31, 2023, whichever is earlier], and expressly excluding therefrom any individual, who as of [date of Preliminary Approval], has filed a separate lawsuit of any type as a named plaintiff against Defendant, alleging the same or similar claims being released by the Settlement and/or who has previously released such claims.

"**Class Member**" means a member of the Class.

"**Class Period**" means the period from May 12, 2016 through and including August 31, 2023.

"**Class Settlement**" means the settlement and resolution of all Released Class Claims (described in Section III.D. below).

"**Aggrieved Employees**" means all of Defendant's non-exempt current and former employees working or who worked in the State of California in a Dockworker or Dockworker Lead position from April 10, 2019 through and including [date of Preliminary Approval or August 31, 2023, whichever is earlier].

"**PAGA Period**" means the period from April 10, 2019 through and including August 31, 2023.

"**PAGA Settlement**" means the settlement and resolution of all Released PAGA Claims (described in Section III.D. below).

## II.    BACKGROUND OF THE LAWSUIT

On November 6, 2020, Plaintiffs commenced a putative class action lawsuit by filing a Complaint (the "Complaint") in the Superior Court of California in and for the County of San Bernardino (the "State Court"), Case No. CIVSB2025678. The Complaint alleges six (6) causes of action for alleged violations of the California Labor Code and applicable California Industrial Welfare ("IWC") Wage Orders on behalf of Plaintiffs and other current and former non-exempt "dock worker" employees of Defendant. On December 17, 2020, Plaintiffs filed a First Amended Complaint in the State Court, which added a seventh claim pursuant to which Plaintiffs seek civil penalties under the California Labor Code Private Attorneys General Act of 2004, Cal. Lab. Code § 2698, *et seq.* ("PAGA"), pursuant to written notices Plaintiffs provided to the California Labor and Workforce Development Agency (the "LWDA") and Defendant of the specific provisions of the California Labor Code that Plaintiffs contend were violated (the "LWDA Notices").

Questions?  Please call: [settlement administrator's 800-number]

EXHIBIT B

On February 19, 2021, Defendant removed the Action to the United States District Court for the Central District of California, wherein it was assigned Case No. 5:21-cv-00287-JWH-KK.

On [date of Preliminary Approval], Plaintiffs were granted leave to file (and have now filed) a Fifth Amended Complaint for purposes of the Parties' settlement asserting putative class and representative action claims for wages, statutory and other non-wage damages or penalties, and civil penalties under the California Labor Code and applicable IWC Wage Orders (the "Operative Complaint"). The Operative Complaint alleges that the Class was not paid regular, minimum, or overtime wages for purported off-the-clock work and/or related to meal or rest break violations or final wages upon separation from employment, as required by California law; was not provided compliant meal and rest periods under the California Labor Code and Wage Orders; was not reimbursed for all business-related expenses; and was not provided wage statements with information specified in the California Labor Code. The Operative Complaint also alleges violations under the California Business and Professions Code §§ 17200 *et seq.* and seeks civil penalties pursuant to PAGA based on the foregoing state law claims. Plaintiffs seek, among other things, recovery of unpaid wages and meal and rest period premiums, unreimbursed business expenses, restitution, penalties, interest, and attorneys' fees and costs.

Defendant denies all of the allegations in the Action or that it violated any law.

The Parties participated in a mediation with a highly-respected and experience class action mediator, and as a result of the mediator's efforts, the Parties reached a settlement. The Parties have since entered into the Stipulation for Leave to File Fifth Amended Complaint and for Settlement and Release of Class Action and PAGA Claims (the "Settlement" or "Settlement Agreement").

On [date of Preliminary Approval], the Court entered an order preliminarily approving the Settlement. The Court has appointed Rust Consulting as the administrator of the Settlement (the "Settlement Administrator"), Plaintiff Tai Hang and Plaintiff Robert Canales as representatives of the Class (the "Class Representatives"), and the following Plaintiffs' attorneys as counsel for the Class ("Class Counsel"):

<div align="center">

**LAW OFFICES OF KEVIN T. BARNES**
Kevin T. Barnes [Barnes@kbarnes.com]1041 Parkside Commons, Suite 101
Greensboro, Georgia 30642
Tel: (213) 793-9100

**LAW OFFICES OF RAPHAEL A. KATRI**
Raphael A. Katri [RKatri@socallaborlawyers.com]
8549 Wilshire Boulevard, Suite 200
Beverly Hills, California 90211
Tel: (310) 940-2034; Fax: (310) 733-5644

**STONEBROOK LAW**
Joseph Tojarieh [JFT@stonebrooklaw.com]
10250 Constellation Boulevard, Suite 100
Los Angeles, California 90067
Tel: (310) 553-5533; Fax: (310) 553-5536

</div>

If you are a Class Member, you do not need to take any action to receive an Individual Settlement Payment, but you have the opportunity to request exclusion from the Class Settlement (in which case you will not receive an Individual Settlement Payment), object to the Class Settlement, and/or dispute the Workweeks credited to you, if you so choose, as explained more fully in Sections III and IV below. If you are an Aggrieved Employee, you do not need to take any action to receive an Individual PAGA Payment.

The Settlement represents a compromise and settlement of highly disputed claims. Nothing in the Settlement is intended or will be construed as an admission by Defendant that the claims in the Action have merit or that Defendant has any liability to Plaintiffs, Class Members, or Aggrieved Employees. Plaintiffs and Defendant, and their respective counsel, have concluded and agree that, in light of the risks and uncertainties to each side of continued litigation, the Settlement is fair,

<div align="center">2
Questions?  Please call: **[settlement administrator's 800-number]**</div>

reasonable, and adequate, and is in the best interests of Class Members and Aggrieved Employees. The Court has made no ruling on the merits of the claims asserted in the Action and has determined only that certification of the Class for settlement purposes is appropriate under California law.

## III.   SUMMARY OF THE PROPOSED SETTLEMENT

### A.   Settlement Formula

The total gross settlement amount is Two Million Eight Hundred Fifty Thousand Dollars ($2,850,000) (the "Gross Settlement Fund). The portion of the Gross Settlement Fund that is available for payment to Class Members is referred to as the "Net Settlement Fund." The Net Settlement Fund will be the Gross Settlement Fund less the following payments which are subject to approval by the Court: (1) attorneys' fees, in an amount up to 33-1/3% of the Gross Settlement Fund (i.e., up to $950,000) and reimbursement of reasonable litigation costs and expenses in an amount up to Thirty Thousand Dollars ($30,000) (collectively, the "Attorneys' Fees and Costs") to Class Counsel; (2) an Enhancement Award in an amount up to Ten Thousand Dollars ($10,000) to each Plaintiff for their services in the Action; (3) the amount of Fifty Thousand Dollars ($50,000) allocated toward civil penalties under PAGA (the "PAGA Amount"); (4) Settlement Administration Costs in an amount presently projected not to exceed Thirty Thousand Dollars ($30,000) to the Settlement Administrator; and (5) employer-side payroll taxes and withholdings associated with payments made to Class Members. The PAGA Amount will be distributed 75% to the LWDA (i.e., $37,500) (the "LWDA Payment") and the remaining 25% (i.e., $12,500) will be distributed to Aggrieved Employees (the "Aggrieved Employees Payment").

Class Members are eligible to receive payment under the Class Settlement of their *pro rata* share of the Net Settlement Fund ("Individual Settlement Share") based on the number of workweeks actually worked by each Class Member for Defendant as a non-exempt Dockworker or Dockworker Lead in California during the Class Period (the "Workweeks").

The Settlement Administrator has multiplied the Net Settlement Fund by a fraction, the numerator of which is the Class Member's individual number of Workweeks actually worked during the Class Period, and the denominator of which is the total number of Workweeks actually worked by all Class Members, to yield the Class Member's estimated Individual Settlement Share he or she may be eligible to receive under the Class Settlement (which is listed in Section III.C. below). Class Members who do not submit a timely and valid Request for Exclusion (the "Participating Class Members") will be issued payment of their final Individual Settlement Payment.

Each Individual Settlement Share will be allocated as twenty percent 25% wages (the "Wages Portion"), 50% for non-wage statutory or other non-wage damages or penalties, and 25% interest. The penalties, statutory and other non-wage damages, and interest portions are collectively referred to as the "Non-Wage Portions." The Wages Portion will be reported on an IRS Form W-2 and the Non-Wage Portions will be reported on an IRS Form 1099 (if applicable). Each Individual Settlement Share will be subject to reduction for the employee's share of taxes and withholdings with respect to the Wages Portion of the Individual Settlement Share (the net payment is referred to as "Individual Settlement Payment"). The employer's share of payroll taxes and contributions with respect to the Wages Portion of Individual Settlement Shares shall be paid from the Gross Settlement Fund.

Aggrieved Employees are eligible to receive payment under the PAGA Settlement of their *pro rata* share of the Aggrieved Employees Payment ("Individual PAGA Payment") based on the number of pay periods worked by each Aggrieved Employee for Defendant as a non-exempt Dockworker or Dockworker Lead in California during the PAGA Period (the "PAGA Pay Periods").

The Settlement Administrator has multiplied the Aggrieved Employees Payment by a fraction, the numerator of which is the Aggrieved Employee's individual number of PAGA Pay Periods, and the denominator of which is the total number of PAGA Pay Periods of all Aggrieved Employees, to yield the Aggrieved Employee's estimated Individual PAGA Payment he or she may be eligible to receive under the PAGA Settlement (which is listed in Section III.C. below).

Each Individual PAGA Payment will be allocated as 100% penalties, which will be reported on IRS Form 1099 (if applicable).

If the Court grants final approval of the Settlement, Individual Settlement Payments will be mailed to Participating Class

3

**Questions?  Please call:** **[settlement administrator's 800-number]**

Members and Individual PAGA Payments will be mailed to Aggrieved Employees at the address that is on file with the Settlement Administrator. **If the address to which this Notice was mailed is not correct, or if you move after you receive this Notice, you must provide your correct mailing address to the Settlement Administrator as soon as possible to ensure you receive any payment that you may be entitled to under the Settlement.**

### B. Your Workweeks Based on Defendant's Records

According to Defendant's records, you are credited as having actually worked [_____] Workweeks.

If you wish to dispute the Workweeks credited to you, you must submit a written dispute (a "Workweeks Dispute") to the Settlement Administrator, which must: (i) include your full name, current mailing address, telephone number, signature, and last four digits of your Social Security number; (ii) include the case name and number of the Action (*Tai Hang, et al. v. Old Dominion Freight Line, Inc.,* United States District Court, Central District of California, Case No. 5:21-cv-00287-JWH-KK); (iii) include a statement indicating that you seek to dispute the number of Workweeks credited to you, the time period(s) you worked for Defendant in a non-exempt Dockworker or Dockworker Lead position in California during the Class Period, and the number of Workweeks that you contend should be credited to you; (iv) include documentation and/or other facts supporting your position; and (v) be submitted by mail to the Settlement Administrator at the specified address listed in Section IV.B. below, postmarked on or before [**Response Deadline**].

### C. Your Estimated Individual Settlement Share and Individual PAGA Payment

As explained above, your estimated Individual Settlement Share is based on the number of Workweeks credited to you and your estimated Individual PAGA Payment is based on the number of PAGA Pay Periods credited to you.

**Under the terms of the Settlement, your Individual Settlement Share is estimated to be $_____. The Individual Settlement Share is subject to reduction for taxes and withholdings with respect to the Wages Portion of the Individual Settlement Share and will only be distributed if the Court approves the Settlement and after the Settlement goes into effect.**

**Under the terms of the Settlement, your Individual PAGA Payment is estimated to be $_____.**

The settlement approval process may take multiple months. Your Individual Settlement Share and/or Individual PAGA Payment (if applicable) reflected in this Notice is only an estimate. Your actual Individual Settlement Share and Individual PAGA Payment (if applicable) may be higher or lower.

### D. Release of Claims

Upon occurrence of the Effective Date and full funding of the Gross Settlement Fund, Plaintiffs and the Participating Class Members will release the Released Parties of and from the Released Class Claims. To the extent required under applicable law, Participating Class Members who cash, deposit, or otherwise negotiate their Individual Settlement Payment will be deemed to have opted-in to the Action for purposes of the release of Released Class Claims arising under the federal Fair Labor Standards Act ("FLSA").

Upon the occurrence of the Effective Date and full funding of the Gross Settlement Fund, Plaintiffs, the LWDA and the Aggrieved Employees will release the Released Parties of and from all claims for any civil penalties recoverable under the California Labor Code, including PAGA, arising out of or related to the Released Class Claims, as well as costs and attorneys' fees related thereto, that arose, accrued, and/or have been asserted during the PAGA Period.

"Released Class Claims" means the same as "Released Claims" in Paragraph 40.b of the Settlement Agreement: any and all allegations, claims, debts, rights, demands, charges, complaints, actions, causes of action, guarantees, costs, expenses, attorneys' fees, economic damages, non-economic damages, restitution, civil penalties, statutory penalties, liquidated damages, punitive damages, interest, obligations, liabilities, or other monies and remedies, of any and every kind, contingent or accrued, that have been or reasonably could have been alleged or asserted in the 5AC and/or any of the pleadings filed in the Action and/or in any notice sent by Plaintiffs to the LWDA pursuant to PAGA based on the factual and/or legal violations allegations contained therein, including, claims for any type of rest and meal break violations, any type of wage claims arising out of or related to any purported off-the-clock work as alleged in the 5AC and/or related to any purported

4

Questions? Please call: [settlement administrator's 800-number]

EXHIBIT B

meal or rest break violations, any type of wage statement violation claims, any type of expense reimbursement claims, any waiting time penalties claims, any type of derivative UCL and PAGA claims based on the foregoing, and parallel claims that may be brought under the FLSA based on the foregoing, including any alleged violations of California Labor Code §§ 201-203, 204, 206, 210, 221, 226, 226.3, 226.7, 510, 512, 516, 558, 1174, 1194, 1194.2, 1197, 1197.1, 1198, 1199, and/or 2802, and/or civil penalties pursuant to PAGA based on the foregoing.

"Released Parties" means Defendant and its employees, officers, directors, shareholders, members, administrators, parent and subsidiary entities, trustees, sponsors, fiduciaries, agents, contractors, representatives, attorneys, accountants, insurers, predecessors, successors and assigns, past, present, and future (collectively, the "Affiliated Releasees"), and each and all of their respective Affiliated Releasees, past, present, and future, and all persons acting under, by, through, or in concert with any of them.

## E.     Attorneys' Fees and Costs to Class Counsel

Class Counsel will seek attorneys' fees in an amount up to one-third (1/3) of the Gross Settlement Fund (i.e., up to $950,000) and reimbursement of reasonable litigation costs and expenses in an amount up to Thirty Thousand Dollars ($30,000) (collectively, the "Attorneys' Fees and Costs), subject to approval by the Court.  The Attorneys' Fees and Costs granted by the Court will be paid from the Gross Settlement Fund.  Class Counsel has been prosecuting the Action on behalf of Plaintiffs, Class Members, and Aggrieved Employees on a contingency fee basis (that is, without being paid any money to date) and has been paying all litigation costs and expenses.

## F.     Enhancement Awards to Plaintiffs

Plaintiffs will each seek the amount of Ten Thousand Dollars ($10,000) ("Enhancement Awards"), in recognition of their services in connection with the Action.  The Enhancement Awards will be paid from the Gross Settlement Fund, subject to approval by the Court, and if awarded, will be paid to Plaintiffs in addition to their respective Individual Settlement Payment and Individual PAGA Payment that they are entitled to under the Settlement.

## G.     Settlement Administration Costs to Settlement Administrator

Payment to the Settlement Administrator is presently estimated not to exceed Thirty Thousand Dollars ($30,000) (the "Settlement Administration Costs") for the costs of the notice and settlement administration process, including and not limited to, the expense of notifying the Class Members of the Settlement, processing Requests for Exclusion, Objections, and Workweeks Disputes, calculating Individual Settlement Shares, Individual Settlement Payments, and Individual PAGA Payments, and distributing payments and tax forms under the Settlement, and shall be paid from the Gross Settlement Fund, subject to approval by the Court.

## IV.    WHAT ARE YOUR RIGHTS AND OPTIONS AS A CLASS MEMBER?

### A.     Participate in the Settlement

**If you want to participate in the Settlement and receive money from the Settlement, you do not have to do anything**. You will automatically be included in the Class Settlement and issued your Individual Settlement Payment unless you decide to exclude yourself from the Class Settlement.

Unless you elect to exclude yourself from the Class Settlement, you will be bound by the terms of the Class Settlement and any judgment that may be entered by the Court based thereon, and you will release the Released Class Claims described in Section III.D. above.

If you are an Aggrieved Employee, you will automatically be included in the PAGA Settlement and issued your Individual PAGA Payment. This means you will be bound by the terms of the PAGA Settlement and any judgment that may be entered by the Court based thereon, and you will release the Released PAGA Claims described in Section III.D. above.

Class Members and Aggrieved Employees will not be separately responsible for the payment of attorney's fees or litigation costs and expenses, unless they retain their own counsel, in which event they will be responsible for their own attorney's fees and expenses.

Questions?  Please call: [settlement administrator's 800-number]

4879-3576-8671.2
4859-4319-9084.1

EXHIBIT B

### B.    Request Exclusion from the Class Settlement

A Class Member may request to opt out of and be excluded from the Class Settlement by submitting a written request ("Request for Exclusion") to the Settlement Administrator, which must: (i) include the full name, current mailing address, telephone number, signature, and last four digits of the Social Security number of the Class Member seeking exclusion; (ii) include the case name and number of the Action (*Tai Hang, et al. v. Old Dominion Freight Line, Inc.,* United States District Court for the Central District of California, Case No. 5:21-cv-00287-JWH-KK); (iii) include a statement that the Class Member seeks to be excluded from the Class Settlement which is the same or substantially similar to the following language: **"I elect to opt-out of the *Hang, et al. v. Old Dominion Freight Line, Inc.* class action settlement. I understand that by doing so, I will not participate in the class settlement, and will not receive any money from it"**; and (iv) be submitted by mail to the Settlement Administrator at the specified address below, postmarked on or before [Response Deadline].

<p style="text-align:center">[Settlement Administrator]<br>[Mailing Address]</p>

If the Court grants final approval of the Settlement, any Class Member who submits a timely and valid Request for Exclusion will not be entitled to receive an Individual Settlement Payment, will not be bound by the release of Released Class Claims (described in Section III.D. above), and will not have any right to object to, appeal, or comment on the Settlement. Class Members who do not submit a timely and valid Request for Exclusion will be deemed Participating Class Members and will be bound by all terms of the Settlement, including those pertaining to the release of claims described in Section III.D. above, as well as any judgment that may be entered by the Court based thereon. Aggrieved Employees will be bound to the PAGA Settlement and will still be issued an Individual PAGA Payment, irrespective of whether they submit a Request for Exclusion.

