Kevin T. Barnes, Esq. (#138477)
LAW OFFICES OF KEVIN T. BARNES
1041 Parkside Commons, Suite 101
Greensboro, GA 30642-4519
Tel.: (213) 793-9100
Email: Barnes@kbarnes.com

Raphael A. Katri, Esq. (#221941)
LAW OFFICES OF RAPHAEL A. KATRI
8549 Wilshire Boulevard, Suite 200
Beverly Hills, CA 90211-3104
Tel.: (310) 940-2034 / Fax: (310) 733-5644
Email: RKatri@socallaborlawyers.com

Attorneys for Plaintiff TAI HANG, on
behalf of himself and all others similarly situated

**Additional Counsel on Next Page**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAI HANG and ROBERT CANALES, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> OLD DOMINION FREIGHT LINE, INC., a Virginia corporation; and DOES 1 to 100, inclusive, <br><br> Defendants. | **CLASS ACTION** <br><br> Case No.: 5:21-cv-00287-JWH-KK <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** <br><br> <u>Final Approval Hearing:</u> <br> Date: December 14, 2023 <br> Time: 10:00 a.m. <br> Ctrm: 9D <br><br> Honorable John W. Holcomb <br> Courtroom 9D <br><br> Action filed: November 6, 2020 <br> Trial Date: None Set |

///

///

///

---

**- i -**

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL**

**<u>Additional Counsel for Plaintiffs:</u>**

Joseph Tojarieh, Esq. (#265492)
STONEBROOK LAW
10250 Constellation Boulevard, Suite 100
Los Angeles, CA 90067
Tel: (310) 553-5533 / Fax: (310) 553-5536
Email: JFT@stonebrooklaw.com

Attorneys for Plaintiff ROBERT CANALES, on
behalf of himself and all others similarly situated

///

///

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR FINAL APPROVAL**

# **TABLE OF CONTENTS**

Page

I.   INTRODUCTION .................................................................2

II.  PROCEDURAL HISTORY OF THE CASE ..............................2

III. ACTUAL SETTLEMENT VALUE ..........................................3
  A.   CLAIMANT COMPENSATION ....................................4
  B.   ATTORNEYS' FEES AND COSTS ...............................4
  C.   CLASS/PAGA REPRESENTATIVE SERVICE AWARDS ...........4
  D.   PAGA PAYMENT ...................................................4

IV.  PRELIMINARY APPROVAL ...............................................4

V.   FINAL SETTLEMENT APPROVAL IS APPROPRIATE ..................5
  A.   THE SETTLEMENT IS ENTITLED TO A PRESUMPTION OF FAIRNESS .............................................6
  B.   THE SETTLEMENT RESULTED FROM ARMS-LENGTH NEGOTIATION................................................7
  C.   STRENGTH OF PLAINTIFFS' CASE ............................7
  D.   THE RISKS, EXPENSE, COMPLEXITY, AND LIKELY DURATION OF FURTHER LITIGATION .....................9
  E.   THE RISKS OF MAINTAINING CLASS ACTION STATUS THROUGHOUT TRIAL ..........................................10
  F.   THE AMOUNT OFFERED IN SETTLEMENT ...................10
  G.   THE PARTIES CONDUCTED SUFFICIENT DISCOVERY AND INVESTIGATION TO WARRANT SETTLEMENT .................11
  H.   PLAINTIFFS' COUNSEL IS EXPERIENCED AND ENDORSES THE SETTLEMENT ...................................12
  I.   PRESENCE OF GOVERNMENTAL PARTICIPANT ...................13
  J.   OBJECTIONS TO THE SETTLEMENT............................13

VI.  AN AWARD OF ATTORNEYS' FEES IS PROPER WHEN A COMMON FUND HAS BEEN CREATED FOR THE BENEFIT OF THE CLASS................................................................13
  A.   PLAINTIFFS' COUNSEL'S FEE AWARD IS PROPERLY CALCULATED AS A PERCENTAGE OF THE TOTAL COMMON FUND CREATED FOR THE CLASS ........................14
  B.   THE ATTORNEYS' FEES REQUESTED BY PLAINTIFFS' COUNSEL ARE WELL WITHIN THE RANGE OF FEES IN COMPARABLE CASES...........................................16
  C.   THE RISKS OF LITIGATION ...................................17
  D.   AN AWARD OF ATTORNEYS' FEES AS REQUESTED IS APPROPRIATE UNDER THE LODESTAR METHOD ..............18
       1. LODESTAR METHOD AND ANALYSIS.........................18
       2. FACTS JUSTIFYING THE REQUESTED MULTIPLIER.......22

VII. THE COURT SHOULD APPROVE THE REQUEST FOR REIMBURSEMENT OF COSTS...........................................23

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL**

VIII. THE CLASS REPRESENTATIVE ENHANCEMENT FEE IS REASONABLE AND IS STANDARD IN CLASS ACTIONS ...............23

IX.    CONCLUSION ............................................................................26

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL**

1

# TABLE OF AUTHORITIES

2

Page

3

**STATE CASES**

4

Dunk v. Ford Motor Company

5
(1996) 48 Cal.App.4th 1794 ................................................................. 4, 5, 6, 16

6

Environmental Law Foundation v. Laidlaw Transit, Inc.

7
San Francisco Superior Court, Case No. CGC-06-451832 ..................................19

8

Flannery v. California Highway Patrol

9
 (1998) 61 Cal.App.4th 629, 632........................................................................ 18

10

Ketchum v. Moses

11
(2001) 24 Cal.App.4th 1122 ........................................................................ 17, 21

12

Lealao v. Beneficial Calif., Inc.

13
(2002) 82 Cal.App.4th 19 ............................................................................ 13, 14

14

Martino v. Denevi

15
(1986) 182 Cal.App.3d 553, 559 ........................................................................ 21

16

PLCM Group, Inc. v. Drexler

17
(2000) 22 Cal.4th 1084 .......................................................................... 17, 18, 21

18

Serrano v. Priest

19
(1977) 20 Cal.3d 25 [Serrano III]).............................................................13, 14, 17

20

Serrano v. Priest

21
(1982) 32 Cal.3d 621 [Serrano III]).....................................................................21

22

Thayer v. Wells Fargo Bank

23
(2001) 92 Cal.App.4th 819 ...........................................................................17, 21

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL**

**FEDERAL CASES**

Boeing Co. v. Van Gemert
444 U.S. 472 (1980)..................................................................13

Boyd v. Bechtel Corp.
485 F.Supp. 610 (N.D. Cal.1979) ...................................................10, 11

Central Railroad & Banking Company of Georgia v. Pettus & Others
113 U.S. 116 (1885)..................................................................14

City of Detroit et al., v. Grinnell Corporation
495 F.2d 448 (1974) ..............................................................16, 17

Ellis v. Naval Air Rework Facility
87 F.R.D. 15 (N.D. Cal, 1980), affid, 661 F.2d 939 (9th Cir. 1981) ...............10, 11

