O

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

TAI HANG and
ROBERT CANALES, on behalf of
   themselves and all others similarly
   situated,

            Plaintiffs,

    v.

OLD DOMINION FREIGHT LINE,
   INC., a Virginia corporation; and
   DOES 1 to 100, inclusive,

            Defendants.

Case No. 5:21-cv-00287-JWH-DTBx

**ORDER GRANTING MOTION
FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT
[ECF No. 51]**

# I.  SUMMARY OF DECISION

Before the Court is the unopposed motion of Plaintiffs Tai Hang and Robert Canales, individually and on behalf of all others similarly situated (collectively, "Plaintiffs"), in this class action case.  In their motion, Plaintiffs seek final approval of the class action settlement, attorneys' fees, reimbursement of attorneys' and administration costs, and a service award for each named Plaintiff.[1]  The Court conducted a hearing on the Motion in December 2023.  After considering the Motion papers and the arguments that counsel during the hearing, the Court orders that the Motion is **GRANTED** for the reasons set forth herein.

# II.  BACKGROUND

This is a wage and hour class action.  In the operative Fifth Amended Complaint, Plaintiffs allege that Defendant Old Dominion Freight Line, Inc. violated wage and hour laws in the following ways:

- failing to pay minimum wages;
- failing to pay overtime wages;
- failing to provide legally compliant rest periods;
- failing to authorize and permit all paid rest periods;
- failing to provide legally compliant meal periods;
- failing to reimburse for necessary business expenses;
- failing to timely furnish accurate itemized wage statements;
- violating Cal. Labor Code § 203;
- incurring penalties pursuant to Cal. Labor Code § 2699; and
- violating the Unfair Business Practices Act, Cal. Bus. & Prof. Code §§ 17200, *et seq.*[2]

## A.  Factual Allegations

Hang worked for Old Dominion "as an hourly-paid, non-exempt 'dock worker' employee from approximately August 2007 to August 11, 2020."[3]  Canales worked for Old Dominion "as an hourly-paid, non-exempt 'dock worker' employee from

---

[1]   Pls.' Mot. for Final Approval of Class Action Settlement (the "Motion") [ECF No. 51].

[2]   *See generally* Fifth Am. Compl. (the "Amended Complaint") [ECF No. 50].

[3]   Amended Complaint ¶ 6.

approximately January 28, 2018, to October 2, 2020."[4]  Plaintiffs allege that during their employment, Old Dominion failed to pay minimum wages and overtime,[5] deprived them of lawful rest and meal periods,[6] failed to reimburse for necessary business expenses,[7] and failed to provide them in a timely manner with accurate and legally compliant itemized wage statements.[8]  Plaintiffs assert that those failures were the result of Old Dominions's consistent policies, which violate wage and hour laws and laws against unfair business practices.[9]  Plaintiffs, on behalf of themselves and all class members, seek compensatory relief with interest, penalties, equitable relief, and attorneys' fees and costs, pursuant to wage and hour laws.[10]  They also seek injunctive relief, restitution, and disgorgement of Defendants' illegally obtained benefits.[11]  Finally, they seek unpaid compensation, penalties, and reasonable attorneys' fees and costs under PAGA.[12]

## B.    Procedural History

Plaintiffs filed their original Class Action Complaint in San Bernardino County Superior Court in November 2020[13] and their First Amended Complaint, also in state court, in December 2020.[14]  Old Dominion was served in the state court action later that month,[15] and Old Dominion removed the action to this Court in February 2021.[16]  Plaintiffs filed their Second Amended Complaint in March 2021,[17] which Old Dominion moved to dismiss.[18]  The Court granted Old Dominion's motion, dismissing Plaintiffs' pleading with leave to amend.[19]  Plaintiffs filed their Third Amended Complaint in July

---

[4]     *Id.* at ¶ 9.

[5]     *Id.* at ¶¶ 34-50.

[6]     *Id.* at ¶¶ 51-83.

[7]     *Id.* at ¶¶ 84-89.

[8]     *Id.* at ¶¶ 90-111.

[9]     *Id.* at ¶¶ 112-134.

[10]    *See id.* at 39:12-43:12.

[11]    *Id.*

[12]    *Id.*

[13]    Notice of Removal [ECF No. 1] ¶ 1.

[14]    *Id.* at ¶ 2.

[15]    *Id.* at ¶ 4.

[16]    *See generally id.*

[17]    Second Am. Compl. [ECF No. 9].

[18]    Def.'s Mot. to Dismiss and/or Strike Pls.' Second Am. Compl. Pursuant to Fed. R. Civ. P. 12(6)(6) and/or 12(f) [ECF No. 12].

[19]    Order on Mot. of Def. to Dismiss and/or Strike Second Am. Compl. [ECF No. 17].

2021.[20]  Old Dominion again moved to dismiss,[21] and the Court granted in part and denied in part that motion.[22]  Pursuant to the Court's order, Plaintiffs filed their Fourth Amended Complaint in August 2022,[23] and Old Dominion answered.[24]

The parties engaged in "extensive factual and legal research, formal discovery including propounding and responding to written interrogatories, the production of documents, and a full-day [m]ediation with David Rotman."[25]  Although the parties did not reach a settlement during the mediation, further negotiations with the assistance of Mr. Rotman proved fruitful:[26] the parties informed the Court of their settlement and moved for its approval in July 2022.[27]  Defendants served a copy of the settlement agreement on the Attorney General of the United States and the Attorneys General of each state in which a class member resides, in compliance with the Class Action Fairness Act, 28 U.S.C. § 1715.[28]

The Court preliminarily approved the settlement agreement in August 2023.[29]  Pursuant to the settlement agreement and the Court's Preliminary Approval Order, Plaintiffs filed their Fifth Amended Complaint in November 2023.[30]  They filed the instant Motion for Final Approval the same day.[31]

---

[20]    Third Am. Compl. [ECF No. 18].

[21]    Def.'s Mot. to Dismiss and/or Strike Pls.' Third Am. Compl. Pursuant to Fed. R. Civ. P. 12(6)(6) and/or 12(f) [ECF No. 20].

[22]    Order Granting in Part and Denying in Part the Mot. of Def. Old Dominion Freight Line, Inc. to Dismiss and/or Strike Portion of Pls.' Third Am. Compl. [ECF No. 34].