### C.    Object to the Class Settlement

A Class Member may object to the Class Settlement, as long as he or she had not submitted a Request for Exclusion (i.e., he or she is a Participating Class Member), by submitting a written objection ("Objection") to the Settlement Administrator, which must: (i) include the full name, current mailing address, telephone number, signature, and last four digits of the Social Security number of the objecting Class Member; (ii) include the case name and number of the Action (*Tai Hang, et al. v. Old Dominion Freight Line, Inc.,* United States District Court, Central District of California, Case No. 5:21-cv-00287-JWH-KK); (iii) include a statement indicating the legal and factual grounds for the objection; (iv) include a statement indicating whether the objecting Class Member is represented by counsel and identifying any such counsel; (v) include a statement indicating whether the objecting Class Member intends to appear for and wishes to be heard at the Final Approval Hearing; and (vi) be submitted by mail to the Settlement Administrator at the specified address listed in Section IV.B. above, postmarked on or before [Response Deadline].

Participating Class Members will also have the right to appear at the Final Approval Hearing in order to orally present objections to the Court, whether or not they have submitted a written objection.

## V.    FINAL APPROVAL HEARING

The Court will hold a Final Approval Hearing in Courtroom 9D of the United States District Court, Central District of California, located at the Ronald Reagan Federal Building, 411 W. 4th Street, Santa Ana, CA 92701, on [date], at [time], to determine whether the Settlement should be finally approved as fair, reasonable, and adequate. The Court also will be asked to approve and grant the Attorneys' Fees and Costs to Class Counsel, Enhancement Awards to Plaintiffs, and Settlement Administration Costs to the Settlement Administrator.

The hearing may be continued without further notice to Class Members. It is not necessary for you to appear at the Final Approval Hearing, although you may appear if you wish to. Personal appearances and telephonic appearances are an option.

Please visit the Court's website for the most up-to-date information regarding the impact of COVID-19 on the operations of the Court and any requirements that may apply for accessing Court facilities: https://www.cacd.uscourts.gov/.

<p style="text-align:center">6<br>Questions? Please call: [settlement administrator's 800-number]</p>

DocuSign Envelope ID: 14048674-C683-4556-9491-590A98497C1A

**EXHIBIT B**

## VI.     ADDITIONAL INFORMATION

The above is a summary of the basic terms of the Settlement.  For the precise terms and conditions of the Settlement Agreement, you should review the detailed Settlement Agreement and other papers which are on file with the Court.

You may view the Settlement Agreement and other court records in the Action by visiting the Office of the Clerk of the United States District Court, Central District of California, located at 411 W. 4th Street, Santa Ana, CA 92701 during business hours, or by online by visiting the following website: http://pacer.psc.uscourts.gov/. Fees and other charges may apply in order to obtain copies of court records.

**PLEASE DO NOT TELEPHONE THE COURT OR THE OFFICE OF THE CLERK FOR INFORMATION REGARDING THIS SETTLEMENT.**

**IF YOU HAVE ANY QUESTIONS, YOU MAY CALL THE SETTLEMENT ADMINISTRATOR AT THE FOLLOWING TOLL-FREE NUMBER: [INSERT], OR YOU MAY ALSO CONTACT CLASS COUNSEL.**

**Questions?  Please call: [settlement administrator's 800-number]**

4879-3576-8671.2
4859-4319-9084.1

**EXHIBIT B**

EXHIBIT 2

## NOTICE OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT

### *TAI HANG, et al. v. OLD DOMINION FREIGHT LINE, INC.*

**United States District Court, Central District of California, Case No. 5:21-cv-00287-JWH-KK**

---

**PLEASE READ THIS NOTICE CAREFULLY**.

**You have received this Notice because Defendant's records indicate that you may be eligible to take part in the class action settlement reached in the above-referenced case.**

**You do not need to take any action to receive a settlement payment.**

**This Notice is designed to advise you of your rights and options with respect to the settlement, and how you can request to be excluded from the Class Settlement, object to the Class Settlement, and/or dispute the number of Workweeks that you are credited with, if you so choose.**

---

**YOU ARE NOTIFIED THAT:** A class and representative action settlement has been reached between Plaintiffs Tai Hang and Robert Canales ("Plaintiffs") and Defendant Old Dominion Freight Line, Inc. ("Defendant") (Plaintiffs and Defendant are collectively referred to as the "Parties") in the case entitled *Tai Hang, et al. v. Old Dominion Freight Line, Inc.*, United States District Court for the Central District of California, Case No. 5:21-cv-00287-JWH-KK (the "Action"), which may affect your legal rights.  On [date of Preliminary Approval], the Court granted preliminary approval of the settlement and scheduled a hearing on [hearing date] at [hearing time] ("Final Approval Hearing") to determine whether or not the Court should grant final approval of the settlement.

## I.    IMPORTANT DEFINITIONS

"**Class**" means all of Defendant's non-exempt current and former employees working or who worked in the State of California in a Dockworker or Dockworker Lead position from May 12, 2016 through and including [date of Preliminary Approval or August 31, 2023, whichever is earlier], and expressly excluding therefrom any individual, who as of [date of Preliminary Approval], has filed a separate lawsuit of any type as a named plaintiff against Defendant, alleging the same or similar claims being released by the Settlement and/or who has previously released such claims.

"**Class Member**" means a member of the Class.

"**Class Period**" means the period from May 12, 2016 through and including August 31, 2023.

"**Class Settlement**" means the settlement and resolution of all Released Class Claims (described in Section III.D. below).

"**Aggrieved Employees**" means all of Defendant's non-exempt current and former employees working or who worked in the State of California in a Dockworker or Dockworker Lead position from April 10, 2019 through and including [date of Preliminary Approval or August 31, 2023, whichever is earlier].

"**PAGA Period**" means the period from April 10, 2019 through and including August 31, 2023.

"**PAGA Settlement**" means the settlement and resolution of all Released PAGA Claims (described in Section III.D. below).

## II.    BACKGROUND OF THE LAWSUIT

On November 6, 2020, Plaintiffs commenced a putative class action lawsuit by filing a Complaint (the "Complaint") in the Superior Court of California in and for the County of San Bernardino (the "State Court"), Case No. CIVSB2025678. The Complaint alleges six (6) causes of action for alleged violations of the California Labor Code and applicable California Industrial Welfare ("IWC") Wage Orders on behalf of Plaintiffs and other current and former non-exempt "dock worker" employees of Defendant. On December 17, 2020, Plaintiffs filed a First Amended Complaint in the State Court, which added a seventh claim pursuant to which Plaintiffs seek civil penalties under the California Labor Code Private Attorneys General Act of 2004, Cal. Lab. Code § 2698, *et seq.* ("PAGA"), pursuant to written notices Plaintiffs provided to the California Labor and Workforce Development Agency (the "LWDA") and Defendant of the specific provisions of the

**Questions?  Please call: [settlement administrator's 800-number]**

California Labor Code that Plaintiffs contend were violated (the "LWDA Notices").

On February 19, 2021, Defendant removed the Action to the United States District Court for the Central District of California, wherein it was assigned Case No. 5:21-cv-00287-JWH-KK.

On [date of Preliminary Approval], Plaintiffs were granted leave to file (and have now filed) a Fifth Amended Complaint for purposes of the Parties' settlement asserting putative class and representative action claims for wages, statutory and other non-wage damages or penalties, and civil penalties under the California Labor Code and applicable IWC Wage Orders (the "Operative Complaint"). The Operative Complaint alleges that the Class was not paid regular, minimum, or overtime wages for purported off-the-clock work and/or related to meal or rest break violations or final wages upon separation from employment, as required by California law; was not provided compliant meal and rest periods under the California Labor Code and Wage Orders; was not reimbursed for all business-related expenses; and was not provided wage statements with information specified in the California Labor Code. The Operative Complaint also alleges violations under the California Business and Professions Code §§ 17200 *et seq.* and seeks civil penalties pursuant to PAGA based on the foregoing state law claims. Plaintiffs seek, among other things, recovery of unpaid wages and meal and rest period premiums, unreimbursed business expenses, restitution, penalties, interest, and attorneys' fees and costs.

Defendant denies all of the allegations in the Action or that it violated any law.

The Parties participated in a mediation with a highly-respected and experience class action mediator, and as a result of the mediator's efforts, the Parties reached a settlement. The Parties have since entered into the Stipulation for Leave to File Fifth Amended Complaint and for Settlement and Release of Class Action and PAGA Claims (the "Settlement" or "Settlement Agreement").

On [date of Preliminary Approval], the Court entered an order preliminarily approving the Settlement. The Court has appointed Rust Consulting as the administrator of the Settlement (the "Settlement Administrator"), Plaintiff Tai Hang and Plaintiff Robert Canales as representatives of the Class (the "Class Representatives"), and the following Plaintiffs' attorneys as counsel for the Class ("Class Counsel"):

### LAW OFFICES OF KEVIN T. BARNES
Kevin T. Barnes [Barnes@kbarnes.com]1041 Parkside Commons, Suite 101
Greensboro, Georgia 30642
Tel: (213) 793-9100

### LAW OFFICES OF RAPHAEL A. KATRI
Raphael A. Katri [RKatri@socallaborlawyers.com]
8549 Wilshire Boulevard, Suite 200
Beverly Hills, California 90211
Tel: (310) 940-2034; Fax: (310) 733-5644

### STONEBROOK LAW
Joseph Tojarieh [JFT@stonebrooklaw.com]
10250 Constellation Boulevard, Suite 100
Los Angeles, California 90067
Tel: (310) 553-5533; Fax: (310) 553-5536

If you are a Class Member, you do not need to take any action to receive an Individual Settlement Payment, but you have the opportunity to request exclusion from the Class Settlement (in which case you will not receive an Individual Settlement Payment), object to the Class Settlement, and/or dispute the Workweeks credited to you, if you so choose, as explained more fully in Sections III and IV below. If you are an Aggrieved Employee, you do not need to take any action to receive an Individual PAGA Payment.

The Settlement represents a compromise and settlement of highly disputed claims. Nothing in the Settlement is intended or

**2**
**Questions?  Please call: [settlement administrator's 800-number]**

will be construed as an admission by Defendant that the claims in the Action have merit or that Defendant has any liability to Plaintiffs, Class Members, or Aggrieved Employees. Plaintiffs and Defendant, and their respective counsel, have concluded and agree that, in light of the risks and uncertainties to each side of continued litigation, the Settlement is fair, reasonable, and adequate, and is in the best interests of Class Members and Aggrieved Employees. The Court has made no ruling on the merits of the claims asserted in the Action and has determined only that certification of the Class for settlement purposes is appropriate under California law.

## III.    SUMMARY OF THE PROPOSED SETTLEMENT

### A.    Settlement Formula

The total gross settlement amount is Two Million Eight Hundred Fifty Thousand Dollars ($2,850,000) (the "Gross Settlement Fund"). The portion of the Gross Settlement Fund that is available for payment to Class Members is referred to as the "Net Settlement Fund." The Net Settlement Fund will be the Gross Settlement Fund less the following payments which are subject to approval by the Court: (1) attorneys' fees, in an amount up to 33-1/3% of the Gross Settlement Fund (i.e., up to $950,000) and reimbursement of reasonable litigation costs and expenses in an amount up to Thirty Thousand Dollars ($30,000) (collectively, the "Attorneys' Fees and Costs") to Class Counsel; (2) an Enhancement Award in an amount up to Ten Thousand Dollars ($10,000) to each Plaintiff for their services in the Action; (3) the amount of Fifty Thousand Dollars ($50,000) allocated toward civil penalties under PAGA (the "PAGA Amount"); (4) Settlement Administration Costs in an amount presently projected not to exceed Thirty Thousand Dollars ($30,000) to the Settlement Administrator; and (5) employer-side payroll taxes and withholdings associated with payments made to Class Members. The PAGA Amount will be distributed 75% to the LWDA (i.e., $37,500) (the "LWDA Payment") and the remaining 25% (i.e., $12,500) will be distributed to Aggrieved Employees (the "Aggrieved Employees Payment").

Class Members are eligible to receive payment under the Class Settlement of their *pro rata* share of the Net Settlement Fund ("Individual Settlement Share") based on the number of workweeks actually worked by each Class Member for Defendant as a non-exempt Dockworker or Dockworker Lead in California during the Class Period (the "Workweeks").

The Settlement Administrator has multiplied the Net Settlement Fund by a fraction, the numerator of which is the Class Member's individual number of Workweeks actually worked during the Class Period, and the denominator of which is the total number of Workweeks actually worked by all Class Members, to yield the Class Member's estimated Individual Settlement Share he or she may be eligible to receive under the Class Settlement (which is listed in Section III.C. below). Class Members who do not submit a timely and valid Request for Exclusion (the "Participating Class Members") will be issued payment of their final Individual Settlement Payment.

Each Individual Settlement Share will be allocated as twenty percent 25% wages (the "Wages Portion"), 50% for non-wage statutory or other non-wage damages or penalties, and 25% interest. The penalties, statutory and other non-wage damages, and interest portions are collectively referred to as the "Non-Wage Portions." The Wages Portion will be reported on an IRS Form W-2 and the Non-Wage Portions will be reported on an IRS Form 1099 (if applicable). Each Individual Settlement Share will be subject to reduction for the employee's share of taxes and withholdings with respect to the Wages Portion of the Individual Settlement Share (the net payment is referred to as "Individual Settlement Payment"). The employer's share of payroll taxes and contributions with respect to the Wages Portion of Individual Settlement Shares shall be paid from the Gross Settlement Fund.

Aggrieved Employees are eligible to receive payment under the PAGA Settlement of their *pro rata* share of the Aggrieved Employees Payment ("Individual PAGA Payment") based on the number of pay periods worked by each Aggrieved Employee for Defendant as a non-exempt Dockworker or Dockworker Lead in California during the PAGA Period (the "PAGA Pay Periods").

The Settlement Administrator has multiplied the Aggrieved Employees Payment by a fraction, the numerator of which is the Aggrieved Employee's individual number of PAGA Pay Periods, and the denominator of which is the total number of PAGA Pay Periods of all Aggrieved Employees, to yield the Aggrieved Employee's estimated Individual PAGA Payment he or she may be eligible to receive under the PAGA Settlement (which is listed in Section III.C. below).

Each Individual PAGA Payment will be allocated as 100% penalties, which will be reported on IRS Form 1099 (if applicable).

If the Court grants final approval of the Settlement, Individual Settlement Payments will be mailed to Participating Class

**Questions?  Please call: [settlement administrator's 800-number]**

Members and Individual PAGA Payments will be mailed to Aggrieved Employees at the address that is on file with the Settlement Administrator.  **If the address to which this Notice was mailed is not correct, or if you move after you receive this Notice, you must provide your correct mailing address to the Settlement Administrator as soon as possible to ensure you receive any payment that you may be entitled to under the Settlement.**

**B.   Your Workweeks Based on Defendant's Records**

**According to Defendant's records, you are credited as having actually worked [_____] Workweeks.**

If you wish to dispute the Workweeks credited to you, you must submit a written dispute (a "Workweeks Dispute") to the Settlement Administrator, which must: (i) include your full name, current mailing address, telephone number, signature, and last four digits of your Social Security number; (ii) include the case name and number of the Action (*Tai Hang, et al. v. Old Dominion Freight Line, Inc.,* United States District Court, Central District of California, Case No. 5:21-cv-00287-JWH-KK); (iii) include a statement indicating that you seek to dispute the number of Workweeks credited to you, the time period(s) you worked for Defendant in a non-exempt Dockworker or Dockworker Lead position in California during the Class Period, and the number of Workweeks that you contend should be credited to you; (iv) include documentation and/or other facts supporting your position; and (v) be submitted by mail to the Settlement Administrator at the specified address listed in Section IV.B. below, postmarked on or before [**Response Deadline**].

**C.   Your Estimated Individual Settlement Share and Individual PAGA Payment**

As explained above, your estimated Individual Settlement Share is based on the number of Workweeks credited to you and your estimated Individual PAGA Payment is based on the number of PAGA Pay Periods credited to you.

> **Under the terms of the Settlement, your Individual Settlement Share is estimated to be $_____. The Individual Settlement Share is subject to reduction for taxes and withholdings with respect to the Wages Portion of the Individual Settlement Share and will only be distributed if the Court approves the Settlement and after the Settlement goes into effect.**

> **Under the terms of the Settlement, your Individual PAGA Payment is estimated to be $_____.**

The settlement approval process may take multiple months.  Your Individual Settlement Share and/or Individual PAGA Payment (if applicable) reflected in this Notice is only an estimate.  Your actual Individual Settlement Share and Individual PAGA Payment (if applicable) may be higher or lower.

**D.   Release of Claims**

Upon occurrence of the Effective Date and full funding of the Gross Settlement Fund, Plaintiffs and the Participating Class Members will release the Released Parties of and from the Released Class Claims. To the extent required under applicable law, Participating Class Members who cash, deposit, or otherwise negotiate their Individual Settlement Payment will be deemed to have opted-in to the Action for purposes of the release of Released Class Claims arising under the federal Fair Labor Standards Act ("FLSA").

Upon the occurrence of the Effective Date and full funding of the Gross Settlement Fund, Plaintiffs, the LWDA and the Aggrieved Employees will release the Released Parties of and from all claims for any civil penalties recoverable under the California Labor Code, including PAGA, arising out of or related to the Released Class Claims, as well as costs and attorneys' fees related thereto, that arose, accrued, and/or have been asserted during the PAGA Period.

"Released Class Claims" means the same as "Released Claims" in Paragraph 40.b of the Settlement Agreement:  any and all allegations, claims, debts, rights, demands, charges, complaints, actions, causes of action, guarantees, costs, expenses, attorneys' fees, economic damages, non-economic damages, restitution, civil penalties, statutory penalties, liquidated

**Questions?  Please call: [settlement administrator's 800-number]**

4879-3576-8671.2
4859-4319-9084.1

damages, punitive damages, interest, obligations, liabilities, or other monies and remedies, of any and every kind, contingent or accrued, that have been or reasonably could have been alleged or asserted in the 5AC and/or any of the pleadings filed in the Action and/or in any notice sent by Plaintiffs to the LWDA pursuant to PAGA based on the factual and/or legal violations allegations contained therein, including, claims for any type of rest and meal break violations, any type of wage claims arising out of or related to any purported off-the-clock work as alleged in the 5AC and/or related to any purported meal or rest break violations, any type of wage statement violation claims, any type of expense reimbursement claims, any waiting time penalties claims, any type of derivative UCL and PAGA claims based on the foregoing, and parallel claims that may be brought under the FLSA based on the foregoing, including any alleged violations of California Labor Code §§ 201-203, 204, 206, 210, 221, 226, 226.3, 226.7, 510, 512, 516, 558, 1174, 1194, 1194.2, 1197, 1197.1, 1198, 1199, and/or 2802, and/or civil penalties pursuant to PAGA based on the foregoing.