Fisher Bros. v. Cambridge-Lee Industries, Inc.
630 F.Supp. 482 (E.D. Pa 1985) ......................................................11

Hanlon v. Chrysler Corporation
150 F.3d 1011 (1998) ...............................................................6, 7

In re Warner Communications Securities Litigation
618 F. Supp. 735 (2d Cir. 1986) ...................................................10, 11

Kyriazi v. Western Elec. Co.
527 F. Supp. 18 (D.N.J. 1981) ........................................................23

League of Martin v. City of Milwaukee
588 F.Supp. 1004 (E.D. Wis. 1984) ...................................................23

Lo Re v. Chase Manhattan Corp.
1979 U.S. Dist. LEXIS 12210, 19 FEP Cas. (BNA) 1366 (SDNY 1979).............24

Muehler v. Land O' Lakes, Inc.
617 F. Supp. 1370 (1985) ............................................................16

National Rural Tele. Coop. v. DIRECTTV, Inc.
221 F.R.D. 523 (C.D. Cal. 2004)......................................................10

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR FINAL APPROVAL**

New York Gaslight Club, Inc. v. Carey
447 U.S. 54, 62, 100 S. Ct. 2024, 2030, 64 L. Ed. 2d 723 (1980).........................21

Officers for Justice v. Civil Service Com.
(9th Cir. 1982) 688 F.2d 615, cert. Denied (1983) 459 U.S. 1217 ...................... 5, 6

Paul, Johnson, Alston & Hunt v. Graulty
886 F.2d 268 (1989) ........................................................... 14, 15

Telecomm. Corp. v. DirectTV
221 F.R.D. 523 (C.D. Cal. 2004)...............................................................9

Van Ba Ma v. Covidien Holding, Inc.
2014 U.S. Dist. LEXIS 76359 (C.D. Cal. 2014) ...........................................7

Vincent v. Hughes Air West, Inc.
557 F.2d 759 (9th Cir. 1977) ...........................................................13, 14

Washington Public Power Supply v. City of Seattle
19 F. 3d 1291 (1994) ............................................................. 15

Women's Committee for Equal Employment Opportunity v. NBC
76 F.R.D. 173 (SDNY 1977) ...........................................................24

**FEDERAL STATUTES**

Fed. R. Civ. P. 23(e) ...........................................................4

**STATUTES**

Business & Professions Code §17200 ...........................................................3

CA Labor Code §2699 ...........................................................3, 7

**TREATISES**

Newberg on Class Actions, 3rd Ed., 1992, §14.01 .............................15, 18
R. Pearle,
Wegner, Fairbank, and Epstein, *California Practice Guide: Civil Trials and Evidence* (Rutter) at 17:172.3 ...........................................................13

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL**

# I.

## INTRODUCTION

Plaintiffs achieved an excellent result in this litigation, embodied in the Joint Stipulation For Leave to File Fifth Amended Complaint and For Settlement and Release of Class Action and PAGA Claims ("Settlement Agreement"). The proposed Settlement provides substantial benefits to the class members and is the product of aggressive litigation by Plaintiffs and their Counsel to obtain the best possible result for the Class Members. **The Administrator will pay out 100% of the money, as there is no reversion to the Defendant and no Class Member opted out of, or objected to, the Settlement and 100% of the Class Members are participating in the Settlement. The average Class Member will receive a settlement payment of approximately $823.53 and the highest will be approximately $3,799.61.**

Plaintiffs' request for attorneys' fees, reimbursement of costs, and class representative service awards are fair, reasonable, and adequate, and in the best interest of the Class. Accordingly, Plaintiffs request that the Court grant final approval of the Settlement.

# II.

## PROCEDURAL HISTORY OF THE CASE

On or about October 5, 2020, Plaintiff Hang ("Plaintiff Hang") filed with the LWDA and served on Defendant a notice under California Labor Code § 2699.3 stating he intended to serve as a proxy of the LWDA to recover civil penalties on behalf of aggrieved employees for various alleged violations of the California Labor Code and applicable Industrial Welfare Commission Wage Order.

On or about October 14, 2020, Plaintiff Canales ("Plaintiff Canales") filed with the LWDA and served on Defendant a notice under California Labor Code § 2699.3 stating he intended to serve as a proxy of the LWDA to recover civil penalties on behalf of aggrieved employees for various alleged violations of the

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

California Labor Code and applicable Industrial Welfare Commission Wage Order.

On or about November 6, 2020, Plaintiffs filed their case on behalf of themselves and other similarly situated putative Class Members (herein collectively "Plaintiffs") against Defendant in the San Bernardino Superior Court, Case No. CIVSB2025678 alleging six (6) causes of action for alleged violations of the California Labor Code and applicable IWC Wage Order on behalf of Plaintiffs and current and former non-exempt "dock worker" employees of Defendant.

On December 17, 2020, Plaintiffs filed a First Amended Complaint in State Court, which added a seventh claim pursuant to which Plaintiffs seek civil penalties under the California Labor Code Private Attorneys General Act of 2004. Cal. Lab. Code § 2698, *et seq*.

On February 19, 2021, Defendant removed the case to federal court with the matter pending in the Central District. After preliminary motion practice, Plaintiffs filed their Fourth Amended Class Action (FRCP Rule 23) Complaint.

On April 3, 2023 the parties mediated this case before Mediator David A. Rotman, Esq.  The parties did not reach settlement on the day of the mediation. After further negotiations with the assistance of the mediator, the parties eventually agreed on a settlement on April 10, 2023 for $2,850,000 on a class wide, common fund basis with no claim form requirement and with no residual to revert to the Defendant.

**III.**

**ACTUAL SETTLEMENT VALUE**

Pursuant to the terms of the Settlement, Defendant will pay the total amount of $2,850,000.  Class Members do not need to submit a claim form, there is no reversion to the Defendant.

///

///

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

**A.      CLAIMANT COMPENSATION:**

**The average class member will receive a settlement payment of approximately $823.53 and the highest will be approximately $3,799.61** (s*ee* Declaration of Lisa Pavlik for Rust Consulting, Inc. attached as **Exhibit 1** to the Declaration of Kevin T. Barnes) (hereinafter, "Barnes Decl."). The proposed "Settlement Class" is comprised of all of Defendant's non-exempt current and former employees working or who worked in the State of California in a Dockworkers or Dockworker Lead position from May 12, 2016, through August 3, 2023. It shall be an opt-out class.

**B.      ATTORNEYS' FEES AND COSTS:**  Plaintiffs' request attorneys' fees of $832,199.67, attorney costs of $20,038.30 as verified by the Class Counsel and approved by the Court, and the claims administration costs of $26,000.

**C.      CLASS/PAGA REPRESENTATIVE SERVICE AWARD:** $10,000 in Class Service Award to Class Representative Tai Hang and $10,000 in Class Service Award to Class Representative Robert Canales.