[23]    Fourth Am. Compl. [ECF No. 35].

[24]    Answer to Fourth Am. Compl. [ECF No. 36].

[25]    Motion 8:21-23.

[26]    *Id.* at 3:15-20.

[27]    Mot. for Order Granting Prelim. Approval for Class and Representative Action Settlement [ECF No. 46]; Notice of Proposed Class Action Settlement [ECF No. 47].

[28]    Notice of Proposed Class Action Settlement Pursuant to Class Action Fairness Action [ECF No. 47].

[29]    Order Granting Pls.' Mot. for Prelim. Approval of Class and Representative Action Settlement (the "Preliminary Approval Order") [ECF No. 49].

[30]    *See* Amended Complaint.

[31]    *See* Motion.

### III.  FINAL APPROVAL OF THE SETTLEMENT AGREEMENT

**A.   Overview**

As summarized in the Motion, the settlement agreement establishes a non-reversionary settlement amount of $2,850,000 for the benefit of the settlement class.[32] That figure equates to an average recovery of approximately $823.53 per class member; the highest recovery will be approximately $3,799.61.[33]  The settlement amount includes $50,000 for PAGA claims—$37,500 will be allocated to the Labor and Workforce Development Agency and $12,500 will be payable to PAGA members.[34]

Individualized class notices were circulated to class members, which informed them of the following:

- the nature of the action;
- the definition of the settlement class certified;
- the class claims, issues, or defenses, and the class period;
- that a class member may enter an appearance through counsel if the member so desires;
- that the Court will exclude from the settlement any class member who requests exclusion;
- the time and manner for requesting exclusion;
- the binding effect of a class judgment on class members under Rule 23(c)(3) of the Federal Rules of Civil Procedure; and
- that they have a right to object, and how to do so.[35]

Each class notice included an individualized estimated recovery, assuming 100% participation, and the number of workweeks attributable to that class member.[36]  As of the time of the hearing on the instant Motion, the administrator had received no objections to the settlement, no workweek disputes, and no requests for exclusion.[37]

---

[32]   *Id.* at 3:23-25.

[33]   *Id.* at 4:2-3.

[34]   *Id.* at 4:16-19.

[35]   *See* Decl. of Lisa Pavlik for Rust Consulting, Inc. & Ex. A (the "Pavlik Declaration and Class Notice") [ECF No. 51-2 Exs. 1 & 1.A].

[36]   *See id.*

[37]   *See id.*; *see also* Minutes of Final Approval of Class Action Settlement (the "Hearing on the Motion") [ECF No. 52] (confirming the same as of the morning of December 14, 2023).

**B.    Legal Standard**

The Federal Rules of Civil Procedure require court approval for class-action settlements.  *See* Fed. R. Civ. P. 23(e).  When the parties reach a settlement agreement before class certification, district courts use a two-step process to approve a class-action settlement.  *See Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  First, the Court must certify the proposed settlement class.  *See id.*  Second, the Court may finally approve a class action settlement "only after a hearing and on finding that the settlement . . . is fair, reasonable and adequate."  Fed. R. Civ. P. 23(e)(2); *see also Staton*, 327 F.3d at 952.  The Rules instruct the Court to consider the following factors:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  Additionally, with respect to Rule 23(e)(2)(C)(iii), the Ninth Circuit directs district courts to undertake an additional search for more "subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations," regardless of "whether a settlement agreement has been negotiated before a class has been certified or after."  *Westfall v. Ball Metal Beverage Container Corp.*, 2021 WL 4206851, at *4 (E.D. Cal. Sept. 16, 2021) (citing *Briseño v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021)).  The purpose of scrutinizing the fee arrangement is to look for "potential collusion or unfairness to the class."  *Briseño*, 998 F.3d at 1026.  The Ninth Circuit instructs the district court to analyze three factors: (1) whether counsel "receive[d] a disproportionate distribution of the settlement"; (2) whether the parties agreed to a "clear sailing arrangement"; and (3) whether the settlement includes a "kicker" or "reverter" clause.  *Id.* at 1026-27.

In the Ninth Circuit, courts also consider the eight "*Churchill* factors":

(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021) (quoting *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011), which was citing *Churchill Vill. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004)); *see also Officers for Justice v. Civil Serv. Comm'n of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982) (noting that the list of factors is "by no means an exhaustive list").

Lastly, the district court must approve or reject the settlement as a whole. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ("It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness."). The Court may not delete, modify, or rewrite particular provisions of the settlement. *See id.* The Court must remain cognizant that the settlement "is the offspring of compromise; the question . . . is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Id.* In determining whether a proposed settlement should be approved, the Ninth Circuit has a "strong judicial policy that favors settlement, particularly where complex class action litigation is concerned." *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

## C.    Analysis

### 1.    Settlement Class Certification and Heightened Rule 23(e) Inquiry

This Court preliminarily certified the proposed settlement class in its prior order,[38] although formal class certification had not yet occurred. Because the parties reached a settlement before formal class certification, this Court applies "a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)" to its final approval. *Saucillo v. Peck*, 25 F.4th 1118, 1130 (9th Cir. 2022). Because the Court finds that a "probing inquiry" of the Rule 23(e) criteria and the Ninth Circuit factors, as discussed below, favors approval, the Court certifies the settlement class for final approval of the settlement. *See id.*

---

[38]    *See* Preliminary Approval Order.

### 2. Rule 23(e)(2) Factors

#### a. Adequacy of Representation by Class Representatives and Class Counsel

Under Rule 23(e)(2)(A), the first factor to be considered is whether the class representative and class counsel have adequately represented the class. That analysis includes, for example, "the nature and amount of discovery" undertaken in the litigation, or "the actual outcomes of other cases." Fed. R. Civ. P. 23(e)(2)(A), 2018 Advisory Comm. Notes.