"Released Parties" means Defendant and its employees, officers, directors, shareholders, members, administrators, parent and subsidiary entities, trustees, sponsors, fiduciaries, agents, contractors, representatives, attorneys, accountants, insurers, predecessors, successors and assigns, past, present, and future (collectively, the "Affiliated Releasees"), and each and all of their respective Affiliated Releasees, past, present, and future, and all persons acting under, by, through, or in concert with any of them.

### E.  Attorneys' Fees and Costs to Class Counsel

Class Counsel will seek attorneys' fees in an amount up to one-third (1/3) of the Gross Settlement Fund (i.e., up to $950,000) and reimbursement of reasonable litigation costs and expenses in an amount up to Thirty Thousand Dollars ($30,000) (collectively, the "Attorneys' Fees and Costs"), subject to approval by the Court. The Attorneys' Fees and Costs granted by the Court will be paid from the Gross Settlement Fund. Class Counsel has been prosecuting the Action on behalf of Plaintiffs, Class Members, and Aggrieved Employees on a contingency fee basis (that is, without being paid any money to date) and has been paying all litigation costs and expenses.

### F.  Enhancement Awards to Plaintiffs

Plaintiffs will each seek the amount of Ten Thousand Dollars ($10,000) ("Enhancement Awards"), in recognition of their services in connection with the Action. The Enhancement Awards will be paid from the Gross Settlement Fund, subject to approval by the Court, and if awarded, will be paid to Plaintiffs in addition to their respective Individual Settlement Payment and Individual PAGA Payment that they are entitled to under the Settlement.

### G.  Settlement Administration Costs to Settlement Administrator

Payment to the Settlement Administrator is presently estimated not to exceed Thirty Thousand Dollars ($30,000) (the "Settlement Administration Costs") for the costs of the notice and settlement administration process, including and not limited to, the expense of notifying the Class Members of the Settlement, processing Requests for Exclusion, Objections, and Workweeks Disputes, calculating Individual Settlement Shares, Individual Settlement Payments, and Individual PAGA Payments, and distributing payments and tax forms under the Settlement, and shall be paid from the Gross Settlement Fund, subject to approval by the Court.

## IV.  WHAT ARE YOUR RIGHTS AND OPTIONS AS A CLASS MEMBER?

### A.  Participate in the Settlement

**If you want to participate in the Settlement and receive money from the Settlement, you do not have to do anything**. You will automatically be included in the Class Settlement and issued your Individual Settlement Payment unless you decide to exclude yourself from the Class Settlement.

Unless you elect to exclude yourself from the Class Settlement, you will be bound by the terms of the Class Settlement and any judgment that may be entered by the Court based thereon, and you will release the Released Class Claims described in Section III.D. above.

If you are an Aggrieved Employee, you will automatically be included in the PAGA Settlement and issued your Individual PAGA Payment. This means you will be bound by the terms of the PAGA Settlement and any judgment that may be entered

4879-3576-8671.2
4859-4319-9084.1

by the Court based thereon, and you will release the Released PAGA Claims described in Section III.D. above.

Class Members and Aggrieved Employees will not be separately responsible for the payment of attorney's fees or litigation costs and expenses, unless they retain their own counsel, in which event they will be responsible for their own attorney's fees and expenses.

## B.    Request Exclusion from the Class Settlement

A Class Member may request to opt out of and be excluded from the Class Settlement by submitting a written request ("Request for Exclusion") to the Settlement Administrator, which must: (i) include the full name, current mailing address, telephone number, signature, and last four digits of the Social Security number of the Class Member seeking exclusion; (ii) include the case name and number of the Action (*Tai Hang, et al. v. Old Dominion Freight Line, Inc.*, United States District Court for the Central District of California, Case No. 5:21-cv-00287-JWH-KK); (iii) include a statement that the Class Member seeks to be excluded from the Class Settlement which is the same or substantially similar to the following language**: "I elect to opt-out of the *Hang, et al. v. Old Dominion Freight Line, Inc.* class action settlement. I understand that by doing so, I will not participate in the class settlement, and will not receive any money from it"**; and (iv) be submitted by mail to the Settlement Administrator at the specified address below, postmarked on or before [Response Deadline].

[Settlement Administrator]
[Mailing Address]

If the Court grants final approval of the Settlement, any Class Member who submits a timely and valid Request for Exclusion will not be entitled to receive an Individual Settlement Payment, will not be bound by the release of Released Class Claims (described in Section III.D. above), and will not have any right to object to, appeal, or comment on the Settlement. Class Members who do not submit a timely and valid Request for Exclusion will be deemed Participating Class Members and will be bound by all terms of the Settlement, including those pertaining to the release of claims described in Section III.D. above, as well as any judgment that may be entered by the Court based thereon. Aggrieved Employees will be bound to the PAGA Settlement and will still be issued an Individual PAGA Payment, irrespective of whether they submit a Request for Exclusion.

## C.    Object to the Class Settlement

A Class Member may object to the Class Settlement, as long as he or she had not submitted a Request for Exclusion (i.e., he or she is a Participating Class Member), by submitting a written objection ("Objection") to the Settlement Administrator, which must: (i) include the full name, current mailing address, telephone number, signature, and last four digits of the Social Security number of the objecting Class Member; (ii) include the case name and number of the Action (*Tai Hang, et al. v. Old Dominion Freight Line, Inc.,* United States District Court, Central District of California, Case No. 5:21-cv-00287-JWH-KK); (iii) include a statement indicating the legal and factual grounds for the objection; (iv) include a statement indicating whether the objecting Class Member is represented by counsel and identifying any such counsel; (v) include a statement indicating whether the objecting Class Member intends to appear for and wishes to be heard at the Final Approval Hearing; and (vi) be submitted by mail to the Settlement Administrator at the specified address listed in Section IV.B. above, postmarked on or before [Response Deadline].

Participating Class Members will also have the right to appear at the Final Approval Hearing in order to orally present objections to the Court, whether or not they have submitted a written objection.

## V.    FINAL APPROVAL HEARING

The Court will hold a Final Approval Hearing in Courtroom 9D of the United States District Court, Central District of California, located at the Ronald Reagan Federal Building, 411 W. 4th Street, Santa Ana, CA 92701, on [**date**], at [**time**], to determine whether the Settlement should be finally approved as fair, reasonable, and adequate.  The Court also will be asked to approve and grant the Attorneys' Fees and Costs to Class Counsel, Enhancement Awards to Plaintiffs, and Settlement Administration Costs to the Settlement Administrator.

**6**

**Questions?  Please call: [settlement administrator's 800-number]**

The hearing may be continued without further notice to Class Members.  It is not necessary for you to appear at the Final Approval Hearing, although you may appear if you wish to. Personal appearances and telephonic appearances are an option.

Please visit the Court's website for the most up-to-date information regarding the impact of COVID-19 on the operations of the Court and any requirements that may apply for accessing Court facilities: https://www.cacd.uscourts.gov/.

## VI.   **ADDITIONAL INFORMATION**

The above is a summary of the basic terms of the Settlement.  For the precise terms and conditions of the Settlement Agreement, you should review the detailed Settlement Agreement and other papers which are on file with the Court.

You may view the Settlement Agreement and other court records in the Action by visiting the Office of the Clerk of the United States District Court, Central District of California, located at 411 W. 4th Street, Santa Ana, CA 92701 during business hours, or by online by visiting the following website: http://pacer.psc.uscourts.gov/. Fees and other charges may apply in order to obtain copies of court records.

**PLEASE DO NOT TELEPHONE THE COURT OR THE OFFICE OF THE CLERK FOR INFORMATION REGARDING THIS SETTLEMENT.**

**IF YOU HAVE ANY QUESTIONS, YOU MAY CALL THE SETTLEMENT ADMINISTRATOR AT THE FOLLOWING TOLL-FREE NUMBER: [INSERT], OR YOU MAY ALSO CONTACT CLASS COUNSEL.**

**Questions?  Please call: [settlement administrator's 800-number]**

4879-3576-8671.2
4859-4319-9084.1

EXHIBIT 3

Kevin T. Barnes, Esq. (#138477)
LAW OFFICES OF KEVIN T. BARNES
1041 Parkside Commons, Suite 101
Greensboro, GA 30642-4519
Tel.: (213) 793-9100
Email: Barnes@kbarnes.com

Raphael A. Katri, Esq. (#221941)
LAW OFFICES OF RAPHAEL A. KATRI
8549 Wilshire Boulevard, Suite 200
Beverly Hills, CA 90211-3104
Tel.: (310) 940-2034 / Fax: (310) 733-5644
Email: RKatri@socallaborlawyers.com

Attorneys for Plaintiff TAI HANG, on
behalf of himself and all others similarly situated

**Additional Counsel on Next Page**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAI HANG and ROBERT CANALES, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> OLD DOMINION FREIGHT LINE, INC., a Virginia corporation; and DOES 1 to 100, inclusive, <br><br> Defendants. | <u>CLASS ACTION</u> <br><br> Case No.: 5:21-cv-00287-JWH-KK <br><br> **[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT** <br><br> <u>Preliminary Approval Hearing:</u> <br> Date: August 4, 2023 <br> Time: 9:00 a.m. <br> Courtroom: 9D <br><br> Honorable John W. Holcomb <br> Courtroom 9D <br><br> Action filed: November 6, 2020 <br> Trial Date: None Set |

///

///

///

- 1 -

**<u>Additional Counsel for Plaintiffs:</u>**

Joseph Tojarieh, Esq. (#265492)
STONEBROOK LAW
10250 Constellation Boulevard, Suite 100
Los Angeles, CA 90067
Tel: (310) 553-5533 / Fax: (310) 553-5536
Email: JFT@stonebrooklaw.com

Attorneys for Plaintiff ROBERT CANALES, on
behalf of himself and all others similarly situated

///

///

///

---

**- 2 -**

**[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR
PRELIMINARY APPROVAL OF CLASS AND REPRESENTATIVE
ACTION SETTLEMENT**

1

## [PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL

2       On August 4, 2023, the Court conducted a hearing on the unopposed Motion

3  for Preliminary Approval of Class and Representative Action Settlement filed by

4  named Plaintiffs Tai Hang and Robert Canales on behalf of themselves and all

5  others similarly situated, (hereinafter, collectively "Plaintiffs").  The Court has

6  reviewed and considered the Memorandum of Points and Authorities in support of

7  the Motion, the Declarations of Counsel and the exhibits in support of the Motion,

8  including the Stipulation and Settlement of Class and Representative Action

9  ("Settlement") between Plaintiffs and Defendant Old Dominion Freight Line, Inc.

10  ("Defendant"), (Plaintiffs and Defendant shall be referred to collectively as the

11  "Parties").

12       This Order hereby incorporates by reference the definitions in the

13  Settlement Agreement as though fully set forth herein, and all terms used herein

14  shall have the same meaning as set forth in the Settlement Agreement.

15       NOW THEREFORE, having read and considered the foregoing, the Court

16  **HEREBY MAKES THE FOLLOWING FINDINGS:**

17       1.       The Court finds on a preliminary basis that the proposed Settlement

18  falls within the range of reasonableness, and the terms of the Settlement, as set

19  forth in the Settlement Agreement, are presumptively fair, adequate, and

20  reasonable to the Class and, therefore, meet the requirements for preliminary

21  approval, subject only to any objections that may be raised before or at the Final

22  Fairness and Approval Hearing. It appears to the Court that the Settlement's terms

23  are fair, adequate, and reasonable as to all potential Class Members when balanced

24  against the probable outcome of further litigation, given the risks relating to

25  liability and damages.  It further appears that extensive investigation and research

26  has been conducted such that counsel for the Parties at this time are reasonably

27  able to evaluate their respective positions.  It further appears to the Court that the

28  Settlement at this time would avoid substantial additional costs by all Parties, as

**[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR
PRELIMINARY APPROVAL OF CLASS AND REPRESENTATIVE
ACTION SETTLEMENT**

well as the delay and risks that would be presented by the further prosecution of the Action.  It appears that the Settlement has been reached as a result of intensive, arm's-length negotiations utilizing an experienced third party neutral.

The Court further finds, for settlement purposes only, that under the provisions of <u>Federal Rule of Civil Procedure</u> 23, the Trial Court has discretion to certify a Class where questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and that a class action is superior to the available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. Proc. 23(b)(3). Certification of a Class is the appropriate judicial device under these circumstances.

2.      Therefore, the Court certifies, for settlement purposes only, the following Classes described in the Motion for Preliminary Approval and Settlement Agreement:

The Settlement Classes are as follows:

All of Defendant's non-exempt current and former employees working or who worked in the State of California in a Dockworker or Dockworker Lead position during the Settlement Period (defined as May 12, 2016 through Preliminary Approval of the Class and Representative Action Settlement or August 31, 2023, whichever is earlier). It shall be an opt-out class.

3.      The Court further finds that the moving papers presented for the Court's review set forth a plan to provide proper notice to the Classes of the terms of the Settlement and the options available to the Classes, including the ability of the Class Members to Opt-Out or submit a Request for Exclusion to the Settlement and not be bound by the Settlement Agreement or receive any Settlement Payment under it; to object to the terms of the Settlement; or to do nothing and receive a Settlement Payment and be bound by the terms of the Settlement.  Plaintiffs have submitted to the Court a proposed Notice of Class Settlement.

///

- 4 -

**[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT**

As a result, for good cause appearing, **IT IS HEREBY ORDERED THAT**:

1.      The Court hereby preliminarily approves the proposed Settlement upon the terms, conditions, and all release language set forth in the Settlement Agreement attached hereto as **Exhibit 1**.

2.      The Court conditionally certifies and approves, for settlement purposes only, the Classes described above.

3.      For the purposes of this Settlement, the Law Offices of Kevin T. Barnes, the Law Offices of Raphael A. Katri and Stonebrook Law ("Class Counsel") are hereby appointed as Class Counsel and shall represent the Class Members in this Action.  Any Class Member may enter an appearance in the Action, at their own expense, either individually or through counsel of their own choice; however, if they do not enter an appearance, they will be represented by Class Counsel.

4.      For the purposes of this Settlement, Plaintiffs Tai Hang and Robert Canales are hereby appointed as Class Representatives for the Classes.

5.      The Court appoints Rust Consulting Inc. to be the Settlement Administrator.  The procedures for paying the Settlement Administrative Costs, as set forth in the Settlement Agreement, are approved. Rust Consulting Inc. is directed to perform all responsibilities of the Settlement Administrator as set forth in the Settlement Agreement.

6.      The Court hereby approves, as to form and content, the Notice of Class And Representative Action Settlement attached as **Exhibit B** to the Settlement Agreement ("Notice"). The Court finds that the dates and procedure for mailing and distributing the Notice of in the manner set forth in Paragraph 7 of this Order meets the requirements of due process and are the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons entitled thereto.

**[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT**

7.     The Court directs the mailing of the Court-approved Notice via first class mail to the Class Members in accordance with the schedule and procedures set forth in the Settlement Agreement.

a.  Within thirty (30) calendar days of the date of preliminary approval of this Settlement, Defendant shall provide to the Settlement Administrator the Class Lists; and

b.  Within fifteen (15) calendar days of receiving the Class Lists from Defendant, the Settlement Administrator shall mail, by First-Class United States mail, the Notice to each Class Member. The Settlement Administrator shall conduct a National Change of Address database search before mailing the Notices and will also use the most recent address available to the Settlement Administrator for mail delivery.  Any returned mail with a forwarding address from the U.S. postal service shall be promptly re-mailed to the new address.  The Settlement Administrator shall perform a skip trace search for a new address for any returned mail without a forwarding address.

8.     The procedures for Class Members to Opt-Out or submit a Request for Exclusion, as set forth in the Notice, are approved.  The time for Class Members to Opt-Out of the Settlement, or submit a Request for Exclusion from the Settlement, shall be forty-five (45) days after the date of the first mailing of the Notices.

9.     The procedures for Class Members to object to the Settlement, as set forth in the Notice, are approved.  The time for Class Members to object to the Settlement shall be forty-five (45) days after the date of the first mailing of the Notices.

10.     The procedures for Class Members to dispute the number of workweeks worked, as set forth in the Notice are approved.  The time for Class

**[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT**

Members to submit a workweek dispute shall be forty-five (45) days after the date of the first mailing of the Notices.

11.     The Court hereby preliminarily approves the definition and disposition of the Class Settlement Amount as that term is defined in the Settlement Agreement.  The Court preliminarily approves the distribution of the Class Settlement Amount, all subject to the Court's final approval of the Settlement at the Final Approval Hearing.  Assuming the Settlement receives final approval, Defendant shall be required to pay only the Class Settlement Amount in the total amount of $2,850,000 plus the employer's share of taxes due as a result of this Settlement.

12.     A Final Approval Hearing (the "Hearing") shall be held on _____, 2023 at _____a.m./p.m. before the Honorable Judge John W. Holcomb in Courtroom 9D of the United States District Court – Central District of California. The purpose of such Hearing will be to: (a) determine whether the proposed Settlement should be finally approved by the Court as fair, reasonable, and adequate; (b) determine the reasonableness of Class Counsels' request for attorneys' fees and costs and the amount to be awarded; (c) determine the reasonableness of the Class Representatives' Service Awards requested for the Class Representatives and the amounts to be awarded; and, (d) order entry of Judgment in the Class and Representative Action, which shall constitute a complete release and bar with respect to the Released Claims.

13.     Class Counsel shall file and serve all papers in support of the Motion for Final Approval and any application for reimbursement of attorneys' fees and costs, including any costs associated with or incurred by the Settlement Administrator, by _____, 2023.

14.     Class Counsel shall file and serve a declaration from the Settlement Administrator as to all participation, objections, and opt outs by Class Members by _____, 2023.

- 7 -

**[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT**

15.     The Court reserves the right to continue the date of the Final
Approval Hearing without further notice to the Class Members and retains
jurisdiction to consider all further applications arising out of or connected with the
proposed Settlement. However, Class Counsel and/or the Settlement
Administrator will give notice to any objecting party of any continuance of the
Final Approval Hearing.

16.     All further proceedings in this Action shall be stayed except such
proceedings necessary to review, approve, and implement this Settlement.

17.     In the event: (i) the Court does not finally approve the Settlement as
contemplated by the Settlement Agreement; (ii) the Court does not enter a Final
Approval Order as contemplated by the Settlement Agreement, which becomes
final as a result of the occurrence of the Effective Date (as that term is defined by
in the Settlement Agreement); or, (iii) the Settlement does not become final for
any other reason, the Settlement and any related certification of Classes for
purposes of the Settlement, shall be null and void and any order or judgment
entered by this Court in furtherance of the Settlement shall be deemed as void
from the beginning.  In such a case, the Parties and any funds to be awarded under
this Settlement shall be returned to their respective statuses as of the date and time
immediately prior to the execution of the Settlement, and the Parties shall proceed
in all respects as if no Classes had been certified and the Settlement Agreement
had not been executed.