**D.      PAGA PAYMENT:** $50,000 of the Gross Settlement Amount shall be allocated to settlement of PAGA claims—75% of which shall be paid to the LWDA ($37,500) and 25% of which shall be part of the NSF and distributed to Settlement Class Members ($12,500).

### IV.

### PRELIMINARY APPROVAL

After Plaintiffs filed their Motion for Preliminary Approval, the Court issued an Order dated August 3, 2023 (DKT No. 49) granting the Motion for Preliminary Approval of this Settlement, approved the Class Notice, appointed the Class Representatives, designated Plaintiffs' Counsel, appointed Rust Consulting as Claims Administrator, set timelines for the claims and settlement procedure, and granted Plaintiffs provisional leave to file their now operative Fifth Amended Complaint for purposes of this settlement attached as Exhibit A to the parties'

- 4 -

Stipulation for Leave to File Fifth Amended Complaint and for Settlement and Release of Class Action and PAGA Claims.

Plaintiffs' provisionally operative Fifth Amended Complaint  alleges that Defendant violated the California <u>Labor Code</u> by: (1) failing to pay minimum wages; (2) failing to pay overtime wages; (3) failing to provide legally-complaint rest periods; (4) failing to authorize and permit all paid rest periods; (5) failure to provide legally-compliant meal periods; (6) failure to reimburse for necessary business expenses; (7) independent failure to timely furnish accurate itemized wage statements; (8) derivative failure to timely furnish accurate itemized wage statements; (9) derivative failure to timely pay final wages due at separation; (10) derivative liability for civil penalties under the Labor Code <u>Private Attorneys General Act,</u> California <u>Labor Code</u> § 2699, *et. Seq;* and (11) derivative violations of California <u>Business & Professions Code</u> § 17200. The complaint seeks *inter alia* recovery of unpaid wages, restitution, damages for actual injury, statutory penalties, civil penalties, interest, attorneys' fees and costs.

## V.

## <u>FINAL SETTLEMENT APPROVAL IS APPROPRIATE</u>

Pursuant to *Federal Rules of Civil Procedure*, "a class action shall not be dismissed or compromised without the approval of the Court, and notice of the proposed dismissal or compromise shall be given to all members of the Class in such manner as the Court directs . . . "*Fed. R. Civ. P.* 23(e).  In deciding whether to grant final approval to a proposed class action settlement under *Fed. R. Civ. P.* §23(e), the Court's overriding concern is whether the proposed settlement is "fair, adequate, and reasonable."  *Dunk v. Ford Motor Company* (1996) 48 Cal.App.4[th] 1794, 1801 (quoting *Officers for Justice v. Civil Service Com.* (9th Cir. 1982) 688 F.2d 615, 625, cert. Denied (1983) 459 U.S. 1217)).

In practical terms, the settlement of a class action follows three parts:  1) preliminary approval of the proposed settlement; 2) notice to Class Members; and,

**- 5 -**

3) a Final Approval hearing or "Fairness Hearing" at which the court may hear evidence and argument on the fairness, adequacy, and reasonableness of the settlement.

Here, the Court granted preliminary approval of the Settlement and Class Notice was sent to all Class Members.

## A.   THE SETTLEMENT IS ENTITLED TO A PRESUMPTION OF FAIRNESS

A presumption of fairness exists where:  1) the settlement is reached through arm's length bargaining; 2) investigation and discovery are sufficient to allow Counsel and the Court to act intelligently; 3) counsel is experienced in similar litigation; and, 4) the percentage of objectors is small.  *Dunk, supra,* at p. 1802; *Officers for Justice*, *supra,* at p. 625.

To prevent fraud, collusion, or unfairness to the Class, the settlement or dismissal of a class action requires Court approval.  The purpose of the requirement is to protect Class Members, including the named Plaintiffs, whose rights may not have been given due regard by the negotiating parties.  *Officers for Justice, supra*, at p. 624.  The trial court has broad powers to determine whether a proposed settlement in a class action is fair.

At the Final Approval Hearing, the Court should consider the relevant factors, such as the strength of the Plaintiffs' case, the risk, expenses, complexity and likely duration of further litigation, the risk of maintaining class action status through trial, the amount offered in settlement, the extent of discovery completed and the stage of the proceedings, the experience and views of Counsel, the presence of a governmental participant, and the reaction of the Class Members to the proposed settlement*. Officers for Justice., supra*, at p. 624.  "This list is not exhaustive and should be tailored to each case.  Due regard should be given to what is otherwise a private consensual agreement between the parties." *Dunk, supra*, at p. 1801.

The settlement as a whole, not as component parts, is the proper level of

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

inquiry. *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998). The settlement must stand or fall in its entirety, and the Court may not delete, modify, or rewrite particular provisions. *Id.*

## B.   THE SETTLEMENT RESULTED FROM ARM'S-LENGTH NEGOTIATIONS

The Ninth Circuit has shown longstanding support of settlements reached through arms' length negotiation by capable opponents. *In Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009), the Ninth circuit expressly opined that courts should defer to the "private consensual decision of the [settling] Parties." Id. at 965, (citing *Hanlon*, supra, 150 F.3d at 1027). The primary reason for deferring to such settlements is the experience of Counsel and the participation of a neutral (in this case, David A. Rotman, Esq.). Both factors are present here. The three firms advanced as Class Counsel have substantial experience in wage and hour class action cases, all of whom courts have approved as Class Counsel in numerous other wage and hour class actions. *See* Barnes Decl. ¶'s 3-7; Declaration of Class Counsel Joseph Tojarieh ¶'s 4-5 (hereafter, "Tojarieh Decl."); and Declaration of Class Counsel Raphael A. Katri ¶'s 3-6 (hereafter, "Katri Decl." The proposed Settlement here is the product of arm's-length negotiations, as the parties had a formal mediation on April 3, 2023 with David Rotman, Esq., a mediator who is very experienced in wage and hour class action cases. Although the parties did not reach agreement at this mediation, they continued settlement discussions through the mediator and were ultimately agreed to a settlement on April 10, 2023.

## C.   STRENGTH OF PLAINTIFFS' CASE

When evaluating the settlement terms for purposes of ruling on whether to finally approve it, the Court is to review the strength of the Plaintiffs' case, including "the probable outcome of a trial on the merits of liability and damages as to the claims, issues, or defenses of the class and individual class members."

- 7 -

*Van Ba Ma v. Covidien Holding, Inc.*, 2014 U.S. Dist. LEXIS 76359, *1, *6-7 (C.D. Cal. 2014). In ruling on preliminary approval, the "fairness hearing is not to be turned into a trial or a rehearsal for trial on the merits." Id. Rather, when considering the fairness of a proposed class settlement, courts consider the strength of a plaintiff's case against the risk, expense, complexity and likely duration of further litigation. *Hanlon*, *supra*, 150 F.3d at 1026.