In this case, several aspects of the litigation suggest that this factor weighs in favor of approval. First, Class Counsel—the Law Offices of Kevin T. Barnes, the Law Offices of Raphael A. Katri, and Stonebrook Law (collectively, "Class Counsel")[39]—have extensive experience with wage and hour class action litigation, and they actively litigated this case for three years.[40] Second, the parties reached settlement only after vigorous litigation, through two orders on motions to dismiss and five versions of the complaint in this Court, including "extensive research for and during the litigation, review of hundreds of pages of documents, a full-day [m]ediation with David Rotman, Esq., . . . and after consultation with an [expert] economist regarding potential damage exposure."[41] The Court therefore finds that Plaintiffs and Class Counsel have adequately represented the proposed settlement class, which weighs in favor of final approval of the settlement agreement.

#### b. Arm's Length Negotiations

The Court must next consider whether the settlement agreement "was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). As with the preceding consideration, this factor can be "described as [a] 'procedural' concern . . . looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2), 2018 Advisory Comm. Notes.

Although the Court was not involved in the negotiations directly, mediator David Rotman is "very experienced in wage and hour class action cases."[42] The parties reached

---

[39] *See id.* at ¶ 3.

[40] *See* Decl. of Kevin T. Barnes (the "Barnes Declaration") [ECF No. 51-2]; Decl. of Raphael A. Katri (the "Katri Declaration") [ECF No. 51-3]; Decl. of Joseph Tojarieh (the "Tojarieh Declaration") [ECF No. 51-4]; Motion 10:5-12 & 12:27-13:2.

[41] Motion 12:7-10.

[42] *Id.* at 7:20; *see also* David A. Rotman—Mediated Negotiations, https://davidrotman.net/html/mediators-david-rotman.html.

a settlement after a full-day mediation before Mr. Rotman and follow-on negotiations with his assistance.[43]  The presence and assistance of an experienced mediator in the settlement process strongly suggests "that the settlement is non-collusive."  *Satchell v. Fed. Express Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007); *see also Goodwin v. Winn Mgmt. Grp. LLC*, 2017 WL 3173006, at *8 (E.D. Cal. July 26, 2017) (concluding that that the settlement was the product of informed, arm's length negotiations by the parties where settlement resulted from, among other things, a full day of mediation); *Pederson v. Airport Terminal Services*, 2018 WL 2138457, at *7 (C.D. Cal. April 5, 2018) (approving preliminary settlement where oversight "of an experienced mediator" reflected non-collusive negotiations).  In sum, because it appears that the parties negotiated at arm's length, this factor weighs in favor of final approval.

### c.  Adequacy of Relief Provided for the Class

The third factor assesses whether "the relief provided for the class is adequate, taking into account:  (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)."  Fed. R. Civ. P. 23(e)(2)(C).  Under this factor, the relief "to class members is a central concern."  Fed. R. Civ. P. 23(e)(2)(C), 2018 Advisory Comm. Notes.

### i.  Costs, Risks, and Delay of Further Litigation

"A[] central concern [when evaluating a proposed class action settlement] . . . relate[s] to the cost and risk involved in pursuing a litigated outcome." Fed. R. Civ. P. 23(e)(2), 2018 Advisory Comm. Notes.  In this regard, the test of a settlement is not the maximum amount that the plaintiffs might have recovered, but, rather, whether the settlement is within a reasonable range.  *See Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 965–66 (9th Cir. 2009) (noting that "district judges naturally arrive at a reasonable range for settlement by considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to present value").

As Plaintiffs note, they "had not yet prevailed on class certification when the Parties reached [settlement]."[44]  Continuing to litigate these issues would involve substantial risks—"including the risk that the Court might not certify the class, or

---

[43]    *Id.* at 3:15-20.

[44]    Motion 10:9-10.

decertify it at a later time, the risk of proving liability and damages at trial, and keeping the verdict through appeal"[45]—and would likely take multiple years and represent an enormous expense without certainty that the class members would receive a remedy. Additionally, subsequent review by district courts could jeopardize any chance of recovery for the class, as the law continues to evolve. This Court therefore finds that the settlement amount of $2,850,000—out of Defendant's estimated $5,026,891 class exposure—is adequate given the costs, risks, and delay of continued litigation.

### ii.  Effectiveness of the Method of Distributing Relief

The Court must next consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C). "Often it will be important for the court to scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims." Fed. R. Civ. P. 23(e), 2018 Advisory Comm. Notes. "A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." *Id.*

The Court finds that the method for distributing relief is adequate, as the funds will be distributed to the class members with no claim form requirement.[46] Thus, the Court finds that this factor weighs in favor of final approval.

### iii.  Proposed Award of Attorneys' Fees and the *Briseño* Flags

The third prong that the Court must consider when assessing the adequacy of the relief relates to "the terms of any proposed award of attorneys' fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(c). In considering the proposed award of attorneys' fees, the Court must be on watch for three "red flags" that tend to show collusion. *See Westfall*, 2021 WL 4206851, at *4.

The first flag is raised "when counsel receives a disproportionate distribution of the settlement[.]" *Kaupelis v. Harbor Freight Tools*, 2021 WL 4816833, at *10 (C.D. Cal. Aug. 11, 2021). Here, Class Counsel request $832,199.67—approximately 29.2% of the $2,850,000 Settlement Fund—in attorneys' fees and $20,038.30 in attorney expenses;[47] Class Counsel would thus net just under 30% of the Settlement Fund in total.

The Court finds that these fees are "on the higher side," but still reasonable. *See Westfall*, 2021 WL 4206851, at *5 ("While 33 percent is on the higher side, it is a far cry

---

[45]   *Id.* at 11:11-13.

[46]   *Id.* at 3:18-19 & 3:24.

[47]   *Id.* at 4:10-12.

from the concerning 88 percent fee in *Briseño*."). Moreover, because the Court finds that the fees and expenses are not unreasonable on the whole, *see infra* Part IV.A.-B., this flag is not triggered. *Accord Ochinero v. Ladera Lending, Inc.*, 2021 WL 4460334, at *6 (C.D. Cal. July 19, 2021) (giving final approval of a settlement where the court found to be reasonable a request for attorneys' fees—equivalent to 33% of the settlement—and $20,000 in out-of-pocket expenses).

The second red flag is raised when the parties negotiate a "clear sailing arrangement," under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee. *See Kaupelis*, 2021 WL 4816833, at *10. "A clear sailing provision signals the potential that a defendant agreed to pay class counsel excessive fees in exchange for counsel accepting a lower amount for the class members." *Briseño*, 998 F.3d at 1026–27. Although the instant Motion is unopposed, the settlement agreement has no clause explicitly requiring Defendants to refrain from challenging a fee request.[48] Additionally, the settlement agreement includes language making it binding on the parties, even if the Court declines the requested attorneys' fees.[49] Therefore, the second flag is not triggered.