18.     Neither the Settlement, preliminarily approved or not, nor any
exhibit, document, or instrument delivered hereunder, nor any statement,
transaction, or proceeding in connection with the negotiation, execution, or
implementation of the Settlement, shall be admissible in evidence for any reason
except as provided in the Settlement Agreement.

///

///

**[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR
PRELIMINARY APPROVAL OF CLASS AND REPRESENTATIVE
ACTION SETTLEMENT**

**IT IS SO ORDERED.**

**Dated:** _____      _____

                                    **Honorable John W. Holcomb**
                                    **Judge of the United States District Court**

**[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT**

EXHIBIT 4

1  Kevin T. Barnes, Esq. (#138477)
   LAW OFFICES OF KEVIN T. BARNES
2  1041 Parkside Commons, Suite 101
   Greensboro, GA 30642-4519
3  Tel.: (213) 793-9100
   Email: Barnes@kbarnes.com
4
   Raphael A. Katri, Esq. (#221941)
5  LAW OFFICES OF RAPHAEL A. KATRI
   8549 Wilshire Boulevard, Suite 200
6  Beverly Hills, CA 90211-3104
   Tel.: (310) 940-2034 / Fax: (310) 733-5644
7  Email: RKatri@socallaborlawyers.com

8  Attorneys for Plaintiff TAI HANG, on
   behalf of himself and all others similarly situated
9
   **Additional Counsel on Next Page**
10
                **UNITED STATES DISTRICT COURT**
11
                **CENTRAL DISTRICT OF CALIFORNIA**
12
   TAI HANG and ROBERT      )    <u>**CLASS ACTION**</u>
13 CANALES, on behalf of    )
   themselves and all others similarly )  Case No.: 5:21-cv-00287-JWH-KK
14 situated,                )
                            )    **DECLARATION OF CLASS**
15        Plaintiffs,        )    **REPRESENTATIVE TAI HANG IN**
                            )    **SUPPORT OF PLAINTIFFS'**
16        v.                 )    **MOTION FOR PRELIMINARY**
                            )    **APPROVAL OF CLASS AND**
17 OLD DOMINION FREIGHT     )    **REPRESENTATIVE ACTION**
   LINE, INC., a Virginia   )    **SETTLEMENT**
18 corporation; and DOES 1 to 100, )
   inclusive,               )    <u>Preliminary Approval Hearing:</u>
19                          )    Date: August 4, 2023
          Defendants.       )    Time: 9:00 a.m.
20                          )    Courtroom: 9D
                            )
21                          )    Honorable John W. Holcomb
                            )    Courtroom 9D
22                          )
                            )    Action filed: November 6, 2020
23 _____ )    Trial Date: None Set

24            <u>**DECLARATION OF CLASS REPRESENTATIVE**</u>

25    I, Tai Hang, declare as follows:

26    1.    I am a competent adult, over the age of eighteen and am the Class

27 Representative Plaintiff in the matter <u>Tai Hang and Robert Canales v. Old</u>

28 <u>Dominion Freight Line, Inc.</u> The foregoing is based upon my personal knowledge

                              **- 1 -**
   **DECLARATION OF CLASS REPRESENTATIVE TAI HANG IN**
   **SUPPORT OF PRELIMINARY APPROVAL OF CLASS AND**
   **REPRESENTATIVE ACTION SETTLEMENT**

and, if called as a witness, I could and would competently testify thereto.

2.      I worked as a Dock Worker from approximately August 2007 to August 11, 2020 in the Rialto location in California.

3.      I am familiar with the work involved in prosecuting the Class Action against my former employer Old Dominion. I have had numerous meetings with my attorneys.  I am familiar with the client meetings, discovery conducted, settlement proceedings, and have participated in all stages of the litigation up to and including preparation for preliminary approval of class action settlement on behalf of the Class.

4.      When I worked for Defendant, I was subjected to the same labor code claims involving off the clock work, rest breaks, meal breaks, wage statements, and failure to pay all wages due to former employees as all other Class Members.

5.      I have and will continue to adequately represent the interests of all members of the proposed Class I seek to represent.  My claims are typical of these Class Members and involve the same common issues. I have no interests which are inconsistent with any of these Class Members.

6.      I have always considered the interests of the other Class Members just as I have my own interests and understand that I have to put the interests of the other Class Members before my own. I have participated, and will continue to participate, in this lawsuit up to and through the time of judgment. I have volunteered to represent the other Class Members because of the importance of the case and so that other Class Members can benefit from the enforcement of the law and the savings of time, money and effort that should result in the settlement of this case on a class basis.

7.      I believe that the Class Action Settlement obtained on behalf of the Class is fair and reasonable in view of the issues and risks involved with the case.

8.      I believe that the Class Service Award of $10,000 for me is fair and reasonable. This service award takes into consideration the time, effort, risks,

- 2 -

**DECLARATION OF CLASS REPRESENTATIVE TAI HANG IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT**

1  stress, sacrifice of signing a general release of all claims over just wage and hour

2  claims, as well as the benefit provided to all Class Members as a result of my

3  involvement in this litigation.

4      9.    I have spent approximately 35 hours on this case. This includes the

5  initial time I spent investigating these claims and all work for this litigation which

6  lasted over two and half years, meeting with my attorneys, the mediation prep and

7  attending the mediation, and all follow-up work with my attorneys. I believe I have

8  been diligent and acted above and beyond that which is expected of a Class

9  Representative throughout all stages of the litigation, up to and including final

10  approval of Class Action Settlement.

11      10.    Furthermore, it is my opinion that the service award is fair and

12  reasonable because in addition to the many hours spent participating in this case, I

13  accepted the potential risk of being liable for the opposing parties' costs if we were

14  unsuccessful in this lawsuit.  My attorneys told me these costs could be tens of

15  thousands of dollars or more based on the type of case involved and length of the

16  litigation. I believed in this case and was willing to be a Class Representative

17  Plaintiff knowing the risks involved.

18      11.    I signed a general release, so I am not only giving up my wage and

19  hour claims, but I am also giving up all claims I had against my former employer. I

20  was fired by Old Dominion and I believe I had a wrongful termination case.

21  However, because I have signed a general release of all claims against Defendant, I

22  can no longer pursue my potential wrongful termination case.

23      12.    This matter has also caused me significant stress and grief. It is often

24  on the back of my mind.  After my termination by Old Dominion, I was also out of

25  work for about three years and lost approximately $122,500 as a result of my

26  termination and that created a severe financial burden on me. During this time, I

27  had financial difficulty and was not able to pay my rent, bills, and my car

28  payments.

- 3 -

**DECLARATION OF CLASS REPRESENTATIVE TAI HANG IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT**

13.     This litigation has also resulted in a valuable benefit to the Class Members who will participate in the monetary payout of this Settlement because of my involvement. I have been advised by my attorneys that the average class member in will receive a settlement payment of approximately $519 and the highest settlement payment will be approximately $3,567.  This is a great benefit to all Class Members.

14.     Likewise, I risk the potential stigma of being a Class Representative in a Class Action labor dispute which may affect my future employment in this industry. A Google search with my name and Defendant shows that I'm a Plaintiff in this Class Action case in all of the first seven entries. Attached as **Exhibit 1** is a copy of the Google search page showing my name seven times.

15.     Based on the time, risk, stress, sacrifice of signing of a general release, and the great outcome of this and monetary payout, I believe that the requested service award for me is fair and reasonable. As such, I respectfully request that the Court award the requested Class Service Award of $10,000.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that if called as a witness, I could competently testify to the same.

Executed on July 6, 2023 at Banning, California.


By: _____
        Tai Hang, Declarant

- 4 -

**DECLARATION OF CLASS REPRESENTATIVE TAI HANG IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT**

DocuSign Envelope ID: 9A73F709-CAA4-42GE-8B65-E428E5552952

# EXHIBIT 1

Showing results for old dominion minion brush company inc

| tai hang v. old dominion | | | Sign In |

All    Images    Videos    News    More        Anytime

About 7,490,000 search results

www.courtlistener.com › docket › 59304375
**Tai Hang v. Old Dominion Freight Line, Inc. (5:21-cv-00287)**
**Docket for Tai Hang v. Old Dominion** Freight Line, Inc., 5:21-cv-00287 — Brought to you by the RECAP Initiative and Free Law Project, a non-profit dedicated to creating high quality open legal…

dockets.justia.com › docket › california
**Tai Hang et al v. Old Dominion Freight Line, Inc. 5 ...**
Feb 19, 2021 · **Tai Hang** and Robert Canales: Defendant: **Does 1 to 100, inclusive and Old Dominion Freight** Line, Inc. Case Number: 5:2021cv00287: Filed: February 19, 2021: Court: US District Court…

www.pacermonitor.com › public › case
**Tai Hang et al v. Old Dominion Freight Line, Inc. (5:21-cv ...**
**Tai Hang** et al v. **Old Dominion Freight Line**, Inc. (5:21-cv-00287), California Central District Court, Filed: 02/19/2021 - PacerMonitor Mobile Federal and Bankruptcy Court PACER Dockets

unicourt.com › case › pc-db5-tai-hang-et-al-v-old
**Tai Hang et al v. Old Dominion Freight Line, Inc. - UniCourt**
On 02/19/2021 Tai Hang filed **a Labor - Other Labor lawsuit** against Old Dominion Freight Line, Inc. This case was filed in U.S. District Courts, California Central District Court. The Judges overseeing…

unicourt.com › case › ca-sbd-complex-class-action
****Complex-Class Action** Tai Hang, et al.-v-Old Dominion**
On **11/06/2020 Complex-Class Action** Tai Hang, -v-Old Dominion was filed as an Other lawsuit. This case was filed in San Bernardino County Superior Courts, San Bernardino District Courthouse…

archive.org › details › gov
**Tai Hang v. Old Dominion Freight Line, Inc. : Free Download ...**
This item represents a case in **PACER,** the U.S. **Government's** website for federal case data. If you wish to see the entire case, please consult **PACER** directly.

www.law360.com › cases › 60303ba38484b30563ae18df
**Tai Hang et al v. Old Dominion Freight Line, Inc. - Law360**
Parties, docket activity and news coverage of federal case Tai Hang et al v. Old Dominion Freight Line, Inc., case number 5:21-cv-00287, from California Central Court.

## Searches related to tai hang v. old dominion

tai hang v. old dominion **minion brush company inc**
tai hang v. old dominion **ominion brush company inc**
tai hang v. old dominion **full**
tai hang v. old dominion **power**
tai hang v. old dominion **university**
tai hang v. old dominion **energy**
tai hang v. old dominion **financial**
tai hang v. old dominion **steel**
tai hang v. old dominion **international**
tai hang v. old dominion **title**
tai hang v. old dominion **electric**
tai hang v. old dominion **llc**

**1**  2  3  4  5  Next

DocuSign Envelope ID: 9A73E709-CAA4-42GE-9B6E-E428E5552952

yahoo!        Settings      Help     Suggestions      Privacy      Terms      Your Privacy Choices        CA Privacy Notice      Advertise      About ads      About this page

EXHIBIT 5

1  Kevin T. Barnes, Esq. (#138477)
   LAW OFFICES OF KEVIN T. BARNES
2  1041 Parkside Commons, Suite 101
   Greensboro, GA 30642-4519
3  Tel.: (213) 793-9100
   Email: Barnes@kbarnes.com
4
   Raphael A. Katri, Esq. (#221941)
5  LAW OFFICES OF RAPHAEL A. KATRI
   8549 Wilshire Boulevard, Suite 200
6  Beverly Hills, CA 90211-3104
   Tel.: (310) 940-2034 / Fax: (310) 733-5644
7  Email: RKatri@socallaborlawyers.com

8  Attorneys for Plaintiff TAI HANG, on
   behalf of himself and all others similarly situated
9
   **Additional Counsel on Next Page**
10
                  **UNITED STATES DISTRICT COURT**
11
                 **CENTRAL DISTRICT OF CALIFORNIA**
12

| | |
|---|---|
| TAI HANG and ROBERT CANALES, on behalf of themselves and all others similarly situated, | **CLASS ACTION** |
| | Case No.: 5:21-cv-00287-JWH-KK |
| Plaintiffs, | **DECLARATION OF ROBERT CANALES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT** |
| v. | |
| OLD DOMINION FREIGHT LINE, INC., a Virginia corporation; and DOES 1 to 100, inclusive, | Preliminary Approval Hearing: Date: August 4, 2023 Time: 9:00 a.m. Courtroom: 9D |
| Defendants. | Honorable John W. Holcomb Courtroom 9D |
| | Action filed: November 6, 2020 Trial Date: None Set |

23  ///
24  ///
25  ///
26
27
28

- 1 -
**DECLARATION OF ROBERT CANALES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT**

**<u>Additional Counsel for Plaintiffs:</u>**

Joseph Tojarieh, Esq. (#265492)
STONEBROOK LAW
10250 Constellation Boulevard, Suite 100
Los Angeles, CA 90067
Tel: (310) 553-5533 / Fax: (310) 553-5536
Email: JFT@stonebrooklaw.com

Attorneys for Plaintiff ROBERT CANALES, on behalf of himself and all others similarly situated

///

///

///

- 2 -
**DECLARATION OF ROBERT CANALES IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY APPROVAL OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT**

## DECLARATION OF ROBERT CANALES

I, Robert Canales, am a named Plaintiff in the above-described action. I have personal knowledge of all the following facts stated in this declaration and if called as a witness, I could and would competently testify thereto under oath:

1.      I make this declaration in support of the Motion for Preliminary Approval of Class Action Settlement.

2.      I was a dock worker for Defendant Old Dominion Freight Line, Inc.'s at its Rialto service center between January 28, 2018 and October 2, 2020.

3.      I worked for Defendant in the state of California as a non-exempt employee during the relevant time period and therefore, worked under the same policies and procedures for the entire period, as all other putative Class Members.

4.      Throughout my involvement in this lawsuit, I have cooperated with my attorney, Joseph Tojarieh of Stonebrook Law, ("Class Counsel") and taken actions to protect the interests of the class. I spent time actively consulting with my attorney; providing my attorney with relevant information; keeping myself informed of the developments in the case; and participating in decisions concerning the case, including settlement and finalizing the motions for preliminary approval.

5.      My efforts include, without limitation, the following:

- Meetings with Class Counsel.

- Searching for relevant documents.

- Searching for potential witnesses regarding Defendant's wage and hour practices.

- Telephone conversations with Class Counsel regarding the drafting and execution of the Joint Stipulation for Class Action Settlement and Release and its review prior to execution.

- Telephone conversations with Class Counsel regarding the drafting

- 3 -

**DECLARATION OF ROBERT CANALES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT**

1    and execution of the Joint Application for Preliminary Approval of

2    Class Action Settlement.

3        6.     I provided my attorneys with important and valuable information

4    regarding the claims made in this case, including our missed or interrupted meal

5    periods and our missed and interrupted rest periods, and unpaid regular and

6    overtime hours. The information I provided to my attorney was important in

7    establishing the violations alleged in this action. Without this information provided

8    by me and my fellow plaintiff, and our participation in this case, I believe it would

9    have been very difficult, if not impossible, for the class to obtain any discovery.

10        7.     As a named plaintiff in this matter, I placed myself at substantial risk

11    because, if Defendant was to prevail in this action, I could have been liable for

12    Defendant's costs and attorneys' fees.

13        8.     I chose to put the interest of the class before my own. Were it not for

14    my decision to initiate this litigation on a class-wide basis, approximately 3,500

15    Class Members likely would not have benefited from the agreed upon settlement.

16        9.     I believe that I may have had potential wrongful termination claims,

17    which I waived by my general release in the agreed upon settlement and for the

18    sake of the other putative Class Members.

19        10.    I believe that a $10,000 Class Representative Enhancement Award for

20    serving as a class representative is reasonable given the substantial time and effort

21    I have expended on behalf of the class and the risks I faced in serving as a named

22    plaintiff and a class representative. Approximately 3,500 class members received

23    the opportunity to participate in the settlement and to recover payment for alleged

24    wage and hour violations. Because I put myself on the line, each class member did

25    not have to expend his or her own time and resources to purse legal remedies

26    individually. This action would not have been possible without my active

27    participation and my willingness to place myself at risk for the sake of the other

28    putative Class Members.

- 4 -

**DECLARATION OF ROBERT CANALES IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY APPROVAL OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT**

1   I declare under penalty of perjury under the laws of the State of California

2   that the foregoing is true and correct. Executed on <u>July 6, 2023</u>             at

3   <u>Rialto</u>         , California.

4

5   By: _____

6       ROBERT CANALES

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DECLARATION OF ROBERT CANALES IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY APPROVAL OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT**

EXHIBIT 6

1  Kevin T. Barnes, Esq. (#138477)
   LAW OFFICES OF KEVIN T. BARNES
2  1041 Parkside Commons, Suite 101
   Greensboro, GA 30642-4519
3  Tel.: (213) 793-9100
   Email: Barnes@kbarnes.com
4
   Raphael A. Katri, Esq. (#221941)
5  LAW OFFICES OF RAPHAEL A. KATRI
   8549 Wilshire Boulevard, Suite 200
6  Beverly Hills, CA 90211-3104
   Tel.: (310) 940-2034 / Fax: (310) 733-5644
7  Email: RKatri@socallaborlawyers.com

8  Attorneys for Plaintiff TAI HANG, on
   behalf of himself and all others similarly situated
9
   **Additional Counsel on Next Page**
10
                 **UNITED STATES DISTRICT COURT**
11
                **CENTRAL DISTRICT OF CALIFORNIA**
12

13  TAI HANG and ROBERT            )   **CLASS ACTION**
    CANALES, on behalf of          )
14  themselves and all others similarly  )   Case No.: 5:21-cv-00287-JWH-KK
    situated,                      )
15                                 )   **DECLARATION OF ERIC BISHOP**
          Plaintiffs,              )   **FOR RUST CONSULTING, INC. IN**
16                                 )   **SUPPORT OF PLAINTIFFS'**
          v.                       )   **MOTION FOR PRELIMINARY**
17                                 )   **APPROVAL OF CLASS AND**
    OLD DOMINION FREIGHT           )   **REPRESENTATIVE ACTION**
18  LINE, INC., a Virginia         )   **SETTLEMENT**
    corporation; and DOES 1 to 100, )
19  inclusive,                     )   Preliminary Approval Hearing:
                                   )   Date: August 4, 2023
20        Defendants.              )   Time: 9:00 a.m.
                                   )   Courtroom: 9D
21                                 )
                                   )   Honorable John W. Holcomb
22                                 )   Courtroom 9D
                                   )
23  _____ )   Action filed: November 6, 2020
                                   )   Trial Date: None Set
24  ///

25  ///

26  ///

27

28

                              - 1 -

### DECLARATION OF ERIC BISHOP IN SUPPORT OF
### PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL

I, Eric Bishop, declare as follows:

1.      I am a Senior Vice President for Rust Consulting, Inc. ("Rust").  My business address is 625 Marquette Ave, Suite 900, Minneapolis, MN  55402.  My telephone number is (612) 359-2988.  I am over twenty-one years of age and am authorized to make this declaration on behalf of Rust and myself.