Here, Plaintiffs primarily base their theory of liability for all California non-exempt Dockworker or Dockworker Lead employees on Defendant's alleged violations of the California <u>Labor Code</u> by: (1) failing to pay minimum wages; (2) failing to pay overtime wages; (3) failing to provide legally-complaint rest periods; (4) failing to authorize and permit all paid rest periods; (5) failure to provide legally-compliant meal periods; (6) failure to reimburse for necessary business expenses; (7) independent failure to timely furnish accurate itemized wage statements; (8) derivative failure to timely furnish accurate itemized wage statements; (9) derivative failure to timely pay final wages due at separation; (10) derivative liability for civil penalties under the Labor Code <u>Private Attorneys General Act,</u> California <u>Labor Code</u> § 2699, *et. Seq;* and (11) derivative violations of California <u>Business & Professions Code</u> § 17200. (*see* Declaration of Kevin T. Barnes In Support of Plaintiffs' Motion For Preliminary Approval Of Class Action Settlement (DKT No. 46-2).

The Parties reached the Settlement after extensive factual and legal research, formal discovery including propounding and responding to written interrogatories, the production of documents, and a full-day Mediation with the David Rotman. To prepare for the mediation, Defendant provided extensive documentation and data related to the claims asserted in this case as well as a number of work weeks, class size, and other necessary information for Plaintiffs to create a damage exposure analysis. Plaintiffs hired an expert economist to prepare damage calculations and an exposure analysis prior to the mediation. The Parties continued with direct

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

communication and eventually agreed on a settlement on or around April 10, 2023.

Counsel are knowledgeable about, and have done extensive research with respect to, the applicable law and potential defenses to the claims of the Settlement Class. Based on the documents and information provided by Defendant, and their own independent investigation and evaluation, Counsel and Plaintiffs are of the opinion that the Settlement with Defendant for the consideration and on the terms set forth in this Settlement is fair, reasonable, and adequate and is in the best interest of the Class Members in light of all known facts and circumstances, including the risk of significant delay and uncertainty associated with litigation, various defenses asserted by Defendant, and numerous potential appellate issues.

As set forth in the Declaration of Kevin T. Barnes In Support of Plaintiffs' Motion For Preliminary Approval Of Class Action Settlement (DKT No. 46-2), the total realistic exposure of this case was $5,026,891. Plaintiffs obtained a settlement of $2,850,000, which is approximately 57% of the realistic class exposure.

## D.   THE RISKS, EXPENSE, COMPLEXITY, AND LIKELY DURATION OF FURTHER LITIGATION

These factors also weigh in favor of final approval. The risks in a wage and hour class action cases are significant. The Parties' assessment of the matter is based on extensive research for and during the litigation which lasted for over three years, multiple Motions to Dismiss and the Court's rulings thereto, written discovery, review of hundreds of pages of documents, a full-day Mediation with the David Rotman, Esq., and after consultation with an economist regarding potential damage exposure (*see* Declaration of Kevin T. Barnes In Support of Plaintiffs' Motion For Preliminary Approval Of Class Action Settlement (DKT No. 46-2)).

Moreover, the risk related to class certification, trial, and the prospect of appeals by the losing party is a real risk and could lead to further protracted litigation, delay, and increased costs and risks to the Plaintiffs and Class Members.

This Settlement avoids those risks and the accompanying expense. *See, e.g., In re Portal Software, Inc. Securities Litig.*, Case No. C-03-5138 VRW, 2007 WL 4171201 at *3 (N.D. Cal. Nov. 26, 2007) (noting that the "inherent risks of proceeding to summary judgment, trial and appeal also support the settlement"). Plaintiffs consider this an excellent settlement given the risk involved. Thus, these factors favor final approval.

**E.     THE RISKS OF MAINTAINING CLASS ACTION STATUS THROUGHOUT TRIAL**

Plaintiffs had not yet prevailed on class certification when the Parties reached this proposed class-wide resolution, and the risks of obtaining class certification and a subsequent motion by Defendant to decertify all or parts of the case prior to trial and throughout the trial itself are substantial.  Absent settlement, there was a risk that the Court would not certify this case, or would decertify the class at the time of trial.  The court of appeal could also decertify the class on appeal. Thus, this factor, too, supports final approval of the Settlement.

**F.     THE AMOUNT OFFERED IN SETTLEMENT**

Plaintiffs estimated that the Defendant's realistic exposure in this case was approximately $5,026,891. Plaintiffs obtained a settlement of $2,850,000. This is 57% of the realistic class exposure. This is a fair and reasonable settlement in this case based on the facts and associated risks of this putative class action lawsuit. Furthermore, there is also no claim form requirement and no reversion to the Defendant (*see* Declaration of Kevin T. Barnes In Support of Plaintiffs' Motion For Preliminary Approval Of Class Action Settlement, ¶'s 6-11 (DKT No. 46-2).

Courts in the Ninth Circuit observe that "a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery." *Telecomm. Corp. v. DirectTV* (C.D. Cal. 2004) 221 F.R.D. 523, 527. The Settlement here of $2,850,000 is significantly more than a "fraction" when one considers that it provides a definite and significant recovery in light of the risks of

further litigation. Accordingly, the parties contend that the proposed settlement is reasonable in light of the strengths of Plaintiffs' case, the risks of further litigation, the risks of decertification, the risks of prevailing at trial, and the estimated values of Plaintiffs' claims at trial.

Defendant vigorously disputes these claims as set forth above. The settlement here of $2,850,000 provides a definite and significant recovery in light of the risks of further litigation (*see* Declaration of Kevin T. Barnes In Support of Plaintiffs' Motion For Preliminary Approval Of Class Action Settlement, ¶'s 6-11 (DKT No. 46-2). **Likewise, no Class Member objected to, or opted out of the Settlement and the Class Members will receive substantial sums.**

Given the litigation risks involved, including the risk that the Court might not certify the class, or decertify it at a later time, the risk of proving liability and damages at trial, and keeping the verdict through appeal, the proposed Settlement is well within the realm of fair, reasonable, and adequate.

In short, Plaintiffs' ability to maintain a certified class and prevail on their claims was far from guaranteed. Indeed, "[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *National Rural Tele. Coop. v. DIRECTTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (internal quotations omitted). Thus, this factor supports final approval.

## G.   THE PARTIES CONDUCTED SUFFICIENT DISCOVERY AND INVESTIGATION TO WARRANT SETTLEMENT

The stage of the proceedings and the amount of discovery completed is an important factor that courts consider in determining the fairness, reasonableness, and adequacy of a settlement. *In re Warner Communications Sec. Litig.,* 618 F.Supp. 735, 741 (S.D.N.Y. 1985), affd., 198 F.2d 35 (2d Cir. 1986); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D Cal, 1980), affid, 661 F.2d 939 (9th Cir. 1981); *Boyd v. Bechtel Corp.,* 485 F.Supp. 610, 616-17 (N.D. Cal.1979).  Plaintiffs'

- 11 -

Counsel conducted meaningful discovery.  The litigation reached a stage where "the parties certainly have a clear view of the strengths and weaknesses of their cases." *Warner Communications*, 618 F.Supp. at 745; *Ellis*, 87 F.R.D., at 18; *Boyd*, 485 F.Supp. at 616-17.