Lastly, the third flag is raised when the agreement contains a "kicker" or "reverter" clause that "returns unawarded fees to the defendant, rather than the class." *Kaupelis*, 2021 WL 4816833, at *10. Here, there is no reverter clause.[50] Thus, the third flag is similarly not triggered, such that none of the *Briseño* flags is clearly raised.

### iv. Agreement Identification Requirement

The Court must also evaluate any agreement made in connection with the proposed settlement. *See* Fed. R. Civ. P. 23(e)(2)(C)(iv) & (e)(3). Here, the settlement agreement presently before the Court is the only agreement. Thus, the Court need not evaluate any additional agreements outside of the settlement agreement. *Accord Alvarez*, 2021 WL 1234878, at *8. Thus, all four prongs under Rule 23(e)(2)(C) favor granting final approval.

### d. Equitable Treatment of Class Members

The final Rule 23(e)(2) factor turns on whether the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "Matters of concern could include whether the apportionment of relief among class members takes

---

[48]      *See* Preliminary Approval Order, Ex. 1 (Stipulation for Leave to File Fifth Am. Compl. and for Settlement and Release of Class Action and PAGA Claims).

[49]      *Id.*

[50]      Motion 3:19-20.

appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e)(2)(D), 2018 Advisory Comm. Notes.

The Court finds the treatment of the class members to be equitable because recovery by each individual class member is dependent on the number of workweeks and PAGA pay periods credited to them.[51] Moreover, the service awards for Hang and Canales—discussed below, *see infra* Part IV.C.—do not disturb that finding, in view of the evidence submitted that speaks to their level of involvement through the life of this case and the risk that they have taken through their participation. Therefore, this factor weighs in favor of granting final approval.

### 3.   The Ninth Circuit's "*Churchill* Factors"

Having found that all four factors under Rule 23(e)(2) favor granting final approval, the Court now turns to the eight "*Churchill* factors" that the Ninth Circuit uses to evaluate the fairness of a settlement agreement.

### a.   Strength of Plaintiff's Case

"An important consideration in judging the reasonableness of a settlement is the strength of plaintiffs' case on the merits balanced against the amount offered in the settlement." *Vasquez*, 266 F.R.D. at 488. The proposed settlement is "not to be judged against . . . what might have been awarded in a judgment in favor of the class." *Id.* This factor is generally satisfied when plaintiffs overcame barriers to make their case. *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010).

The Court has presided over this case through two motions to dismiss and five versions of the Complaint. Based upon that perspective alone, the Court is comfortable finding that Plaintiffs advanced a strong case that would continue to be litigated vigorously in the absence of this settlement agreement. Furthermore, with respect to the individualized issues, the settlement agreement takes the individualized claims into account; those claims would likely be vigorously litigated in the absence of a settlement agreement. Accordingly, the Court finds that this factor supports final approval.

### b.   Risk, Expense, Complexity, and Likely Duration of Further Litigation

The second factor in assessing the fairness of the proposed settlement is the complexity, expense, and likely duration of the lawsuit if the parties had not reached a

---

[51]   *See* Pavlik Declaration and Class Notice.

settlement agreement.  *See Officers for Justice*, 688 F.2d at 625.  Because this factor closely mirrors the requirement in Rule 23(e) concerning "the costs, risks, and delay of trial and appeal," the Court concludes that it need not duplicate its analysis.
Fed. R. Civ. P. 23(e)(2)(C)(i); *see also id.*, 2018 Advisory Comm. Notes (noting that many of these factors "focus on comparable considerations").  As discussed above, *see supra* Part III.C.2.c.i., this factor weighs in favor of granting final approval.

### c.  Risk of Maintaining Class Action Status through Trial

Although the Court had preliminarily certified the class, the certification was for settlement purposes only.[52]  An "order that grants or denies class certification may be altered or amended before the final judgment."  Fed. R. Civ. P. 23(c)(1)(C).

The Court agrees with Plaintiffs' argument in their Motion on this factor:  "the risks of obtaining class certification and a subsequent motion by Defendant to decertify all or parts of the case prior to trial and throughout the trial itself are substantial."[53]  The Court thus finds that the complexity of the class certification process and Defendant's likely opposition, as forecasted by their multiple motions to dismiss, pose a risk to maintaining the class through trial.  Accordingly, this factor weighs in favor of final approval.

### d.  Amount Offered in Settlement

The fourth factor in assessing the fairness of the proposed settlement is the amount offered.  "Of course, the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'"  *Officers for Justice*, 688 F.2d at 624 (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)).  The Ninth Circuit has explained that "the proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators."  *Id.* at 625.  Rather, any analysis of a fair settlement amount must account for the risks of further litigation and trial, as well as expenses and delays associated with continued litigation.

Here, the parties agreed to settle all claims for a total sum of $2,850,000.[54]  That figure equates to an average individual recovery of approximately $823.53 and a maximum individual recovery of approximately $3,799.61.[55]  The Court continues to find that the settlement amount is appropriate.  *See, e.g.*, *Gallegos v. Atria Mgmt. Co., LLC*, 2019 WL

---

[52]   *See* Preliminary Approval Order.

[53]   Motion 10:10-12.

[54]   *Id.* at 3:23-25.

[55]   *Id.* at 4:2-3.

13295795, at *6 (C.D. Cal. Jan. 28, 2019) (approving a wage and hour class settlement with an average individual recovery of $51.22 per class member).  In view of the risks of continued litigation and the substantial recovery for the class, this factor favors final approval of the settlement agreement.  *See Aarons v. BMW of N. Amer., LLC*, 2014 WL 4090564, at *11 (C.D. Cal. Apr. 29, 2014) (noting that while settlements will not make most class members completely whole, class members will "discount their claims to obtain a certain and timely recovery, rather than bear the significant risk and delay associated with further litigation"); *Vasquez*, 266 F.R.D. at 489 (noting that "the risk of continued litigation balanced against the certainty and immediacy of recovery from the [s]ettlement" is a relevant factor).