2.      Rust has extensive experience in class action matters, having provided services in class action settlements involving antitrust, securities fraud, property damage, employment discrimination, employment wage and hour, product liability, insurance and consumer issues.  We have provided notification and/or claims administration services in more than 7,500 projects.  Of these, approximately 3,500 were Labor & Employment cases.

3.      Rust's internal data security practices meet or exceed today's exacting industry standards.  Our enterprise-class data security measures are founded on standard business processes including a vigorous employee screening program, ongoing employee security training and a hardened production data center hosted at a Tier 1 network carrier, all designed for ensuring data integrity and security.

4.      Rust is being engaged by Counsel to provide notification services in the settlement Hang v Old Dominion (the "Settlement").  Duties will include: a) preparing, printing and mailing of the Notice of Class Action Settlement ("Class Notice"); b) tracking of requests for exclusion; c) drafting, mailing and tax reporting for Settlement Award checks to Class Members; and for such other tasks as the Parties mutually agree or the Court orders Rust to perform.

5.      Rust will obtain a mailing address to receive requests for exclusion, undeliverable Class Notices and other communications from Class Members.

6.      Rust will obtain a phone number and will staff with live Customer Services Representatives ("CSR") to be available for Class Members to call with

### DECLARATION OF ERIC BISHOP FOR RUST CONSULTING, INC.

questions regarding the Settlement and to provide address updates.  Spanish speakers will be available as needed.

7.      Rust expects to receive text for the Class Notice from Counsel shortly after preliminary approval of the Settlement is granted.

8.      Rust expects that Counsel for Defense will provide Rust with a mailing list (the "Class List") containing the Class Members names, last known addresses, Social Security Numbers and any other pertinent information necessary to carry out Rust's duties.

9.      Rust will mail the Class Notice prepared by the parties and approved by the Court.

10.     The mailing addresses contained in the Class List will be processed and updated utilizing the National Change of Address Database ("NCOA") maintained by the U.S. Postal Service.  The NCOA contains requested changes of address filed with the U.S. Postal Service.   In the event that any individual has filed a U.S. Postal Service change of address request, the address listed with the NCOA will be utilized in connection with the mailing of the Class Notice.

11.     For any Class Notices that are returned to Rust as undeliverable, Rust will perform address traces in an attempt to find an updated address.  The address trace will utilize the Class Member's name, previous address and Social Security Number.  In the event an updated address is obtained, the Class Notice documents will be promptly re-mailed to those Class Members via First Class mail.  For Class Notice documents that are returned by the Post Office with forwarding addresses attached, these Class Notice documents will be promptly re-mailed to those Class Members at the forwarding address via First Class mail.

12.     Rust will be responsible for receiving and validating all requests for exclusions and objections to the Settlement.

13.     Rust will be responsible for calculating award amounts and tax withholdings, printing and mailing payments including tax documents, establishing

- 3 -

**DECLARATION OF ERIC BISHOP FOR RUST CONSULTING, INC.**

a Qualified Settlement Fund ("QSF"), setting up a bank account and preparing annual tax filings on behalf of the QSF.

Rust will establish and set up a QSF in this case, as it does in all the cases that it serves as the settlement administrator, based upon all applicable laws and requirements.

14.    Rust will be the fiduciary of the QSF and responsible for all payments and tax reporting from the QSF.  The QSF will obtain its own tax ID and report all taxes under that tax ID.

15.    Rust anticipates that the employer-paid portion of the taxes will be approximately 14-20% of the wage component of the payments.

16.    Rust will provide Project Management and Technical Consulting staff to manage all aspects of the administration and be available to Counsel.

17.    Rust will post final judgment and the new date of the Final Approval Hearing, if continued by the Court, on its website.

18.    The total cost for the administration of this Settlement is estimated not to exceed $25,877 unless the class size (approx. 3,500) provided by counsel is materially different as that is the basis on which the estimate is provided.  The costs are comprised of the combination of the transactional costs for print, postage, banking activities, etc., as well as the hourly fees to carry out the administrative duties.

19.     None of the parties in this matter have a financial or ownership relation with Rust.

I declare under penalty of perjury under the laws of the State of California and the United States that the above is true and correct to the best of my knowledge and that this Declaration was executed this 5th day of July 2023, at Minneapolis, MN.

_____
Eric Bishop, Declarant

- 4 -

**DECLARATION OF ERIC BISHOP FOR RUST CONSULTING, INC.**

EXHIBIT 7

Thursday, July 6, 2023 at 18:43:08 Pacific Daylight Time

**Subject:** Thank you for your Other Response or Document Submission
**Date:** Thursday, July 6, 2023 at 6:38:12 PM Pacific Daylight Time
**From:** DIR PAGA Unit
**To:** Jacquelyn Luong

Caution: This email originated from outside of the organization. Please take care when clicking links or opening attachments unless you recognize the sender and know the content is safe.

07/06/2023 06:37:27 PM

Thank you for your submission to the Labor and Workforce Development Agency.

Item submitted: Other Response or Document Submission
If you have questions or concerns regarding this submission or your case, please send an email to pagainfo@dir.ca.gov.

DIR PAGA Unit on behalf of
Labor and Workforce Development Agency

Website: http://labor.ca.gov/Private_Attorneys_General_Act.htm

Page 1 of 1

Thursday, July 6, 2023 at 18:43:26 Pacific Daylight Time

**Subject:** Thank you for your Other Response or Document Submission
**Date:** Thursday, July 6, 2023 at 6:41:14 PM Pacific Daylight Time
**From:** DIR PAGA Unit
**To:** Jacquelyn Luong

Caution: This email originated from outside of the organization. Please take care when clicking links or opening attachments unless you recognize the sender and know the content is safe.

07/06/2023 06:40:32 PM

Thank you for your submission to the Labor and Workforce Development Agency.

Item submitted: Other Response or Document Submission
If you have questions or concerns regarding this submission or your case, please send an email to pagainfo@dir.ca.gov.

DIR PAGA Unit on behalf of
Labor and Workforce Development Agency

Website: http://labor.ca.gov/Private_Attorneys_General_Act.htm

EXHIBIT 8

1  Kevin T. Barnes, Esq. (#138477)
   Gregg Lander, Esq. (#194018)
2  LAW OFFICES OF KEVIN T. BARNES
   1635 Pontius Avenue, Second Floor
3  Los Angeles, CA 90025-3361
   Tel.: (323) 549-9100 / Fax: (323) 549-0101
4  Email: Barnes@kbarnes.com

5  Raphael A. Katri, Esq. (#221941)
   LAW OFFICES OF RAPHAEL A. KATRI
6  8549 Wilshire Boulevard, Suite 200
   Beverly Hills, CA 90211-3104
7  Tel.: (310) 940-2034 / Fax: (310) 733-5644
   Email: RKatri@socallaborlawyers.com
8
   Attorneys for Plaintiff TAI HANG, on
9  behalf of himself and all others similarly situated

10 Joseph Tojarieh, Esq. (#265492)
   STONEBROOK LAW
11 10250 Constellation Boulevard, Suite 100
   Los Angeles, CA 90067
12 Tel: (310) 553-5533 / Fax: (310) 553-5536
   Email: jft@stonebrooklaw.com
13
   Attorneys for Plaintiff ROBERT CANALES, on
14 behalf of himself and all others similarly situated

15                **UNITED STATES DISTRICT COURT**

16              **CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 17  TAI HANG and ROBERT CANALES, on behalf of themselves and all others similarly situated, | **CLASS ACTION** |
| 18 | |
| 19 | Case No.: 5:21-cv-00287-JWH-KK |
| 20              Plaintiffs, | **FIFTH AMENDED CLASS ACTION (FRCP RULE 23) COMPLAINT FOR:** |
| 21              v. | |
| 22  OLD DOMINION FREIGHT LINE, INC., a Virginia corporation; and DOES 1 to 100, inclusive, | 1. **FAILURE TO PAY MINIMUM WAGES;** |
| 23 | 2. **FAILURE TO PAY OVERTIME WAGES;** |
| 24              Defendants. | 3. **FAILURE TO PROVIDE LEGALLY-COMPLIANT REST PERIODS;** |
| 25 | 4. **FAILURE TO AUTHORIZE AND PERMIT ALL PAID REST PERIODS;** |
| 26 | 5. **FAILURE TO PROVIDE LEGALLY-COMPLIANT MEAL PERIODS;** |
| 27 | 6. **FAILURE TO REIMBURSE FOR NECESSARY BUSINESS EXPENSES;** |

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL: (323) 549-9100
FAX: (323) 549-0101
BARNES@KBARNES.COM

- 1 -
**FIFTH AMENDED COMPLAINT**

DocuSign Envelope ID: 14048674-C683-4556-9491-590A98497C1A

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
_____
)

**7.   INDEPENDENT FAILURE TO TIMELY FURNISH ACCURATE ITEMIZED WAGE STATEMENTS;**
**8.   DERIVATIVE FAILURE TO TIMELY FURNISH ACCURATE ITEMIZED WAGE STATEMENTS;**
**9.   VIOLATIONS OF <u>LABOR CODE</u> §203;**
**10.  PENALTIES PURSUANT TO LABOR CODE §2699; AND**
**11.  UNFAIR BUSINESS PRACTICES**

**DEMAND FOR JURY TRIAL**

Honorable John W. Holcomb
Courtroom 2

Action filed: November 6, 2020
Trial Date: None Set

Plaintiffs TAI HANG and ROBERT CANALES, individuals on behalf of themselves and all others similarly situated (hereinafter collectively referred to as "Plaintiffs"), hereby file this Fifth Amended Complaint against Defendant OLD DOMINION FREIGHT LINE, INC. and DOES 1 to 100 (hereinafter collectively referred to as "Defendants"). Plaintiffs are informed and believe, and on the basis of that information and belief, allege as follows:

1.      Pursuant to <u>Federal Rule of Civil Procedure</u> ("<u>FRCP</u>") Rule 23, Plaintiffs institute this Class action and Private Attorney General action for actual damages, liquidated damages, statutory penalties, restitution, attorneys' fees and the costs of this action against Defendants for multiple violations of the California <u>Labor Code</u> ("<u>Labor Code</u>"), California <u>Business and Professions Code</u> ("<u>B&PC</u>") §17000 et seq. and §17200, et seq., the applicable Wage Order(s) issued by the California Industrial Welfare Commission (hereinafter, the "<u>IWC Wage Order(s)</u>") and related common law principles.

2.      The acts complained of herein occurred, occur and will occur, at least in part, within the time period from four (4) years preceding the filing of the original Complaint herein, up to and through the time of trial for this matter

**FIFTH AMENDED COMPLAINT**

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
BARNES@KBARNES.COM

1    although this should not automatically be considered the statute of limitations for

2    any cause of action herein.

3    <u>RELEVANT JOB TITLES</u>

4          3.      For introductory and general information only (and not to be

5    considered a proposed class definition), the relevant individuals in this action are

6    Defendants' hourly-paid, non-exempt "dock worker" employees who were

7    subjected to Defendants' policies and practices as described herein. Any differences

8    in job activities between the different individuals in these positions were and are

9    legally insignificant to the issues presented by this action.

10   <u>SUMMARY OF CLAIMS</u>

11         4.      With regard to Defendants' hourly-paid, non-exempt "dock worker"

12   employees, Defendants have:

13              a.   Failed to pay minimum wages;

14              b.   Failed to pay overtime wages;

15              c.   Failed to provide legally-compliant rest periods;

16              d.   Failed to authorize and permit all paid legally-requisite rest

17                   periods;

18              e.   Failed to provide legally-compliant meal periods;

19              f.   Failed to reimburse for necessary business expenses;

20              g.   Independently failed to timely furnish accurate itemized wage

21                   statements;

22              h.   Derivatively failed to timely furnish accurate itemized wage

23                   statements;

24              i.   Violated <u>Labor Code</u> §203;

25              j.   Incurred penalties pursuant to <u>Labor Code</u> §§2698, et seq.; and

26              k.   Conducted unfair business practices.

27   ///

28   ///

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
Barnes@kbarnes.com

- 3 -

**FIFTH AMENDED COMPLAINT**

## II.

## PARTIES

PLAINTIFF TAI HANG

5.     Plaintiff TAI HANG is an individual over the age of eighteen (18) and is now and/or at all times mentioned in this Complaint was a citizen of the State of California.

6.     Plaintiff TAI HANG worked for Defendants as an hourly-paid, non-exempt "dock worker" employee from approximately August 2007 to August 11, 2020 in Rialto, California, which is in San Bernardino County, California.

7.     Plaintiff TAI HANG seeks recovery herein from Defendants because with regard to Plaintiff TAI HANG, while acting for Defendants in his capacity as an hourly-paid, non-exempt "dock worker" employee, Defendants have:

a.  Failed to pay minimum wages;

b.  Failed to pay overtime wages;

c.  Failed to provide legally-compliant rest periods;

d.  Failed to authorize and permit all paid legally-requisite rest periods;

e.  Failed to provide legally-compliant meal periods;

f.  Failed to reimburse for necessary business expenses;

g.  Independently failed to timely furnish accurate itemized wage statements;

h.  Derivatively failed to timely furnish accurate itemized wage statements;

i.  Violated Labor Code §203;

j.  Incurred penalties pursuant to Labor Code §§2698, et seq.; and

k.  Conducted unfair business practices.

///

///

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
BARNES@KBARNES.COM

- 4 -

**FIFTH AMENDED COMPLAINT**

DocuSign Envelope ID: 14048674-C683-4556-9491-590A98497C1A

PLAINTIFF ROBERT CANALES

     8.     Plaintiff ROBERT CANALES is an individual over the age of eighteen (18) and is now and/or at all times mentioned in this Complaint was a citizen of the State of California.

     9.     Plaintiff ROBERT CANALES worked for Defendants as an hourly-paid, non-exempt "dock worker" employee from approximately January 28, 2018 to October 2, 2020 in Rialto, California, which is in San Bernardino County, California.

     10.    Plaintiff ROBERT CANALES seeks recovery herein from Defendants because with regard to Plaintiff ROBERT CANALES, while acting for Defendants in his capacity as an hourly-paid, non-exempt "dock worker" employee, Defendants have:

     a.  Failed to pay minimum wages;

     b.  Failed to pay overtime wages;

     c.  Failed to provide legally-compliant rest periods;

     d.  Failed to authorize and permit all paid legally-requisite rest periods;

     e.  Failed to provide legally-compliant meal periods;

     f.  Failed to reimburse for necessary business expenses;

     g.  Independently failed to timely furnish accurate itemized wage statements;

     h.  Derivatively failed to timely furnish accurate itemized wage statements;

     i.  Violated Labor Code §203;

     j.  Incurred penalties pursuant to Labor Code §§2698, et seq.; and

     k.  Conducted unfair business practices.

///

///

FIFTH AMENDED COMPLAINT

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
BARNES@KBARNES.COM

1  DEFENDANT, OLD DOMINION FREIGHT LINE, INC.

2      11.    Defendant OLD DOMINION FREIGHT LINE, INC. is now and/or at

3  all times mentioned in this Complaint was a Virginia corporation and the owner

4  and operator of an industry, business and/or facility(/ies) licensed to do business

5  and actually doing business in the State of California.

6  DOES 1 TO 100, INCLUSIVE

7      12.    DOES 1 to 100, inclusive are now, and/or at all times mentioned in

8  this Complaint were licensed to do business and/or actually doing business in

9  California.

10     13.    Plaintiffs do not know the true names or capacities, whether

11 individual, partner or corporate, of DOES 1 to 100, inclusive and for that reason,

12 DOES 1 to 100 are sued under such fictitious names pursuant to California Code of

13 Civil Procedure ("CCP") §474.

14     14.    Plaintiffs will seek leave of court to amend this Complaint to allege

15 such names and capacities as soon as they are ascertained.

16 ALL DEFENDANTS

17     15.    Defendants, and each of them, are now and/or at all times mentioned

18 in this Complaint were in some manner legally responsible for the events,

19 happenings and circumstances alleged in this Complaint.

20     16.    Defendants, and each of them, proximately subjected Plaintiffs to the

21 unlawful practices, wrongs, complaints, injuries and/or damages alleged in this

22 Complaint.

23     17.    Defendants, and each of them, are now and/or at all times mentioned

24 in this Complaint were the agents, servants and/or employees of some or all other

25 Defendants, and vice-versa, and in doing the things alleged in this Complaint,

26 Defendants are now and/or at all times mentioned in this Complaint were acting

27 within the course and scope of that agency, servitude and/or employment.

28 ///

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
Barnes@kbarnes.com

- 6 -

FIFTH AMENDED COMPLAINT

18.     Defendants, and each of them, are now and/or at all times mentioned in this Complaint were members of and/or engaged in a joint venture, partnership and common enterprise, and were acting within the course and scope of, and in pursuance of said joint venture, partnership and common enterprise.

19.     Defendants, and each of them, at all times mentioned in this Complaint concurred and contributed to the various acts and omissions of each and every one of the other Defendants in proximately causing the complaints, injuries and/or damages alleged in this Complaint.

20.     Defendants, and each of them, at all times mentioned in this Complaint approved of, condoned and/or otherwise ratified each and every one of the acts and/or omissions alleged in this Complaint.

21.     Defendants, and each of them, at all times mentioned in this Complaint aided and abetted the acts and omissions of each and every one of the other Defendants thereby proximately causing the damages alleged in this Complaint.

### III.

### JURISDICTION AND VENUE

22.     The District Court has original subject matter jurisdiction under 28 U.S.C. §1332, and because Defendants removed this matter to federal court on February 19, 2021 pursuant to 28 U.S.C. §§1441 and 1446, in that this is a civil action that purportedly satisfies the requirements stated in the Class Action Fairness Act of 2005, codified in part at 28 U.S.C. §1332(d).

23.     This District Court is in the judicial district and division embracing the place where the state court case was brought. Thus, this Court is the proper District Court to which this case should have been removed 28 U.S.C. §§1441(a) and 1446(a).

///

///

**FIFTH AMENDED COMPLAINT**

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
Barnes@kbarnes.com

DocuSign Envelope ID: 14048674-C683-4556-9491-590A98497C1A

# IV.

## <u>CLASS ACTION ALLEGATIONS</u>

24.     Plaintiffs bring this suit as a class action pursuant to <u>FRCP</u> 23 and <u>CCP</u> §382, on behalf of individuals who are entitled to the monies unlawfully withheld by Defendants.