Plaintiffs' Counsel and the Class Representatives  aggressively litigated this matter for over three years, which allowed the Parties to base their assessment of the matter on extensive research for and during the litigation, review of hundreds of pages of documents, a full-day Mediation with David Rotman, Esq., multiple Motions to Dismiss and the Court's rulings thereto and after consultation with an economist regarding potential damage exposure (*see* Declaration of Kevin T. Barnes In Support of Plaintiffs' Motion For Preliminary Approval Of Class Action Settlement (DKT No. 46-2).

Through this investigation, Plaintiffs are well positioned to evaluate the strengths and vulnerabilities of the claims and to engage in settlement discussions that eventually led to this Settlement. Based on the substantial efforts, investigation, and collaboration of Plaintiffs' Counsel and Plaintiffs, the Parties reached the Settlement before the Court. At all times, the Parties' settlement negotiations were non-collusive, adversarial, and at arm's length. Thus, this factor supports final approval.

## H.   PLAINTIFFS' COUNSEL IS EXPERIENCED AND ENDORSES THE SETTLEMENT

Experienced Counsel, operating at arm's length, weighed all of the foregoing factors and endorse the proposed Settlement.  As the Courts explain, the view of the attorneys actively conducting the litigation, is "entitled to significant weight." *Fisher Bros. V. Cambridge-Lee Industries, Inc.,* 630 F.Supp. 482, 488 (E.D. Pa. 1985); *see also Ellis*, 87 F.R.D., at 18; *Boyd*, 485 F.Supp. at 616-17.

The Plaintiffs' firms advanced as Class Counsel have substantial experience in wage and hour class action cases, whom courts have approved as Class Counsel

- 12 -

in numerous other wage and hour class actions (*see* Barnes Decl., ¶'s 2-7; Tojarieh Decl. ¶'s 4-5; and Katri Decl. ¶'s 3-5. The recovery for each Class Member is substantial, given the risks inherent in litigation and the defenses asserted. This Settlement is fair, adequate and reasonable and in the best interests of the Class (*see* Declaration of Kevin T. Barnes In Support of Plaintiffs' Motion For Preliminary Approval Of Class Action Settlement (DKT No. 46-2).

## I.   PRESENCE OF GOVERNMENTAL PARTICIPANT

The only governmental participation in this matter is through the payment to the Labor Workforce Development Agency ("LWDA").  The LWDA and Attorney General's office received notice of the Settlement prior to the Preliminary Approval Motion and have not voiced any objection to the proposed Settlement (*see* Barnes Decl., ¶ 25; DKT No. 47).

## J.   <u>OBJECTIONS TO THE SETTLEMENT</u>

Per Court Order, the Class Members received the Class Notice of the pending Settlement.  No Class Member objected to the Settlement. (s*ee* Declaration of Lisa Pavlik for Rust Consulting, Inc. attached as **Exhibit 1** to the Barnes Decl.).

## VI.

## <u>AN AWARD OF ATTORNEYS' FEES IS PROPER WHEN A COMMON FUND HAS BEEN CREATED FOR THE BENEFIT OF THE CLASS</u>

Plaintiffs' Counsel request an award of attorneys' fees in an amount of 30% of the settlement value created on behalf of the Class, after taking out the employers share of payroll taxes.  This request is reasonable and fair and falls on the lower end of the Ninth Circuit's historical benchmark for attorneys' fees of 20% to 50% of a common fund.  This amount is also fair compensation for undertaking complex, risky, expensive, and time-consuming litigation on a contingent basis.

///

///

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

## A. PLAINTIFFS' COUNSEL'S FEE AWARD IS PROPERLY CALCULATED AS A PERCENTAGE OF THE TOTAL COMMON FUND CREATED FOR THE CLASS

Plaintiffs' Counsel seeks a 30% fee award calculated as a percentage of the total value of Settlement (after taking out the employers share of payroll taxes, which is estimated to be a maximum of $76,001.11) (*see* Declaration of Lisa Pavlik ¶ 15 for Rust Consulting, Inc. attached as **Exhibit 1** to the Barnes Decl.).

California state and federal courts recognize that an appropriate method for determining an award of attorneys' fees is based on a percentage of the total value of benefits to class members by the settlement. (*Serrano v. Priest* 20 Cal.3d 25, 34 (1977) [Serrano III]); *Boeing Co. v. Van Gemert* 444 U.S. 472, 478 (1980); *Vincent v. Hughes Air West, Inc.* 557 F.2d 759, 769 (9th Cir. 1977). The purpose of this equitable doctrine is to avoid unjust enrichment of counsel and to "spread litigation costs proportionally among all the beneficiaries so that the active beneficiary does not bear the entire burden alone." (*Vincent*, *supra*, at p. 769.)

### <u>The Common Fund Doctrine</u>

The Common Fund Doctrine is predicated on the principle of preventing unjust enrichment. When a litigant's efforts create or preserve a fund from which others derive benefits, he may require the passive beneficiaries to compensate those who created the fund. Both California state and federal courts embrace this doctrine. (*Serrano III*, *supra* at p. 35; *Vincent*, *supra*, at p. 769.)

Wegner, Fairbank, and Epstein, *California Practice Guide: Civil Trials and Evidence* (Rutter), at 17:172.3, succinctly explains the common fund doctrine as follows:

> "Where the lawsuit results in the recovery of a fund or property benefiting others as well as Plaintiff (e.g., a class action), the court has inherent equitable power to order Plaintiff's attorney fees paid out of the common fund or property. [*See* Serrano v. Priest *('*Serrano III*')* 20 Cal.3d 25, 35, 141 Cal.Rptr. 315, 318 (1977)]
>
> Such 'fee spreading' assures that all those benefited by the litigation pay their fair share of obtaining the recovery. [*See* Lealao v. Beneficial Calif., Inc. 82.]"Cal.App.4th 19, 26, 97 Cal.Rptr.2d 797, 803 (2000)]

---

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

The common fund theory comes from equity. The purpose of this doctrine is to avoid unjust enrichment and to "spread litigation costs proportionately among all the beneficiaries so that the active beneficiary does not bear the entire burden alone . . . ." (*Vincent*, *supra*, at p. 769).) "Percentage fees have traditionally been allowed in such common fund cases." (*Lealao*, *supra,* at p. 27.)

The common fund approach appears to be the preferred method of awarding fees. Since *Serrano III*, *supra*, there has been a "ground swell of support for mandating the percentage-of-the-fund approach in common fund cases." (*Lealao*, *supra,* at p. 27.) *Lealao* discusses at length the judicial perception of the lodestar method as unfair and arbitrary for fostering collusively low settlements for a high fee award and for placing the trial court in the unfavorable position of determining reasonable hours and billing rates. (*Id.* at 29-30.) According to *Lealao,* these sentiments are "widely shared*"* and stimulated a greater judicial willingness to award fees as a percentage-of-the-fund. (*Id.* at 30.) As a result, the Ninth Circuit now prefers the percentage-of-the-fund approach in common fund cases. (*Id.* at 31.)