### e.    Extent of Discovery and Stage of Proceedings

The fifth factor requires the Court to gauge whether Plaintiffs had sufficient information to make an informed decision about the merits of their case.  *See In re Mego*, 213 F.3d 454, 459 (9th Cir. 2000).  The more discovery that has been completed, the more likely it is that the parties have "a clear view of the strengths and weaknesses of their cases."  *Young v. Polo Retail, LLC*, 2007 WL 951821, at *4 (N.D. Cal. Mar. 28, 2007) (internal quotation marks omitted).

In their Motion, Plaintiffs argue that the parties reached a settlement only after they "aggressively litigated this matter for over three years, which allowed the Parties to base their assessment of the matter on extensive research for and during the litigation, review of hundreds of pages of documents, a full-day Mediation with David Rotman, Esq., multiple Motions to Dismiss and the Court's rulings thereto and after consultation with an economist regarding potential damage exposure."[56]  That history gives the Court confidence that Plaintiffs possessed sufficient information to make an informed decision about the settlement.  *See Young*, 2007 WL 951821, at *4.  Additionally, because the parties conducted settlement negotiations with the assistance of a mediator, the Court has further reason to conclude that the parties possessed "a clear view of the strengths and weaknesses of their cases."  *Vasquez*, 266 F.R.D. at 489 (quoting *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986)).  As such, this factor weighs in favor of granting final approval of the settlement agreement.

### f.    Experience and View of Counsel

The sixth factor that the Court considers is the experience of counsel, because "[t]hey are the ones who are most closely acquainted with the facts of the underlying litigation."  *Vasquez*, 266 F.R.D. at 489.  "Parties represented by competent counsel are

---

[56]    *Id.* at 12:5-10.

better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). However, while counsel's views are instructive, they do not entitle the plaintiff to a presumption of fairness. *See Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019).

Here, Class Counsel have extensive experience handling class action cases.[57] The Court is satisfied that their experience has allowed them to evaluate the merits of the claims and the risks associated with prosecuting them. Class Counsel also support the final outcome as fair and reasonable.[58] The Court accordingly credits Class Counsel's determination and finds that this factor weighs in favor of final approval.

### g.    Presence of a Governmental Participant

Because no government entity participated in litigating this case,[59] the seventh factor is irrelevant. *See Klee v. Nissan N. Am., Inc.*, 2015 WL 4538426, at *9 (C.D. Cal. July 7, 2015), *aff'd* (Dec. 9, 2015).

### h.    Reaction of the Class Members to the Proposed Settlement

Finally, in evaluating the fairness, adequacy, and reasonableness of the settlement, the eighth factor that courts consider is the reaction of the class to the settlement. *See Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003). "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528–29 (C.D. Cal. 2004); *see also Arnold v. Fitflop USA, LLC*, 2014 WL 1670133, at *8 (S.D. Cal. Apr. 28, 2014) (concluding that the class members' reaction to the settlement "presents the most compelling argument favoring settlement"). Here, no class member has opted out or objected to the settlement agreement.[60] That fact weighs strongly in favor of final approval.

---

[57]    *See id.* at 12:27-13:2.

[58]    *Id.* at 13:2-5.

[59]    The Labor Workforce Development Agency will receive payment upon final approval of the settlement, but it did not participate in the case. *See id.* at 13:7-12.

[60]    *See id.* at 2:9-10; *see also* Hearing on the Motion (confirming the same as of the morning of December 14, 2023).

### 4.   Conclusion on Final Settlement Approval

In conclusion, all factors used to assess the adequacy, fairness, and reasonableness of a class settlement—including both the factors prescribed to the Court under Rule 23(e)(2) and the additional Ninth Circuit "*Churchill* factors"—point in favor of granting final approval.  Therefore, the Court **GRANTS** the Motion for Final Approval of the settlement.

## IV.  ATTORNEYS' FEES, COSTS, SERVICE AWARDS, AND ADMINISTRATION COSTS

### A.   Attorneys' Fees

Under the settlement agreement, Class Counsel are permitted to seek the Court's approval of attorneys' fees and any documented and reasonable out-of-pocket expenses. Class Counsel have requested approval of attorneys' fees totaling $832,199.67, which represents approximately 29.2% of the settlement fund.[61]

In the Ninth Circuit, "the fee applicant bears the burden of submitting 'evidence supporting the hours worked and rates claimed.'"  *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).  The Ninth Circuit has "a 'preference' for contemporaneous records" but has "never held that they are absolutely necessary."  *Id.*  Rather, "fee requests can be based on 'reconstructed records developed by reference to litigation files.'"  *Id.* (quoting *Davis v. City & Cnty. of San Francisco*, 976 F.2d 1536, 1542 (9th Cir. 1992), *opinion vacated in part on denial of reh'g*, 984 F.2d 345 (9th Cir. 1993)).

"In a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).  "Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method" when determining the reasonableness of a request for attorneys' fees.  *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011).  Each method is discussed below.

### 1.   Percentage-of-the-Recovery Method

Applying the percentage-of-recovery method, district courts within the Ninth Circuit typically calculate "25% of the fund" as the "benchmark" for a reasonable fee

---

[61]    *Id.* at 4:10-12.

award.  *Id.*; *see also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015).  A departure from the 25% benchmark requires an "adequate explanation in the record for any 'special circumstances' justifying [the] departure."  *In re Optical Disk Drive Prods. Liab. Antitrust Litig.*, 959 F.3d 922, 942 (9th Cir. 2020).

Here, Class Counsel request that the Court approve a fee award of $832,199.67, which is equivalent to approximately 29.2% of the settlement amount.  The standard 25% award would earn Class Counsel $712,500.  Because Class Counsel's request departs from the 25% benchmark, the Ninth Circuit instructs the Court to consider the following five factors to determine whether the fees reasonably compensate counsel for their efforts in creating the common fund:  "(1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases."  *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002)).  "The mere fact that the defendant agrees to pay the fees does not detract from the need to carefully scrutinize the fee award."  *Zubia v. Shamrock Foods Co.*, 2017 WL 10541431, at *5 (C.D. Cal. Dec. 21, 2017) (internal quotations omitted).