25.     The putative classes Plaintiffs will seek to certify are currently composed of and defined as follows:

      a.  All California citizens employed by Defendants as hourly-paid, non-exempt "dock worker" employees during the appropriate time period who were subjected to Defendants' policies and practices regarding providing at least minimum wages for all hours worked as specifically described herein (hereinafter, the "Minimum Wage Class");

      b.  All California citizens employed by Defendants as hourly-paid, non-exempt "dock worker" employees during the appropriate time period who were subjected to Defendants' overtime policies and practices as specifically described herein (hereinafter, the "Overtime Wage Class");

      c.  All California citizens employed by Defendants as hourly-paid, non-exempt "dock worker" employees during the appropriate time period who were subjected to Defendants' policies and practices regarding providing legally-compliant rest periods as specifically described herein (hereinafter, the "Legal Rest Period Class");

      d.  All California citizens employed by Defendants as hourly-paid, non-exempt "dock worker" employees during the appropriate time period who were subjected to Defendants' policies and practices regarding paid rest periods as specifically described herein (hereinafter, the "Rest Period Class");

**FIFTH AMENDED COMPLAINT**

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
BARNES@KBARNES.COM

e.  All California citizens employed by Defendants as hourly-paid, non-exempt "dock worker" employees during the appropriate time period who were subjected to Defendants' policies and practices regarding providing legally-compliant meal periods as specifically described herein (hereinafter, the "Meal Period Class");

f.  All California citizens employed by Defendants as hourly-paid, non-exempt "dock worker" employees during the appropriate time period who were subjected to Defendants' policies and practices regarding reimbursements for necessary business expenses as specifically described herein (hereinafter, the "Reimbursement Class");

g.  All California citizens employed by Defendants as hourly-paid, non-exempt "dock worker" employees during the appropriate time period who were independently subjected to Defendants' policies and practices regarding itemized wage statements as specifically described herein (hereinafter, the "Independent Wage Statement Class");

h.  All California citizens employed by Defendants as hourly-paid, non-exempt "dock worker" employees during the appropriate time period who were derivatively subjected to Defendants' policies and practices regarding itemized wage statements as specifically described herein (hereinafter, the "Derivative Wage Statement Class");

i.  All formerly-employed California citizens employed by Defendants as hourly-paid, non-exempt "dock worker" employees during the appropriate time period who were subjected to Defendants' policies and practices regarding Labor Code §203 and the payment of final wages as specifically described herein

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
BARNES@KBARNES.COM

- 9 -

**FIFTH AMENDED COMPLAINT**

(hereinafter, the "LC 203 Class"); and

    j.   All California citizens employed by Defendants as hourly-paid, non-exempt "dock worker" employees during the appropriate time period regarding whom Defendants have engaged in unlawful, unfair and/or fraudulent business acts or practices prohibited by B&PC §17200, et seq. as specifically described herein (hereinafter, the "17200 Class").

26.    The Minimum Wage Class, Overtime Wage Class, Legal Rest Period Class, Rest Period Class, Meal Period Class, Reimbursement Class, Independent Wage Statement Class, Derivative Wage Statement Class, LC 203 Class and 17200 Class are herein collectively referred to as the "Classes."

27.    Throughout discovery in this litigation, Plaintiffs may find it appropriate and/or necessary to amend the definition of the Classes. Plaintiffs will formally define and designate a class definition at such time when Plaintiffs seek to certify the Classes alleged herein.

28.    Numerosity (FRCP 23(a)(1)); (CCP §382):

    a.   The potential quantity of members of the Classes as defined is so numerous that joinder of all members would be unfeasible and impractical.

    b.   The disposition of the claims of the members of the Classes through this class action will benefit both the parties and this Court.

    c.   The quantity of members of the Classes is unknown to Plaintiffs at this time; however, it is estimated that each of the Classes numbers greater than 100 individuals.

    d.   The quantity and identity of such membership is readily ascertainable via inspection of Defendants' records.

///

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
Barnes@kbarnes.com

- 10 -

FIFTH AMENDED COMPLAINT

29. <u>Questions of Law or Fact Common To The Class</u> (<u>FRCP</u> 23(a)(2)): There are common questions of law and/or fact as to the members of the Classes which predominate over questions affecting only individual members of the Classes, including, without limitation:

a. Whether Defendants failed and continue to fail to pay at least minimum wages for all hours worked to the members of the Minimum Wage Class in violation of the <u>Labor Code</u> and Section 4 of the <u>IWC Wage Orders</u>;

b. Whether Defendants failed and continue to fail to pay legally-requisite overtime wages to the members of the Overtime Wage Class in violation of the <u>Labor Code</u> and Section 3 of the <u>IWC Wage Orders</u>;

c. Whether Defendants failed and continue to fail to provide legally-compliant rest periods to the members of the Legal Rest Period Class in violation of the <u>Labor Code</u> and Section 12 of the <u>IWC Wage Orders</u>;

d. Whether Defendants failed and continue to fail to authorize and permit paid legally-requisite rest periods to the members of the Rest Period Class in violation of the <u>Labor Code</u> and Section 12 of the <u>IWC Wage Orders</u>;

e. Whether Defendants failed and continue to fail to provide legally-compliant meal periods to the members of the Meal Period Class in violation of the <u>Labor Code</u> and Section 11 of the <u>IWC Wage Orders</u>;

f. Whether Defendants failed and continue to fail to reimburse for necessary business expenses to the members of the Reimbursement Class in violation of the <u>Labor Code</u>;

///

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
Barnes@kbarnes.com

**FIFTH AMENDED COMPLAINT**

g. Whether Defendants independently failed to timely furnish accurate, itemized and legal wage statements to the members of the Independent Wage Statement Class;

h. Whether Defendants independently failed to timely furnish accurate, itemized and legal wage statements to the members of the Independent Wage Statement Class;

i. Whether Defendants are liable pursuant to <u>Labor Code</u> §203 to the members of the LC 203 Class;

j. Whether Defendants' conduct constitutes unfair competition within the meaning of <u>B&PC</u> §17200, et seq.;

k. Whether Defendants' conduct constitutes unfair business practices within the meaning of <u>B&PC</u> §17200, et seq.;

l. Whether the members of the Classes are entitled to compensatory damages, and if so, the means of measuring such damages;

m. Whether the members of the Classes are entitled to injunctive relief;

n. Whether the members of the Classes are entitled to restitution; and

o. Whether Defendants are liable for attorneys' fees and costs.

30.   <u>Typicality</u> (<u>FRCP</u> 23(a)(3)): The claims of the named Plaintiff(s) are typical of the claims of all members of the represented Classes because all members of the Classes sustained injuries and damages arising out of Defendants' common course of conduct in violation of law and the injuries and damages of all members of the Classes were caused by Defendants' wrongful conduct in violation of law, as alleged herein.

31.   <u>Adequacy</u> (<u>FRCP</u> 23(a)(4)): The named Plaintiff(s):

a. will adequately represent the members of the Classes;

b. will fairly protect the interests of the members of the Classes;

c. possess no interests antagonistic to the members of the Classes;

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
Barnes@kbarnes.com

- 12 -

**FIFTH AMENDED COMPLAINT**

and

d.  will vigorously pursue this suit via attorneys who are competent, skilled and experienced in litigating matters of this type.

32.  <u>Superiority</u> (<u>FRCP</u> 23(b)); (<u>CCP</u> §382): The nature of this action and the nature of the laws available to Plaintiffs make the use of the class action format particularly efficient and the appropriate procedure to afford relief to Plaintiffs for the wrongs alleged herein. Further, this action is maintainable as a class action because the prerequisites of <u>FRCP</u> 23(a) are satisfied as outlined above, and in addition:

a.  California has a public policy which encourages the use of the class action device;

b.  By establishing a technique whereby the claims of many individuals can be resolved at the same time, the class suit both eliminates the possibility of repetitious litigation and provides small claimants with a method of obtaining redress for claims which would otherwise be too small to warrant individual litigation;

c.  This case involves large corporate Defendants and a large number of individual Class members with many relatively small claims and common issues of law and fact;

d.  If each individual member of the Classes was required to file an individual lawsuit, the large corporate Defendants would necessarily gain an unconscionable advantage because Defendants would be able to exploit and overwhelm the limited resources of each individual member of the Classes with Defendants' vastly superior financial and legal resources;

e.  Requiring each individual member of the Classes to pursue an individual remedy would also discourage the assertion of lawful

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
BARNES@KBARNES.COM

- 13 -

**FIFTH AMENDED COMPLAINT**

claims by the members of the Classes who would be disinclined to pursue an action against Defendants because of an appreciable and justifiable fear of retaliation and permanent damage to their lives, careers and well-being;

f. Proof of a common business practice or factual pattern, of which the members of the Classes experienced, is representative of the Classes herein and will establish the right of each of the members of the Classes to recover on the causes of action alleged herein;

g. Absent class treatment, the prosecution of separate actions by the individual members of the Classes, even if possible, would likely create:

i) a substantial risk of each individual plaintiff presenting in separate, duplicative proceedings the same or essentially similar arguments and evidence, including expert testimony;

ii) a multiplicity of trials conducted at enormous expense to both the judicial system and the litigants;

iii) inconsistent or varying verdicts or adjudications with respect to the individual members of the Classes against Defendants;

iv) potentially incompatible standards of conduct for Defendants; and

v) potentially incompatible legal determinations with respect to individual members of the Classes which would, as a practical matter, be dispositive of the interest of the other members of the Classes who are not parties to the adjudications or which would substantially impair or impede the ability of the members of the Classes to protect their interests.

- 14 -

**FIFTH AMENDED COMPLAINT**

h.  The claims of the individual members of the Classes are not sufficiently large to warrant vigorous individual prosecution considering all of the concomitant costs and expenses attendant thereto;

i.  Courts seeking to preserve efficiency and other benefits of class actions routinely fashion methods to manage any individual questions; and

j.  The Supreme Court of California urges trial courts, which have an obligation to consider the use of innovative procedural tools to certify a manageable class, to be procedurally innovative in managing class actions.

33.  Whether each member of the Classes might be required to ultimately justify an individual claim does not preclude maintenance of a class action (see, e.g. Collins v. Rocha (1972) 7 Cal.3d 232, 238); Pulaski & Middleman, LLC v. Google, Inc. (9th Cir. 2015 802 F.2d 979, 986-87).

**V.**

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**

**FAILURE TO PAY MINIMUM WAGES**

**(On Behalf of the Minimum Wage Class)**

**(Against All Defendants)**

34.  Plaintiffs incorporate by reference and reallege each and every one of the allegations contained in the preceding and foregoing paragraphs of this Complaint as if fully set forth herein.

35.  Defendants required the members of the Minimum Wage Class to clock in and out at the designated dock area.

36.  The members of the Minimum Wage Class were entitled to all earned wages, including minimum wages, for all hours worked.

**FIFTH AMENDED COMPLAINT**

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
Barnes@kbarnes.com

DocuSign Envelope ID: 14048674-C683-4556-9491-590A98497C1A

37.    As a matter of Defendants' established company policy, Defendants failed to pay for all hours worked at the state minimum wage established by Labor Code §510, Labor Code §1194, Labor Code §1194.2, Labor Code §1197, and Labor Code §1198 and the IWC Minimum Wage Order(s), as a result of, among other things, the security checks prior to entering and leaving Defendants' premises, the large size of Defendants' facilities, and the large amount of time it took for the members of the Minimum Wage Class to walk to the dock, search for an available forklift, and ride it to the dock area where Defendants required the members of the Minimum Wage Class to clock in and out.

38.    For example, Plaintiff ROBERT CANALES underwent a security check prior to entering Defendants' premises and performed other work-related tasks before clocking in. He spent approximately 5-15 minutes undergoing a security check, walking to the dock, searching for an available forklift, and riding it to the dock area. Similarly, Plaintiff TAI HANG and other members of the Minimum Wage Class were required to undergo a security check and perform other work-related tasks before heading to the designated dock area to clock in.

39.    Moreover, Plaintiff ROBERT CANALES, for example, clocked out and spent approximately five minutes walking towards the checkpoint. Similarly, Plaintiff TAI HANG and other members of the Minimum Wage Class were required to undergo a security check before leaving Defendants' premises.

40.    The members of the Minimum Wage Class performed these security checks and work-related tasks outside of their clocked hours. As a result, Defendants failed to pay the members of the Minimum Wage Class all earned wages, including minimum wages, for the time these employees spent performing off-the-clock work.

41.    Pursuant to Labor Code §218.6 and CC §3287, the members of the Minimum Wage Class seek recovery of pre-judgment interest on all amounts recovered herein.

**FIFTH AMENDED COMPLAINT**

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
Barnes@kbarnes.com

# SECOND CAUSE OF ACTION

# FAILURE TO PAY OVERTIME WAGES

## (On Behalf of the Overtime Wage Class)

## (Against All Defendants)

42.     Plaintiffs incorporate by reference and reallege each and every one of the allegations contained in the preceding and foregoing paragraphs of this Complaint as if fully set forth herein.

43.     The members of the Overtime Wage Class sometimes worked over eight (8) hours per shift. The members of the Overtime Wage Class sometimes worked over forty (40) hours in a week.

44.     Defendants required the members of the Overtime Wage Class to clock in and out at the designated dock area.

45.     The members of the Minimum Wage Class were entitled to overtime wages for all hours worked over eight (8) in a day or over forty (40) in a week.

46.     As a matter of Defendants' established company policy, Defendants failed to pay overtime wages established by Labor Code §510, Labor Code §1194, and Labor Code §1198 and Section 3 of the IWC Wage Order(s), as a result of, among other things, the security checks prior to entering and leaving Defendants' premises, the large size of Defendants' facilities, and the large amount of time it took for the members of the Overtime Wage Class to walk to the dock, search for an available forklift, and ride it to the dock area where Defendants required the members of the Overtime Wage Class to clock in and out.

47.     For example, Plaintiff ROBERT CANALES underwent a security check prior to entering Defendants' premises and performed other work-related tasks before clocking in. He spent approximately 5-15 minutes walking to the dock, searching for an available forklift, and riding it to the dock area. Similarly, Plaintiff TAI HANG and other members of the Overtime Wage Class were required to undergo a security check and perform other work-related tasks before

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
BARNES@KBARNES.COM

- 17 -

**FIFTH AMENDED COMPLAINT**

1   heading to the designated dock area to clock in.

2        48.    Moreover, Plaintiff ROBERT CANALES, for example, clocked out

3   and spent approximately five minutes walking towards the checkpoint. Similarly,

4   Plaintiff TAI HANG and other members of the Overtime Wage Class were

5   required to undergo a security check before leaving Defendants' premises.

6        49.    The members of the Overtime Wage Class performed these security

7   checks and work-related tasks outside of their clocked hours. As a result, on days

8   when the members of the Overtime Wage Class worked over eight (8) hours in a

9   day or over forty (40) hours in a week, Defendants failed to pay these overtime

10  wages, for the time they spent performing off-the-clock work.

11       50.    Pursuant to <u>Labor Code</u> §218.6 and <u>CC</u> §3287, the members of the

12  Overtime Wage Class seek recovery of pre-judgment interest on all amounts

13  recovered herein.

14  <div align="center">**THIRD CAUSE OF ACTION**</div>

15  <div align="center">**FAILURE TO PROVIDE LEGALLY-COMPLIANT REST PERIODS**</div>

16  <div align="center">**(On Behalf of the Legal Rest Period Class)**</div>

17  <div align="center">**(Against All Defendants)**</div>

18       51.    Plaintiffs incorporate by reference and reallege each and every one of

19  the allegations contained in the preceding and foregoing paragraphs of this

20  Complaint as if fully set forth herein.

21       52.    The members of the Legal Rest Period Class sometimes worked over

22  four (4) hours per shift. Further, the members of the Legal Rest Period Class

23  sometimes worked over six (6) hours per shift, and in some cases over ten (10)

24  hours per shift.

25       a.   Plaintiff TAI HANG consistently worked shifts of eight hours or

26              more, under the following schedules, which changed

27              approximately every six months, over his employment with

28              Defendant:

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
Barnes@kbarnes.com

- 18 -

<div align="center">**FIFTH AMENDED COMPLAINT**</div>

1    Monday – Friday, 4 am – 12 pm;

2    Monday – Friday, 5 pm – 1 am;

3    Monday – Friday, 6 pm – 2 am;

4    Sunday – Thursday, 8 pm – 4 am;

5    Monday – Friday; 8 pm – 4 am;

6    Sunday – Thursday, 6 am – 2 pm;

7    Sunday – Thursday, 8 am – 4 pm;

8    Sunday – Thursday, 6 am – 2 pm;

9    Tuesday – Saturday, 5 am – 1 pm;

10    Sunday – Thursday, 6 am – 2 pm;

11    Tuesday – Saturday, 4 am- 12 pm;

12    Sunday – Thursday, 6 am – 2 pm;

13    Tuesday – Saturday, 4 am – 12 pm; and

14    Tuesday – Saturday, 3 am – 11 am.

15    b. Plaintiff ROBERT CANALES worked four different schedules

16    throughout his employment with Defendant, with shifts always

17    eight or more hours:

18    From approximately January 2018 to May 2018:

19    Tuesday – Saturday; 7:30 pm to 4:00 am;

20    From approximately June 2018 to December 2018:

21    Tuesday – Saturday; 12:00 pm to 8 pm;

22    From approximately December 2018 to March 2019:

23    Monday – Friday; 11:00 pm to 7:30 am; and

24    From approximately April 2019 to September 2020:

25    Monday – Friday; 7:30 pm to 4:00 am.

26    53.    The members of the Legal Rest Period Class were entitled to a rest

27 period of not less than ten (10) minutes prior to exceeding four (4) hours of

28 employment.

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
BARNES@KBARNES.COM

- 19 -

**FIFTH AMENDED COMPLAINT**

54.    Defendants' rest period policy states:

"Hourly employees may not leave OD premise while on a paid rest break and are expected to be at their work station at the conclusion of the paid rest break, unless prohibited by applicable law, including state and local laws."

55.    As such, the members of the Legal Rest Period Class were prohibited from taking legally-compliant breaks in violation of Brinker Restaurant Corp. v. Superior Court (2012) 53 Cal.4th 1004, 1040 ["The wage orders and governing statute do not countenance an employer's exerting coercion against the taking of, creating incentives to forgo, or otherwise encouraging the skipping of legally protected breaks."].

56.    As a matter of Defendants' established company policy, Defendants failed to provide legally-compliant rest periods because Defendants prohibited the taking of legally protected rest periods by using Defendants' rest period policy to prevent the members of the Legal Rest Period Class from taking rest periods outside of Defendants' premises, and forbade the members of the Legal Rest Period Class from leaving Defendants' facilities for legally-compliant rest periods.

57.    Both Plaintiff TAI HANG and Plaintiff ROBERT CANALES, along with other members of the Legal Rest Period class, were instructed that rest periods must be taken in a designated break room. They were further instructed that leaving the premises was strictly prohibited, including going to the parking lot.