Here, it is clear that Plaintiffs created a common fund and satisfied the requisites supporting payment of fees by the beneficiaries of that fund. In *Paul, Johnson, Alston & Hunt v. Gaulty*, 886 F.2d 268 (9th Cir. 1989), the Ninth Circuit embraced the common fund principle when it stated:

> "Since the Supreme Court's 1885 decision in *Central Railroad & Banking Co. of Ga. V. Pettus*, 113 U.S. 116, 5 S.Ct. 387, 28 L.Ed. 915 (1885), it is well settled that the lawyer who creates a common fund is allowed an extra reward, beyond that which he has arranged with his client, so that he might share the wealth of those upon whom he has conferred a benefit. The amount of such a reward is that which is deemed 'reasonable' under the circumstance. (Id. at 271, citations omitted.)

> "The common fund exception is grounded in the historic power of equity to permit the trustee of a fund or property (or a party preserving or recovering a fund for the benefit of others, as well as himself) to

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

> cover costs, including attorney's fees. Those costs and fees are paid out of the fund or property itself, or directly from the other parties enjoying the benefit. R. Pearle, *California Attorney Fee Awards* (CEB 1993) & 7.4 p. 7-5."

For Plaintiffs' Counsel, the fees here were wholly contingent in nature and the case presented far more risk that the usual contingent fee case. There was the prospect of the enormous cost inherent in class action litigation, as well as litigation with a corporate Defendant who retained a premier defense firm. That prospect has previously become reality, in both trial courts and the Court of Appeals in other wage and hour Class litigation. Plaintiffs' Counsel risked not only a great deal of time, but also a great deal of expense to ensure the successful litigation of this action on behalf of all Class Members.

**B.  THE ATTORNEYS' FEES REQUESTED BY PLAINTIFFS' COUNSEL ARE WELL WITHIN THE RANGE OF FEES IN COMPARABLE CASES**

> "No general rule can be articulated on what is a reasonable percentage of a common fund. Usually 50% of the fund is the upper limit on a reasonable fee award from a common fund in order to assure that the fees do not consume a disproportionate part of the recovery obtained for the Class, although somewhat larger percentages are not unprecedented." (*Newberg on Class Actions*, 3rd Ed., 1992, §14.03.)

With regard to percentage fee awards, *Newberg* states:

> "[A]chievement of a substantial recovery with modest hours expended should not be penalized but should be rewarded for considerations of time saved by superior services performed." (*Newberg on Class Actions*, 3rd Ed., §14.01, p. 14-10:14-11.

Attorney fee applications in California class actions based upon a percentage of a common fund as a "benchmark" now enjoys substantial support by the Ninth Circuit Court of Appeals, as well as various state Courts. (*See Paul, Johnson, Alston & Hunt v. Graulty* 886 F.2d 268 (9th Cir. 1989), *Washington Public Power Supply Secur. Lit. v. City of Seattle* 19 F.2d 1291 (9th Cir. 1994).) California state

Courts also approve the use of a percentage of the fund to calculate reasonable attorney fee awards. (*Dunk v. Ford Motor Co.* 48 Cal.App.4th 1794, 1808 (1996) [the percentage method calculates attorney fees as a reasonable percentage of the common fund and may be used where the amount of the settlement is a certain or easily calculable sum of money].)  Plaintiffs' Counsel represented all the Class Members in this matter and bore the entire risk and costs of litigation for over three years – all on a pure contingency basis (s*ee* Barnes Decl.).

The legal issues raised in this case are very difficult due to the constantly changing law on meal and rest breaks. As such, there were many disputes and good faith potential defenses.  The complexity of this matter was further complicated by the fact that many Class Members are current employees of Defendant, who might have been reluctant to participate in Plaintiffs' investigation due to perceived fear of retribution by the employer.

Plaintiffs' Counsel's fee request of 30% is very reasonable in light of the work performed and results achieved in this case.

## C.    THE RISKS OF LITIGATION

One of the primary factors justifying an enhanced attorneys' fees award is the attendant risks inherent in the litigation. As observed in *City of Detroit v. Grinnell Corporation*, 495 F.2d 448, 470 (2d Cir. 1974):

> "No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended."

The court in *Muehler v. Land O'Lakes, Inc.,* 617 F.Supp. 1370, 1375-76 (D. Minn. 1985), also recognized the need to fairly compensate firms who undertake unique and risky litigation for plaintiffs' classes, in justifying the award of fees representing 35% of the recovery fund, observing:

> "If the Plaintiff's bar is not adequately compensated for its risk,

- 17 -

responsibility, and effort when it is successful, then effective representation for Plaintiff in these cases will disappear…"

Despite the complexity of the case, Plaintiffs' Counsel have, through the investment of substantial effort, and the resources of two small law firms, been able to secure an outstanding settlement on behalf of the Class Members.  Defendant vigorously contested liability, the amount of claimed damages, and the propriety of class certification. Plaintiffs faced substantial obstacles in demonstrating that Class certificate was appropriate and then in establishing Defendant's liability and damages. It is this kind of situation, involving complex issues, that the courts recognize as deserving of a substantial attorneys' fee award. *City of Detroit v. Grinnell Corp.*, 495 F.2d 488, 471 (2d Cir. 1974).

**D.   AN AWARD OF ATTORNEYS' FEES AS REQUESTED IS APPROPRIATE UNDER THE LODESTAR METHOD AND MULTIPLIER ANALYSIS**

**1.  LODESTAR METHOD AND ANALYSIS**

Plaintiffs' Counsel's request for attorney fees and costs in this case is appropriate under either theory of awarding fees.  A lodestar cross-check confirms the reasonableness of the requested fee. Under the lodestar method, the court calculates a base fee amount from a compilation of time reasonably spent on the case and the reasonable hourly compensation of the attorney. *Serrano, supra,* 20 Cal.3d at 48. The court then enhances this lodestar figure by a "multiplier" to account for a range of factors, such as the novelty and difficulty of the case, its contingent nature, and the degree of success achieved. *Id*. at 49; *see also Ketchum v. Moses*, (2001) 24 Cal.4th 1122, 1132-36; *PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084; *Thayer v. Wells Fargo Bank* (2001) 92 Cal.App.4th 819, 834, ("[t] here is no … rule limiting the factors that may justify an exercise of judicial discretion to [adjust the] lodestar").

Here, Class Counsel earned the requested fee, as the Parties vigorously litigated

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

this case, requiring significant work. Plaintiffs' Counsel expended at least 392.8 hours prosecuting this case (*see* Barnes Decl., ¶'s 15-17; Tojarieh Decl., ¶'s 7-12; and Katri Decl. ¶ 7).