### a.    Results Achieved

"The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award."  *Omnivision*, 559 F. Supp. 2d at 1046.  Class Counsel argue that the settlement is "outstanding."[62]  The average individual recovery (approximately $823.53)[63] achieved for the class members possibly falls in the range of awards considered by this Court to be deserving of a rate higher than 25%.  *Compare Howard Fan v. Delta Air Lines, Inc.*, 2020 WL 5044614, at *3 (C.D. Cal. May 20, 2020) (finding that an expected recovery of $636.52 per class member was not "so exceptional as to support an upward adjustment to the fee award" above the 25% benchmark) *with Pagh v. Wyndham Vacation Ownership, Inc.*, 2021 WL 3017517, at *2 (C.D. Cal. Mar. 23, 2021) (finding an average award of $1,029.73 per class member to be "excellent").  But the Court sees no strong evidence that "counsel pursued this case in the absence of supporting precedents" or "in the face of agreements signed by the class members forsaking benefits"—the presence of which influenced other courts to deem a settlement outcome exceptional.  *See, e.g.*, *Vizcaino*, 290 F.3d at 1048.  The wage and hour laws are not novel, and class action lawsuits arising under them are not new—although, during the hearing on the Motion, Class Counsel argued convincingly that *Augustus v. ABM Sec. Servs., Inc.*, 2 Cal. 5th 257 (2016), *as modified on denial of reh'g* (Mar. 15, 2017), created

---

[62]    *Id.* at 18:5.

[63]    *Id.* at 4:2-3.

ambiguous precedent with respect to wage and hour class action lawsuits for rest periods greater than 10 minutes.[64]  On balance, those findings suggest that Class Counsel achieved a strong result for the class, but not necessarily an exceptional one.  Thus, this factor does not plainly justify departing from the Ninth Circuit's 25% benchmark.

### b.     Risk of Litigation

Class Counsel argue that the award is justified in view of the risk of further litigation.[65]  Here, the Court agrees.  "The risk that further litigation might result in Plaintiffs not recovering at all, particularly a case involving complicated legal issues, is a significant factor in the award of fees."  *Omnivision*, 559 F. Supp. 2d at 1046-47.  The Court looks at how continuing the litigation could jeopardize chances of recovery, as well as the complexity of the legal issues involved.  *See Vizcaino*, 290 F.3d at 1048; *Thomas v. Dun & Bradstreet Credibility Corp.*, 2017 WL 11633508, at *19 (C.D. Cal. Mar. 22, 2017).  In view of the risk, expense, complexity, and likely duration of continued litigation, *see supra* Parts III.C.2.c.i. & III.C.3.b., the Court finds that this factor weighs in favor of granting the requested fees.

### c.     Skill Required and Quality of Work

The Court next considers the skill required to prosecute and manage this litigation, as well as Class Counsel's overall performance.  *See Omnivision*, 559 F. Supp. 2d at 1047.  A fee award of one-third of the settlement fund is justified where class counsel "has significant experience in the particular type of litigation at issue."  *Marshall v. Northrop Grumman Corp.*, 2020 WL 5668935, at *3 (C.D. Cal. Sept. 18, 2020), *appeal dismissed*, 2021 WL 1546069 (9th Cir. Feb. 16, 2021) (awarding 33% of settlement fund where the law firm "actually pioneer[d] complex ERISA 401(k) excessive fee litigation").

Class Counsel aver that they have "substantial experience in wage and hour and class action cases."[66]  They list numerous such cases in which they have successfully represented the plaintiff class.[67]  And Class Counsel assert that they expended "substantial effort" and faced "substantial obstacles" in prosecuting the case.[68]  Here, Plaintiffs' case survived two motions to dismiss, which weighs in Class Counsel's favor.  *See Omnivision*, 559 F. Supp. 2d at 1047 (observing that the plaintiffs' counsel "survived two motions to dismiss").  However, because the action here never went to trial, the

---

[64]     *See* Hearing on the Motion.

[65]     Motion 17:16-18:11.

[66]     *Id.* at 7:13-14; *see also id.* at 12:27-13:2.

[67]     *See generally* Barnes Declaration; Katri Declaration; Tojarieh Declaration.

[68]     Motion 18:4-7.

Court has had limited opportunity to gauge Class Counsel's performance first-hand beyond those two motions. *Cf. Boyd v. Bank of Am. Corp.*, 2014 WL 6473804, at *10 (C.D. Cal. Nov. 18, 2014) (noting that the attorneys' "experience was demonstrated . . . over 3,000 hours litigating the case"). Furthermore, the Court had little insight into the mediation process and any skill demonstrated therein. Nonetheless, during the hearing on the Motion, Class Counsel noted that The Law Offices of Kevin T. Barnes was the first in the country to bring this type of class action lawsuit, and counsel argued convincingly that *Augustus* created ambiguous precedent with respect to wage and hour class action lawsuits for rest periods longer than 10 minutes—precedent that demanded great skill to litigate this case successfully.[69]  Therefore, the Court finds that this factor weighs in favor of Plaintiffs' attorneys.

### d.  Contingent Nature of the Fee

"It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994).  As such, departing from the benchmark 25% may be warranted when attorneys work on a contingency basis, especially for protracted periods of time. *See Vizcaino*, 290 F.3d at 1050.

Here, Class Counsel argue that they worked on a "wholly contingent [basis] and the case presented far more risk that the usual contingent fee case."[70]  They invested $20,038.30 upfront.[71]  While it is not clear precisely when the attorneys began work, it is apparent from the docket that they filed this lawsuit in November 2020.[72]

Taking those facts into account, the Court finds that Class Counsel certainly assumed risk, although the risk was not as great as in other cases where an upward departure from the benchmark was warranted.  On one hand, because Class Counsel took the case on contingency, they inherently faced the risk of walking away with nothing after investing substantial resources in this matter.  That fact favors an upward departure.  On the other hand, cases in which this factor justifies an upward departure tend to be more protracted. *See, e.g.*, *Vizcaino*, 290 F.3d at 1050 (finding that a 28% contingency fee was warranted where the lawsuit "extended ***over eleven years***, entailed hundreds of thousands of dollars of expense, and required counsel to forgo significant other work, resulting in a decline in the firm's annual income") (emphasis added); *Omnivision*, 559 F. Supp. 2d at

---

[69]     *See* Hearing on the Motion.