58.    For example, Plaintiff TAI HANG and other members of the Legal Rest Period class were told at least two to three times a week at a daily morning meeting that rest breaks were to be taken only in the break room. Any violators were subject to discipline or even termination. One dock worker was terminated for going to his vehicle during his rest period without permission. Accordingly, this policy caused Plaintiff TAI HANG to suffer noncompliant rest periods every day of work in which a rest period was required, i.e., two noncompliant rest periods on every eight hour shift per his regular schedule as alleged above.

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
Barnes@KBarnes.com

- 20 -

**FIFTH AMENDED COMPLAINT**

59. Similarly, Plaintiff ROBERT CANALES and other members of the Legal Rest Period class were not allowed to take breaks anywhere but the designated break room. This rule was repeated during pre-shift meetings. Plaintiff ROBERT CANALES left to go to his car only one time with special permission from his supervisor, and he was required to report back to the supervisor when he returned. Accordingly, this policy caused Plaintiff ROBERT CANALES to suffer noncompliant rest periods every day of work, except one, in which a rest period was required, i.e., two noncompliant rest periods on every eight-hour shift per his regular schedule as alleged above.

60. Defendants' written policies and actual practices clearly and unmistakably have language definitively requiring employees to remain on premises - "Hourly employees **may not leave OD premise while on a paid rest break**…" (emphasis added). This policy language violates California rest period laws.

61. The members of the Legal Rest Period Class are entitled to damages in an amount equal to one (1) additional hour of pay at each employee's regular rate of compensation for each work day that the rest period was not so provided.

62. Pursuant to <u>Labor Code</u> §218.6 and <u>CC</u> §3287, the members of the Legal Rest Period Class seek recovery of pre-judgment interest on all amounts recovered herein.

<div align="center">

**FOURTH CAUSE OF ACTION**

**FAILURE TO AUTHORIZE AND PERMIT ALL PAID REST PERIODS**

**(On Behalf of the Rest Period Class)**

**(Against All Defendants)**

</div>

63. Plaintiffs incorporate by reference and reallege each and every one of the allegations contained in the preceding and foregoing paragraphs of this Complaint as if fully set forth herein.

///

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
Barnes@kbarnes.com

- 21 -

**FIFTH AMENDED COMPLAINT**

64. The members of the Rest Period Class sometimes worked over four (4) hours per shift. Further, the members of the Rest Period Class sometimes worked over six (6) hours per shift, and in some cases over ten (10) hours per shift.

    a. Plaintiff TAI HANG worked shifts of eight hours or more, under the following schedules, which changed approximately every six months, over his employment with Defendant:

Monday – Friday, 4 am – 12 pm;

Monday – Friday, 5 pm – 1 am;

Monday – Friday, 6 pm – 2 am;

Sunday – Thursday, 8 pm – 4 am;

Monday – Friday; 8 pm – 4 am;

Sunday – Thursday, 6 am – 2 pm;

Sunday – Thursday, 8 am – 4 pm;

Sunday – Thursday, 6 am – 2 pm;

Tuesday – Saturday, 5 am – 1 pm;

Sunday – Thursday, 6 am – 2 pm;

Tuesday – Saturday, 4 am – 12 pm;

Sunday – Thursday, 6 am – 2 pm;

Tuesday – Saturday, 4 am – 12 pm; and

Tuesday – Saturday, 3 am – 11 am.

    b. Plaintiff ROBERT CANALES worked four different schedules throughout his employment with Defendant, with shifts always eight or more hours:

From approximately January 2018 to May 2018:

    Tuesday – Saturday; 7:30 pm to 4:00 am;

From approximately June 2018 to December 2018:

    Tuesday – Saturday; 12:00 pm to 8 pm;

From approximately December 2018 to March 2019:

**FIFTH AMENDED COMPLAINT**

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
BARNES@KJBARNES.COM

Monday – Friday; 11:00 pm to 7:30 am; and

From approximately April 2019 to September 2020:

Monday – Friday; 7:30 pm to 4:00 am.

65.     The members of the Rest Period Class were entitled to a rest period of not less than ten (10) minutes for every four (4) hours of work, or major fraction thereof.

66.     As a matter of Defendants' established company policy, Defendants failed to always authorize and permit all required rest periods established by Labor Code §226.7 and Labor Code §516 and Section 12 of the IWC Wage Order(s), including but not limited to because of the huge size of Defendants' facilities and the large amount of time it took for the members of the Rest Period Class to travel from their work stations to the break room (where they were required to go) and back to their work stations.

67.     For example, Plaintiff TAI HANG and other members of the Rest Period Class had to walk three to five minutes, each way, to and from their workstations to the designated break room at each rest period. Consequently, because rest periods were 15 minutes long, Plaintiff TAI HANG and others had only five to nine minutes of break time after accounting for the walk. Plaintiff TAI HANG was once given a verbal warning by his supervisor for returning late from his rest break because of the long walk. Other members of the Rest Period Class were disciplined for failing to return on time from a rest period.

68.     The designated break rooms were at least a three to five minute walk from all work stations for all employees. The long walk caused the members of the Rest Period Class to suffer noncompliant rest periods on every shift in which a rest period was required. Plaintiffs suffered two noncompliant rest periods on every eight-hour shift per their regular schedules as alleged above.

69.     The members of the Rest Period Class are entitled to damages in an amount equal to one (1) additional hour of pay at each employee's regular rate of

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL: (323) 549-9100
FAX: (323) 549-0101
Barnes@kbarnes.com

- 23 -

FIFTH AMENDED COMPLAINT

1  compensation for each work day that one or more rest periods were not so

2  provided.

3      70.    Pursuant to <u>Labor Code</u> §218.6 and <u>CC</u> §3287, the members of the

4  Rest Period Class seek recovery of pre-judgment interest on all amounts recovered

5  herein.

6                    **FIFTH CAUSE OF ACTION**

7  **FAILURE TO PROVIDE LEGALLY-COMPLIANT MEAL PERIODS**

8              **(On Behalf of the Meal Period Class)**

9                  **(Against All Defendants)**

10      71.    Plaintiffs incorporate by reference and reallege each and every one of

11  the allegations contained in the preceding and foregoing paragraphs of this

12  Complaint as if fully set forth herein.

13      72.    The members of the Meal Period Class sometimes worked over five

14  (5) hours per shift. The members of the Meal Period Class sometimes worked over

15  ten (10) hours per shift.

16          a.   Plaintiff TAI HANG consistently worked shifts of eight hours or

17               more, under the following schedules, which changed

18               approximately every six months, over his employment with

19               Defendant:

20          Monday – Friday, 4 am – 12 pm;

21          Monday – Friday, 5 pm – 1 am;

22          Monday – Friday, 6 pm – 2 am;

23          Sunday – Thursday, 8 pm – 4 am;

24          Monday – Friday; 8 pm – 4 am;

25          Sunday – Thursday, 6 am – 2 pm;

26          Sunday – Thursday, 8 am – 4 pm;

27          Sunday – Thursday, 6 am – 2 pm;

28          Tuesday – Saturday, 5 am – 1 pm;

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
BARNES@KJBARNES.COM

- 24 -

**FIFTH AMENDED COMPLAINT**

Sunday – Thursday, 6 am – 2 pm;

Tuesday – Saturday, 4 am- 12 pm;

Sunday – Thursday, 6 am – 2 pm;

Tuesday – Saturday, 4 am – 12 pm; and

Tuesday – Saturday, 3 am – 11 am.

b. Plaintiff ROBERT CANALES worked four different schedules throughout his employment with Defendant, with shifts always eight or more hours:

From approximately January 2018 to May 2018:

Tuesday – Saturday; 7:30 pm to 4:00 am;

From approximately June 2018 to December 2018:

Tuesday – Saturday; 12:00 pm to 8 pm;

From approximately December 2018 to March 2019:

Monday – Friday; 11:00 pm to 7:30 am; and

From approximately April 2019 to September 2020:

Monday – Friday; 7:30 pm to 4:00 am.

73. The members of the Meal Period Class were entitled to a timely, duty-free, and uninterrupted meal period of not less than thirty (30) minutes prior to exceeding four (4) hours of employment. The members of the Meal Period Class who worked more than ten (10) hours were also entitled to a timely, duty-free, and uninterrupted second meal period of not less than thirty (30) minutes prior to exceeding eight (8) hours of employment.

74. As a matter of Defendants' established company policy, Defendants failed to provide legally-compliant meal periods established by Labor Code §226.7, Labor Code §512, and Labor Code §1198 and Section 11 of the IWC Wage Order(s), as a result of, among other things, the security checks prior to entering and leaving Defendants' premises, the large size of Defendants' facilities, and the large amount of time it took for the members of the Meal Period Class to

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
Barnes@kbarnes.com

- 25 -

**FIFTH AMENDED COMPLAINT**

walk to the dock, search for an available forklift, and ride it to the dock area where Defendants required the members of the Meal Period Class to clock in and out.

75. For example, Plaintiff ROBERT CANALES underwent a security check prior to entering Defendants' premises and performed other work-related tasks before clocking in. He spent approximately 5-15 minutes walking to the dock, searching for an available forklift, and riding it to the dock area. Similarly, Plaintiff TAI HANG and other members of the Meal Period Class were required to undergo a security check and perform other work-related tasks before heading to the designated dock area to clock in.

76. Moreover, Plaintiff ROBERT CANALES, for example, clocked out and spent approximately five minutes walking towards the checkpoint. Similarly, Plaintiff TAI HANG and other members of the Meal Period Class were required to undergo a security check before leaving Defendants' premises.

77. The members of the Meal Period Class performed these security checks and work-related tasks outside of their clocked hours. As a result, on days when they worked over five (5) hours in a shift, members of the Meal Period Class took their meal periods after the fifth hour of employment.

78. Further, Plaintiff ROBERT CANALES, for example, worked over ten (10) hours in a shift and was not provided with a second meal period. Similarly, Plaintiff other members of the Meal Period Class were not provided with a second meal period despite working more than ten (10) hours in a shift.

79. In addition, as a matter of Defendants' established company policy, Defendants failed to provide legally-compliant meal periods established by Labor Code §226.7, Labor Code §512, and Labor Code §1198 and Section 11 of the IWC Wage Order(s), as a result of, among other things, the large size of Defendants' facilities and the large amount of time it took for the members of the Meal Period Class to travel from their work stations to the break room (where they were required to go) and back to their work stations.

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
Barnes@KBarnes.com

- 26 -

**FIFTH AMENDED COMPLAINT**

80.     For example, Plaintiff TAI HANG and other members of the Meal Period Class had to walk three to five minutes, each way, to and from their workstations to the designated break room at each meal period. Consequently, because rest periods were 30 minutes long, Plaintiff TAI HANG and others had only five to nine minutes of break time after accounting for the walk. Other members of the Meal Period Class were disciplined for failing to return on time from a meal period.

81.     The designated break rooms were at least a three to five minute walk from all work stations for all employees. The long walk caused the members of the Meal Period Class to suffer noncompliant meal periods on every shift in which a meal period was required. Plaintiffs suffered a noncompliant meal period on every eight-hour shift per their regular schedules as alleged above.

82.     The members of the Meal Period Class are entitled to damages in an amount equal to one (1) additional hour of pay at each employee's regular rate of compensation for each work day that one or more meal periods were not so provided.

83.     Pursuant to Labor Code §218.6 and CC §3287, the members of the Meal Period Class seek recovery of pre-judgment interest on all amounts recovered herein.

**FIFTH CAUSE OF ACTION**

**FAILURE TO REIMBURSE FOR NECESSARY BUSINESS EXPENSES**

**(On Behalf of the Reimbursement Class)**

**(Against All Defendants)**

84.     Plaintiffs incorporate by reference and reallege each and every one of the allegations contained in the preceding and foregoing paragraphs of this Complaint as if fully set forth herein.

85.     The members of the Reimbursement Class purchased items in direct consequence of the discharge of their duties.

**FIFTH AMENDED COMPLAINT**

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
Barnes@kbarnes.com

86.     The members of the Reimbursement Class were entitled to be reimbursed for necessary business expenditures and losses.

87.     As a matter of Defendants' established company policy, Defendants failed to indemnify the members of the Reimbursement Class for necessary business expenses as established by <u>Labor Code</u> § 2802, including but not limited to because of Defendants' failure to provide pens, clipboards, and safety boots, Defendants' job requirements for the Reimbursement Class, and Defendants' safety requirements.

88.     For example, Plaintiff ROBERT CANALES purchased pens, clipboards, and safety boots, all of which were necessary to perform his job. However, Defendants failed to indemnify him for such necessary business expenses. Similarly, Plaintiff TAI HANG and other members of the Reimbursement class were not reimbursed for similar, necessary and work-related items.

89.     Pursuant to <u>Labor Code</u> §218.6 and <u>CC</u> §3287, the members of the Reimbursement Class seek recovery of pre-judgment interest on all amounts recovered herein.

<div align="center">

**SEVENTH CAUSE OF ACTION**

**INDEPENDENT FAILURE TO TIMELY**

**FURNISH ACCURATE ITEMIZED WAGE STATEMENTS**

**(On Behalf of the Independent Wage Statement Class)**

**(Against All Defendants)**

</div>

90.     Plaintiffs incorporate by reference and reallege each and every one of the allegations contained in the preceding and foregoing paragraphs of this Complaint as if fully set forth herein.

91.     As a pattern and practice, in violation of <u>Labor Code</u> §226(a), Defendants did not and still do not furnish each of the members of the Independent Wage Statement Class with accurate itemized wage statements in writing,

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
Barnes@kbarnes.com

- 28 -

**FIFTH AMENDED COMPLAINT**

1 including but not limited not always including all applicable hourly rates for
2 straight time, overtime 1.5 and overtime 2.0 and/or the accurate hourly pay rates in
3 effect during the pay period. For example, both Plaintiff TAI HANG and Plaintiff
4 ROBERT CANALES received wage statements that did not list their applicable
5 hourly rates.

6     92.    The deficient wage statements were issued according to Defendants'
7 policy and practice. Defendants were aware of the factual predicate underlying the
8 violations, i.e., Defendants knew that the wage statements of Plaintiffs and the
9 members of the Independent Wage Statement Class failed to include all applicable
10 hourly rates for straight time, overtime 1.5 and overtime 2.0 and/or the accurate
11 hourly pay rates in effect during the pay period. These failures were thus knowing
12 and intentional and not due to an accident, clerical error, or inadvertent mistake.

13     93.    An employee suffers injury if the employer fails to provide accurate
14 and complete information as required by any one or more items listed in <u>Labor</u>
15 <u>Code</u> §226(a)(1)-(9) and the employee cannot promptly and easily ascertain
16 requisite information without reference to other documents or information.

17     94.    Here, the members of Independent Wage Statement Class suffered
18 injury because Defendants failed to provide accurate and complete information as
19 required by one or more items listed in <u>Labor Code</u> §226(a)(1)-(9) and the
20 Independent Wage Statement Class members could not and cannot promptly and
21 easily ascertain requisite information without reference to other documents or
22 information. For example, neither Plaintiff TAI HANG nor Plaintiff ROBERT
23 CANALES could ascertain whether they were being paid the proper rates because
24 their wage statements did not list their applicable hourly rates. Instead, their wage
25 statements listed only the hours at straight time, overtime, and double overtime,
26 and the total paid, but either failed to list the rate paid, or listed an incorrect rate, in
27 each category, making accurate mathematical deductions impossible.
28 ///

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
Barnes@kbarnes.com

**FIFTH AMENDED COMPLAINT**

95.    In addition, the members of the Independent Wage Statement Class have suffered injury as a result of Defendants' failure to maintain accurate records for the members of the Independent Wage Statement Class in that the members of the Independent Wage Statement Class were not timely provided written accurate itemized statements showing all requisite information, including but not limited to all applicable and/or accurate hourly pay rates in effect during the pay period, in violation of Labor Code §226, such that the members of the Independent Wage Statement Class were misled by Defendants as to the correct information regarding various items, including but not limited to all applicable and/or accurate hourly pay rates in effect during the pay period.

96.    The actual injuries suffered by the members of the Independent Wage Statement Class as a result of Defendants' knowing and intentional failure to maintain accurate records for the members of the Independent Wage Statement Class include but are not limited to:

    a.  That such practice prevents the members of the Independent Wage Statement Class from being able to effectively challenge information on their wage statements; and/or

    b.  The difficulty and expense of filing and maintaining this lawsuit, and the discovery required to collect and analyze the very information that California law requires.

97.    The members of the Independent Wage Statement Class are entitled to fifty dollars ($50.00) per employee for the initial pay period in which a violation hereunder occurs and one hundred dollars ($100.00) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000.00).

98.    The currently-employed members of the Independent Wage Statement Class are entitled to injunctive relief to ensure Defendants' compliance with Labor Code §226.

**FIFTH AMENDED COMPLAINT**

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
BARNES@KBARNES.COM

99. The members of the Independent Wage Statement Class are also entitled to an award of costs and reasonable attorneys' fees.

## EIGHTH CAUSE OF ACTION
## DERIVATIVE FAILURE TO TIMELY
## FURNISH ACCURATE ITEMIZED WAGE STATEMENTS
### (On Behalf of the Derivative Wage Statement Class)

100. Plaintiffs incorporate by reference and reallege each and every one of the allegations contained in the preceding and foregoing paragraphs of this Complaint as if fully set forth herein.

101. California employers are required to maintain accurate records pertaining to the total hours worked for Defendants by the members of the Derivative Wage Statement Class, including but not limited to, beginning and ending of each work period, meal period and split shift interval, the total daily hours worked, and the total hours worked per pay period and applicable rates of pay.

102. As a pattern and practice, Defendants did not and still do not furnish each of the members of the Derivative Wage Statement Class with an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, (3) all deductions, (4) net wages earned and/or (5) all applicable hourly rates in effect during each respective pay period and the corresponding number of hours worked at each hourly rate by each respective individual.

103. As set forth herein in prior causes of action, Defendants allegedly failed to pay the members of the Derivative Wage Statement Class all wages due and owing.

104. As a derivative result of this failure to pay wages and as a pattern and practice, Defendants did not and do not maintain accurate records pertaining to the total hours worked for Defendants by the members of the Derivative Wage

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
Barnes@KBarnes.com

- 31 -

## FIFTH AMENDED COMPLAINT

1    Statement Class, including but not limited to, beginning and ending of each work

2    period, meal period interval, total daily hours worked, total hours worked per pay

3    period, and the applicable rates of pay.

4        105.    The deficient wage statements were issued according to Defendants'

5    policy and practice. Defendants were aware of the factual predicate underlying the

6    violations, i.e., Defendants knew that it was not paying rest period premiums that

7    were owed and that, derivatively, the wage statements of Plaintiffs and the

8    members of the Derivative Wage Statement Class failed to include (1) gross wages

9    earned, (2) total hours worked by the employee, (3) all deductions, (4) net wages

10   earned and/or (5) all applicable hourly rates in effect during each respective pay

11   period and the corresponding number of hours worked at each hourly rate. These

12   failures were thus knowing and intentional and not due to an accident, clerical

13   error, or inadvertent mistake.