The issue in this motion is not why the Court should award a fee commensurate with 30% of the fund, as Plaintiffs' Counsel meet all of the stated requirements warranting such an award.  There is no basis for the Court not to award the fee requested.  The Settlement comes after productive litigation conducted under the specter of attacks on the viability of wage and hour class action, which the California Supreme Court continues to review.  These facts, as well as others discussed below, warrant approval of the requested fee.

To summarize Plaintiffs' lodestar request: Plaintiffs' Counsel's will have spent 392.8 hours on this case. Plaintiffs' Counsel request the Court find that their requests of $825 an hour for Kevin T. Barnes, $750 an hour for Gregg Lander, $700 an hour for Raphael A. Katri, and $675 an hour for Joseph Tojarieh are reasonable. **At the requested rates, this results in a total lodestar fee amount of $302,307.50. The fee request in this case is $832,199.67, which is a multiplier of 2.75** (*see* Barnes Decl., ¶'s 15-17, Tojarieh Decl., ¶'s 7-12, and Katri Decl., ¶ 7).

A reasonable hourly rate is the prevailing rate charged by attorneys of similar skill and experience in the relevant community. *PLCM Group, Inc. v. Drexler* (2000) 22 Cal. 4th 1084, 1095. Courts may consider other factors when determining a reasonable hourly rate, *e.g.*, the attorney's skill and experience, the nature of the work performed, the relevant area of expertise and the attorney's customary billing rates. *Flannery v. California Highway Patrol* (1998) 61 Cal. App. 4th 629, 632.

One difficulty in determining the hourly rate of attorneys of similar skill and experience in the relevant community is the scarcity of hourly fee paying clients in class action litigation. As a practical matter, few if any consumers or employees pay attorneys' fees on an hourly basis for such extensive litigation, and thus retainer agreements in such cases are based on a contingency fee relationship. Although there is

- 19 -

no customary billing rate, when considering appropriate rates, courts should strongly consider the nature of class action work (*see* Barnes Decl.).

Various objective sources confirm the reasonableness of the hourly rates requested by Class Counsel.  The Laffey Matrix is a pre-fixed formula used by federal courts, including the Central District, to determine reasonable hourly rates.  Rubenstein, 5 *Newberg on Class Actions*, § 15:43, p. 148 (5th Ed. 2015). The Laffey Matrix establishes the reasonableness of the hourly rates requested. (*see* The Laffey Matrix attached as **Exhibit 3** to the Barnes Decl.). The Matrix reflects partners' rates with experience commiserate to the years of experience of Mr. Barnes, one of the most experienced Counsel who worked on this case, as billing upwards of $899 per hour, well above the rates Class Counsel request. The Matrix also reflects third-year associates' rates of $372 per hour and paralegal rates of up to $200 per hour as reasonable.  In the 10-year period from January 1, 2005 through December 31, 2014, the term "Laffey matrix" appears in 627 reported federal cases on Westlaw (Barnes Decl. ¶ 18). The requested rates also favor in view of The National Law Journal for the year 2014. (*see* The National Law Journal attached as **Exhibit 4** to the Barnes Decl.).

Finally, Plaintiffs attach the Declaration of Richard M. Pearl in support of a Plaintiff's Motion for Final Approval in the case of <u>Rosa Cantu, et al. v. Pacific Bell Telephone Company</u>, Case No. BC 441237, dated January 4, 2011 (*see* Declaration of Richard M. Pearl attached as **Exhibit 5** to the Barnes Decl.). Mr. Pearl specializes in issues related to cost-award attorney's fees, including the representation of parties in fee litigation and appeals, serving as an expert witness and as a mediator and arbitrator in disputes concerning attorney's fees and related issues. Mr. Pearl is also the author of California Attorney's Fee Awards (3d ed Cal. CEB 2010), as well as the author of the Second Edition, years 1994 through 2008. Mr. Pearl also authored numerous other publications on attorney's fees, as set forth in his Declarations. (Id. at paragraph numbers 4 and 5).

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Mr. Pearl reviewed the comparable hourly rates of attorney fees in California. He confirms that courts approved hourly rates of attorneys as follows:

- Rates up to $875.00 in <u>Savaglio, et al. v. Wal-Mart</u>, Alameda County Superior Court, Case No. C-835687-7 (before applying a 2.36 multiplier);

- Rates of up to $750.00 in <u>Kashmiri, et al. v. Regents of UC</u>, San Francisco County Superior Court (before applying a 3.7 multiplier);

- Rates of up to $750.00 in <u>Environmental Law Foundation v. Laidlaw Transit, Inc</u>., San Francisco Superior Court, Case No. CGC-06-451832 (before applying a 1.25 multiplier). (Id. at pages 4 and 5).

Additionally, Mr. Pearl reviewed numerous declarations, depositions, and surveys of legal rates on a non-contingent basis for the year 2009 and found hourly rates of up to $775.00, $795.00, $800.00, $855.00, $950.00, etc. (Id. at pages 6-12). These are non-contingent rates where the attorneys expect payment in full upon billing. (Id. at page 13). Based on the experience of Plaintiffs' Counsel, the rates cited by Mr. Pearl further establish that the requested hourly rates, as well as the multiplier, is reasonable based on the result achieved in this case and the contingent nature of the fees in class action cases.

All of Counsel's skill and experience justify the requested rate. The law firms in this case practices focus on litigation, specifically litigation representing employees in employment matters on class action cases (s*ee* Barnes Decl., Tojarieh Decl., and Katri Decl.).

In sum, Class Counsel are attorneys who command a high rate. They have had success in wage-and-hour class actions, are held in high regard by the legal community, and their practice is an unusual niche area. This case dealt with an area of the law that is very much in dispute and the courts of appeal are very active in meal and rest break litigation. These factors made this a very risky case. It required attorneys with great skills and financial backing, as it involved a highly specialized area of employment law

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

that requires skilled and experienced attorneys. To obtain such an attorney on the free market, a client must pay appropriate compensation. Therefore, Plaintiffs' Counsel's requested rates are fair and reasonable.

The courts are quite liberal in the evidence required to prove an attorney's hours. Detailed time records are *not* required. An attorney's testimony alone may suffice: "Testimony of an attorney as to the number of hours worked on a particular case is sufficient evidence to support an award of attorney fees, even in the absence of detailed time records." *Martino v. Denevi* (1986) 182 Cal. App. 3d 553, 559.

Reasonable hours include, in addition to time spent during litigation, the time spent before the action is filed, including time spent interviewing the clients, investigating the facts and the law, and preparing the initial pleadings. *New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 62, 100 S. Ct. 2024, 2030, 64 L. Ed. 2d 723 (1980). Further, the fee award should include fees incurred to establish and defend the attorneys' fee claim. *Serrano v. Priest* (1982) 32 Cal.3d 621, 639.