[70]     Motion 16:4-5.

[71]     *Id.* at 23:16.

[72]     Notice of Removal [ECF No. 1] ¶ 1.

1047 (lawsuit spanned three years and lawyers worked "*7,500 uncompensated hours*")
(emphasis added).  Here, the case has been ongoing for approximately three years at the
time of the hearing.[73]  And the three attorneys comprising Class Counsel say that they will
have invested "at least 392.8 hours" in total, which equates to just over three 40-hour
work weeks per attorney.[74]  In view of those facts, this factor weighs slightly against
granting an upward departure.

### e.    Awards Made in Similar Cases

The requested award in this settlement is on par with awards authorized in similar
cases, in which other district courts have approved fee awards in excess of the 25%
benchmark in wage and hour class actions.  *See, e.g.*, *Pagh*, 2021 WL 3017517, at *2
(finding that an award of 30% of the gross settlement amount was reasonable); *Howell v.
Advantage RN, LLC*, 2020 WL 5847565, at *4–*5 (S.D. Cal. Oct. 1, 2020) (approving an
award of 33.33% of total settlement amount); *Contreras v. Worldwide Flight Servs., Inc.*,
2020 WL 2083017, at *6–*7 (C.D. Cal. Apr. 1, 2020) (same); *Brown v. CVS Pharmacy,
Inc.*, 2017 WL 3494297, at *6-*7 (C.D. Cal. Apr. 24, 2017) (awarding 30% of the common
fund in attorneys' fees in a wage and hour class action settlement); *Hightower v.
JPMorgan Chase Bank, N.A.*, 2015 WL 9664959, at *12 (C.D. Cal. Aug. 4, 2015)
(approving attorneys' fees of 30% of the settlement fund).  The Court concludes, then,
that similar cases establish that some upward departure from the benchmark may be
appropriate here.

### 2.    The Lodestar Method and Lodestar Cross-Check

Under the lodestar method, the Court "multipl[ies] the number of hours the
prevailing party reasonably expended on the litigation . . . by a reasonable hourly rate for
the region and for the experience of the lawyer."  *In re Bluetooth Headset Prod. Liab. Litig.*,
654 F.3d at 941.  Although the lodestar figure is "presumptively reasonable," the Court
may adjust it upward or downward reflecting a host of "reasonableness" factors,
"including the quality of representation, the benefit obtained for the class, the complexity
and novelty of the issues presented, and the risk of nonpayment."  *Id.* at 941-42.

Here, Class Counsel allege that they worked approximately 392.8 hours
collectively:[75]

---

[73]    *See id.*; *see also infra* Part IV.A.2., calling Class Counsel's claimed hours into question.

[74]    Motion 19:1-2.

[75]    *Id.*

- <u>The Law Offices of Kevin T. Barnes</u>:  Attorney Kevin Barnes asserts that he worked 192.6 hours at a rate of $825/hour.[76]  He avers that his former partner, Gregg Lander, incurred an additional 97.1 hours on behalf of his firm, for a total of 289.7 attorney hours (the vast majority of all hours claimed by Class Counsel).[77]
- <u>The Law Offices of Raphael A. Katri</u>:  Attorney Raphael Katri asserts that he worked 39.8 hours at a rate of $700/hour.[78]
- <u>Stonebrook Law</u>:  Attorney Joseph Tojarieh states that he did not keep contemporaneous billing records in this case, but he estimates that he worked 63.3 hours at a rate of $675/hour.[79]

Class Counsel's alleged hours billed and resulting lodestar calculation are summarized in the table below:

| Timekeeper | Hourly Rate | Total Hours (including estimated) | Total Lodestar |
|---|---|---|---|
| *Kevin Barnes (named partner)* | $825 | 192.6 | $158,895.00 |
| *Gregg Lander (partner)* | $750 | 97.1 | $72,825.00 |
| *Raphael Katri (named partner)* | $700 | 39.8 | $27,860.00 |
| *Joseph Tojarieh (founding partner)[80]* | $675 | 63.3 | $42,727.50 |
| **TOTAL** | | **392.8** | **$302,307.50** |

---

[76]     Barnes Declaration ¶ 15; *see also* Supp. Decl. of Kevin T. Barnes (the "<u>Barnes Supplemental Declaration</u>") [ECF No. 53].

[77]     *See* Barnes Declaration ¶¶ 15 & 16; *see also* Barnes Supplemental Declaration.

[78]     Katri Declaration ¶ 7.

[79]     Tojarieh Declaration ¶¶ 8-11.

[80]     *See* Our Founder, *Stonebrook Labor & Employment Law*, https://www.laborlawfirm.com/about/joseph-tojarieh/.

The Court turns to the 2022 Real Rate Report:  An Analysis of Law Firm Rates, Trends, and Practices, WOLTERS KLUWER (2022 ed.) (the "Real Rate Report"), as a useful guidepost to assess the reasonableness of these hourly rates in the Central District. *See Mann v. FCA US LLC*, 2020 WL 7978500, at *3 (C.D. Cal. Nov. 11, 2020).  The Real Rate Report offers several relevant data points for fees in the Central District.  In Los Angeles, partners who practice labor and employment law at mid-sized firms have an hourly rate ranging from $567 (first quartile) to $870 (third quartile), with a median rate of $677.  *See* Real Rate Report 178.  Labor and employment associates in Los Angeles have an hourly rate ranging from $335 (first quartile) to $525 (third quartile), with a median rate of $380.  *Id.* at 27.  Employment litigation paralegals generally have an hourly rate ranging from $180 (first quartile) to $290 (third quartile), with a median rate of $234. *Id.* at 49.

Here, the charging attorneys are (or were, in the case of Mr. Lander) all partners in their respective firms.  Their rates all fall within the range outlined in the Real Rate Report, although Mr. Barnes' rate is at the very high end and Mr. Lander's rate is also on the high end.