14       106.    An employee suffers injury if the employer fails to provide accurate

15   and complete information as required by any one or more items listed in Labor

16   Code §226(a)(1)-(9) and the employee cannot promptly and easily ascertain

17   requisite information without reference to other documents or information.

18   Here, the members of Derivative Wage Statement Class suffered injury because,

19   due to Defendants' failure to pay all wages due and owing, Defendants derivatively

20   failed to provide accurate and complete information as required by one or more

21   items listed in Labor Code §226(a)(1)-(9). The Derivative Wage Statement Class

22   members could not and cannot promptly and easily ascertain requisite information

23   because Defendants failed to keep accurate records of the rest period premiums

24   earned and/or deducted from their paychecks and the rates of the rest period

25   premiums and numbers of hours for these premiums.

26       107.    In addition, the members of the Derivative Wage Statement Class

27   have suffered injury as a result of Defendants' failure to maintain accurate records

28   for the members of the Derivative Wage Statement Class in that the members of

**FIFTH AMENDED COMPLAINT**

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
Barnes@KBarnes.com

the Derivative Wage Statement Class were not timely provided written accurate itemized statements showing all requisite information, including but not limited to total hours worked by the employee, net wages earned and all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate, such that the members of the Derivative Wage Statement Class were misled by Defendants as to the correct information regarding various items, including but not limited to total hours worked by the employee, net wages earned and all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate.

108.   The actual injuries suffered by the members of the Derivative Wage Statement Class as a result of Defendants' knowing and intentional failure to maintain accurate records for the members of the Derivative Wage Statement Class include but are not limited to:

   a.   Confusion over whether they received all wages owed them by Defendants;

   b.   The difficulty and expense of attempting to reconstruct time and pay records;

   c.   Being forced to engage in mathematical computations to analyze whether Defendants' wages in fact compensated for all hours worked;

   d.   The inability to accurately calculate wage rates complicated by the fact that wage statement information required by Labor Code §226 is missing;

   e.   That such practice prevents the members of the Derivative Wage Statement Class from being able to effectively challenge information on their wage statements; and/or

   f.   The difficulty and expense of filing and maintaining this lawsuit, and the discovery required to collect and analyze the very

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
Barnes@KBarnes.com

**FIFTH AMENDED COMPLAINT**

1    information that California law requires.

2    109.  The members of the Derivative Wage Statement Class are entitled to

3    fifty dollars ($50.00) per employee for the initial pay period in which a violation

4    hereunder occurs and one hundred dollars ($100.00) per employee for each

5    violation in a subsequent pay period, not exceeding an aggregate penalty of four

6    thousand dollars ($4,000.00).

7    110.  The currently-employed members of the Derivative Wage Statement

8    Class are entitled to injunctive relief to ensure Defendants' compliance with <u>Labor</u>

9    <u>Code</u> §226.

10   111.  Pursuant to <u>Labor Code</u> §226(e) and/or §226(g), the members of the

11   Derivative Wage Statement Class are also entitled to an award of costs and

12   reasonable attorneys' fees.

<div align="center">

**NINTH CAUSE OF ACTION**

**VIOLATIONS OF <u>LABOR CODE</u> §203**

**(On Behalf of the LC 203 Class)**

**(Against All Defendants)**

</div>

17   112.  Plaintiffs incorporate by reference and reallege each and every one of

18   the allegations contained in the preceding and foregoing paragraphs of this

19   Complaint as if fully set forth herein.

20   113.  The members of the LC 203 Class are no longer employed by

21   Defendants as they were either discharged from or quit Defendants' employ. For

22   example, Plaintiff TAI HANG was terminated on or about August 11, 2020, and

23   Plaintiff ROBERT CANALES was terminated on or about October 2, 2020.

24   114.  Defendants had a consistent and uniform policy, practice and

25   procedure of willfully failing to pay the earned wages of Defendants' former

26   employees, according to amendment or proof.

27   115.  Defendants willfully failed to pay the members of the LC 203 Class

28   their entire wages due and owing at the time of their termination or within seventy-

**FIFTH AMENDED COMPLAINT**

two (72) hours of their resignation, and failed to pay those sums for up to thirty (30) days thereafter.

116.   Defendants' willful failure to pay wages to the members of the LC 203 Class violates Labor Code §203 because Defendants knew or should have known wages were due to the members of the LC 203 Class, but Defendants failed to pay them.

117.   Thus, the members of the LC 203 Class are entitled to recovery pursuant to Labor Code §203.

<div align="center">

**TENTH CAUSE OF ACTION**

**PENALTIES PURSUANT TO LABOR CODE §2699**

**(On Behalf of the Aggrieved Employees)**

**(Against All Defendants)**

</div>

118.   Plaintiffs incorporate by reference and reallege each and every one of the allegations contained in the preceding and foregoing paragraphs of this Complaint as if fully set forth herein.

119.   Pursuant to Labor Code §2699(a) (which provides that any provision of the Labor Code that provides for a civil penalty to be assessed and collected by the LWDA, or any of its departments, divisions, commissions, board agencies or employees, such civil penalties may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees) and Labor Code §2699(f) (which establishes a civil penalty for violations of all Labor Code provisions except those for which a civil penalty is specifically provided), the aggrieved employees seek recovery of all applicable civil penalties, as follows:

   a.   As applicable, for civil penalties under Labor Code §2699(f), for all violations of the Labor Code except for those for which a civil penalty is specifically provided, in the amount of one hundred dollars ($100.00) for each aggrieved employee per pay period for

<div align="center">

**FIFTH AMENDED COMPLAINT**

</div>

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
BARNES@KBARNES.COM

the initial violation; and two hundred dollars ($200.00) for each aggrieved employee per pay period for each subsequent violation;

b.  As applicable, civil penalties under <u>Labor Code</u> §558 (in addition to and entirely independent and apart from any other penalty provided in the <u>Labor Code</u>), for violations of <u>Labor Code</u> §§500-556, in the amount of $50 for each underpaid aggrieved employee for each pay period the aggrieved employee was underpaid, and $100 for each subsequent violation for each underpaid employee for each pay period for which the employee was underpaid;

c.  As applicable, for civil penalties under <u>Labor Code</u> §1197.1 (in addition to and entirely independent and apart from any other penalty provided in the <u>Labor Code</u>), for violations of <u>Labor Code</u> §§1194 and 1197, in the amount of $100 for each underpaid aggrieved employee for each pay period the aggrieved employee was intentionally underpaid, and $250 for each subsequent violation for each underpaid aggrieved employees regardless of whether the initial violation was intentionally committed;

d.  As applicable, for civil penalties under <u>Labor Code</u> §226.3 (in addition to and entirely independent and apart from any other penalty provided in the <u>Labor Code</u>), for each violation of <u>Labor Code</u> §226(a), in the amount of $250 for each aggrieved employee per pay period for each violation and $1,000 for each aggrieved employee per pay period for each subsequent violation; and

e.  As applicable, for any and all additional civil penalties and sums as provided by the <u>Labor Code</u> and/or other relevant statutes.

120.  In addition, Plaintiff seeks and is entitled to seventy-five percent (75%) of all penalties obtained under <u>Labor Code</u> §2699 to be allocated to the LWDA, for education of employers and employees about their rights and

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
Barnes@KBARNES.COM

- 36 -

**FIFTH AMENDED COMPLAINT**

1 responsibilities under the <u>Labor Code</u>, and twenty-five percent (25%) to Plaintiff

2 and all other similarly situated aggrieved employees.

3      121.  Further, Plaintiff is entitled to recover reasonable attorneys' fees and

4 costs pursuant to <u>Labor Code</u> §§2699(g)(1) and any other applicable statute.

5      122.  On October 5, 2020, Plaintiff TAI HANG complied with <u>Labor Code</u>

6 §2699.3(a) and <u>Labor Code</u> §2699.3(c) in that Plaintiff TAI HANG gave written

7 notice by online filing with the LWDA and by certified mail to Defendants of the

8 specific provisions of the <u>Labor Code</u> alleged to have been violated, including the

9 facts and theories to support the alleged violations. Attached hereto as Exhibit "1"

10 is Plaintiff TAI HANG'S LWDA letter.

11      123.  Further, on October 14, 2020, Plaintiff ROBERT CANALES

12 complied with <u>Labor Code</u> §2699.3(a) and <u>Labor Code</u> §2699.3(c) in that Plaintiff

13 ROBERT CANALES gave written notice by online filing with the LWDA and by

14 certified mail to Defendants of the specific provisions of the <u>Labor Code</u> alleged in

15 this lawsuit to have been violated, including the facts and theories to support the

16 alleged violations. Attached hereto as Exhibit "2" is Plaintiff ROBERT

17 CANALES' October 14, 2020 LWDA letter.

18      124.  As of December 16, 2020 (65 calendar days after Plaintiff ROBERT

19 CANALES' October 14, 2020 LWDA letter was filed online), Plaintiffs had not

20 received any notification that the LWDA intended to investigate the alleged

21 violations. As such, Plaintiffs have complied with <u>Labor Code</u> §2699.3(a) and have

22 been given authorization therefrom to commence a civil action which includes a

23 cause of action pursuant to <u>Labor Code</u> §2699.

24      125.  Further, as of November 16, 2020 (33 calendar days after Plaintiff

25 ROBERT CANALES' October 14, 2020 LWDA letter was mailed to Defendants

26 via certified mail), Plaintiffs have not received from Defendants written notice by

27 certified mail that the alleged violations have been cured, including a description of

28 actions taken. As such, Plaintiffs have complied with <u>Labor Code</u> §2699.3(c) and

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
BARNES@KBARNES.COM

- 37 -

**FIFTH AMENDED COMPLAINT**

have been given authorization therefrom to commence a civil action which includes a cause of action pursuant to Labor Code §2699.

## ELEVENTH CAUSE OF ACTION

## UNFAIR BUSINESS PRACTICES

### (On Behalf of the 17200 Class)

### (Against All Defendants)

126. Plaintiffs incorporate by reference and reallege each and every one of the allegations contained in the preceding and foregoing paragraphs of this Complaint as if fully set forth herein.

127. Defendants have engaged in unlawful, unfair and fraudulent business acts or practices prohibited by B&PC §17200, including those set forth in the preceding and foregoing paragraphs of the complaint, thereby depriving the members of the 17200 Class of the minimum working standards and conditions due to them under the Labor Code and/or the IWC Wage Orders, as specifically described herein.

128. Defendants have engaged in unfair business practices in California by practicing, employing and utilizing the employment practices outlined in the preceding paragraphs, specifically, by requiring employees to perform the labor services complained of herein without the requisite compensation.

129. Defendants' use of such practices constitutes an unfair business practice, unfair competition and provides an unfair advantage over Defendants' competitors.

130. Plaintiffs have suffered injury in fact and have lost money or property as a result of such unfair competition.

131. Plaintiffs seek full restitution from Defendants, as permitted by law, as necessary and according to proof, to restore any and all monies withheld, acquired and/or converted by Defendants by means of the unfair practices complained of herein.

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
Barnes@kbarnes.com

- 38 -

**FIFTH AMENDED COMPLAINT**

132.    Further, if Defendants are not enjoined from the conduct set forth above, Defendants will continue to practice, employ and utilize the employment practices outlined in the preceding paragraphs. Therefore, class members, including current employees and those who intend to seek re-employment, could benefit from an injunction and/or declaratory relief.

133.    Therefore, Plaintiffs request that the Court issue a preliminary and permanent injunction prohibiting Defendants from engaging in the foregoing conduct.

134.    Plaintiffs seek the appointment of a receiver, as necessary, to establish the total monetary relief sought from Defendants.

## VI.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray:

a.      That the Court issue an Order certifying the Classes herein, appointing all named Plaintiffs as representative of all others similarly situated, and appointing all law firms representing all named Plaintiffs as counsel for the members of the Classes;

As to the First Cause of Action for Failure to Pay Minimum Wages

b.      For all earned wages, including minimum wages, for all hours worked by the Minimum Wage Class;

c.      For pre-judgment interest as authorized by Labor Code §218.6 and CC §3287;

d.      For an award of costs and reasonable attorneys' fees;

As to the Second Cause of Action for Failure to Pay Overtime Wages

e.      For overtime compensation for all overtime hours worked by the Overtime Wage Class;

f.      For pre-judgment interest as authorized by Labor Code §218.6 and CC §3287;

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
Barnes@kbarnes.com

- 39 -

**FIFTH AMENDED COMPLAINT**

g.    For an award of costs and reasonable attorneys' fees;

<u>As to the Third Cause of Action for Failure to Provide Legally-Compliant Rest Periods</u>:

h.    For one (1) hour of pay at the regular rate of compensation for each member of the Legal Rest Period Class for each workday that a legally-compliant rest period was not provided;

i.    For pre-judgment interest as authorized by <u>Labor Code</u> §218.6 and <u>CC</u> §3287;

<u>As to the Fourth Cause of Action for Failure to Authorize and Permit Paid Rest Periods</u>:

j.    For one (1) hour of pay at the regular rate of compensation for each member of the Rest Period Class for each workday that a rest period was not provided;

k.    For pre-judgment interest as authorized by <u>Labor Code</u> §218.6 and <u>CC</u> §3287;

<u>As to the Fifth Cause of Action for Failure to Provide Legally-Compliant Meal Periods</u>

l.    For one (1) hour of pay at the regular rate of compensation for each member of the Meal Period Class for each workday that a legally-compliant meal period was not provided;

m.    For pre-judgment interest as authorized by <u>Labor Code</u> §218.6 and <u>CC</u> §3287;

<u>As to the Sixth Cause of Action for Failure to Reimburse for Necessary Business Expenses</u>

n.    For the amounts paid by the Reimbursement Class for necessary business expenses, including but not limited to, pens, clipboards, and safety boots.

o.    For pre-judgment interest as authorized by <u>Labor Code</u> §218.6 and <u>CC</u> §3287;

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
BARNES@KBARNES.COM

- 40 -

**FIFTH AMENDED COMPLAINT**

As to the Seventh Cause of Action for Independent Failure to Timely Furnish Accurate Itemized Wage Statements:

        p.      For recovery as authorized by Labor Code §226(e);

        q.      For an award of costs and reasonable attorneys' fees pursuant to Labor Code §226(e) and/or §226(g);

As to the Eighth Cause of Action for Derivative Failure to Timely Furnish Accurate Itemized Wage Statements:

        r.      For recovery as authorized by Labor Code §226(e);

        s.      For an award of costs and reasonable attorneys' fees pursuant to Labor Code §226(e) and/or §226(g);

As to the Ninth Cause of Action for Violations of Labor Code §203:

        t.      For recovery as authorized by Labor Code §203;

As to the Tenth Cause of Action for Penalties Pursuant to Labor Code §2699:

        u.      As applicable, for civil penalties pursuant to Labor Code §2699(f), in addition to and entirely independent and apart from other penalties in the Labor Code and for Labor Code violations without a specific civil penalty, in the amount of $100 for each aggrieved employee per pay period for each violation, and $200 for each aggrieved employee per pay period for each subsequent violation;

        v.      As applicable, for civil penalties pursuant to Labor Code §558, in addition to and entirely independent and apart from other penalties in the Labor Code, as follows:

              i    For any initial violation, fifty dollars ($50) for each aggrieved underpaid employee for each pay period for which the employee was underpaid; and

              ii.  For each subsequent violation, one hundred dollars ($100) for each aggrieved underpaid employee for each pay period for which the employee was underpaid;

///

**FIFTH AMENDED COMPLAINT**

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
Barnes@kbarnes.com

w.    As applicable, for civil penalties pursuant to <u>Labor Code</u> §1197.1, in addition to and entirely independent and apart from other penalties in the <u>Labor Code</u>, as follows:

    i.    For any initial violation that is intentionally committed, $100 for each aggrieved underpaid employee for each pay period for which the employee was underpaid; and

    ii.   For each subsequent violation, regardless of whether the initial violation is intentionally committed, $250 for each aggrieved underpaid employee for each pay period for which the employee was underpaid;

x.    As applicable, for civil penalties pursuant to <u>Labor Code</u> §226.3, in addition to and entirely independent and apart from other penalties in the <u>Labor Code</u>, in the amount of $250 for each aggrieved employee per pay period for each violation, and $1,000 for each aggrieved employee per pay period for each subsequent violation;

y.    As applicable, for reasonable attorneys' fees and costs incurred pursuant to <u>Labor Code</u> §§2699(g)(1) and any other applicable statute; and

z.    For such relief as this Court may deem just and proper.

<u>As to the Eleventh Cause of Action for Unfair Business Practices</u>:

aa.   For an accounting, under administration of Plaintiffs and/or the receiver and subject to Court review, to determine the amount to be returned by Defendants, and the amounts to be refunded to members of the Classes who are owed monies by Defendants;

bb.   For an Order requiring Defendants to identify each of the members of the Classes by name, home address, home telephone number and email address;

cc.   For an Order requiring Defendants to make full restitution and payment pursuant to California law;

///

- 42 -
**FIFTH AMENDED COMPLAINT**

1    dd.    For an Order for a preliminary and/or permanent injunction

2  prohibiting Defendants from engaging in the acts complained of herein;

3    ee.    For the creation of an administrative process wherein each injured

4  member of the Classes may submit a claim in order to receive his/her money;

5    ff.    For all other appropriate injunctive, declaratory and equitable relief;

6    gg.    For interest to the extent permitted by law;

7    hh.    For an award of attorneys' fees and costs incurred in the investigation,

8  filing and prosecution of this action pursuant to <u>CCP</u> §1021.5, <u>B&PC</u> §17200, et

9  seq., <u>Labor Code</u> §1194 and/or any other applicable provision of law;

10 <u>As to All Causes of Action:</u>

11    ii.    For such relief as this Court may deem just and proper, including

12 reasonable attorneys' fees and costs incurred.

13                              **VII.**

14                   **<u>DEMAND FOR JURY TRIAL</u>**

15       Plaintiffs hereby demand trial of their claims by jury to the extent authorized

16 by law.

17 Dated: August 3, 2023          LAW OFFICES OF KEVIN T. BARNES

18

19                               By: _____
                                      Kevin T. Barnes, Esq.
20                                    Gregg Lander, Esq.
                                      Attorneys for Plaintiff
21                                    TAI HANG

22 Dated: August 3, 2023          STONEBROOK LAW

23                               By: _____
                                      Joseph Tojarieh, Esq.
24                                    Attorney for Plaintiff
                                      ROBERT CANALES
25

26

27

28

LAW OFFICES OF
KEVIN T. BARNES
1635 PONTIUS AVENUE,
SECOND FLOOR
LOS ANGELES, CA
90025-3361
TEL.: (323) 549-9100
FAX: (323) 549-0101
BARNES@KBARNES.COM

- 43 -

**FIFTH AMENDED COMPLAINT**