## 2.     FACTS JUSTIFYING THE REQUESTED MULTIPLIER

As stated above, under the lodestar method, once the court calculates a base fee amount, the court then enhances this lodestar figure by a "multiplier" to account for a range of factors, such as the novelty and difficulty of the case, its contingent nature, and the degree of success achieved. *Id*. at 49; *see also Ketchum v. Moses*, (2001) 24 Cal.4th 1122, 1132-36; *PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084; *Thayer v. Wells Fargo Bank* (2001) 92 Cal.App.4th 819, 834, ("[t]here is no … rule limiting the factors that may justify an exercise of judicial discretion to [adjust the] lodestar").

The multiplier requested is also reasonable, as set forth in Section V of this motion, and the ever changing law in the state and federal appellate courts and the California Supreme Court. Every year, the courts issue key appellate decisions on wage and hour claims alleged in this case that impact meal and rest claims as well as the independent and derivative claims plead here. The legal uncertainty and

**- 22 -**

exposure on wage and hour class action cases make these cases very litigious, difficult to litigate and very expensive, time consuming, and risky contingent fee cases.

Finally, the degree of success achieved in this case justifies the requested multiplier. Defendant paid $2,850,000 on a non-reversionary basis with no claim form requirement. Class Members will receive substantial amounts, exemplified by the average Class Member receiving approximately $823.53 and the highest will be approximately $3,799.61.

This is a great result and will benefit all class members as well as all current and future employees of Defendant. The multiplier of 2.75 is justified by these facts.

## VII.

## THE COURT SHOULD APPROVE THE REQUEST FOR REIMBURSEMENT OF COSTS

The request for reimbursement of costs is fair and reasonable. The law firms in this case have total costs in the amount of $20,038.30. Likewise, the claims administrator Rust Consulting has costs in the amount of $26,000 (*see* Decl. of Lisa Pavlik of Rust Consulting attached as **Exhibit 1** to Barnes Decl.).  The costs are all litigation related costs (*see* Barnes Decl., **Exhibit 2**- Cost Sheet; Tojarieh Decl., ¶ 13). As such, the Court should approve the costs sought.

## VIII.

## THE CLASS REPRESENTATIVE SERVICE AWARDS ARE REASONABLE AND ARE STANDARD IN CLASS ACTIONS

The named Plaintiffs Tai Hang and Robert Canales request a Service Award of $10,000 each. This amount is proper because of the named Plaintiffs' time and effort on this case, the risks they faced, execution of a general release, the great outcome of this case and all other factors set forth in the Declaration of the Class Representatives.  Plaintiffs' Counsel spent countless hours in consultation with the

- 23 -

Class Representatives from the initial investigation and pleading stage.  The Class Representatives have spent numerous hours in consultation with our offices regarding the issues raised in the action and the initial Complaint.  They have remained in contact with our offices throughout the litigation and the settlement process.  The Class Representatives also reviewed the documents related to this case.  Furthermore, Class Representatives Tai Hang and Robert Canales helped to prepare for and participated in the all-day Mediation.

All in all, the Class Representatives have been diligent and acted above and beyond that of which is expected of a Class Representative throughout all stages of the litigation, up to and including final approval of class action settlement.  There are few individuals that are willing to act as a Class Representative and provide the work, diligence and willingness to assume a substantial risk should the Defendant have prevailed in this case.  The Class Representatives' willingness to assume the financial risk is significant.  California law states that the losing party must pay the prevailing party's cost.  As such, if the Plaintiffs would have not prevailed in this case, the Class Representatives would have been subjected to a cost award in the amount of tens of thousands of dollars.  The Class Representatives are also releasing all claims, not just wage and hour claims, as part of their release in this case.

Furthermore, this lawsuit is public record and they risk being blackballed from their work if other employers find out about this case. This is a real risk to both the Class Representatives and their livelihood.

Finally, as a result of the Class Representatives' lawsuits and effort, Plaintiffs and Class Counsel achieved an incredible result. 100% of the Class Members are participating in the settlement as there are no opts outs. Likewise, there are no objections and the average Class Member will receive a settlement payment of approximately $823.53 and the highest will be approximately $3,799.61. Based on all these factors, Plaintiffs' Counsel believe that $10,000 to

Tai Hang and $10,000 to Robert Canales are fair and reasonable. (*See* Declaration of Plaintiff Tai Hang attached as **Exhibit 6** and Declaration of Plaintiff Robert Canales attached as **Exhibit 7**)(these declarations were also attached to the Declaration of Kevin T. Barnes in Support of Preliminary Approval as **Exhibit 4** and **Exhibit 5** respectively).

Courts have routinely granted approval of settlements containing such Enhancements. In *League of Martin v. City of Milwaukee*, 588 F.Supp. 1004 (E.D. Wis. 1984), the Court held that the proposal settlement properly granted the named Plaintiff individual relief. It is "not uncommon for Class Members…to receive special treatment in settlement…[The Plaintiff]…had been instrument in prosecuting this lawsuit since the date it was filed." *Id* at 1024. In *Kyriazi v. Western Elec. Co.*, 527 F.Supp.18 (D.N.J. 1981), a named Plaintiff in a Title VII class action was awarded individual relief of back-pay and interest, reinstatement, punitive damages and Counsel fees. Similarly, in *Women's Committee for Equal Employment Opportunity v. NBC,* 76 F.R.D. 173 (SDNY 1977), the Court approved as fair a settlement that included awards to 16 named Plaintiffs of virtually all the damages they sought.

In *Lo Re v. Chase Manhattan Corp.,* 1979 U.S. Dist. LEXIS 12210, 19 FEP Cas. (BNA) 1366 (SDNY 1979), the Court approved payment of $229,000 out of a $1,579,000 settlement fund to the named Plaintiff for their individual claims. One of the factors considered by the Court in determining that such payments were fair was the fact that none of the absent Class Members objected to the Enhancements. The Court held that this fact showed that the Class Members were not offended by these Enhancements. *Id* at p. 17. In the present case, Class Counsel has submitted a declaration from the claims administrator Rust Consulting to advise the Court that there are no objections to this request.

Here, this litigation has resulted in a valuable benefit to all of the Class Members who are participating because of the named Plaintiffs, and the Service

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Awards should be awarded for this commitment and dedication to the litigation. The Plaintiffs always put the interests of the Class before their own interests. Accordingly, the Service Awards are fair and reasonable.

## IX.

## <u>CONCLUSION</u>

Therefore, because Plaintiffs have met the standard for final approval, Plaintiffs respectfully request the Court to grant final approval of the class action Settlement, the request for attorneys' fees, costs, and Class Representative Service Awards.

Dated:  November 20, 2023  LAW OFFICES OF KEVIN T. BARNES
             LAW OFFICES OF RAPHAEL A. KATRI
             STONEBROOK LAW

             By: <u>*/s/ Kevin T. Barnes*</u>
                Kevin T. Barnes, Esq.
                Joseph Tojarieh, Esq.
                Raphael A. Katri, Esq.
                Attorneys for Plaintiffs

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**