The Court now turns to the lodestar cross check, which entails an evaluation of the multiplier implied by Class Counsel's requested fees ($832,199.67) and Class Counsel's lodestar fees (computed above as $302,307.50).  The lodestar calculation results in a multiplier of approximately 2.75.  If the Court were to award the standard 25% ($712,500) instead, then the resulting multiplier would be approximately 2.36.  Those multipliers are each squarely in the range of lodestar multipliers awarded in wage and hour class actions. *See, e.g.*, *Reyes v. Experian Info. Sols., Inc.*, 856 F. App'x 108, 110 (9th Cir. 2021) (finding that a 25% award with a 2.88 multiplier was similar to awards "routinely approved" by courts in the Ninth Circuit); *Attia v. Neiman Marcus Group, LLC*, 2019 WL 13089601, at *7 (C.D. Cal. Feb. 25, 2019) (quoting *Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d 1160, 1170 (C.D. Cal. 2010)) ("multipliers may range from 1.2 to 4 or even higher"); *Vizcaino*, 290 F.3d at 1051–54 (affirming a 25% fee recovery, explaining that the 3.65 multiplier "was within the range of multipliers applied in common fund cases," and recognizing that courts applied multipliers of 1.0 to 4.0 in 83% of 23 class action suits surveyed).

### 3.    Conclusion on Attorneys' Fees

In this case, Class Counsel obtained strong, but not exceptional, results for the class; the risk of non-recovery at the outset of litigation was equivalent to the risk in any other wage and hour class action cases (because obtaining class certification is sometimes difficult in wage and hour cases); and the efforts of Class Counsel throughout this litigation appear to have been satisfactory, although the Court has only limited first-hand experience with the excellence that they claim.  In summary, the Court finds that three of

the five factors evaluated in the percentage-of-recovery method justify some upward departure, whereas the other two do not.  Balancing those factors and exercising its discretion, the Court **GRANTS** Class Counsel's request for $832,199.67 in attorneys' fees (approximately 29.2% of the settlement fund).

## B.    Costs

In their Motion, Class Counsel state that they incurred litigation costs totaling $20,038.30.[81]  Those costs represent only 0.7% of the total settlement award.  Because the costs appear to be reasonable and incurred for the benefit of the class, *see In re United Energy Corp. Solar Power Modules Tax Shelter Inv. Sec. Litig.*, 1989 WL 73211, at *6 (C.D. Cal. Mar. 9, 1989), the Court **APPROVES** the cost reimbursement request.

## C.    Service Awards

Class Counsel request that this Court grant two service awards, one each to Hang and Canales, for serving as the class representatives.  Service awards, also known as "[i]ncentive awards," are "fairly typical" in class action cases.  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009).  They are discretionary in nature and are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and . . . to recognize their willingness to act as a private attorney general."  *Id.* at 958-59.  "[D]istrict courts . . . evaluate the propriety of requested incentive payments 'using relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation.'"  *Roes, 1-2*, 944 F.3d at 1057 (quoting *Staton*, 327 F.3d at 977 (affirming $5,000 service awards but rejecting $20,000 awards as unreasonable)).

"Generally, in the Ninth Circuit, a $5,000 incentive award is presumed reasonable."  *Lee v. Glob. Tel*link Corp.*, 2018 WL 4625677, at *12 (C.D. Cal. Sept. 24, 2018); *Bravo v. Gale Triangle, Inc.*, 2017 WL 708766, at *19 (C.D. Cal. Feb. 16, 2017) (finding a $5,000 award reasonable for the class representatives' participation throughout the litigation and the risk to their reputation); *see also Roes, 1-2*, 944 F.3d at 1057.  When the incentive award is unusually large, especially "relative to the size of the cash payments that can be claimed by class members," courts consider this discrepancy a "serious red flag[] that the defendants may have tacitly bargained for the named plaintiffs' support for the settlement by offering them significant additional cash awards."  *Id.* (citing *Staton*, 327 F.3d at 975) ("finding that payments to certain identified class

---

[81]    Motion 23:15-16.

members that were 'on average, **sixteen times** greater' than the damages that other unnamed class members would receive, and together made up roughly 6% of the total settlement, 'raise[d] serious concerns as to [the settlement's] fairness, adequacy and reasonableness,' particularly because there was 'no sufficient justification in the record for this differential in the amount of damage awards and the process for awarding them'") (emphasis added).

Class Counsel declare that Hang and Canales spent many hours in support of litigating this case[82] and that they "risk being blackballed from their work" for their participation.[83]  For that effort, Class Counsel ask for a $10,000 award to each.[84]  $10,000 is roughly **12-times** the average individual award that class members will receive, and together, the requested service awards represent roughly 0.7% of the overall Settlement Award.

In view of the named Plaintiffs' engagement in this litigation over the past three years, the Court finds service awards fair and reasonable.  But given the gaping delta between Class Counsel's proposed service award and the average individual award for class members, the Court finds that a lower service award is more appropriate for Canales, where Hang's name appears in the caption and he therefore faces more risk to his job prospects by virtue of his participation in this case.  Accordingly, the Court **APPROVES** a $10,000 service award for Hang and a $7,500 service award for Canales and **DIRECTS** that the awards be paid pursuant to the terms of the settlement agreement.

## D.  Administration Costs

Finally, Class Counsel request $26,000 in administration costs for Rust Consulting, the claims administrator.[85]  That request "appears to be reasonable, as those costs relate to designing and executing the administration of the settlement agreement, including mailing notices and processing correspondence from members of the class." *Brooks v. Life Care Centers of Am., Inc.*, 2015 WL 13298569, at *5 (C.D. Cal. Oct. 19, 2015).  Thus, the Court **APPROVES** these costs.

---

[82]     *Id.* at 23:28-24:7.

[83]     *Id.* at 24:20-22.

[84]     *Id.* at 23:24-25.

[85]     *Id.* at 23:16-18.

## V.  DISPOSITION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1.      Final approval of the class action settlement is **GRANTED**.

2.      An award of attorneys' fees in the amount of $832,199.67 is **GRANTED**.

3.      An award of litigation costs in the amount of $20,038.30 is **GRANTED**.

4.      A service award for each of the two named Plaintiffs, Tai Hang and Robert Canales is **GRANTED**.  Specifically, Hang is awarded $10,000, and Canales is awarded $7,500.

5.      An award of administration costs for Rust Consulting in the amount of $26,000 is **GRANTED**.

6.      Judgment will issue accordingly.

**IT IS SO ORDERED.**


Dated:___May 14, 2024___      _____

John W. Holcomb
UNITED STATES DISTRICT JUDGE